UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present          Not Present

**Proceedings:**  (IN CHAMBERS) - DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Dkt. [ 57 ], filed April 30, 2020)

## I.   INTRODUCTION

### A.   Metricolor Initiates this Action

On January 16, 2018, plaintiff Metricolor LLC ("Metricolor") filed this action against L'Oréal S.A.; L'Oréal USA, Inc. ("L'Oréal USA"); L'Oréal USA Products, Inc. ("L'Oréal USA Products"); L'Oréal USA S/D, Inc. ("L'Oréal USA S/D"); and Redken 5th Avenue NYC, LLC ("Redken"). Dkt. 1 ("Compl."). Metricolor's initial complaint asserted claims for: (1) patent infringement; (2) breach of contract; (3) misappropriation of trade secrets; (4) breach of the implied covenant of good faith and fair dealing; (5) false advertising in violation of the Lanham Act; (6) false advertising in violation of California's False Advertising Law ("FAL"); (7) unfair competition in violation of California's Unfair Competition Law ("UCL"); and (8) breach of confidence. Id.

According to Metricolor, the L'Oréal defendants together form a conglomerate that "is the self-proclaimed world-leader in beauty products, including makeup, cosmetics, haircare, and perfume." Compl. ¶ 1. By contrast, Metricolor "is a small and new startup company" founded by hairstylist Stephen D'Amico, and his father, Salvatore D'Amico. Id. ¶ 2. Metricolor developed the "Metricolor System," which stores, formulates, and dispenses hair coloring agents and additives using airtight containers and a graduated syringe. Id. ¶ 3. The gravamen of Metricolor's claims is that after the parties entered into confidential discussions with the L'Oréal defendants regarding the possible sale or licensing of Metricolor's patented Metricolor System, and after the parties executed a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
|----------|------------------------|------|--------------|
| Title    | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. |||

mutual non-disclosure agreement ("NDA") on August 25, 2014, L'Oréal broke off discussions and misappropriated the technology and other confidential information that embodies the Metricolor System. Id. ¶¶ 4–6.

### B.    The Court Dismisses Metricolor's Complaint with Prejudice

L'Oréal USA, L'Oréal USA Products, L'Oréal USA S/D, and Redken filed a motion to dismiss Metricolor's complaint for failure to state a claim on April 23, 2018.  Dkt. 20-1.  On May 23, 2018, L'Oréal S.A., the other L'Oréal defendants' parent company, filed a separate motion to dismiss for lack of personal jurisdiction and for failure to state a claim.  Dkt. 26-1.  Metricolor filed oppositions on June 25, 2018, and on June 26, 2018.  Dkts. 28, 30.  Metricolor's oppositions indicated that if the L'Oréal defendants' motions are "granted on any grounds, [Metricolor] requests leave to amend."  Dkt. 28 at 24; Dkt. 30 at 11.  With respect to L'Oréal S.A.'s separate request for dismissal on personal jurisdiction grounds, Metricolor's opposition requested leave to take jurisdictional discovery.  Dkt. 30 at 2–3.

The Court granted the L'Oréal defendants' motions to dismiss on April 15, 2018.[1] Dkt. 35 ("MTD Order").  The Court dismissed Metricolor's Lanham Act, FAL, and implied covenant claims since Metricolor's opposition brief indicated that Metricolor was "abandoning" those claims.  Id. at 3.  The Court determined that it lacked general jurisdiction over L'Oréal S.A. because it "is a French corporation with its principal place of business in France," and its "alleged contacts with [Metricolor] do not justify the exercise of specific jurisdiction either."  Id. at 5.  The Court determined that Metricolor failed to state a claim for patent infringement because Metricolor did not sufficiently allege that either of the L'Oréal defendants' allegedly infringing products—the "Bond Ultim8" and the "pH-Bonder"—practiced each of the limitations found in the claims of Metricolor's patent.  Id. at 6–8.  The Court likewise concluded that "[b]ecause [Metricolor] fail[ed] to allege that [the L'Oréal defendants] used any confidential information beyond what the '587 Patent application disclosed to the public, its claim for breach of contract fails."  Id. at 8.  The Court determined that Metricolor failed to state a claim for misappropriation of trade secrets since Metricolor "does not allege a trade secret, and the information in the '587 Patent cannot be protected as a trade secret[.]" Id. at 9.  Similarly, the Court dismissed Metricolor's breach of confidence claim because "[i]nformation in the '587 Patent is not

---

[1]    This case was originally assigned to the Honorable Manuel L. Real.  As discussed more fully below, on remand from the United States Court of Appeals for the Federal Circuit, this case was randomly reassigned to the Court on December 11, 2019.  Dkt. 53.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

confidential, and a breach of confidence claim cannot be founded on the disclosure of already public information." Id. at 10.  The Court also dismissed Metricolor's UCL claim, determining that because Metricolor failed to state any other claim, Metricolor failed to state a claim pursuant to the UCL's unlawful prong.  MTD Order at 9.

### C.    The Federal Circuit Vacates the Court's Dismissal Order

On September 14, 2018, Metricolor filed a notice of appeal of the Court's dismissal order.  Dkt. 42.  On October 30, 2019, the Federal Circuit vacated in part and affirmed in part the Court's dismissal order.  Dkt. 49 ("Fed. Cir. Order").  The Federal Circuit affirmed the Court's determination "that Metricolor failed to sufficiently plead a claim of patent infringement in its complaint." Id. at 8.  Similarly, the Federal Circuit "agree[d] with [the Court] that the complaint failed to sufficiently plead any of Metricolor's non-patent claims of breach of contract, breach of confidence, federal trade secret theft, and unfair competition under state law." Id. at 9.  That is because "the complaint did not sufficiently allege any misuse of confidential information beyond what was already disclosed in the published '587 patent application." Id.

The Federal Circuit noted, however, that "[i]n dismissing the complaint under Rule 12(b)(6), [the Court] did not acknowledge that Metricolor made a request for leave to amend the complaint." Fed. Cir. Order at 10.  The Federal Circuit therefore concluded that the Court's "failure to provide any reason for denying Metricolor's request constituted an abuse of discretion in this case because the record does not clearly indicate that [the Court] even considered Metricolor's request." Id. at 11 (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Accordingly, the Federal Circuit "vacate[d] the dismissal of the complaint under Rule 12(b)(6) and remand[ed]" so that the Court could "explicitly address Metricolor's conditional request for leave to amend the complaint based on any of the factors justifying denial under Foman, such as futility." Id. at 12.

Finally, the Federal Circuit affirmed the Court's dismissal of Metricolor's claims against L'Oréal S.A. for lack of personal jurisdiction.  Fed. Cir. Order at 12.  The Federal Circuit rejected Metricolor's argument that the Court abused its discretion by failing to address Metricolor's request for leave to conduct jurisdictional discovery.  Id. at 14.  The Federal Circuit reasoned that "[t]o the extent [the Court] erred in failing to explicitly address Metricolor's request, such error was harmless, because . . . Metricolor fail[ed] to clearly show that there is a 'reasonable probability' that its requested jurisdictional discovery would have yielded facts sufficient to establish personal jurisdiction." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

### D. Following Remand, Metricolor Files the Operative First Amended Complaint and L'Oréal Files a Motion to Dismiss

Following remand from the Federal Circuit, this case was reassigned to this Court on December 11, 2019. Dkt. 53. The Court subsequently held a status conference on January 6, 2020, permitting Metricolor to file an amended complaint on or before March 6, 2020. Dkt. 56. Metricolor thereafter filed the operative first amended complaint on March 6, 2020. Dkt. 57 ("FAC"). The FAC asserts the following claims against defendants L'Oréal USA, L'Oréal USA Products, L'Oréal USA S/D, and Redken (collectively, "L'Oréal"): (1) breach of contract; (2) misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"); (3) breach of the implied covenant of good faith and fair dealing; (4) violation of the UCL; (5) breach of confidence; and (6) misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act ("CUTSA"). See generally id.

L'Oréal filed a motion to dismiss the FAC on April 30, 2020. Dkt. 63 ("Mot."). Metricolor filed an opposition on May 26, 2020. Dkt. 67 ("Opp."). L'Oréal filed a reply on June 9, 2020. Dkt. 68 ("Reply").

The Court held a hearing on June 29, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

### A. The Metricolor System

According to Metricolor, "[o]ther hair coloring systems currently available on the market typically comprise a series of capped tubes, such as collapsible aluminum tubes or bottle-type containers, each containing a different hair coloring agent or additive paste or liquid." FAC ¶ 20. "During the hair coloring process, a stylist dispenses the desired amount of hair coloring agents and/or additives into a mixing receptable to achieve a desired color." Id. Metricolor avers that these traditional hair coloring systems present a number of problems, including that: (1) traditional containers are inaccurate because they require stylists "to measure certain amounts by sight or 'squeeze to a line,'" which "can alter the hue of a color mixture"; and (2) traditional systems use "aluminum tubes (similar to toothpaste tubes)," which make it "difficult to dispense all of the liquid or paste from a single tube, leading to a waste of approximately 25% of the product in a typical tube." Id. ¶ 21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

By contrast, "[t]he Metricolor System solves all these problems, allowing for accurate and repeatable measurements that prevent waste and allow for the consistent mixture of hair color, developer (peroxide), bonder, and other agents and additives." FAC ¶ 22. That is because "[t]he Metricolor System, in contrast to traditional means of mixing and dispensing hair coloring agents and additives, allows a user to quickly and accurately measure and dispense hair color, developer (peroxide), bonder, and other agents and additives *using a syringe*." Id. ¶ 19 (emphasis added). According to Metricolor, its Metricolor System also "uses novel packaging . . . that further reduces waste and lower costs, while being user-friendly and compatible with a wide range of products of differing viscosity and corrosiveness." Id.

The Metricolor System comes in several "embodiments." "In one embodiment of the Metricolor System, poly-plastic containers are fitted with a flip-top or twist-off cap and an orifice reducer at the opening that prevents product dripping and reduced oxidation/drying[.]" FAC ¶ 23. "A graduated needle-less catheter-type syringe . . . engages the orifice reducer and allows stylists to measure out and dispense an exact amount of the necessary hair coloring agent or additive every time." Id. The poly-plastic containers and needle-less catheter-type syringe which comprise this "embodiment" of the Metricolor System are pictured below:



Id. Metricolor avers that "[i]n contrast with traditional hair coloring agent or additive systems," this embodiment of the Metricolor System "allows for an accuracy of +/- 1% in measuring liquids/pastes." Id.

"In other embodiments of the Metricolor System, hair color, developer (peroxide), bonder, and other agents and additives are packaged in a flexible, user-friendly pouch that facilitates withdrawing a higher percentage of hair product than traditional containers make possible, whether or not a syringe is used." FAC ¶ 24. "The pouch . . . can be constructed from various materials and layers depending on the characteristics (such as viscosity and corrosiveness) of the hair product contained inside." Id. An example of the pouch used in this embodiment of the Metricolor System is pictured below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |



FAC ¶ 24.

### B.    Metricolor and L'Oréal Discuss Possible Areas for Collaboration

Metricolor alleges that "[o]n or around August 14, 2014," the D'Amicos "spoke with the President of the Professional Products Division of L'Oréal USA, Patrick Parenty ('Parenty'), and discussed the potential for L'Oréal's interest in the acquisition or licensing of the Metricolor System." FAC ¶ 36. To that end, L'Oréal and the D'Amicos signed an NDA on August 25, 2014. Id. According to Metricolor, it "was an intended third-party beneficiary of the NDA." Id.

Metricolor avers that "[t]he NDA . . . contemplated that 'Confidential Information' would be disclosed to L'Oréal 'that relates to or is derived from a party's scientific, technical, business, strategic, marketing or creative affairs.'" FAC ¶ 37. As such, "the D'Amicos, acting on behalf of [Metricolor], disclosed many confidential, non-public details regarding the Metricolor System to L'Oréal, in such a manner that L'Oréal was advised or had reason to know of the confidential and proprietary nature of the information disclosed." Id.

The NDA imposed a number of obligations on L'Oréal. "The NDA included express provisions wherein L'Oréal agreed, for example, **not to** '**use, or authorize the use of, such Confidential Information for any purpose other than for the Purpose.**'" FAC ¶ 38 (emphases in original). The NDA defines "the 'Purpose' as 'to collaborate regarding Stephen D'Amico's METRICOLOR System.'" Id. In addition, L'Oréal "further agreed . . . **not to** '**copy or reproduce all or any part of such Confidential Information in any**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

**medium**' except as was necessary to effectuate L'Oréal's collaboration with Metricolor." FAC ¶ 39 (emphases in original). "Under the NDA, L'Oréal further agreed . . . to '**not decompile, disassemble or reverse engineer all or any part of such Confidential Information without the written permission of the Disclosing Party.**'" <u>Id.</u> ¶ 40 (emphases in original).

The D'Amicos and various L'Oréal employees continued to discuss possible areas for collaboration between Metricolor and L'Oréal on a number of occasions between October 2014 and June 2016, either in-person or by telephone. FAC ¶¶ 41–49. For example, on October 14, 2014, at a meeting at L'Oréal's facilities in New York City, the D'Amicos "presented and demonstrated multiple embodiments of the Metricolor System, thereby providing L'Oréal with confidential trade-secret information regarding the application and use of the Metricolor System." <u>Id.</u> ¶ 41. L'Oréal subsequently sent the D'Amicos "eight large boxes with hundreds of samples of their entire line of hair coloring products for the D'Amicos to test with the Metricolor System." <u>Id.</u> ¶ 42. After testing L'Oréal's samples with its Metricolor System, "Stephen D'Amico discussed some of the testing results with Parenty during a one-hour telephone call in late 2014, and other aspects of the testing results were discussed with L'Oréal during subsequent meetings and telephone discussions." <u>Id.</u> Similarly, at another meeting at L'Oréal's New York City facility, "the D'Amicos and their packaging contractor and expert, Thomas Vogt . . . gave another formal presentation and demonstration of the Metricolor System . . . including a discussion of their new technical developments." <u>Id.</u> ¶ 44.

### C. Negotiations Between Metricolor and L'Oréal Break Down, and L'Oréal Releases Competing Products

"On or about February 22, 2016, having heard nothing from L'Oréal for several months, Salvatore D'Amico sent an email to L'Oréal indicating [Metricolor's] intent to take the Metricolor System to market if L'Oréal did not commit to the Metricolor System." FAC ¶ 46. On March 10, 2016, a L'Oréal executive "contacted the D'Amicos and indicated that L'Oréal was still 'very interested' in the Metricolor System." <u>Id.</u> ¶ 47. In reality, however, "that statement was knowingly false and intended solely to dissuade [Metricolor] from marketing the Metricolor System unilaterally or partnering with a L'Oréal competitor for that purpose." <u>Id.</u>

"Around this time, the D'Amicos also spoke by telephone" with other L'Oréal executives "who specifically asked the D'Amicos for ten samples of certain components associated with the Metricolor System so that L'Oréal could perform their own testing of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | | |

elements of the System with their hair products." FAC ¶ 48. Metricolor sent various
samples in response to L'Oréal's request, including: "two pouches of different sizes (for
different types of hair products), two syringes of different sizes (for different types of hair
products), and two orifice reducers." Id. According to Metricolor, "L'Oréal made this
request in bad faith for the purposes of obtaining additional trade secrets and confidential
information from [Metricolor] and stalling [Metricolor] further." Id.

On June 16, 2016, "L'Oréal's negotiator (Michael Alekshun) contacted Metricolor's
negotiator (Rand Brennder) and indicated that L'Oréal would be terminating the
negotiations." FAC ¶ 50. "L'Oréal provided no reason for the sudden termination of
negotiations that had been ongoing for nearly two years." Id.

In September 2016, and after having terminated negotiations with Metricolor,
"L'Oréal launched two new products under the Matrix Brand and the Redken Brand (the
Matrix Brand's Matrixcolor Bond Ultim8 product and Redken Brand's pH-Bonder
product)[.]" FAC ¶ 51. Metricolor alleges that these products "specifically include and
directly advertise [Metricolor's] components." Id. As an example, the syringes that the
Metricolor System and L'Oréal's Redken pH-Bonder each use are pictured below:





Id. ¶ 68.

### D. Aspects of the Metricolor System Not Disclosed by Metricolor's Patents

Metricolor owns the United States Patent No. 9,301,587 ("the '587 Patent"), which
is entitled "Hair Color (or Dye) Storage, Dispensing and Measurement (or Measuring)
System," and which the United States Patent and Trademark Office ("PTO") issued on
April 5, 2016. FAC ¶ 27. Metricolor also owns United States Patent No. 10,017,318 ("the
'318 Patent"), which is entitled "Hair Color (or Dye) Storage, Dispensing and
Measurement (or Measuring) System," and which the PTO issued on July 10, 2018. Id. ¶
28. Metricolor alleges that it "has not licensed either the '587 Patent or the '318 Patent to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
|----------|------------------------|------|--------------|
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

any entity or person, and [Metricolor] has never authorized [L'Oréal] to use any patented component of the '587 Patent or the '318 Patent." FAC ¶ 29.

According to Metricolor, "[t]he '587 Patent and the '318 Patent and the related patent applications describe and claim only certain limited aspects of the Metricolor System." FAC ¶ 30. "Other aspects of the Metricolor System—some developed before the patent applications were filed but not directly pertinent to the claimed inventions, and others developed after one or both of the patent applications were filed through further research and development efforts . . . are not described or claimed in the patents." Id.

### 1.     Use of a Syringe

"For example, the patents disclose the use of a syringe as part of a hair product dispensing system, but they focus on the syringes with a 'luer-lock' tip that will engage with a seal on a hair product container." FAC ¶ 31. "The patent also discloses syringes with longer, narrower tips, but in connection with an alternative embodiment in which the syringe is sold pre-loaded with hair dye." Id. According to Metricolor, however, "[t]he patents do not disclose other circumstances in which a syringe with a longer, narrower tip (such as the syringes used with the L'Oréal Defendants' products) is preferably used with hair products." Id. Metricolor avers that its founders, the D'Amicos, "separately developed that information on behalf of [Metricolor], protected that information as a trade secret, and confidentially disclosed the information to the L'Oréal Defendants during the parties' discussions." Id.

### 2.     Syringe Sizes

Metricolor alleges that other aspects of the Metricolor System—which form the bases for Metricolor's claims—are *not* disclosed in Metricolor's patents or patent applications. See FAC ¶¶ 32–34. For example, "the patents disclose the use of a syringe as part of a hair product dispensing system, but they identify a wide range of potential syringe sizes—mostly substantially larger than the 10 mL syringes used with the L'Oréal Defendants' products." Id. ¶ 32. "Although Figure 2 in the patents depicts a 12 mL luer-lock syringe, the rest of the specification makes no mention of this syringe size and says nothing about whether or when the use of such a small syringe size would be advisable." Id. "The D'Amicos separately developed that information on behalf of [Metricolor], protected it as a trade secret, and confidentially disclosed it to the L'Oréal Defendants during the parties discussions—including by providing L'Oréal with confidentially-sourced samples of such a syringe that is seemingly identical to the syringes used with the L'Oréal Defendants products[.]" Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | | |

### 3.   Use of a Non-Self-Sealing Orifice Reducer

"As another example, the patents disclose the use of an orifice reducer as part of a hair product dispensing system, but they focus on a 'self-sealing' orifice reducer with design features not used by L'Oréal." FAC ¶ 33. Metricolor further avers that "[t]he patents contain no information regarding whether or when it would be advantageous to use a simpler, non-self-sealing orifice reducer with hair products." Id. According to Metricolor, "[t]he D'Amicos separately developed that information on behalf of [Metricolor], protected it as a trade secret, and confidentially disclosed it to the L'Oréal Defendants during the parties discussions—including by providing L'Oréal with confidentially-sourced samples of such an orifice reducer that is seemingly identical to the orifice reducers used with the L'Oréal Defendants' products." Id.

### 4.   Other Non-Disclosed Aspects

Metricolor avers that its patents do not disclose other aspects of the Metricolor System and that these aspects are Metricolor's intellectual property. See FAC ¶¶ 34–35. For example, "the D'Amicos . . . devoted many hours investigating potential manufacturers, manufacturing methods, pricing (including under different volume scenarios), cost-saving measures, and other such information for components of the Metricolor System, including, but not limited to: syringes, orifice reducers, and packaging options." Id. ¶ 34. Moreover, Metricolor "introduced the L'Oréal Defendants to one of [Metricolor's] preferred manufacturers, with whom [Metricolor] had a separate non-disclosure agreement." Id. Despite Metricolor's "separate NDAs with both L'Oréal and the manufacturer," however, Metricolor "suspects (based on the fact that the syringe and orifice reducer used with the L'Oréal Defendants' products are seemingly identical to the samples provided to L'Oréal by [Metricolor] under the NDA) that they began working together in violation of their contractual obligations to [Metricolor] and without [Metricolor's] or the D'Amicos' knowledge." Id. In addition, "[t]he other trade secrets on which [Metricolor's] claims are based likewise are not disclosed in either the '587 Patent or the '318 Patent." Id. ¶ 35.

## III.   LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under 12(b)(6), a district court should dismiss a claim if "there is a 'lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | | |

(9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a 12(b)(6) motion, a court must accept as true all material allegations in the complaint, and all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1988). A court must read the complaint in the light most favorable to the non-movant. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a 12(b)(6) motion into a motion for summary judgment, the court cannot consider material outside of the complaint, such as facts presented in briefs, affidavits, or discovery materials. In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). However, a court may consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be granted freely. Fed. R. Civ. P. 15(a). However, the court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

## IV.   DISCUSSION

L'Oréal seeks dismissal of Metricolor's claims on a number of grounds.  The Court addresses L'Oréal's arguments in turn.

### A.   Metricolor's Allegations Regarding "Confidential Information"

L'Oréal first argues that "[e]ach claim in the FAC is predicated on Metricolor having given L'Oréal purportedly 'confidential information' or 'trade secret' information, which L'Oréal allegedly misappropriated." Mot. at 4.  According to L'Oréal, however, "all of the information Metricolor alleges to be its 'confidential information' and its 'trade secrets' was *public* information." Id. (emphasis in original).

For example, L'Oréal identifies Metricolor's "specific purported 'trade secrets' and 'confidential information'" as: (1) use of a syringe with a longer, narrower tip; (2) use of a 10 mL syringe; (3) use of a simpler, non-self sealing orifice reducer; (4) the process of filling a syringe; (5) the use of a pouch to package haircare products; and (6) an introduction to a pouch supplier, Thomas Vogt, and prices for various common components. Mot. at 5. In an attempt to establish that these items are neither "trade secrets" nor "confidential information," L'Oréal relies on Metricolor's patent applications and on various documents pulled from the Internet Archive's Wayback Machine.  See, e.g., id. at 7 ("In addition to these published patent disclosures, the Internet Archive's Wayback Machine archives demonstrate that tapered tip plastic syringes, indistinguishable from Metricolor's sample and the syringe in L'Oréal's products . . . were readily available, from multiple sources, years before Metricolor's 'disclosure,' through a simple web search."). According to L'Oréal, these documents "show that Metricolor's alleged 'confidential information' and trade secrets were generally known and available to the public *prior to* Metricolor's contact with L'Oréal." Id. at 2 (emphasis in original).

The Court notes that, pursuant to Fed. R. Evid. 201(c)(1), it "may take judicial notice on its own," and that "district courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine pursuant to this rule[.]"[2]  United

---

[2]      Several of the webpages that L'Oréal requests the Court take judicial notice of contain annotations.  Dkt. 63-2 (Exhs. 1–2).  "However, . . . *post hoc* annotations are not the proper subject of judicial notice." Nelson Bros. Prof'l Real Estate LLC v. Jaussi, No. 8:17-cv-00158-DOC-JCG, 2017 WL 8220703, at *3 (C.D. Cal. Mar. 23, 2017) (declining to take judicial notice of webpage with party's annotations).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

States ex rel. Hong v. Newport Sensors, Inc., No. 13-cv-01164-JLS-JPR, 2016 WL 8929246, at *3 (C.D. Cal. May 19, 2016). However, even were the Court to take judicial notice of the various Wayback Machine documents that L'Oréal provides, and even were the Court to look to the information disclosed by Metricolor's patent applications, the question of whether that information defeats Metricolor's claims that its technology was "confidential" is a question of fact that is more appropriately decided on a motion for summary judgment. See Scott v. Snelling & Snelling, Inc., 732 F. Supp. 1034, 1038 (N.D. Cal. 1990) ("The determination of whether a particular type of information is confidential or a trade secret would generally be a question of fact[.]"); MACOM Tech. Sols. Inc. v. Litrinium, Inc., No. 8:19-cv-00220-JVS-JDE, 2019 WL 4282906, at *7 (C.D. Cal. June 3, 2019) (rejecting argument that patents and patent applications, which allegedly disclosed same designs and processes claimed by plaintiffs to be confidential information that defendants misappropriated, required dismissal at pleading stage because "[w]hether the alleged trade secrets are actually generally known to the public is a question of fact and beyond the scope of a motion to dismiss."); accord Leoni Fiber Optics, Inc. v. Kaus, No. 13-cv-00562-PH-SMM, 2013 WL 12106942, at *4 (D. Ariz. June 14, 2013) ("According to Defendants, LFOI's allegation that it was developing products that constituted confidential information, which Defendants misappropriated to make the Easy Flex Glide Fiber and Surgical Dome Tip Fiber, fails because LFOI's similar products were sold on the open market, and products on the open market cannot be trade secrets. This argument is without merit on this motion to dismiss, however – this is a question of fact going to LFOI's proof that the product information at issue was secret, a question which is not before the Court at this stage.").

### B.     The Law of the Case Doctrine Does Not Require Dismissal

In its order affirming in part and vacating in part the Court's order dismissing Metricolor's previous complaint, the Federal Circuit "agree[d] with [the Court] that the complaint failed to sufficiently plead any of Metricolor's non-patent claims of breach of contract, breach of confidence, federal trade secret theft, and unfair competition under state law." Fed. Cir. Order at 9. The Federal Circuit concluded that "[a]s [the Court] correctly found, the complaint did not sufficiently allege any misuse of confidential information beyond what was already disclosed in the published '587 patent application." Id. L'Oréal now contends that the Federal Circuit's determinations require dismissal of the FAC pursuant to the law of the case doctrine. Mot. at 14–17.

"The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
|----------|------------------------|------|--------------|
| Title    | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

in the same case.'" Musacchio v. United States, 136 S. Ct. 709, 716 (2016). "The legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court." United States v. Houser, 804 F.2d 565, 567 (9th Cir. 1986). "The rule is that the mandate of an appeals court precludes the district court on remand from reconsidering matters which were either expressly or implicitly disposed of upon appeal." United States v. Miller, 822 F.2d 828, 832 (9th Cir. 1987). "But a court may have discretion to depart from the law of the case if: 1) the first decision was *clearly erroneous*; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." United States v. Cuddy, 147 F.3d 1111, 1114 (9th Cir. 1998) (emphasis in original) (internal citation omitted).

As an initial matter, it is questionable whether the law of the doctrine is even applicable here. While the Federal Circuit determined, with respect to the allegations in Metricolor's *previous* complaint, that Metricolor "failed to sufficiently plead any of [its] non-patent claims" because the complaint "did not sufficiently allege any misuse of confidential information beyond what was already disclosed in the published '587 patent application," the Federal Circuit remanded the case to the Court, so that the Court could consider, in light of Metricolor's request for leave to amend, whether amendment would be futile. Fed. Cir. Order at 9–12. Following remand, the Court granted Metricolor leave to amend, and Metricolor thereafter filed the operative FAC.

In Askins v. U.S. Dep't of Homeland Sec., the Ninth Circuit determined the applicability of the law of the case doctrine in the context of a motion to dismiss an amended complaint where a court previously dismissed a prior complaint without prejudice. 899 F.3d 1035 (9th Cir. 2018). In that case, border policy advocates brought suit against the United States Department of Homeland Security ("DHS"), alleging that the DHS violated the advocates' First Amendment rights when DHS officers stopped the advocates and destroyed the photographs that the advocates had been taking on public lands. Id. The district court dismissed the advocates' complaint, with leave to amend, on the grounds that the DHS' actions "survived strict scrutiny because they serve 'perhaps the most compelling government interest: protecting the territorial integrity of the United States' and there were no less restrictive alternatives." Id. at 1040. The district court subsequently dismissed the advocates' amended complaint, determining "that it was 'precluded' by the law of the case doctrine from revisiting its prior order." Id. at 1041.

On appeal, the Ninth Circuit determined that "[t]he law of the case doctrine does not apply here." Askins, 899 F.3d at 1043. That is because "[t]he district court dismissed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | | |

plaintiffs' First Amended claim, but without prejudice; . . . [a]ccepting the district court's invitation, plaintiffs filed an amended complaint, and included facts and claims that were different from those in the initial complaint." <u>Askins</u>, 899 F.3d at 1043. The Ninth Circuit concluded that the district court erred because "[i]nstead of ruling on the merits of the government's motion to dismiss the amended complaint, the district court invoked the law of the case doctrine, holding that it was 'precluded' from considering the complaint." <u>Id.</u>

The Ninth Circuit in <u>Askins</u> made several pronouncements regarding the application of the law of the case doctrine which inform the Court's analysis here.[3]  For example, "[o]nce the plaintiff elects to file an amended complaint, the new complaint is the only operative complaint before the district court." 899 F3d at 1043. "Thus, when an original complaint is dismissed without prejudice, the filing of an amended complaint does not ask the court to reconsider its analysis of the initial complaint. The amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits; we do not ask whether the plaintiff is 'precluded' or 'barred' by the prior ruling." <u>Id.</u> The Ninth Circuit explained that "[w]hen the defendant files a motion to dismiss the amended complaint, it may urge the district court to determine that the plaintiff's amended complaint did not cure the deficiencies of the initial complaint. If the district court determines the amended complaint is substantially the same as the initial complaint, the district court is free to follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies. The district court is not, however, bound by any law of the case." <u>Id.</u> Put differently, "[t]he district court may decide the second motion to dismiss in the same way it decided the first, but permitting the filing of an amended complaint requires a new determination." <u>Id.</u>

Even assuming <i>arguendo</i> that the Federal Circuit's determinations regarding the prior complaint's failure to state a claim operate as the law of the case, that does not require dismissal of the FAC.   Indeed, L'Oréal concedes that Metricolor can "escape the

---

[3]    The Court recognizes that the procedural posture of this case differs from that before the Ninth Circuit in <u>Askins</u>. Here, L'Oréal urges that the Federal Circuit's pronouncements regarding the prior complaint's failure to state a claim operate as the law of the case which, following remand, binds the Court's assessment of the operative FAC. By contrast, in <u>Askins</u>, the district court determined that the district court's own prior dismissal operated as the law of the case. Nonetheless, the Court finds <u>Askins</u> instructive to the extent that the case explains the effect, for law of the case purposes, of filing an amended complaint following the dismissal of a prior complaint without prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
|---|---|---|---|
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

application of the law of the case" if the FAC alleges "facts that are 'substantially different'" from those in the prior complaint that the Federal Circuit deemed insufficient to state a claim. Mot. at 14–15. Here, the FAC contains additional allegations, not present in Metricolor's alleged complaint, which allege that Metricolor developed trade secrets and other confidential information not disclosed by Metricolor's patent applications.[4] See, e.g., FAC ¶¶ 30–35. L'Oréal may disagree that this information is "confidential" or is protectable as trade secrets, but as discussed above, the Court cannot make that determination, as a matter of law, at the pleading stage. See Scott, 732 F. Supp. at 1038 ("The determination of whether a particular type of information is confidential or a trade secret would generally be a question of fact[.]").

Accepting as true Metricolor's allegations that it developed confidential information and trade secrets *not* disclosed by its patent applications, the Court concludes that the FAC contains allegations that differ from those in Metricolor's prior complaint that the Federal Circuit previously determined were insufficient to state a claim. Accordingly, the law of the case doctrine does not require dismissal of the FAC. See Kearney v. Foley & Lardner, No. 05-cv-02112-AJB-MDD, 2012 WL 13175644, at *3 (S.D. Cal. July 31, 2012) ("These orders concern different amended complaints, with similar but different allegations. The law of the case doctrine does not apply because the instant Order addressed fundamentally different allegations in the FAC than the prior order addressed in the SAC.").

**C.     Breach of Contract Claim**

Metricolor asserts a claim for breach of contract against L'Oréal based on L'Oréal's alleged breach of the terms of the NDA.[5] See FAC ¶¶ 63–74. Metricolor submits, as an

---

[4]     During the hearing, L'Oréal's counsel argued that the FAC does not include allegations that meaningfully differ from those in Metricolor's prior complaint, so as to permit Metricolor to overcome the defense of law of the case. The Court disagrees. For example, the FAC alleges that the D'Amicos "separately developed" the use of a 12 mL luer-lock syringe, "protected is a trade secret, and confidentially disclosed it" to L'Oréal during the parties' discussions[.]" FAC ¶ 32. By contrast, the allegations in Metricolor's previous complaint, which the Federal Circuit determined to be insufficient, make no reference to the D'Amicos' use of a 12 mL syringe. See generally Compl.

[5]     The NDA was executed by L'Oréal and the D'Amicos, who are Metricolor's founders. FAC ¶ 64. Although Metricolor does not appear to be a party to the NDA, the D'Amicos aver that Metricolor was an "intended third-party beneficiary of the NDA" and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

attachment to the FAC, a copy of the NDA, which provides, *inter alia*, that the D'Amicos and L'Oréal "wish to collaborate regarding Stephen D'Amico's METRICOLOR SYSTEM (the 'Purpose'); and accordingly wish to disclose to and receive from each other, from time to time during the terms of such engagement, certain confidential and proprietary information regarding their respective current and future scientific, technical, business, strategic, marketing and creative affairs[.]" Dkt. 57-1. Exh. B ("NDA"). The NDA defines "Confidential Information" as "all information disclosed, directly, or indirectly through any means of communication or observation, by or on behalf of one party hereto . . . to or for the benefit of the other party hereto . . . that relates to or is derived from a party's scientific, technical, business, strategic, marketing or creative affairs[.]" Id. ¶ 1. The NDA also imposed on the parties obligations to: (1) "not copy or reproduce all or any part of such Confidential Information in any medium, except as may be strictly necessary to effectuate the Purpose;" and (2) "not decompile, disassemble or reverse engineer all or any part of such Confidential Information without the written permission of the Disclosing Party." Id. ¶ 2(d)(e). The NDA makes clear, however, that "Confidential Information" does not include information which:

(a) is or becomes generally known or available to the public through no act or failure to act by the Receiving Party or its employees or agents;

(b) is or becomes known to the Receiving Party from a third party in rightful possession thereof and owing no obligation of confidentiality to the Disclosing Party; or

(c) is or was developed independently by or for the Receiving Party, without use of or reference to any Confidential Information of the Disclosing Party and without violation of any obligations contained herein, by individuals who had no access to such Confidential Information; or

(d) was in the possession of the Receiving Party or any of its Affiliates prior to the time of disclosure.

Id. ¶ 4.

_____

that the D'Amicos "have assigned all related rights to" Metricolor. Id. L'Oréal does not appear to challenge Metricolor's standing to enforce the NDA or the D'Amicos assignment. See generally Opp.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

Metricolor alleges that, "[p]ursuant to the NDA and in reliance of its provisions," Metricolor "disclosed numerous items of Confidential Information to L'Oréal, including, but not limited to: . . . prototypes, PowerPoints, emails, oral discussions (both in person and by telephone), and data[.]" FAC ¶ 66. According to Metricolor, this confidential information related to, *inter alia*: (1) the identity of Metricolor's orifice reducer manufacturer and related pricing; (2) the identity of Metricolor's pouch manufacturer and related pricing; (3) a presentation on the relevant market and the Metricolor System's competitive advantages; and (4) the "variable dimension alternatives for the syringe, orifice reducer, and pouch, as well as materials and layer arrangements for the pouch, . . . and which variations worked best for hair products that contain preservatives, peroxide or ammonia." FAC ¶ 66. Metricolor asserts that, in violation of the NDA's express terms, L'Oréal misappropriated this information, using it to launch L'Oréal's own competing products. Id. ¶¶ 67–70.

To state a claim for breach of contract under California law, a party must plead: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011) (internal citation omitted). At the pleading stage, "[w]hen reviewing whether a plaintiff has properly stated a cause of action for breach of contract, we must determine whether the alleged agreement is '*reasonably susceptible*' to the meaning ascribed to it in the complaint." Hervey v. Mercury Casualty Co., 185 Cal. App. 4th 954, 964 (2010) (emphasis added) (citation omitted). "So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement." Marzec v. California Pub. Employees Ret. Sys., 236 Cal. App. 4th 889, 909 (2015) (citing Aragon–Haas v. Family Security Ins. Servs., Inc., 231 Cal. App. 3d 232, 239 (1991)). Where the terms of the policy are unambiguous, the Court will not infer a limitation on defendants which is not supported by the language of the policy. See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015) ¶ 4:11 ("'Clear and explicit' policy language governs.") (quoting Powerine Oil Co., Inc. v. Super. Ct., 37 Cal. 4th 377, 390 (2005)).

L'Oréal seeks dismissal of Metricolor's breach of contract claim on the grounds that Metricolor has not adequately alleged that L'Oréal breached the NDA or that Metricolor has suffered any resulting damage. Mot. at 17–18. According to L'Oréal, "the FAC does not provide any facts to plausibly allege that Metricolor ever shared *any* confidential information with [L'Oréal] because all of the information Metricolor describes relates to materials that were *widely and publicly* known. Id. at 17 (emphases in original). L'Oréal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

urges that, "[a]s a matter of law, information that has been publicly disclosed is not confidential." Mot. at 17.

The Court does not find L'Oréal's argument availing. As discussed above, the Court cannot, at the pleading stage and based on the disputed record before the Court, determine whether the information that forms the basis for Metricolor's claims is "confidential" or was "widely and publicly" known. See Scott, 732 F. Supp. at 1038 ("The determination of whether a particular type of information is confidential or a trade secret would generally be a question of fact[.]"). And, even assuming *arguendo* that Metricolor's information was "publicly known" and therefore not "confidential" for the purposes of Metricolor's trade secrets claims, it does not follow that Metricolor's information was not "confidential" for the purposes of the NDA.[6] See Berkla v. Corel Corp., 66 F. Supp. 2d 1129, 1149 n.23 (E.D. Cal. 1999) ("This court does not read [caselaw] as precluding a valid contract prohibiting the disclosure of information that had already been publicly disseminated. If, in this case, Berkla had specifically referenced his CD as non-disclosable, and Corel had promised not to disclose that CD regardless of whether Berkla would disclose it in other places, this court sees no reason why such a contractual promise could not be enforced.").

Nor does the Court find persuasive L'Oréal's argument that Metricolor "failed to plausibly plead that L'Oréal disclosed or otherwise misused any such information, or that Metricolor was plausibly harmed as a result." Mot. at 18. To the contrary, the FAC alleges several ways that—in violation of the NDA—L'Oréal allegedly misused Metricolor's confidential information. For example, Metricolor alleges that L'Oréal: "(i) decid[ed] to unilaterally pursue products using elements of the Metricolor System without [Metricolor's] involvement or consent; (ii) design[ed], develop[ed], test[ed], approv[ed], and implement[ed] said products; (iii) select[ed] vendors to provide components of said products and negotiat[ed] pricing and other terms with said vendors; (iv) prepar[ed] said products' instructions for use; and (v) market[ed], promot[ed], and s[old] said products." FAC ¶ 67. Similarly, Metricolor alleges that L'Oréal's alleged breach of the NDA "ha[s] harmed and continue[s] to significantly and materially harm [Metricolor] by . . . depriving

---

[6]      The NDA excludes from its definition of "Confidential Information" information that is generally known to the public, becomes known to the Receiving Party from a third party, or was "developed independently" by the Receiving Party. See NDA ¶ 4. However, the FAC specifically alleges that the confidential information which forms the basis for Metricolor's breach of contract claim "is not subject to any of the exceptions set forth in ¶ 4 of the NDA." FAC ¶ 70.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

[Metricolor] of the value of its Confidential Information, depriving [Metricolor] of compensation for L'Oréal's use of the Confidential Information, and depriving [Metricolor] of revenue and profits it could have obtained from marketing the Metricolor System or engaging with another company to market the Metricolor System free from unfair competition by L'Oréal." FAC ¶ 71.

Accepting the allegations in the FAC as true, Metricolor has stated a claim for breach of contract based on L'Oréal's alleged breach of the NDA. The Court therefore **DENIES** L'Oréal's motion to dismiss Metricolor's breach of contract claim.

**D.     Trade Secret Claims**

Metricolor asserts state and federal claims for trade secret misappropriation against L'Oréal pursuant to CUTSA and DTSA. See FAC ¶¶ 75–91, 113–21. The gravamen of Metricolor's trade secrets claims is that confidential information regarding its Metricolor System is protectable as trade secrets and that L'Oréal misappropriated these trade secrets by launching its own competing products with infringing elements.

Pursuant to "the DTSA and the CUTSA, a plaintiff must allege (1) that it is the owner of a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that it was damaged by the defendant's actions." Alta Devices, Inc. v. LG Elecs., Inc., 343 F. Supp. 3d 868, 880 (N.D. Cal. 2018). "Information qualifies as a trade secret under federal and state law if 'the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information' and 'the owner thereof has taken reasonable measures to keep such information secret.'" Calendar Research LLC v. StubHub, Inc., No. 2:17-cv-04062-SVW-SS, 2017 WL 10378336, at *2 (C.D. Cal. Aug. 16, 2017) (internal citations omitted). "Courts have held that the DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets." Alta Devices, 343 F. Supp. 3d at 880–81. "A plaintiff need not 'spell out the details of the trade secret[.]'" Autodesk, Inc. v. ZWCAD Software Co., No. 5:14-cv-01409-EJD, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015). "Nevertheless, the plaintiff must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." Vendavo, Inc. v. Price f(x) AG, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

L'Oréal seeks dismissal of Metricolor's trade secret claims on the grounds that "Metricolor does not and cannot plausibly allege that anything it disclosed to L'Oréal was actually secret or that L'Oréal ever used any such secret." Mot. at 20. According to L'Oréal, "[e]very purported 'trade secret' described in the FAC whether related to syringes, orifice reducers, pouches, or any supplier, was demonstrably widely and publicly known, and thus not secret." Id. As an initial matter, L'Oréal's argument ignores Metricolor's claim that the FAC "does not rely solely on individual trade secrets, but also alleges that '*each combination* of more than one of said items of Confidential Information constitutes a trade secret.'" Opp. at 19 (emphasis added) (citing FAC ¶¶ 77, 115); see also Art of Living Found. v. Does 1-10, No. 5:10-cv-05022-LHK, 2012 WL 1565281, at *20 (N.D. Cal. May 1, 2012) ("[E]ven when discrete elements are commonly known, combinations of public information from a variety of different sources when combined in a novel way can be a trade secret.") (internal citation and alterations omitted).

Moreover, "[w]hether the alleged trade secrets are actually generally known to the public is a question of fact and beyond the scope of a motion to dismiss." MACOM, 2019 WL 4282906, at *7. The Court finds instructive E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek, No. 1:17-cv-00808-DAD-EPG, 2018 WL 2463869, at *1 (E.D. Cal. June 1, 2018). There, defendants sought dismissal of plaintiffs' trade secret claim on the grounds that plaintiffs failed to establish ownership of a trade secret since plaintiffs' alleged trade secrets "directly overlap with the categories of information described in . . . patents and published patent applications." Id. at *6. The court rejected the defendants' argument, determining that "the issue of whether all of plaintiffs' alleged trade secrets have been publicly disclosed is a factual issue which is properly the subject of discovery." Id. The court explained that "[i]n arguing that plaintiffs have not affirmatively distinguished their alleged trade secrets from public information, defendants effectively ask the court to conduct a review of the evidence to determine whether plaintiffs' trade secrets have been made public." Id. The court concluded that "[t]his sort of review is more appropriate on a motion for summary judgment." Id.

L'Oréal also argues that Metricolor's trade secret claims "fail[] because [the FAC] fails to adequately plead that L'Oréal misappropriated any material whatsoever."[7] Reply

---

[7]    Contrary to L'Oréal's argument, "there is no requirement that" a plaintiff "plead exactly how [d]efendants improperly obtained or used the alleged trade secret." Autodesk, 2015 WL 2265479, at *6 (internal citation and alteration omitted). That is because, at the pleading stage, "discovery has not yet commenced," and "it would be unreasonable to require a plaintiff to demonstrate the precise ways in which [d]efendants have used their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

at 10. "Under the DTSA and CUTSA, 'misappropriation' means either the '(1) acquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means;' or the '(2) disclosure or use of a trade secret of another without express or implied consent.'" Alta Devices, 343 F. Supp. 3d at 882. Here, Metricolor alleges that L'Oréal misappropriated Metricolor's trade secrets in a number of ways. For example, Metricolor alleges that, pursuant to the NDA, Metricolor provided L'Oréal with "confidentially sourced samples of" a syringe and an orifice reducer that it developed and protected as trade secrets, and that these are "seemingly identical" to the syringes and orifice reducers L'Oréal subsequently used in L'Oréal's products. FAC ¶¶ 32–33; cf. Alta Devices, 343 F. Supp. 3d at 883–84 (finding allegations of misappropriation sufficient to state DTSA and CUTSA claims where plaintiff alleged that "[defendant's] solar cell structure uses a graded layer just like the one used by [plaintiff] because [defendant] is using manufacturing techniques that were disclosed to [defendant] under the 2011 NDA"); E. & J. Gallo, 2018 WL 2463869, at *7 (finding allegations of misappropriation sufficient where plaintiffs alleged "similarity" between its product and defendants' product and plaintiffs alleged that defendants gained access to plaintiffs' confidential information pursuant to a non-disclosure agreement).

For the foregoing reasons, the Court **DENIES** L'Oréal's motion to dismiss Metricolor's trade secret claims.

**E.    Breach of Confidence Claim**

Metricolor also asserts a claim for breach of confidence against L'Oréal. See FAC ¶¶ 106–12. In its opposition, however, Metricolor indicates that it "is not pursuing its breach of confidence cause of action." Opp. at 2 n.1. The Court therefore **DISMISSES** Metricolor's breach of confidence claim **without prejudice**.[8]

**F.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

Metricolor asserts a claim for breach of the implied covenant of good faith and fair dealing against L'Oréal. See FAC ¶¶ 92–100. According to Metricolor, "[b]y entering

trade secrets, given that [d]efendants are the only ones who possess such information." Autodesk, 2015 WL 2265479, at *6 (internal citation and alteration omitted).

[8]    During the hearing, L'Oréal's counsel argued that because Metricolor previously dismissed its breach of confidence claim without prejudice, the Court should now dismiss Metricolor's claim with prejudice. The Court declines to do so at this juncture.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
|----------|------------------------|------|--------------|
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

into th[e] NDA, L'Oréal implicitly agreed to deal with Metricolor in good faith, and consented to conduct itself under a covenant of good faith and fair dealing, which . . . L'Oréal expressly violated by breaching its NDA with Metricolor and interfering with Metricolor's receiving the benefits of the NDA." FAC ¶ 99.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc., 2 Cal. 4th 342, 371 (1992). "California law requires that a claim for breach of the implied covenant of good faith and fair dealing go beyond the statement of a mere contract breach and not rely on the same alleged acts or simply seek the same damages or other relief already claimed in a companion contract cause of action." Env't Furniture, Inc. v. Bina, No. 2:09-cv-07978-PSG-JC, 2010 WL 5060381, at *3 (C.D. Cal. Dec. 6, 2010). To allege a separate claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege bad faith conduct, "which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395 (1990). "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." Id. "There are three exceptions to this rule: (1) where a breach of a consensual contract claim is not alleged, (2) where the plaintiff is seeking recovery in tort, and (3) where the plaintiff alleges that the defendant acted in bad faith to frustrate the contract's benefits[.]" Celador Int'l Ltd. v. Walt Disney Co., 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) (internal citations omitted).

L'Oréal seeks to dismiss Metricolor's breach of the implied covenant claim on two bases. First, L'Oréal argues that Metricolor's good faith and fair dealing claim "should be dismissed because, under California law, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" Mot. at 23 (internal citation omitted). During the hearing, however, Metricolor's counsel clarified that Metricolor's implied covenant claim sounds in contract, rather than in tort. The Court therefore declines to dismiss Metricolor's implied covenant claim on this basis.

Second, L'Oréal argues that Metricolor's "covenant claim should also be dismissed because it is duplicative of the breach of contract claim." Mot. at 23. In response, Metricolor avers that its implied covenant claim falls within the exception to the rule regarding duplicative contract and implied covenant claims that exists "where the plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | | |

alleges that the defendant acted in bad faith to frustrate the contract's benefits." Opp. at 23 (internal citation omitted). In reply, L'Oréal urges that "Metricolor's argument that L'Oréal's alleged use of the so-called 'confidential' and 'secret' information was 'conscious and deliberate' is inconsistent with the FAC." Reply at 12. That is because, according to L'Oréal, "[n]owhere does Metricolor allege that L'Oréal took 'conscious and deliberate' steps to deprive Metricolor of the benefits of the NDA." Id.

Contrary to L'Oréal's argument, however, Metricolor does allege, with respect to its implied covenant claim, that L'Oréal "interfer[ed] with Metricolor's receiving the benefits of the NDA." FAC ¶ 99. And, Metricolor elsewhere alleges, on information and belief, that L'Oréal "engaged in confidential discussions and negotiations with Metricolor, and even signed a NDA with Metricolor, *for the purpose of* unlawfully obtaining, using, and profiting from Metricolor's confidential and trade secret information" and that Metricolor "did so under the false pretense of being genuinely interested in potentially partnering with [Metricolor] regarding the Metricolor System . . . when in fact [L'Oréal] had no such genuine interest." FAC ¶ 103 (emphasis added).[9]

For the foregoing reasons, the Court concludes that Metricolor has stated a claim for breach of the implied covenant of good faith and fair dealing. The Court therefore **DENIES** L'Oréal's motion to dismiss Metricolor's implied covenant claim.

**G. UCL Claim**

Metricolor asserts a UCL claim against L'Oréal. See FAC ¶¶ 101–05. According to Metricolor, L'Oréal's "conduct, in unlawfully obtaining Metricolor's confidential and trade secret information, in direct violation of [L'Oréal's] own NDA and in violation of applicable laws, constitutes an unlawful and unfair business practice[.]" Id. ¶ 102. To state a claim for unfair competition pursuant to the UCL, a plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because

---

[9]     The Court recognizes that Metricolor's allegation regarding L'Oréal's entering into the NDA with the alleged intent to deceive Metricolor falls under the heading for Metricolor's UCL claim, rather than under the heading for Metricolor's implied covenant claim. The Court nonetheless construes this allegation with respect to Metricolor's claim for breach of the implied covenant. See Alba v. City of Barstow, No. 5:18-cv-02087-JGB-SHK, 2019 WL 6703426, at *3 (C.D. Cal. Oct. 30, 2019) ("The Court . . . will interpret the SAC liberally and consider all factual allegations when testing the adequacy of the claims, even when those allegations are not included directly under each claim heading.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

[the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 252 (2011). L'Oréal seeks dismissal of Metricolor's UCL claim on several grounds—the Court addresses each in turn.

### 1. CUTSA Preemption

L'Oréal argues that "Metricolor's UCL claim is preempted by its trade secret claims because it is based on the same bare and vague nucleus of facts." Mot. at 22. Accordingly, L'Oréal maintains that "Metricolor's UCL claim . . . should be dismissed." Id.

"Courts have read CUTSA as preempting any claim that falls within its terms." 123 Los Robles LLC v. Metzler, No. 2:17-cv-00392-RGK-SK, 2017 WL 10311209, at *4 (C.D. Cal. Oct. 26, 2017). "This rule attempts to preclude a plaintiff from asserting claims that do not genuinely allege 'alternative legal theories' but are a transparent attempt to evade the strictures of the CUTSA by restating a trade secrets claim as something else." GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc., No. 2:15-cv-04125-VAP-JEM, 2016 WL 6562064, at *6 (C.D. Cal. Apr. 21, 2016) (internal citation and alteration omitted). "The test for whether a claim overlaps with the CUTSA involves a factual inquiry, one that examines the conduct alleged in the claim." Lifeline Food Co. v. Gilman Cheese Corp., No. 5:15-cv-00034-PSG, 2015 WL 2357246, at *1 (N.D. Cal. May 15, 2015). "[P]reemption generally applies where 'there is no material distinction' between the wrongdoing underlying the [CUTSA] claim and the non-[CUTSA] claim." ATS Prods. Inc. v. Ghiorso, No. 10-cv-04880-BZ, 2012 WL 253315, at *2 (N.D. Cal. Jan. 26, 2012).

Here, Metricolor alleges several bases for its UCL claim. For example, Metricolor first alleges that L'Oréal's "conduct, in unlawfully obtaining Metricolor's confidential and trade secret information . . . constitutes an unlawful and unfair business practice, in clear violation of" the UCL. FAC ¶ 102. This allegation appears to overlap with the allegations that form the basis for Metricolor's CUTSA claim. See Id. ¶¶ 113–21.

However, Metricolor also alleges, upon information and belief, that L'Oréal "engaged in confidential discussions and negotiations with Metricolor, and even signed a NDA with Metricolor" but "did so under the false pretense of being genuinely interested in potentially partnering with [Metricolor] regarding the Metricolor System, or purchasing or licensing the Metricolor System, when in fact [L'Oréal] had no such genuine interest." FAC ¶ 103. Metricolor further alleges that in February 2016, Metricolor notified L'Oréal of its "intent to take the Metricolor System to market if L'Oréal did not commit to the Metricolor System", and in March 2016, L'Oréal responded to Metricolor "indicating that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

L'Oréal was still 'very interested' in the Metricolor System." FAC ¶¶ 46–47. Metricolor alleges that, in reality, however, L'Oréal's "statement was knowingly false and intended solely to dissuade [Metricolor] from marketing the Metricolor System unilaterally or partnering with a L'Oréal competitor for that purpose." Id. ¶ 47. Thus, to the extent that Metricolor's UCL claim is based on allegations that L'Oréal deceptively induced Metricolor to enter into the NDA and engaged with Metricolor in a manner intended to delay Metricolor from bringing the Metricolor System to the market, Metricolor's UCL claim appears to assert facts beyond mere trade secret misappropriation. See Loop AI Labs Inc v. Gatti, No. 15-cv-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015) (denying motion to dismiss plaintiff's UCL claim as preempted by CUTSA because "while Loop AI's Fraud, Unfair Competition Law, and Unjust Enrichment claims contain some stray references to 'confidential' and 'proprietary' information such that CUTSA supersession could hypothetically apply, it is clear that these causes of action also arise from alleged misconduct besides misappropriation" and noting allegation that "Gatti fraudulently induced Loop AI to offer her employment based on misrepresentations about her experience[.]").

Accordingly, the Court concludes that Metricolor's CUTSA claim does not, at this juncture, require dismissal of Metricolor's UCL claim on preemption grounds.

### 2.    Unfair Prong

Metricolor alleges that L'Oréal's conduct violates the UCL's unfair prong. See FAC ¶¶ 102–05. L'Oréal argues that "'unfair' conduct to support a UCL claim 'must be violative of a public policy 'tethered to specific constitutional, statutory, or regulatory provision.'" Mot. at 22. According to L'Oréal, "Metricolor has provided no facts to establish any unfair conduct by L'Oréal; much less one that is 'tethered to any specific constitutional, statutory, or regulatory provision.'" Id.

"[U]nder section 17200, a practice may be deemed unfair even if not specifically proscribed by some other law." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1143 (2003) (internal citation and quotation marks omitted). "'Unfair' is not clearly defined under the UCL." Microsoft Corp. v. My Choice Software, LLC, No. 8:16-cv-162187-DOC-KES, 2017 WL 5643210, at *8 (C.D. Cal. Oct. 10, 2017). "There is authority that the test to determine whether a business practice is unfair differs depending on whether the plaintiff in a UCL case is a competitor of the defendant or a consumer." Drum v. San Fernando Valley Bar Assn., 182 Cal. App. 4th 247, 253 (2010). The California Supreme Court has held that, in a competitor case, "we must require that any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."[10] Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 186–87 (1999).

Here, Metricolor alleges that "L'Oréal is the self-proclaimed world-leader in beauty products, including makeup, cosmetics, haircare, and perfume"; that "L'Oréal boasts of a presence in 150 counties, profits equaling approximately 4.92 billion euros, and 505 registered patents in 2018 alone"; and that L'Oréal "has a worldwide network of direct and indirect subsidiaries[.]" FAC ¶ 1. By contrast, Metricolor "is a small startup company." Id. ¶ 2. Metricolor further alleges that L'Oréal engaged in "unfair business practices . . . by inducing Metricolor to continue to engage in discussions with [L'Oréal] regarding the Metricolor System for approximately two years, *instead of entering the market* early." Id. ¶ 104 (emphasis added).

Although Metricolor does not plead specific product or geographic markets, market power, or other allegations typical of claims alleging violations of state or federal antitrust laws, a claim pursuant to the UCL's unfair prong does not necessarily require such specific allegations. For example, in BladeRoom Grp. Ltd. v. Facebook, Inc., the court determined that plaintiffs, several data centers, stated a claim pursuant to the UCL's unfair prong based on allegations that a potential customer and competitor "enticed [plaintiffs] to reveal their data center designs and construction methods with promises of acquisition and partnership, only to then copy those designs and methods and pass them off as their own." 219 F. Supp. 3d 984, 986, 995 (N.D. Cal. 2017). The court rejected the defendant's argument that the data centers' UCL claim was "deficient because [the data centers] do not allege they are customers or competitors of Facebook in the area of data center technology." Id. at 995.

---

[10]    In Cel-Tech, the California Supreme Court subsequently "adopt[ed] the following test: When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." 20 Cal. 4th at 187. However, the California Supreme Court cautioned that its holding in Cel-Tech "involves an action by a competitor alleging anticompetitive practices," that the Court's "discussion and this test are limited to that context," and that "[n]othing we say relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law[.]" Cel-Tech, 20 Cal. 4th at 187 n. 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

The court determined that although "Facebook cites cases, including this court's prior dismissal order, that ostensibly support such a limitation on who can bring claim for 'unfair' practices, further review of the relevant authority reveals that this type of categorical restriction is inappropriate given the UCL's comprehensive purpose."[11] BladeRoom, 219 F. Supp. 3d at 995. The court noted that "the UCL more broadly requires the plaintiff demonstrate a loss of money or property as a result of unfair competition." Id. The court concluded that the data centers' "claim under the 'unfair' prong endures under this more liberal examination" because the data centers' operative complaint "list[s] . . . several practices that are plausibly unfair, including allegations that Facebook released information related to the BladeRoom technology through OpenCompute, which [the data centers] also allege *damaged their licensing markets and emboldened their competitors*." Id. (emphasis added).

Drawing all inferences in favor of Metricolor, the gravamen of Metricolor's unfair prong claim is that L'Oréal engaged with Metricolor in bad faith, stalled Metricolor from bringing its own products to the market while L'Oréal developed its own competing products, and then broke off negotiations with Metricolor after L'Oréal released its own products, causing Metricolor, a much smaller company, to suffer from a competitive disadvantage. Construing the FAC's allegations liberally, Metricolor appears to allege that L'Oréal's conduct harmed competition in that consumers were deprived of meaningful product choice because, in the absence of L'Oréal's alleged unfair conduct, which allowed L'Oréal to obtain early entry to the market, Metricolor's products would have been a viable alternative. See TYR Sport Inc. v. Warnaco Swimwear Inc., 679 F. Supp. 2d 1120, 1132 (C.D. Cal. 2009) ("[O]ne form of antitrust injury is coercive activity that prevents its victims from making free choices between market alternatives.") (citing Amarel v. Connell, 102 F.3d 1494, 1509 (9th Cir.1996)); accord AFMS, LLC v. United Parcel Serv. Co., No. UPS, No. 2:10-cv-05830-MMM-RC, 2011 WL 13135632, at *14 (C.D. Cal. May 27, 2011) ("In deciding whether the plaintiff was injured by an anticompetitive aspect or effect of the defendant's behavior, care must be taken in defining 'competition.' Competition consists of rivalry among competitors. Conduct that eliminates rivals reduces competition.") (internal citation and alterations omitted).

---

[11]  Indeed, L'Oréal relies on a prior dismissal order in the BladeRoom case wherein the court granted an earlier motion to dismiss. See Mot. at 19, 23; Reply at 9, 13 (citing BladeRoom Grp. Ltd. v. Facebook, Inc., No. 5:15-cv-01370-EJD, 2015 WL 8028294, at *1 (N.D. Cal. Dec. 7, 2015)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-00364-CAS(Ex) | Date | July 7, 2020 |
| Title | METRICOLOR LLC v. L'ORÉAL S.A. ET AL. | | |

On balance, the Court concludes that Metricolor has stated a claim for violation of the UCL pursuant to the UCL's unfair prong. The Court therefore **DENIES** L'Oréal's motion to dismiss Metricolor's UCL claim.[12]

## V.   CONCLUSION

In accordance with the foregoing, the Court orders as follows:

1.   The Court **GRANTS in part** and **DENIES in part** L'Oréal's request for judicial notice. Dkt. 64. The Court takes judicial notice of the existence of the webpages L'Oréal submits as Exhs. 3–12 in support of its motion to dismiss. The Court does not, however, take judicial notice of Exhs. 1 and 2, which contain L'Oréal's *post hoc* annotations and are therefore not the proper subject of judicial notice.

2.   The Court **GRANTS in part** and **DENIES in part** L'Oréal's motion to dismiss. The Court **DISMISSES** Metricolor's fifth claim for breach of confidence **without prejudice**. The Court, however, **DENIES** L'Oréal's motion in all other respects.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[12]   Because the Court concludes that Metricolor has stated a claim pursuant to the UCL's unfair prong, the Court does not reach L'Oréal's arguments regarding the UCL's unlawful prong. See AngioScore, Inc. v. TriReme Med., LLC, 70 F. Supp. 3d 951, 962 (N.D. Cal. 2014) (determining that because plaintiff successfully stated a UCL claim pursuant to unlawful prong, the court "need not and does not reach AngioScore's claim regarding unfair practices" pursuant to UCL's unlawful prong) (citing Fed. R. Civ. P. 8(d)(2)).