JOSEPH A. CALVARUSO (*pro hac vice*)
jcalvaruso@orrick.com
RICHARD F. MARTINELLI (*pro hac vice*)
rmartinelli@orrick.com
ANGELA COLT (CA SBN 286275)
acolt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
Facsimile: +1 212 506 5151

*Attorneys for Defendants*
L'ORÉAL USA, INC.,
L'ORÉAL USA PRODUCTS, INC.,
L'ORÉAL USA S/D, INC., AND
REDKEN 5TH AVENUE NYC, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| METRICOLOR, LLC,<br><br>Plaintiff and Counterdefendant,<br><br>v.<br><br>L'ORÉAL USA, INC.; L'ORÉAL USA PRODUCTS, INC.; L'ORÉAL USA S/D, INC.; REDKEN 5th AVENUE NYC, LLC; and DOES 1 through 100, inclusive,<br><br>Defendants, Counterclaimants and Third-Party Plaintiffs (L'Oréal USA, Inc.; L'Oréal USA Products, Inc.; L'Oréal USA S/D Inc.; and Redken 5th Avenue NYC, LLC)<br><br>v.<br><br>SALVATORE D'AMICO, and STEPHEN D'AMICO,<br><br>Third-Party Defendants. | Case No. 2:18-cv-00364-CAS-E<br><br>**(1) DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENTAND SANCTIONS;**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**<br><br><u>Filed Under Separate Cover:</u><br>**(3) STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**<br><br>**(4) DECLARATIONS OF: RICHARD MARTINELLI, PAUL FRENCH, and DUNCAN HALL;**<br><br><u>Lodged Under Separate Cover:</u><br>**(4) [PROPOSED] JUDGMENT.**<br><br>Judge: Hon. Christina A. Snyder<br>Courtroom: 8D<br>Date: October 17, 2022<br>Time: 10:00 a.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 17, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8D of the above-entitled Court, located at the First Street Courthouse, 350 W. First Street, Courtroom 8D, 8th Floor, Los Angeles, California 90012, Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, LLC ("Defendants" or "L'Oréal") will, and hereby do, move the Court for (1) summary judgment under Rule 56(b) Federal Rules of Civil Procedure on the claims brought by Plaintiff Metricolor LLC ("Metricolor"), on the grounds that there is no genuine dispute as to any material fact and L'Oréal is entitled to judgment as a matter of law; and (2) sanctions against Metricolor, Third-Party Defendants Salvatore and Stephen D'Amico and their counsel under 28 U.S.C. § 1927, Rules 1, 26(g) and 37(e) of the Federal Rules of Civil Procedure, and this Court's inherent powers because the principal of Metricolor, Sal D'Amico, forged multiple documents, substituted them in the place of the real documents in Metricolor's production in discovery; he and Stephen D'Amico knowingly testified about the fake documents as if they were real; and Metricolor and its counsel asserted in bad faith that the fabricated documents are attorney work product to try to shield their fraud.

First, even without the egregious discovery conduct that will be detailed below, summary judgment is proper here because there is no evidence of any confidential or trade secret material nor any disclosure of any confidential or trade secret information to L'Oréal. Indeed, Metricolor cannot prove that any of its alleged confidential information and trade secrets—the use of a non-self-sealing "off-the-shelf, insertable/removable orifice reducer" used with a stock "short tipped 10 ml syringe" manufactured by well–known supplier Comar, to withdraw hair product from a plastic bottle (*see* Metricolor's Verified Response to L'Oréal's Interrogatory No. 1, dated January 6, 2021)—was "confidential" or "secret" because it was publicly available information before L'Oréal met with Metricolor. And even if this

information were confidential or secret—and it is not—there is no reliable evidence in the record supporting that Metricolor disclosed any of this information to L'Oréal. To the contrary, the only documents purporting to show disclosure of such material are those that Metricolor fabricated during this litigation. Metricolor cannot create a disputed issue of material fact by fabricating documents to corroborate false testimony. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Second, courts in the Ninth Circuit routinely terminate cases as a sanction for discovery abuses less egregious than Metricolor's because they "undermine the integrity of judicial proceedings." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Here, the fabricated documents are the only evidence that any so-called confidential information or secret was disclosed to L'Oréal and were created to fill a gaping hole in Metricolor's case. "To permit the fabrication of spurious corroborating evidence without the imposition of a harsh responsive sanction would constitute an open invitation to abuse of the judicial system of the most egregious kind." *SEC v. Blockvest, LLC*, No. 18-cv-2287, 2020 WL 2786869, at *9 (S.D. Cal. May 29, 2020). The sanction for this misconduct should be dismissal outright.

This Motion is based on the Memorandum of Points and Authorities in Support thereof, the Statement of Uncontroverted Facts and Conclusions of Law, the concurrently filed Declarations of Richard Martinelli, Paul French, and Duncan Hall and supporting exhibits, all pleadings and files in this matter, all matters of which this Court may take judicial notice, and upon such other and further oral or documentary evidence as may be presented to the Court at or prior to the hearing on this Motion. Pursuant to L.R. 7-3, counsel for Defendants met and conferred with Plaintiff's counsel on July 15th to discuss this Motion and potential resolution, but counsel were unable to resolve their disputes. (*See* Declaration of Richard Martinelli,

¶ 70.)

Dated: July 22, 2022

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Angela Colt*
Angela Colt

*Attorneys for Defendants*
*L'Oréal USA, Inc.,*
*L'Oréal USA Products, Inc.,*
*L'Oréal USA S/D, Inc., and*
*Redken 5th Avenue NYC, LLC*

## TABLE OF CONTENTS


Page

MEMORANDUM OF POINTS AND AUTHORITIES.......................................... 1
PRELIMINARY STATEMENT ........................................................................ 1
SUMMARY OF UNDISPUTED FACTS............................................................ 3
STANDARD FOR GRANTING SUMMARY JUDGMENT AND TERMINATION FOR FAKE EVIDENCE.................................................... 9
ARGUMENT....................................................................................................... 10
I. Plaintiff's Trade Secret Claims Fail.................................................. 10
A. Plaintiff Has No Evidence It Ever Disclosed Any Of Its So-Called Secrets to L'Oréal................................................... 11
B. Plaintiff's So-Called "Secrets" Were Publicly Available and Readily Ascertainable By Proper Means........................... 12
C. Plaintiff's Has No Evidence L'Oréal Misappropriated Anything. ......................................................................... 13
D. Metricolor's Remaining "Trade Secrets" Are Merely A Vague and Unsupported Wish List......................................... 13
II. Plaintiff's Contract And Unfair Competition Claims ALSO Fail. ..... 14
III. Plaintiff's Conduct Warrants Dismissal And Other Sanctions........... 15
A. All Factors Favor Dismissal. .................................................. 16
1. The Public's Interest In Expeditious Resolution, And The Court's Need to Manage Its Dockets, Favor Dismissal. . 17
2. The Risk of Prejudice to L'Oréal Favors Dismissal. ...... 18
3. Public Policy Favors Dismissal...................................... 19
4. Less Drastic Sanctions Than Dismissal Would Be Futile. ......................................................................... 20
E. Metricolor And Its Counsel Repeatedly Acted In Bad Faith Warranting Additional Sanctions. .................................. 21
1. Sal and Stephen D'Amico lied under oath...................... 21
2. Metricolor did not accidentally forge documents, backdate them, neglect to produce the real documents, testify and allow other witnesses to testify about the fakes as if they were real........................................................ 23
3. Metricolor's conduct was willful. .................................. 23
4. Metricolor's counsel failed to meet its Rule 26(g) obligations. ................................................................... 24
5. Metricolor's counsel multiplied proceedings.................. 24
6. Additional Monetary sanctions are warranted. ............... 25
CONCLUSION.................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337 (9th Cir. 1995) .......... 24, 25

*Attia v. Google LLC*, 983 F.3d 420 (9th Cir. 2020) .......... 19

*Bump Babies Inc. v. Baby The Bump, Inc.*, 2011 WL 5037070 (C.D. Cal. Sept. 7, 2011), 2011 WL 5036919 (C.D. Cal. Oct. 20, 2011) .......... 26, 32

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 17

*Combs v. Rockwell Int'l Corp.*, 927 F.2d 486 (9th Cir. 1991) .......... 17, 23

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091 (9th Cir. 2007) .......... 9, 23, 31

*Constr. Laborers Tr. Funds for S. California Admin. Co. v. Montalvo*, No. CV 10-01193, 2011 WL 1195892 (C.D. Cal. Mar. 3, 2011), *report and recommendation adopted*, 2011 WL 1155550 (C.D. Cal. Mar. 30, 2011) .......... 32

*DR Distributors v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839 (N.D. Ill. 2021) .......... 31

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 20-cv-06846, 2022 WL 2304287 .......... 18

*Englebrick v. Worthington Indus., Inc.*, 944 F. Supp. 2d 899 (C.D. Cal. 2013), *aff'd*, 620 F. App'x 564 (9th Cir. 2015) .......... 23

*Entm't Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211 (9th Cir. 1997) .......... 22

*Fair Hous. of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) .......... 27

*Freeman Inv. Mgmt. Co. v. Frank Russell Co.*, No. 13-CV-2856, 2016 WL 5719819 (S.D. Cal. Sept. 30, 2016), *aff'd,* 729 F. App'x 590 (9th Cir. 2018) .......... 22

*GENFIT S. A. v. CymaBay Therapeutics Inc.*, No. 21-cv-00395, 2022 WL 195650 (N.D. Cal. Jan. 21, 2022) .......... 18

*Heinemann v. Computer Assocs. Int'l, Inc.*, 171 F. App'x 704 (9th Cir. 2006) .......... 22

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) ........ 22

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) ........ 2, 25, 27, 31

*Lodestar Anstalt v. Bacardi & Co.*,
No. 16-cv-06411, 2019 WL 8105378 (C.D. Cal. July 3, 2019), *aff'd*, 31 F.4th 1228 (9th Cir. 2022) ........ 17

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ........ 17, 18

*MedioStream, Inc. v. Microsoft Corp.*,
869 F. Supp. 2d 1095 (N.D. Cal. 2012) ........ 19

*Metricolor LLC v. L'Oréal S.A.*,
No. CV 18-364-R, 2018 WL 5099496 (C.D. Cal. Aug. 15, 2018), *aff'd in part, vacated and remanded on whether to grant leave to amend*, 791 F. App'x 183 (Fed. Cir. 2019) ........ 22

*Metro. Opera Ass'n v. Local 100*,
212 F.R.D. 178 (S.D.N.Y. 2003) ........ 28, 29, 32

*Milke v. City of Phoenix*,
497 F. Supp. 3d 442 (D. Ariz. 2020), *aff'd*, 2022 WL 259937 (9th Cir. Jan. 27, 2022) ........ 24

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) ........ 24

*OEM-Tech v. Video Gaming Techs., Inc.*,
No. C 10-04368, 2012 WL 12920622 (N.D. Cal. Apr. 16, 2012) ........ 22

*Olaplex, Inc. v. L'Oréal USA, Inc.*,
855 F. App'x 701 (Fed. Cir. 2021) ........ 18, 19

*Ovation Toys Co. v. Only Hearts Club*,
675 F. App'x 721 (9th Cir. 2017) ........ 22

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) ........ 24, 25, 27

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
360 F. Supp. 3d 994 (N.D. Cal. 2018), aff'd815 ........ 19

*Robinson v. Chefs' Warehouse*,
No. 3:15-cv-05421, 2017 WL 1064981 (N.D. Cal. Mar. 21, 2017) ........ 24

*Scott v. Harris*,
550 U.S. 372 (2007) ........ 2, 17, 20, 33

*SEC v. Blockvest, LLC*,
No. 18-cv-2287, 2020 WL 2786869 (S.D. Cal. May 29, 2020) ........ *passim*

*Seiko Epson Corp. v. Koshkalda*,
799 F. App'x 463 (9th Cir. 2019) .......... 23

*U.S. v. Kitsap Physicians Serv.*,
314 F.3d 995 (9th Cir. 2002) .......... 31

*Valley Engin'rs Inc. v. Elec. Eng'g Co.*,
158 F.3d 1051 (9th Cir. 1998) .......... 9, 29, 31

*Whiteslate, LLP v. Dahlin*,
No. 20-CV-1782, 2021 WL 2826088 (S.D. Cal. July 7, 2021) .......... 18, 19, 22

**Statutes**

18 U.S.C. § 1839 .......... 12, 19

28 U.S.C. § 1927 .......... 1, 24, 33

Cal. Civ. Code § 3426.1(d) .......... 12, 19

## MEMORANDUM OF POINTS AND AUTHORITIES
## PRELIMINARY STATEMENT

"There is no point to a lawsuit, if it merely applies law to lies." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) (affirming dismissal as sanctions for manipulating evidence).[1] "True facts must be the foundation for any just result." *Valley Engin'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056, 1058 (9th Cir. 1998) (affirming dismissal as sanctions for failing to produce four important pages among a production of "thousands of pages").

So too here. Salvatore and Stephen D'Amico had a series of meetings in 2014 and 2015 with L'Oréal employees to pitch the "Metricolor System" an idea that the D'Amicos had published in a patent application comprising a syringe, an air-tight closure (such as a self-sealing orifice reducer), and a pouch as a "new" way of dispensing **hair dye**. In the end, L'Oréal decided not to proceed with the D'Amicos because their proposed concept was in no way a finished product—it required substantial development work—and the D'Amicos' asking price was exorbitant.

Later, L'Oréal launched two **bonder** products packaged in a typical bottle and using an age-old, standard off-the-shelf syringe and orifice reducer for dispensing the product. Metricolor brought suit for patent infringement, trade secret theft, and breach of contract, alleging that L'Oréal's bonder products embodied the **patented** "Metricolor System." The District Court dismissed the entire case for failure to state a claim. The Federal Circuit affirmed because Metricolor did not and could not plausibly plead the accused products had the air-tight seal required by its patent claims Metricolor's alleged confidential trade secrets were not confidential secrets at all because they were disclosed in Metricolor's published '587 patent application. ECF 49 at 9. The Federal Circuit remanded on the question of whether leave to amend should be granted. This Court granted Metricolor leave and Metricolor pled a new set of "facts," made up to try and get around its loss at the Federal Circuit.

[1] All quotations are cleaned up, unless otherwise noted. "SUF" refers to the concurrently filed Statement of Uncontroverted Facts and Conclusions of Law.

Metricolor pled a theory that L'Oréal infringed its trade secrets by using a standard plastic bottle with a regular orifice reducer[2] in the neck of the bottle (rather than the air-tight self-sealing orifice reducer in its patent) and an off-the-shelf plastic 10 ml syringe from Comar (rather than the 12ml syringe in its patent). This flatly contradicted Metricolor's original theory of the case that L'Oréal products were Metricolor's patented system. But worse, there was no evidence supporting this new theory—so Metricolor embarked on a fraudulent scheme to create documents.

In March 2020, days after amending the complaint, Sal D'Amico began creating documents to align with the "facts" of Metricolor's new complaint. Over the following months, Sal D'Amico accessed real, contemporaneous documents that did not support the new theory and he changed them to reference the new components pled in the amended complaint (i.e., "standard orifice reducer," "10 ml syringe," "Comar," and "samples"). Metricolor produced these fake documents in response to L'Oréal's discovery requests in January 2021, while it withheld and sometimes deleted the real documents that contradicted their new theory. For months, the fakes were treated in the litigation as if they were real. Stephen and Sal D'Amico testified about them as if they were real. Sal D'Amico and his counsel, Eduardo Martorell, sat through depositions where these documents were introduced as exhibits without raising the fact that they were inauthentic and created during the litigation. In one deposition, Metricolor's counsel, Mr. Martorell, used a fake document in an attempt to elicit testimony from a L'Oréal witness as though it was real.

Metricolor now admits that it knew the fake documents were created during the litigation. ECF 157 at 16. But neither Metricolor nor its counsel advised L'Oréal that the documents were fake until ***after*** L'Oréal uncovered the truth on its own. Rather, Metricolor forced L'Oréal to seek *ex parte* relief and a forensic review to uncover the truth and *repeatedly* fought those efforts.

Importantly, the forensic review revealed that Metricolor not only frabricated

[2] Orifice reducer is the term for an insert provided in the mouth of a bottle to reduce the size of its opening, like you might find on an olive oil or shampoo squeeze bottle.

documents but also failed to produce the corresponding real versions of the documents, which were directed only to Metricolor's efforts to sell its patented system, nothing else. Metricolor provided ***no*** explanation for why the real documents—which are *still* on Sal D'Amico's computer—were withheld from production. And the withholding of the real documents completely undermines Metricolor's already unbelievable story that the fake documents were some sort of inadvertently produced notes.

As explained fully below, this fraudulent conduct alone should end the case. But even putting terminating sanctions aside, this case should not go forward because no reliable evidence supports Metricolor's case. **No** documents support Metricolor's allegations that it disclosed (a) non-self-sealing (i.e., "standard," press-in) orifice reducers; (b) 10 ml syringes; or (c) Comar as a supplier, to L'Oréal. This is fatal for all of Metricolor's claims. Without disclosure, L'Oréal could not have violated Metricolor's trade secrets or breached the NDA. Moreover, these are the only relevant features of the accused products and there is nothing else that could have been misappropriated. Indeed, the ten witnesses—all current and former employees of L'Oréal—testified that the only relevant information Metricolor disclosed to L'Oréal was public (i.e., published in Metricolor's patent) and that they had no knowledge of Metricolor's newly-identified "trade secrets." In any event, the three newly-identified features are neither confidential nor a trade secret as a matter of law because they were all widely publicly-available. All of Metricolor's claims, therefore, fail and summary judgement should be granted for L'Oréal.

## SUMMARY OF UNDISPUTED FACTS

*The Parties' Encounters*

The D'Amicos first spoke to L'Oréal through Pat Parenty in July 2014. SUF ¶ 1. They discussed the patented "Metricolor System," a handling system and method for dispensing hair color using a pouch, an air-tight valve, and a syringe, which was published. *Id.* 1-2. Later that month, Sal D'Amico followed up with Mr.

Parenty emailing a video of the Metricolor System using a plastic bottle and explaining that this concept was in the Metricolor pending patent. *Id.* ¶ 3. The video was not a secret and was disclosed prior to entering an NDA. *Id.* ¶¶ 4-5.

A month later, Sal and Stephen D'Amico each signed mutual NDAs with L'Oréal. SUF ¶ 5. The NDA defines "confidential information" as information that "relates to or is derived from a party's scientific, technical, business, strategic, marketing or creative affairs." ECF 1-1 at 19. **Excluded** from this standard definition **is any information that**, *inter alia*, "**is or becomes generally known or available to the public**" or "is or was developed independently by or for the Receiving party" without violation of the NDA. *Id*. at 20. Information that is generally known or available to the public is also not a trade secret. Cal. Civ. Code § 3426.1(d); 18 U.S.C. § 1839(3).

The D'Amicos subsequently presented their system to L'Oréal employees (three times in-person and once on the phone): On October 9, 2014, the D'Amicos met with Pat Parenty, Scott Schienvar, and Christine Schuster; On February 19, 2015, the D'Amicos met with Mariko Rex and Scott Schienvar; On September 30, 2015, the D'Amicos spoke to Dan Bethelmy Rada, Mariko Rex, and Scott Schienvar by phone; And on November 23, 2015, the D'Amicos met with Stephanie Martins, Dan Bethelmy Rada, and Scott Schienvar. SUF ¶¶ 8-11, 14. The D'Amicos made audio recordings of the September and November 2015 meetings. *Id.* ¶ 12. However, the D'Amicos cannot support their new misappropriation theory—none of the features were disclosed in any of these meetings, as evidenced by the audio recordings and produced documents. *Id.* ¶ 13. Instead, and consistent with Metricolor's original theory of the case, the meetings related only to the patented "Metricolor System" with its air-tight seal for packaging hair dye. Ms. Wolska-Brys explained to Sal D'Amico that to proceed, L'Oréal would need to test Metricolor's product, and requested that Sal send samples. *Id.* ¶¶ 14-15. Mr. D'Amico responded that it would "not be possible" to send any samples. *Id.*¶ 16. And there is evidence that Metricolor

never gave samples to L'Oréal. *Id.*¶ 17.

*The Accused Bonder Product Packaging*

L'Oréal had been aware of using syringes as dosing options in hair care since at least March 2014, and many of its products used plastic bottles with orifice reducers at least as early as January 2014. SUF ¶¶ 21-22. Comar was a supplier to L'Oréal at least as early as February 2014, and L'Oréal chose Comar to supply syringes for Redken pH bonder because it was an existing L'Oréal supplier. *Id.* ¶¶ 23-24. The choice of packaging and dispensing for the Redken pH Bonder product was made sometime between August and October 2015. *Id.*¶ 18.

In January 2016, a team at Matrix, another subsidiary of L'Oréal, working on another bonder product, the Matrix Bond Ultim8, had a problem with its cup-measuring doser and needed a new doser. SUF ¶ 27. The Matrix team opted to use the Redken bonder doser (syringe and standard orifice reducer). *Id.*¶ 28. In 2016, L'Oréal launched Redken pH Bonder and Matrix Bond Ultim8. *Id.* ¶ 31.

*Metricolor's Suit*

Metricolor brought suit for patent infringement and trade secret theft in 2018, alleging that L'Oréal's bonder products embodied the Metricolor System covered by the '587 Patent and its corresponding trade secrets. The district court dismissed these allegations, which the Federal Circuit affirmed, remanding to this Court to decide whether leave to amend should be granted. This Court granted leave, and in March 2020, Metricolor filed the Amended Complaint, alleging theft of trade secrets different from those in the original Complaint, breach of the NDA, and unfair competition, but discarding any patent infringement claim.

*Metricolor's New "Trade Secrets"*

Facing the Federal Circuit's decision that L'Oréal's products did not infringe the Metricolor patent and that the concepts illustrated in the Metricolor patent could not be confidential information or trade secrets, Metricolor changed its story. Metricolor had previously alleged that L'Oréal's use of a 10 mL catheter syringe

coupled with a standard, off-the-shelf insertable plastic orifice reducer and plastic bottle used to dispense bonder was its patented invention. Now, Metricolor argues those very same features in L'Oréal's product were not disclosed in the patent and were really Metricolor's trade secrets and confidential information. SUF ¶¶ 36-37. It also claimed trade secrets and confidential information in the alleged testing results of these materials, Comar as a supplier of syringes and orifice reducers, and pricing of these off-the-shelf components. *Id.* ¶¶ 38-39. Putting aside that these concepts were well-known and not confidential nor secrets, there is **no** reliable evidence showing that these additional facts, purportedly absent from Metricolor's patent disclosure, were ever disclosed to L'Oréal. *Id.* ¶ 40. To the contrary, we now know Metricolor fabricated documents MC000613, MC000093, MC00094, and MC000047, to try to fill this exact gap in its case. *Id.* ¶ 37, 40.

*Metricolor's Fabricated Evidence*

**Metricolor fabricated document MC000613**, which as highlighted below, falsely suggests it sent L'Oréal the components it now claims are its trade secrets:

> our current prototype consists of only 10 containers, two types of orifice reducers (standard with hole and self-closing) and two catheter syringes we use (small 10 ml from our new supplier, COMAR and a large Toomey catheter syringe), depending on the several weeks for our manufacturer to produce. In the meantime, I can send to you only one of the 10 prototypes and two types of sample orifice reducers and syringes to your address below. You can fill a plastic container or the pouch with your least viscous product of developer by using the syringes to dispense the product into the container/pouch.

SUF ¶¶ 41-42.

In August 2021, Metricolor deposed former L'Oréal employee Marta Wolska-Brys. SUF ¶ 43. With Sal D'Amico present during re-direct examination, Ms. Wolska-Brys was questioned about the allegedly "real" MC000613. *Id.*¶ 43. Ms. Wolsks-Brys denied ever receiving MC000613 and testified that L'Oréal never received any samples from Metricolor. *Id.*¶ 44-46. Neither Mr. D'Amico nor his counsel interjected during the deposition that MC000613 was fake or stated any

concerns regarding the legitimacy of the document. *Id.*¶ 47.

In September 2021, Sal D'Amico falsely testified that he wrote MC000613 in March 2016, the date on the face of MC000613. *Id.*¶ 48-50. But forensic review confirmed that Mr. D'Amico created MC000613 in March **2020** (*after* filing the Amended Complaint). *Id.*¶ 51. Metricolor then produced MC000613 in January 2021 while withholding real versions of a 2016 email Mr. D'Amico sent to L'Oréal (which do not reference the new litigation "trade secrets") and spoliated the doctored MC000613 after L'Oréal sought forensic review in October 2021. *Id.* ¶ 51-53.

**In furtherance of its scheme to create supporting evidence, Metricolor fabricated MC000093-94** by editing a document during the litigation to add, *inter alia*, the following highlighted features supporting its new litigation theory: "Developer/Peroxide* Low viscosity liquid Dispensed easiest and accurately, *2. 2. Developer contained in plastic container with push-in standard orifice reducer. Most efficient and less costly;" and "standard orifice reducer for Developer less costly… .03 cents a unit." SUF ¶ 54-56.

On September 22, 2021, when asked whether he could have created MC000093-94 "after the litigation started," Sal D'Amico testified, "[t]here's a possibility, but I don't – **I don't think so**." SUF ¶ 57. With respect to MC000094, Mr. D'Amico further testified that, "we distributed that to L'Oréal at one of their meetings." *Id.*¶ 58.

Stephen D'Amico was more definite. He testified that MC000093-94 was drafted in 2014, a week after L'Oréal sent the D'Amicos products to test. SUF ¶ 59. The date on the face of MC00093-94 is October 23, **2014.** *Id.*¶ 60.

But we now know all this testimony is false. Forensic review confirmed that Mr. D'Amico created MC000093-94 on November 4, **2020** (two days before his 30(b)(6) deposition, and **four years after the "10/23/14" date on its face**), produced MC000093-94 in January 2021, while withholding multiple real 2014 versions of the document (and which do not reference the new trade secrets), and continued to access

the real, **unproduced** 2014 versions of the document in October and November 2021. SUF ¶¶ 61-72. Mr. D'Amico was also present at the August 2021 deposition of former L'Oréal employee Scott Schienvar in which Metricolor's counsel falsely introduced the fake MC000093-94 as a document that the witness had received; Again Mr. D'Amico did nothing to correct the record. *Id.* ¶¶ 73-78; *see also* 79-83. The real contemporaneous document that was the basis for the forged MC000093-94 should have been produced by Mr. D'Amico but was not. *Id.* ¶¶ 64-72. Metricolor and its counsel falsely asserted during discovery that Metricolor's email attachments were not available. *Id.* ¶¶ 70-75. Metricolor and its counsel's manipulation regarding MC000093-94 is further demonstrated by the fact that, despite knowing it was fake, Metricolor did not advise L'Oréal until it was proven to be fake. *Id.* ¶¶ 74-83.

**Metricolor also fabricated MC000047** during the litigation to state the following highlighted features of its new trade secret theory:

"Comparison of Tube Packaging VS. METRICOLOR First Generation Prototype* / *First generation prototype components including a poly-plastic container and standard orifice reducer and syringe." MC000047 further included costs for these alleged "first generation prototype" components. SUF ¶¶ 84-85.

On September 22, 2021, when asked whether he could have created MC000047 [redacted] Sal D'Amico testified, [redacted] SUF ¶ 86. But forensic review confirms that the oldest version of MC000047 is from August 2021, **after the litigation began**, and that the original was spoliated sometime after September 28, 2021. *Id.*¶¶ 87-89.

In sum, each of the fabricated documents contained information added during the litigation to conform to and corroborate the new trade secret theory Metricolor developed after remand. None of this information is provided in authentic documents.

*The "Trade Secrets" Are Not Secret*

There is no evidence Metricolor's purported confidential and trade secret information is in fact confidential or secret. On the contrary, it is crystal clear that it

was all publicly-available and readily ascertainable. U.S. Pat. No. 7,407,055 to Rodriguez (cited in Metricolor's patent) discloses a hair coloring kit, including a syringe and a non-sealing, *i.e.*, standard, orifice reducer. SUF ¶ 90; *see also* 97-100. U.S. Patent No. 9,301,587 to D'Amico (the '587 Patent") discloses the use of syringes and orifice reducers and semi-rigid poly plastic containers. *Id.*¶ 91; *see also* 92-96, 101. At least as early as March 2006, Comar's public website displayed the use of orifice reducers (also known as press-in bottle adapters) inserted into plastic bottles, with 10 ml catheter syringes (also known as oral dispensers), which orifice reducers, plastic bottles, and 10 ml syringes Comer offered for sale. *Id.*¶ 102. There also is no evidence that L'Oréal misappropriated any of Metricolor's confidential or trade secret information. *Id.*¶ 103.

## STANDARD FOR GRANTING SUMMARY JUDGMENT AND TERMINATION FOR FAKE EVIDENCE

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Lodestar Anstalt v. Bacardi & Co.*, No. 16-cv-06411, 2019 WL 8105378, at *4 (C.D. Cal. July 3, 2019), *aff'd*, 31 F.4th 1228 (9th Cir. 2022).[3] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"Falsifying evidence is grounds for the imposition of the sanction of dismissal." *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (affirming sanction of dismissal where falsified evidence "dealt with issues of central

[3] Furthermore, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009).

importance in the upcoming summary judgment hearing"). "To permit the fabrication of spurious corroborating evidence without the imposition of a harsh responsive sanction would constitute an open invitation to abuse of the judicial system of the most egregious kind." *SEC v. Blockvest, LLC*, 2020 WL 2786869, at *9 (S.D. Cal. May 29, 2020), *report and recommendation adopted*, 2020 WL 2786869 (S.D. Cal. May 29, 2020).

## ARGUMENT

Metricolor falsified evidence as part of a fraudulent scheme to show that it disclosed its so-called confidential information to L'Oréal. This goes to the heart of the case, and Metricolor should face the consequence of its fraud: dismissal of its case. There is **no** other reliable evidence of "disclosure" aside from the fake documents, so Metricolor's claims must fail at summary judgment. And Plaintiff has no evidence to support its allegations that its information, even if it were disclosed, was "confidential" or "secret," Fed. R. Civ. P. 56(a), (c)(1). L'Oréal has produced undisputed evidence negating the critical element of confidentiality and secrecy of Metricolor's alleged information—dooming all of Metricolor's claims.

### I. PLAINTIFF'S TRADE SECRET CLAIMS FAIL.

Under the DTSA or the CUTSA, Metricolor must prove "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret, and (3) that the misappropriation caused or threatened damage to the plaintiff." *GENFIT S. A. v. CymaBay Therapeutics Inc.*, No. 21-cv-00395, 2022 WL 195650, at *3 (N.D. Cal. Jan. 21, 2022),[4] see also *Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x 701, 705 (Fed. Cir. 2021) (plaintiff bears the burden of proving existence and misappropriation of trade secret).[5] The "disclosure of a trade secret in a patent

[4] Courts analyze claims under the DTSA and CUTSA because the elements are "substantially similar." *Id.*; *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 20-cv-06846, 2022 WL 2304287, at *2 (N.D. Cal. June 27, 2022; *Whiteslate, LLP v. Dahlin*, No. 20-CV-1782, 2021 WL 2826088, at *5 (S.D. Cal. July 7, 2021).

[5] To support a trade secret claim the plaintiff must also show it took reasonable measures to keep the information secret, and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain

application extinguishes the information's trade secret status." *Id*; *Olaplex*, 855 F. App'x at 707 (same); *see also Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020).

The plaintiff must prove that the secret **was disclosed** to the defendant under circumstances giving rise to an obligation not to use or disclose the secret. *MedioStream, Inc. v. Microsoft Corp*., 869 F. Supp. 2d 1095, 1112–13 (N.D. Cal. 2012); 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).[6] Metricolor simply *cannot* meet this standard. The only documents produced in the litigation suggesting Metricolor ever disclosed any so-called "secret" to L'Oréal are the fabricated documents created by Sal D'Amico after the litigation began. And the real documents—which Mr. D'Amico altered—do not show any disclosure of any of the purported secrets. More tellingly, Mr. D'Amico did not produce the real documents, which relate to Metricolor's non-secret patented Metricolor System, foreclosing any suggestion that this was all some innocent misunderstanding.

In any event, none of Metricolor's information was confidential or trade secret because all of its alleged trade secrets were publicly known and readily ascertainable.

### A. <u>Plaintiff Has No Evidence It Ever Disclosed Any Of Its So-Called Secrets to L'Oréal.</u>

No authentic documents from Metricolor to L'Oréal disclose: Comar 10 ml syringes and standard (i.e., non-self-sealing) orifice reducers used with plastic bottles. SUF ¶ 104. Nor are there any authentic documents disclosing the pricing or testing of any of these components. *Id.*¶ 104. Because none of that ever happened.

While Salvatore and Stephen D'Amico offered some equivocal and self-serving testimony that they gave samples of their syringes and orifice reducers and "pricing" information to L'Oréal. There is zero evidence to corroborate this this. Metricolor created fake documents in the litigation to fill this gap in its case and substituted those fake documents in discovery in place of real documents related to

---

economic value from the disclosure or use of the information. *Id.*; 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d).

[6] *See also Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1014 (N.D. Cal. 2018), aff'd815 F. App'x 117 (9th Cir. 2020) (plaintiff must show secrecy).

Metricolor's patented system, specifically: MC000613 (ECF 157-2, Ex. 1); MC000093-94 (ECF 157-3, Ex. 2); MC000043-46 (ECF 157-4, Ex. 3; MC000047 (ECF 157-5, Ex. 4). *See also* SUF ¶ 108, 110, 113; *see also* 104-107, 109, 111-112.

In fact, thousands of real documents contradict and show the patented Metricolor System is what Metricolor actually pitched to L'Oréal. In contrast, no authentic contemporaneous documents show disclosure of the new trade secrets Metricolor is now asserting. SUF ¶ 104-107. Similarly, the only authentic evidence corroborating that Metricolor ever ordered anything from Comar (never mind disclosed it to L'Oréal) **post-dates the parties' interactions**. *Id.*¶ 111-112. The total lack of any corroborating documentary evidence, especially when the D'Amicos went to the trouble of even recording meetings, is damning.

The Court "should not adopt [Metricolor's testimonial] version of the facts for purposes of ruling on [this] motion for summary judgment" or even consider this testimony because it is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott*, 550 U.S. at 380.

### B. Plaintiff's So-Called "Secrets" Were Publicly Available and Readily Ascertainable By Proper Means.

It is no surprise that Metricolor has no evidence it ever disclosed to L'Oréal the use of a 10 ml Comar plastic catheter syringe with a standard orifice reducer in a plastic bottle. That was not the purportedly innovative, patented "Metricolor System" that it was pitching to L'Oréal. Instead, the L'Oréal products use a standard publicly available system of dosing material that was readily ascertainable by proper means. Indeed, the prior Rodriguez Patent, which Metricolor described and distinguished in the background of its patent, discloses a hair coloring kit that includes, bottles, a 10 ml plastic catheter syringe and a standard, non-self-sealing orifice reducer. Instead of this standard approach, Metricolor pitched L'Oréal a system that used a syringe with pouches having a particular air-tight self-sealing valve that purported solved problems in hair dye oxidation and dispensing. All of these features were publicly disclosed in the '587 Patent, along with alternative

embodiments using bottles and hair developer. SUF ¶ 91-96. In other words, the things Metricolor is now alleging are its trade secrets and confidential information, were, in fact, well-known, standard methods for dispensing liquids that its patented system was supposed to be an improvement over.

Including a syringe to dispense material is also listed on a L'Oréal form, created before L'Oréal ever met Metricolor, as part of L'Oréal's standard arsenal for beauty product packaging. SUF ¶ 22. Similarly, L'Oréal had used Comar as a supplier for accessories before ever encountering Metricolor. *Id.*¶¶ 23-24. As early as 2006, Comar published on its website the use of syringes coupled with ordinary non-self-sealing orifice reducers, and its pricing was all publicly available. *Id.* ¶ 102. Metricolor has no evidence that any of this information was actually secret.

**C. Plaintiff's Has No Evidence L'Oréal Misappropriated Anything.**

Metricolor also has no evidence that L'Oréal misappropriated anything from Metricolor. SUF ¶ 115-119. Metricolor also has no evidence that L'Oréal ever used or disclosed any of Metricolor's pricing information, "research," or other purportedly confidential or trade secret information at any time. This, too, requires judgment against Metricolor on its trade secret claims.

**D. Metricolor's Remaining "Trade Secrets" Are Merely A Vague and Unsupported Wish List.**

Aside from the syringe, orifice reducer and bottle, Metricolor's remaining alleged "secrets" (e.g., the "discovered benefits of orifice reducers used in conjunction with a syringe measured dispensing system for beauty products of varying viscosity and corrosiveness," "cost and pricing information of various types of orifice reducers and preferable pricing models to bring a syringe measured dispensing hair color product to market") fail to have sufficient specificity to be enforceable. SUF ¶ 115-119. This dooms Metricolor's claims for trade secret theft with respect to these purported "secrets."

Metricolor was required to "describe the subject matter of the trade secret with sufficient particularity ***to separate it from matters of general knowledge in the trade***

***or of special knowledge of those persons skilled in the trade***." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (summary judgment aff'd where plaintiff failed to specify which "dimensions and tolerances" were trade secrets); *Heinemann v. Computer Assocs. Int'l, Inc.*, 171 F. App'x 704, 708 (9th Cir. 2006) (affirming summary judgment for defendant because plaintiff "failed to describe the trade secrets with any 'reasonable particularity.'"). Metricolor's vague catchall descriptions cannot support its claims. *Whiteslate, LLP*, 2021 WL 2826088, at *6.

## II. PLAINTIFF'S CONTRACT AND UNFAIR COMPETITION CLAIMS ALSO FAIL.

Metricolor must prove: (1) the existence of a contract; (2) Metricolor's performance or excuse for nonperformance; (3) L'Oréal's breach, and (4) damages. *Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 723 (9th Cir. 2017). There is no evidence that Metricolor was a party to any agreement with L'Oréal. SUF ¶ 5.

But even if there were, for the reasons discussed above, there is no evidence that Metricolor ever disclosed any confidential information or that information was disclosed by L'Oréal in violation of the NDA. Publicly disclosed information is not confidential as a matter of law. *Entm't Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997); *Metricolor LLC v. L'Oréal S.A.*, No. CV 18-364-R, 2018 WL 5099496, at *5 (C.D. Cal. Aug. 15, 2018) ("the information in the '587 Patent application is not 'confidential information' under the NDA because it was already 'generally known or available to the public' when the parties met"), *aff'd in part, vacated and remanded on whether to grant leave to amend*, 791 F. App'x 183 (Fed. Cir. 2019).[7] There is no evidence that L'Oréal disclosed or otherwise misused any such information, or that Metricolor was harmed as a result.

---

[7] *See also OEM-Tech v. Video Gaming Techs., Inc.*, No. C 10-04368, 2012 WL 12920622, at *2 (N.D. Cal. Apr. 16, 2012); *Freeman Inv. Mgmt. Co. v. Frank Russell Co.*, No. 13-CV-2856, 2016 WL 5719819, at *13 (S.D. Cal. Sept. 30, 2016) ("Because this information . . . entered the public domain without Defendant's breach of any obligation owed to Plaintiff…, it is not Confidential Information protected by the NDA."), *aff'd*, 729 F. App'x 590 (9th Cir. 2018).

Nor is there evidence of a special relationship between the parties supporting a implied covenant or unfair competition claim. The contract claims fail.

Metricolor has no independent evidence of unfair competition; this claim is entirely derivative of the trade secret and contract claims and therefore fails for the reasons above.

## III. PLAINTIFF'S CONDUCT WARRANTS DISMISSAL AND OTHER SANCTIONS.

As shown above, the fake documents Metricolor injected into this litigation were intentionally created to fill gaping holes in its case and to falsely corroborate the otherwise self-serving and unsupported testimony of Metricolor's principals. This attack on the good faith and orderly operation of the judicial process cannot be overlooked. "To permit the fabrication of spurious corroborating evidence without the imposition of a harsh responsive sanction would constitute an open invitation to abuse of the judicial system of the most egregious kind." *Blockvest*, 2020 WL 2786869, at *9.

Dismissal and sanctions are appropriate where a party "so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts." *Connecticut Gen.*, 482 F.3d at 1097 (affirming terminating sanctions where party manipulated a photocopy of document so that its date looked like "7/00" instead of "03/17/00" and produced it in discovery, holding that the document manipulation threatened to "interfere with the rightful decision of the case" because the party's violations made it impossible for the court to be confident the parties would ever have access to the true facts).[8] *See also Seiko Epson Corp. v. Koshkalda*, 799 F. App'x 463, 465 (9th Cir. 2019) (default discovery abuse).

Unsurprisingly, courts do not hesitate to dismiss a case as a sanction for

[8] *See also Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (dismissal aff'd where false evidence "dealt with issues of central importance in the upcoming summary judgment hearing"); *Englebrick v. Worthington Indus., Inc.*, 944 F. Supp. 2d 899, 909 (C.D. Cal. 2013) ("Providing false or incomplete information during a deposition or in a response to a discovery request constitutes the sort of willfulness, bad faith, or fault required for dismissal."), *aff'd*, 620 F. App'x 564 (9th Cir. 2015).

producing fake evidence because such manipulations go to the heart of the fact-finding process and prohibit an orderly conduct of the proceedings. *Blockvest*, 2020 WL 1910355, at *15 (false evidence precluded opposing party from timely ascertaining evidence central to its claims, forced it to engage in extensive, costly, and lengthy discovery to uncover key facts, the extent of the deceit and threatened to interfere with the rightful decision of the case).

Concealing or ***failing to produce documents alone*** is also "**sufficient prejudice**, whether or not there is belated compliance" **to warrant dismissal**. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1236 (9th Cir. 2006); *Anheuser–Busch, Inc. v. Nat. Beverage Distribs., 69 F.3d 337,*, 69 F.3d 337, 354 (9th Cir. 1995). A "party cannot destroy whatever documents it wishes and avoid any repercussions by claiming none of the destroyed documents were important." *Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 468 (D. Ariz. 2020) (terminating sanctions deleting evidence finding it sufficient to establish willfulness, fault, or bad faith), *aff'd*, 2022 WL 259937 (9th Cir. Jan. 27, 2022).

Title 28 U.S.C. § 1927 authorizes sanctions against "[a]ny attorney or other person admitted to conduct cases in any court of the United States. . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[U]nder its inherent powers, a court may impose sanctions where a party has willfully disobeyed a court order, or where the party has "acted in bad faith, vexatiously, or for oppressive reasons." *Robinson v. Chefs' Warehouse*, No. 3:15-cv-05421, 2017 WL 1064981, at *3 (N.D. Cal. Mar. 21, 2017) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014)).

### A. <u>All Factors Favor Dismissal.</u>

Metricolor did not stop at a single abuse of the discovery process. Metricolor created and produced fake evidence; substituted the fake evidence for the real

evidence; destroyed evidence; concealed and failed to produce documents, forcing L'Oréal to rely on incomplete and spotty evidence; testified about the fake documents as if they were real; attended depositions in which other witnesses had to testify about the fake documents, without confessing that the evidence was fake; and long after Metricolor's counsel knew the truth, it withheld from the Court and L'Oréal crucial information about the forgery, until L'Oréal uncovered it, forcing L'Oréal to undertake extensive, costly, and lengthy forensic discovery to uncover key facts and the extent of Metricolor's deceit.

Dismissal is proper where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (affirming dismissal and monetary awards as sanctions for spoliation) (quoting *Anheuser–Busch*, 69 F.3d at 348 (same)). Courts consider several factors before imposing dismissal as a sanction: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." A court "need not make explicit findings regarding each of these factors," but "willfulness, fault, or bad faith" is required for dismissal to be proper. *Leon*, 464 F.3d at 958. All these factors support dismissal here.

**1. The Public's Interest In Expeditious Resolution, And The Court's Need to Manage Its Dockets, Favor Dismissal.**

"[D]ismissal serves the public interest in expeditious resolution of litigation as well as the court's need to manage the docket when a plaintiff's noncompliance has caused the action to come to a halt, thereby allowing the plaintiff, rather than the court, to control the pace of the docket." *PPA Prods. Liab. Litig.*, 460 F.3d at 1234. That is exactly what has happened here.

Metricolor now admits that it knew all along that MC000613 was fake, was

"never supposed to be produced," and that it was "for that same reason" that it never sought to question witnesses about it. ECF 157 at 16. Metricolor's admission that it knew the document was fake and "never supposed to be produced" is damning because it never told L'Oréal. Instead, Metricolor repeatedly opposed L'Oréal's forensic review and other attempts to learn the truth. This demonstrates that Metricolor's actions were intentional. This litigation ground to a halt because, knowing it had produced fake documents, Metricolor nevertheless thrice opposed L'Oréal's forensic review in October, November, and December 2021. SUF¶¶ 125-131. It further withheld the contemporaneous, real versions of documents, and suborned perjury about them in September 2021, which further prevented L'Oréal from promptly and efficiently uncovering the truth. *Id.*¶ 122.

It took L'Oréal months and great expense to uncover what had really happened: Metricolor manufactured the only evidence in the case that would corroborate its allegation that it disclosed its so-called trade secrets to L'Oréal.

Metricolor's failure to apprise L'Oréal and the Court of this fact during discovery or when L'Oréal sought forensic review in October 2021 is ample evidence of Metricolor's willful misconduct. *See Bump Babies Inc. v. Baby The Bump, Inc.*, 2011 WL 5037070, at *4 (C.D. Cal. Sept. 7, 2011) ("willfulness standard is met by disobedient conduct that is within the offending party's control"), *report and recommendation adopted*, 2011 WL 5036919 (C.D. Cal. Oct. 20, 2011).

**2. The Risk of Prejudice to L'Oréal Favors Dismissal.**

L'Oréal has been prejudiced because it has had to defend itself in a litigation that is based on a fraud and never should have been brought. Moreover, it undertook all its discovery in view of a false record. Fourteen depositions took place without the benefit of knowing that significant documents had been forged. L'Oréal missed the opportunity to conduct discovery under a true record and it still has no way of knowing what is and is not authentic in Metricolor's production. That L'Oréal ultimately learned the truth about the fabricated documents does not resolve the

prejudice. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts."). Furthermore, Metricolor's spoliation of documents prejudices L'Oréal because it is forced to "rely on incomplete and spotty evidence." *Leon*, 464 F.3d at 959; *see also* SUF ¶¶ 53, 88. This factor weighs heavily in favor of dismissal.

**3. Public Policy Favors Dismissal.**

The Ninth Circuit has explained that public policy favors dismissal where a plaintiff fails to comply with discovery obligations because the case "cannot move forward toward resolution on the merits. … [T]his factor 'lends little support' to a party, [like Metricolor], whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *PPA Prods. Liab. Litig*., 460 F.3d at 1228. Metricolor's withholding of the truth about its fake evidence have delayed this case. L'Oréal began asking Metricolor about irregularities in its production months before the truth came out. SUF¶ 120-131. But Metricolor stonewalled. We now know that Metricolor knew in August 2021 that documents were fake and "for that same reason" did not question witnesses about them. ECF 157 at 16. Yet it withheld that information from the Court and L'Oréal until May 2022. Counsel for Metricolor similarly knew by at least October 15, 2021, that Sal D'Amico "did not send" MC000613, yet it opposed L'Oréal's forensic review to uncover the truth about that document. SUF ¶ 124-125. Metricolor and its counsel knew in August 2021 that MC000093-94 was not what counsel claimed it was during a deposition. SUF ¶¶ 75-76. But Metricolor never told L'Oréal that document had in fact been created during the litigation—until after the fabricated documents were caught. SUF ¶ 62. A lesser sanction than dismissal, "would constitute an open invitation to abuse of the judicial system of the most egregious kind." *Blockvest*, 2020 WL 2786869, at *9.

**4. Less Drastic Sanctions Than Dismissal Would Be Futile.**

Courts find sanctions less drastic than dismissal are futile where the fraudulent conduct occurs early in the litigation and is not uncovered until the parties were engaged in discovery, especially where a lesser sanction would merely place the offending party in the same position as before it submitted the fake evidence. *Blockvest*, 2020 WL 2786869, at *15. In *Blockvest*, the court was concerned that the party who submitted fake evidence "will not be truthful in upcoming court proceedings as he has failed to explain the inconsistencies in his deposition testimony and declarations as well as the inconsistencies in Wartanian and Dorsey's declaration and their deposition testimonies." *Id*. The court concluded that less drastic sanctions would not deter the party's continued misconduct.

Here, any sanctions less drastic than dismissal would be futile because the fraudulent conduct—the creation and substitution of documents produced in discovery—occurred 18-28 months ago, at the start of discovery, but was only uncovered in October 2021, after all witnesses had been deposed. Metricolor has still failed to explain the inconsistencies in the D'Amicos' declarations and deposition testimony, why it withheld the corresponding real versions of the fake documents, why it further withheld from the Court and L'Oréal the truth about the fake documents, and why it vigorously opposed L'Oréal's efforts to uncover the truth.

Gallingly, Metricolor states that it will not use the fake documents at trial. Not being allowed to fake documents is no punishment at all because it merely places Metricolor in the same position as litigants who play by the rules and do not try to pass off fake documents in discovery. *See Blockvest*, 2020 WL 2786869, at *15. "[U]nless Rule 37 is perceived as a credible deterrent rather than a 'paper tiger,' the pretrial quagmire threatens to engulf the entire litigative process." *Metro. Opera Ass'n v. Local 100*, 212 F.R.D. 178, 220 (S.D.N.Y. 2003). "Indeed, as then-District Judge Sotomayor noted … 'this circuit's recent decisions have made clear that the era when courts shied away from the imposition of the full range of sanctions

enumerated in Rule 37, including dismissal, is a thing of the past.'" *Id*. at 220-221.

### E. Metricolor And Its Counsel Repeatedly Acted In Bad Faith Warranting Additional Sanctions.

#### 1. Sal and Stephen D'Amico lied under oath.

"The claim, 'I don't remember,' can be a lie if the speaker does remember, and even though no one can see another's memory, the falsity is subject to proof by circumstantial evidence, admissions, and other evidence." *Valley Eng'rs Inc.*, 158 F.3d at 1055.

With respect to MC000613, Metricolor's story keeps changing. Before the forensic review, on September 22, 2021, Sal D'Amico testified he drafted MC000613 **in 2016**, and [redacted] sent it to Marta Wolska-Brys. SUF ¶ 48. Forensic review confirms that MC000613 was drafted in **2020**. *Id.*¶ 51. On October 15, 2021, Sal D'Amico took a photo of MC000613 with his notes "Cut + pasted +printed only. Did not send." *Id.*¶ 123. Yet Metricolor vigorously opposed L'Oréal's forensic review and did not tell the Court or L'Oréal that he "did not send" MC000613 to L'Oréal. *Id.*¶ 124-125. Instead, on October 26, 2021, Metricolor stated in its brief ***opposing forensic review***, "Mr. D'Amico ... ***does not remember if [MC000613] was sent*** or not." *Id.*¶ 127. But Metricolor knew at the time of that representation that that was false because Mr. D'Amico ***knew 11 days earlier that he "did not send" MC000613***. *Id.*¶ 123-124. Metricolor now admits that it knew all along that MC000613 was fake, and that it was "for that same reason" that it never questioned any witnesses about it during their depositions in August and September 2021. ECF 157 at 16.

After the forensic review, on May 17, **2022**, Mr. D'Amico again changed his story about whether he remembered if MC000613 was ever sent. He declared, "I began fiddling with a draft email to Marta Wolska-Brys **for the purpose of recreating what I had in my memory** and showing it to my attorneys. I therefore cut and pasted from this draft and added to it." ECF 157-13 ¶ 8. He waited **seven months** after he created the "Cut + pasted +printed only. Did not send." document to admit to the Court and L'Oréal that MC000613 was made during the litigation.

And that was only after the forensic review uncovered the truth anyway.

But even in finally fessing up, Mr. D'Amico once again sought to mislead the Court and revise history. His May 17, 2022 declaration states with regard to MC000613 that he "**had the same explanation previously**" by leaving **Paragraph 4 of his** October 25, 2021, **declaration "almost entirely intact**." ECF 157-13 ¶ 8. As shown in track changes below, this is again, not true:

> Given my struggles with electronic files and lack of knowledge with the discovery process, I have found the process confusing and complicated at times, but have worked with Metricolor's attorneys to produce records as requested and as I understand to be required by law. Part of this confusion is seen with regard to ~~MC00093-94~~MC000093-94 and MC000613. At the time of my deposition, I did not have it at the top of my mind ~~with regard to~~regarding the questions asked of me as to these ~~two~~three pages of documents. Since my deposition, I have sat down to consider several documents I was asked about at my deposition, including these pages. I found that these pages were included in a Dropbox folder provided by my attorneys in this case entitled "Work Product." I recalled that we had collectively decided that it would be helpful for me to add information to these documents after the litigation started. The reason for adding to the documents was for me to include information from my hand-written notes that ~~are~~may have been difficult for others to read. I understood this evidently made the pages "work product" documents, which should not have been produced, but nevertheless, have been produced in error.

*Compare* ECF 114-11 ¶ 4 *with* ECF 157-13 ¶ 4.[9] In realty, Mr. D'Amico never discussed MC0000613 in his earlier declaration. Mr. D'Amico left it up to L'Oréal and the Court to piece together these inconsistencies in his sworn statements.

With respect to MC000043-46, Metricolor maintains that its "principals have testified and will continue to testify that the specific results included in MC000043-46 were presented orally" to L'Oréal. ECF 157 at 12 n.4. But the forensic review confirms MC000043-46 was **created** in April 2016 through November 2017, **months after Metricolor's meetings with L'Oréal ended**. SUF ¶ 87. Forensic review also uncovered that during the litigation, in December 2020, Sal D'Amico altered MC000043-46 to add the statement that it was "11/23/15 Presented R&D Results to L'Oréal/Matrix." SUF ¶88.

All of the above manipulations go to the heart of Metricolor's case and reflect

[9] There are no contemporaneous handwritten notes.

a "pattern of deception and discovery abuse" that makes it impossible for L'Oréal or the Court to have "any reasonable assurance that the truth would be available," so dismissal is warranted. *Connecticut Gen.*, 482 F.3d at 1097.

**2. Metricolor did not accidentally forge documents, backdate them, neglect to produce the real documents, testify and allow other witnesses to testify about the fakes as if they were real.**

There is no evidence that anything in the fake production was "innocent." Metricolor's story is ever-changing, and one thing is glaring: it has **no explanation for why the fake documents were produced while the real documents were not**. It also has no answer for why it sat through depositions related to the fake documents without identifying the fakes and correcting the record. Or why documents were **spoliated after L'Oréal sought forensic review**. Metricolor's assertion that Sal D'Amico is confused and forgetful because of his age when they are caught producing fake documents does not square with its contrary assertion that Mr. D'Amico's uncorroborated testimony about events from eight years ago must be fully accepted. And Metricolor's counsel cannot chalk it all up to his client not understanding the discovery process. Rules 11 and 26(g) require counsel to advise his client on these issues and ensure discovery is properly conducted. *DR Distributors v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 914 (N.D. Ill. 2021).

Indeed, counsel's repeated attempts to downplay these discovery violations as just a few documents among thousands has been flatly rejected. "Producing thousands of pages, **but not the most important four pages**, could be innocent in some circumstances, but there was no reason to think that omission of the [real documents] was an innocent omission in this case." *Valley Eng'rs*, 158 F.3d at 1056.

**3. Metricolor's conduct was willful.**

A party's destruction of evidence qualifies as willful spoliation if, as here, the party has "some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *Leon*, 464 F.3d at 959 (quoting *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). Metricolor's spoliation of

documents relevant to the litigation, after it began, and even after L'Oréal sought forensic review, easily clears the standard for willful misconduct.

And since Metricolor and its counsel knew all along that MC000613 was fake and "was never supposed to be produced," ECF 157 at 16, Metricolor's failure to apprise L'Oréal and the Court of this fact during discovery or when L'Oréal sought forensic review in October 2021 is willful misconduct. SUF ¶ 74-76, 78-83. Metricolor's actions were also willful because they were within its control. *See Constr. Laborers Tr. Funds for S. California Admin. Co. v. Montalvo*, No. CV 10-01193, 2011 WL 1195892, at *4 (C.D. Cal. Mar. 3, 2011) ("Defendant's actions are willful because they are not outside of his control"), *report and recommendation adopted*, 2011 WL 1155550 (C.D. Cal. Mar. 30, 2011); *Bump Babies Inc.*, 2011 WL 5037070, at *4 ("willfulness standard is met by disobedient conduct that is within the offending party's control").

**4. Metricolor's counsel failed to meet its Rule 26(g) obligations.**

Metricolor's counsel has failed to comply with Rule 26(g) by not fully investigating Metricolor's document irregularities and not promptly advising the L'Oréal and the Court. Rule 26(g) "expressly requires counsel's responses to be made upon reasonable inquiry under the circumstances." *Metro. Opera*, 212 F.R.D. at 222. Where, as here, "counsel continually professed full compliance—falsely and, as confirmed by compliance discovery, without making a reasonable inquiry—constitutes such gross negligence as to rise to intentional misconduct." *Id*.

**5. Metricolor's counsel multiplied proceedings.**

Metricolor's counsel has duplicated proceedings by (a) requiring multiple reviews of the documents at issue; (b) opposing forensic investigation; (c) suborning perjury about the documents; and (d) ignoring this Court's repeated orders regarding the forensic review, requiring L'Oréal to thrice seek *ex parte* relief just to review the origins of the fake evidence, even though Metricolor's counsel apparently knew the false origins of these documents created during the litigation. In addition to sanctions

against Metricolor and the D'Amicos, sanctions are warranted against Metricolor's counsel under 28 U.S.C. § 1927, Rule 26(g), and this Court's inherent powers.

**6. Additional Monetary sanctions are warranted.**

Given the egregious conduct explained at length above, Metricolor and its counsel should be additionally ordered to pay the attorneys' fees L'Oréal incurred from January 29, 2021, the date Metricolor first produced its fabricated evidence, through today. Or alternatively, since October 13, 2021 (the date of Rand Brenner's deposition) conclusively showed fake documents had been produced and Metricolor forced months of forensic review to prove its extent, which would have been necessary if Metricolor had come clean earlier.

## CONCLUSION

It is telling that Metricolor had to resort to egregious conduct and evidence fabrication to support its case. These acts of desperation show that this case is a sham. Metricolor may seek to rely on the unsupported testimony of its principals to show the supposed disclosure of supposedly confidential information to L'Oréal. But that testimony flies in the face of the real documentary evidence in this case. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. For the foregoing reasons, L'Oréal respectfully requests the Court grant summary judgment in favor of L'Oréal on all claims and asks that the Court award sanctions for Metricolor's evidence fabrication and spoliation: termination of the case and attorney's fees.

Dated: July 22, 2022

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Angela Colt*
Angela Colt

*Attorneys for Defendants* L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, LLC