JOSEPH A. CALVARUSO (*pro hac vice*)
jcalvaruso@orrick.com
RICHARD F. MARTINELLI (*pro hac vice*)
rmartinelli@orrick.com
ANGELA COLT (CA SBN 286275)
acolt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
Facsimile: +1 212 506 5151

*Attorneys for Defendants*
L'ORÉAL USA, INC.,
L'ORÉAL USA PRODUCTS, INC.,
L'ORÉAL USA S/D, INC., AND
REDKEN 5TH AVENUE NYC, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

METRICOLOR, LLC,

Plaintiff and Counterdefendant,

v.

L'ORÉAL USA, INC.; L'ORÉAL USA PRODUCTS, INC.; L'ORÉAL USA S/D, INC.; REDKEN 5th AVENUE NYC, LLC; and DOES 1 through 100, inclusive,

Defendants, Counterclaimants and Third-Party Plaintiffs (L'Oréal USA, Inc.; L'Oréal USA Products, Inc.; L'Oréal USA S/D Inc.; and Redken 5th Avenue NYC, LLC)

v.

SALVATORE D'AMICO, and STEPHEN D'AMICO,

Third-Party Defendants.

Case No. 2:18-cv-00364-CAS-E

**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

Judge: Hon. Christina A. Snyder
Courtroom: 8D
Date: October 17, 2022
Time: 10:00 a.m.

Pursuant to Local Rule 56-1, Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, LLC ("Defendants" or "L'Oréal") submit the following Statement of Uncontroverted Facts and Conclusions of Law in support of their Motion for Summary Judgment and Sanctions.

## I. <u>Undisputed Facts</u>

### A. <u>The Parties' Encounters</u>

1. The D'Amicos first spoke to L'Oréal through Pat Parenty on July 10, 2014. They discussed the "Metricolor System," a method for dispensing hair color using a pouch, an airtight valve, and a syringe, which they had published in their application for the '587 Patent. Martinelli Decl. ¶ 11 & Ex. 5, MC000592.

2. The Metricolor '587 Patent application was published on July 17, 2014. ECF1-1, Ex. A.

3. Sal D'Amico disclosed to L'Oréal the patented Metricolor System a video clip on July 10, 2014, before the execution of the NDA on August 25, 2014:

> "From: saldamico saldamico@comcast.net
>
> To: PARENTY Pat PParenty@us.loreal.com;
>
> Cc: LEO Amanda ALeo@us.loreal.com ;
>
> Subject: Follow-Up and Conact Info-METRICOLOR
>
> Sent: Thu, 10 Jul 2014 15:38:20 PM (EDT)
>
> Greetings Pat,
>
> First of all, both Stephen and I enjoyed having the opportunity to discuss the METRICOLOR System with you. We very much appreciated your genuine feedback and information that you provided to us. I hope that we were able to try to describe the packaging innovation to you as best as possible and look forward to demonstrating it to you in person.
>
> I thought you may be interested in viewing a couple of items. The first is a report On "Sustainable and Flexible Packaging:More Value (Decreased Costs) & Less Waste."

> The second is very brief clip that we had made a while ago prior to utilizing pouches in the system. The use of a plastic container is also in our pending patent. Although the plastic container is a different packaging product than our current pouch, you can see for yourself our hair color dispensing, formulation and storage system."

Martinelli Decl. ¶¶ 11, 14 & Exs. 5, 8, MC000592; MC005386 (.mp4 file created 1/29/2009 and attached to email of July 10, 2014).

4. The video was not a secret. Martinelli Decl. ¶ 11, 14 & Exs. 5, 8, MC000592. As stated by Sal D'Amico in the July 10, 2014 email, the video shows the plastic containers disclosed in the '587 patent. *See*, '587 patent Figs. 1, 3, 6 and 7 (depicting line drawings of images from the video). Martinelli. Decl. Ex. 5.

5. A month later, on August 25, 2014, Sal and Stephen D'Amico each signed mutual non-disclosure agreements with L'Oréal. ECF 1-1, Ex. B.

6. The NDA defines "confidential information" as information that "relates to or is derived from a party's scientific, technical, business, strategic, marketing or creative affairs." **Excluded** from this standard definition **is any information that**, *inter alia*, "**is or becomes generally known or available to the public**" or "is or was developed independently by or for the Receiving party" without violation of the NDA. ECF 1-1, Ex. B at ¶¶ 1, 4.

7. Information that is generally known or available to the public is also not a trade secret. Cal. Civ. Code § 3426.1(d); 18 U.S.C. § 1839(3). Cal. Civ. Code § 3426.1(d); 18 U.S.C. § 1839(3).

8. On October 9, 2014, Sal and Stephen D'Amico met Pat Parenty, Scott Schienvar, and Christine Schuster in-person at L'Oréal's office in New York. Martinelli Decl. ¶¶ 19, 26 & Exs. 12, 19, L00014098; L00033861

9. On February 19, 2015, Sal and Stephen D'Amico met Mariko Rex and Scott Schienvar in-person at L'Oréal's office in New York. Martinelli Decl. ¶¶ 27, 40 & Exs. 20, 33, L00034100, 8/27/21 Schienvar Tr. at 135:11-13

10. On September 30, 2015, Sal and Stephen D'Amico spoke to Dan Bethelmy Rada, Mariko Rex, and Scott Schienvar by phone. Martinelli Decl. ¶ 69 & Ex. 62, MC001147.

11. On November 23, 2015, Sal and Stephen D'Amico met Stephanie Martins, Dan Bethelmy Rada, and Scott Schienvar in person. Martinelli Decl. ¶ 18 & Ex. 11, L0007915

12. The D'Amicos made audio recordings of the September 30, 2015 and November 23, 2015 meetings. Martinelli Decl. ¶¶ 12-13 & Ex. 6-7, MC0005381, MC0005382

13. There is no documentary or audio recording evidence that any confidential or trade secret information (i.e., that which was not disclosed in Metricolor's published patent application) was disclosed in any meeting between the D'Amicos and anyone at L'Oréal.

14. *Intentionally left blank.*

15. Ms. Wolska-Brys explained to Sal D'Amico that for any business transaction to proceed, L'Oréal would need to test Metricolor's product, and she asked for Sal to send her samples. Martinelli Decl. ¶ 30 & Exs. 23, L00034619.

16. Mr. D'Amico responded that it would "not be possible" to send any samples. Martinelli Decl. ¶ 30 & Ex. 23, L00034620.

17. There is no evidence that Metricolor ever sent any samples to L'Oréal. *See*, Martinelli Decl. ¶¶ 25, 17 & Ex. 18, 10, L0031544, L00004723.

### B. The Accused Bonder Product Packaging

18. Sometime in August, September, or October 2015, L'Oréal's Guillaume Duez, Ana McMahon, and Jessica Wang discussed potential delivery mechanisms for a new product for Redken (a subsidiary of L'Oréal), the Redken pH Bonder. Martinelli Decl. ¶ 39 & Ex. 32, Wang Tr. 54:22-55:4; 56:2-5;

Martinelli Decl. ¶ 43 & Ex. 36, Duez Tr. 117:13-119:23; Martinelli Decl. ¶¶ 31-33 & Exs. 24-26, L00060074; L00060076; L00060078.

19. Ms. McMahon suggested using a syringe like she used in infant medicine dosing. Martinelli Decl. ¶ 39 & Ex. 32, Wang Tr. 54:22-55:4; 56:2-5; Martinelli Decl. ¶ 43 & Ex. 36, Duez Tr. 117:13-119:23.

20. Ms. Wang bought sample dosing options, including syringes, at Duane Reade, a drug store. Martinelli Decl. ¶ 39 & Ex. 32, Wang Tr. 54:22-55:4; 56:2-5; Martinelli Decl. ¶ 43 & Ex. 36, Duez Tr. 117:13-119:23; Martinelli Decl. ¶¶ 31-33 & Exs. 24-26, L00060074; L00060076; L00060078.

21. L'Oréal had been aware of using syringes as dosing options in hair care since at least as early as March 13, 2014: "Container with dose (e.g., hair dye bowl, dosing cup, shaker, bottle, **dosing syringe**):" Martinelli Decl. ¶¶ 20-22 & Exs. 13-15, L00015128 at cell A10 of "Appendix" attached to L00015127; Martinelli Decl. ¶ 39 & Ex. 32, Wang Tr. at 153:12-15, 245:19-246:1; Martinelli Decl. ¶ 41 & Ex. 34, Parenty Tr. 76:15-21.

22. Many of L'Oréal's products used plastic bottles with orifice reducers at least as early as January 2014. Martinelli Decl. ¶¶ 23-24 & Ex. 16-17, L00018843-44; L00018845

23. Comar was a supplier to L'Oréal at least as early as February 2014, Martinelli Decl. ¶¶ 28-29 & Exs. 21-22, L00034364 at cells K41, K67, K68, K602 of "Final Total Summary.

24. L'Oréal chose Comar to supply syringes for Redken pH bonder because it was an existing supplier to the company. Martinelli Decl. ¶ 47 & Ex. 40, DeSchryver Tr. 84:13-85:6.

25. There is no evidence that the idea to use a syringe, orifice reducer, or plastic bottle for the Redken pH Bonder product came from Metricolor.

26. *Intentionally left blank.*

27. In January 2016, a team at Matrix, another subsidiary of L'Oréal, working on another bonder product, the Matrix Bond Ultim8, had a problem with its doser and needed a new doser. Martinelli Decl. ¶ 43 & Ex. 36, 10/1/21 Duez Tr. at 49:20-50:2.

28. The Matrix team opted to use the Redken bonder doser (syringe and standard orifice reducer). Martinelli Decl. ¶ 43 & Ex. 36, 10/1/21 Duez Tr. at 49:20-50:2

29. *Intentionally left blank.*

30. *Intentionally left blank.*

31. In 2016, L'Oréal launched Redken pH Bonder and Matrix Bond Ultim8. Martinelli Decl. ¶¶ 47 & Exs. 40, DeSchryver Tr. 26:10-20.

32. Metricolor was not involved in L'Oréal's development of the Redken pH Bonder and Matrix Bond Ultim8.

33. Metricolor was not aware of the Redken pH Bonder and Matrix Bond Ultim8 before they were publicly launched.

34. Metricolor never discussed bonder products with L'Oréal.

35. Metricolor never disclosed any information about bonder products to L'Oréal.

**C. <u>Metricolor's "Trade Secrets"</u>**

36. Metricolor claims as its trade secret a short-tipped 10 mL catheter syringe coupled with a standard, off-the-shelf insertable plastic orifice reducer inserted into a plastic bottle in hair care applications including developer and all hair color treatments.

- Martinelli Decl. ¶ 63 & Ex. 56, Metricolor Rog Response No. 1. (describing the use of an ordinary plastic bottle with an off-the-shelf insertable orifice reducer coupled with a 10 mL syringe with "low-viscosity beauty products such as developer" and "to applications

beyond those requiring extremely precise product measurements, including all hair color treatments in a salon or home environment");

- Martinelli Decl. ¶ 42 & Ex. 35, Salvatore D'Amico Tr. 46:25-47:3 (describing the "first-generation system" as "standard orifice reducer, syringe with a catheter tip, and a plastic bottle");
- *id*. at 56:14-19 (stating that the "first-generation Metricolor System" was "our trade secrets that we did not put in our patent application");
- *id*. at 75:17-20 (stating that they "kept that first-generation embodiment as a trade secret").

37. The only documentary evidence supporting that this "secret" was ever disclosed to L'Oréal are the fabricated documents: Martinelli Decl. ¶¶ 7-10 & Exs. 1-4, MC000043-46, MC000047, MC000613, MC000093-94; *see also* Martinelli Decl. ¶¶ 60 & Exs. 53, ECF 157-2, Ex. 1.

38. Metricolor claims as its trade secret "the results of extensive testing of the type and viscosity of L'Oréal products most efficiently withdrawn by the recommended and non-recommended syringe types and sizes."

- This description does not identify what specific "testing results" are the confidential property belonging to Metricolor.
- Metricolor does not identify what specific syringes were tested was "tested."
- Metricolor does not identify what L'Oréal products were tested. Metricolor never identified any document evidencing so-called "testing results."
- Metricolor was not aware of and did not test the accused Bonder product prior to its launch.
- Martinelli Decl. ¶¶ 63, 42 & Exs. 56, 35, Metricolor Rog Response No. 1, Sal D'Amico Tr. 247:1-5, 247:9-14.

39. Metricolor claims as its trade secret the identity of Comar as Metricolor's supplier of syringes and orifice reducers.

- Prior to the litigation, Metricolor never disclosed Comar as its supplier to L'Oréal.
- Metricolor never recommended a specific Comar syringe to L'Oréal.
- Martinelli Decl. ¶ 63 & Ex. 56, Metricolor Rog Response No. 1.

40. Metricolor claims as its trade secret the pricing of the 10 mL catheter syringe, the off-the-shelf insertable plastic orifice reducer, and plastic bottles.

- Metricolor does not identify what pricing specific information it provided to L'Oréal.
- Metricolor has not identified how third-party pricing information is its secret or confidential information.
- No authentic documents from Metricolor to L'Oréal disclose the pricing of 10ml catheter syringes.
- No authentic documents from Metricolor to L'Oréal disclose the pricing of off-the-shelf insertable plastic orifice reducers.
- No authentic documents from Metricolor to L'Oréal disclose the pricing of plastic bottles.
- Martinelli Decl. ¶ 63 & Ex. 56, Metricolor Rog Response No. 1.

### D. Documents Metricolor Created During the Litigation And Produced in Discovery

41. Metricolor produced MC000613 in January 2021. Martinelli Decl. ¶¶ 59-60 & Exs. 52-53, ECF 157-1 ¶ 6; ECF 157-2, Ex. 1.

42. **MC000613** states: "our current prototype consists of only 10 containers, two types of orifice reducers (standard with hole and self-closing) and two catheter syringes we use (small 10 ml from our new supplier, COMAR and a large Toomey catheter syringe), depending on the several weeks for our

manufacturer to produce. In the meantime, I can send to you only one of the 10 prototypes and two types of sample orifice reducers and syringes to your address below. You can fill the a plastic container or the pouch with your least viscous product of developer by using the syringes to dispense the product into the container/pouch." Martinelli Decl. ¶ 60 & Ex. 53, ECF 157-2, Ex. 1

43. Sal D'Amico and Stephen D'Amico were present during the August 18, 2021 deposition of former L'Oréal employee Marta Wolska-Brys. Martinelli Decl. ¶ 38 & Ex. 31, 8/18/21 Wolska-Brys Tr. at 3.

44. Ms. Wolska-Brys did not receive MC000613. Martinelli Decl. ¶ 38 & Ex. 31, 8/18/21 Wolska-Brys Tr. at 237:10-16.

45. Ms. Wolska-Brys testified that L'Oréal never received samples from Metricolor. Martinelli Decl. ¶ 38 & Ex. 31, 8/18/21 Wolska-Brys Tr. at 38:19-21; 101:5-9; 237:18-23.

46. There is no real evidence that L'Oréal received samples from Metricolor. Martinelli Decl. ¶ 30 & Ex. 23, L00034619

47. Sal D'Amico did not volunteer during the Wolska-Brys deposition that MC000613 had been created during the litigation. Martinelli Decl. ¶¶ 38, 30 & Exs. 31, 23, 8/18/21 Wolska-Brys Tr. at 235:7-237:23; L00034619

48. On September 22, 2021, Sal D'Amico testified that he wrote MC000613 in 2016. Martinelli Decl. ¶ 42 & Ex. 35, 9/22/21 Sal D'Amico Tr. at 155:9-11; 146:22-24.

49. The date on the face of the document Metricolor produced as MC000613 is March 29, 2016. Martinelli Decl. ¶ 60 & Ex. 53, ECF 157-2, Ex. 1; French Decl. ¶ 13.

50. The timestamp on the face of MC000613 is 2:11 P.M. Martinelli Decl. ¶ 60 & Ex. 53, ECF 157-2, Ex. 1; French Decl. ¶ 13.

51. Forensic review confirms that Sal D'Amico drafted MC000613 on March 16, 2020. Martinelli Decl. ¶ 59 & Ex. 52, ECF 157-1 ¶¶ 8-19. French Decl. ¶ 14.

52. The authentic document that was sent on March 29, 2016 to L'Oréal do not reference 10 mL syringes, standard orifice reducers, plastic containers, or Comar :

> Dear Marta, Welcome back! I hope you had a restful and enjoyable vacation. Since we last communicated, there has been a great deal of interest expressed in our patented technology by several large players in this space! Discussions are progressing nicely and, as a result, our resources are quite limited in terms of being able to simultaneously work with several prospective business partners on this disruptive technology. **Thus, your request to have our packages filled with your formulas will not be possible at the present time.** We have now developed a priority list of entities to work with in order to aggressively monetize our packaging technology. As L'Oreal had approximately 18 months to exclusively evaluate the techno, with no decision having been made, we felt compelled to move forward as quickly as possible with presenting our techno and monetization business models to those entities on our priority list, which of course we have now done. Going forward, the only potential partners we are willing to work with are those that are prepared to put concrete numbers on the table for a potential deal should our techno meet certain pre-defined, and agreed to, specifications. If L'Oreal is prepared to put such terms and conditions in writing, we look forward to receiving them. Our goal is to have a deal in place, with someone, by year end. Marta, thank you for your interest in our project. Best regards, Sal D'Amico, PRESIDENT, METRICOLOR
>
> French Decl. ¶ 15; Martinelli Decl. ¶ 60 & Ex. 53, ECF 157-2, Ex. 1.a at 4.

53. Forensic review confirms that MC000613 was spoliated sometime after October 15, 2021. French Decl. ¶¶ 16-21.

54. Metricolor produced MC000093-94 to L'Oréal in January 2021. Martinelli Decl. ¶¶ 59, 61 & Exs. 52, 54, ECF 157-1 ¶ 25; ECF 157-3, Ex. 2; French Decl. ¶ 22.

55. **MC000093** states: Developer/Peroxide* Low viscosity liquid Dispensed easiest and accurately, *2. 2. Developer contained in plastic container with push-in standard orifice reducer. Most efficient and less costly." Martinelli Decl. ¶ 61 & Ex. 54, ECF 157-3, Ex. 2.

56. **MC000094** states: "standard orifice reducer for Developer less costly… .03 cents a unit." Martinelli Decl. ¶ 61 & Ex. 54, ECF 157-3, Ex. 2.

57. On September 22, 2021, when asked whether he could have created MC000093-94 "after the litigation started," Sal D'Amico testified, "There's a possibility, but I don't – I don't think so." Martinelli Decl. ¶ 42 & Ex. 35, 9/22/21 Sal D'Amico Tr. at 165:13-17.

58. With respect to MC000094, Sal D'Amico testified that, "we distributed that to L'Oréal at one of their meetings." Martinelli Decl. ¶ 42 & Ex. 35, Salvatore D'Amico Tr. at 177:9-24.

59. Stephen D'Amico testified MC000093-94 was drafted a week after L'Oréal sent free product to the D'Amicos for them to test in 2014, in response to the D'Amicos' request for free product to test. Martinelli Decl. ¶¶ 45, 41 & Exs. 38, 34, Stephen D'Amico Tr. at 199:11-200: 2; 9/8/21 Parenty Tr. at 146:25-147:9.

60. The date on the face of MC00093-94 is October 23, **2014.** Martinelli Decl. ¶ 61 & Ex. 54, ECF 157-3, Ex. 2; French Decl. ¶ 23.

61. Forensic review confirms that Sal D'Amico created MC000093-94 on November 4, **2020.** Martinelli Decl. ¶ 59 & Ex. 52, ECF 157-1 ¶ 37; French Decl. ¶ 24-30.

62. Forensic review confirms that the original document, that was later altered to become the document produced as MC000093-94, was produced by Rand Brenner (RB00025). Martinelli Decl. ¶¶ 9, 15-16 & Exs. 3, 9.

63. Sal D'Amico testified as a 30(b)(6) witness on November 6, 2020. Martinelli Decl. ¶ 45 & Ex. 38, 11/6/20 Metricolor 30(b)(6)

64. Forensic review confirms 60 instances on Metricolor's devices of documents relating to MC000093-94. French Decl. ¶ 25.

65. Forensic review confirms 12 contemporaneous versions of a document from 2014, which were real attachments to contemporaneous emails from 2014 from Sal D'Amico. French Decl. ¶ 25.

66. Nine of these contemporaneous emails with authentic attachments relating to MC000093-94 were found in Sal D'Amico's sent items in the Mail program on his computer. French Decl. ¶ 26.

67. Forensic review confirmed that the original, contemporaneous document that was later altered to become the document produced as MC00093-94 were attached to emails in the sent items section of Sal D'Amico's mail program on his computer. French Decl. ¶ 27.

68. The original, contemporaneous document, which was later altered to become the document produced as MC00093-94, was attached to emails dated December 1, 2014 and sent to L'Oréal's Pat Parenty. French Decl. ¶ 27.

69. Multiple versions of the authentic 2014 document that was used to create MC000093-94 remain on Sal D'Amico's computer but were not among the documents Metricolor produced to L'Oréal. French Decl. ¶ 29.

70. A standard, reasonable (i.e., not forensic) search of Mr. D'Amico's computer could have turned up these emails and related attachments had Metricolor chosen to produce them. French Decl. ¶ 27.

71. Instead, Forensic review confirms that one instance of the December 1, 2014 email to Pat Parenty and its corresponding attachment were deleted. French Decl. ¶ 28.

72. Forensic review confirms that Sal D'Amico accessed the real 2014 versions of MC000093-94 in October and November 2021. French Decl. ¶ 30.

73. Sal and Stephen D'Amico were present during Metricolor's deposition of former L'Oréal employee Scott Schienvar on August 27, 2021. Martinelli Decl. ¶ 40 & Ex. 33, 8/27/21 Schienvar Tr. at 3.

74. During Mr. Schienvar' s deposition, Metricolor's counsel Eduardo Martorell introduced MC000093-94 and stated that it was an attachment to an email that Mr. Schienvar had received. Martinelli Decl. ¶ 40 & Ex. 33, 8/27/21 Schienvar Tr. at 117:3-126:2, 129:11-131:2.

75. Metricolor and its counsel knew that MC000093-94 was not the real attachment to the email counsel had presented to Mr. Schienvar, and counsel stated, "I reserve my right to look at these more closely." Martinelli Decl. ¶ 40 & Ex. 33, 8/27/21 Schienvar Tr. at 130:15-18.

76. During the Schienvar deposition, counsel for L'Oréal questioned MC000093-94's "validity and authenticity" and reserved rights to "get to the bottom of what [MC000093-94] that [Mr. Martorell] purported to be the attachment to this actually is, and where it came from." Martinelli Decl. ¶ 40 & Ex. 33, 8/27/21 Schienvar Tr. at 130:23-131:2.

77. Sal D'Amico did not volunteer that MC000093-94 could not ever have been sent to Mr. Schienvar because it had been created during the litigation, six years after the date on the face of MC000093-94.

78. Prior to the forensic review, Metricolor's counsel never advised L'Oréal of the results of any investigation into MC000093-94.

79. On October 11, 2021, Rand Brenner produced through Metricolor's counsel documents responsive to L'Oréal's subpoena to Mr. Brenner. Martinelli Decl. ¶ 67 & Ex. 60, 10/11/21 Email from Y. Nakano attaching R. Brenner documents.

80. Metricolor's knew MC000093-94 was not authentic before it was introduced as an exhibit in Mr. Brenner's deposition. Martinelli Decl. ¶ 46 & Ex. 39, 10/13/21 Brenner Tr. at 91:11-99:20.

81. Metricolor's counsel, Mr. Martorell, knew MC000093-94 was not an authentic document created in 2014 before it was introduced as an exhibit in Mr. Brenner's deposition. Martinelli Decl. ¶ 46 & Ex. 39, 10/13/21 Brenner Tr. At 91:11-99:20.

82. Metricolor's counsel, Mr. Martorell, relied on his knowledge that MC000093-94 was created during this litigation to support his claim during the Brenner deposition that MC000093-94 was work product:

> MR. MARTORELL: Ms. Colt, I meant to meet and confer. Why don't – I didn't mean to. I'm going to meet and confer with you about this document and several other documents. This document is attorney work product that we're going to claw back. I will allow questioning to proceed on it, but it's attorney work product that shouldn't have been produced.
> MS. COLT: Okay. We can absolutely meet and confer on this. Your own client was questioned about this and testified that he drafted this document.
> MR. MARTORELL: Right. Pursuant to attorney instruction.
> MS. COLT: And dated it October 23rd, 2014?
> MR. MARTORELL: Right.
> MS. COLT: You directed him to date it October 23rd, 2014?
> MR. MARTORELL: No. Of course not.
> MS. COLT: Right. Okay. Well –
> MR. MARTORELL: We'll meet and confer about it. Go ahead and ask your questions.

Martinelli Decl. ¶ 46 & Ex. 39, 10/13/21 Brenner Tr. at 95:3-96:17.

83. Metricolor's counsel did not inform L'Oréal that MC000093-94 was created during the litigation until after Rand Brenner testified as to authenticity of the real contemporaneous document upon which MC000093-94 was based.

84. Metricolor produced MC000043-46 and MC000047 in January 2021. French Decl. ¶¶ 31, 33.

85. **MC000047** states: "Comparison of Tube Packaging VS. METRICOLOR First Generation Prototype* / *First generation prototype

components including a poly-plastic container and standard orifice reducer and syringe. The following are actual packaging costs quotes provided by our suppliers of each packaging component, based on projected orders of 2.5 million component units per year: COMPONENTS PACKAGING COST: First generation prototype @ units order •Poly-plastic container (8 oz) is ................$ .03 unit; •Standard orifice reducer......................$.03. unit; Total packaging cost. $.06 per unit." Martinelli Decl. ¶ 8 & Ex. 2.

86. On September 22, 2021, when asked whether he could have created MC000047 "after the litigation started," Sal D'Amico testified, "I doubt it." Martinelli Decl. ¶ 42 & Ex. 35, 9/22/21 Sal D'Amico Tr. At 309:20-23.

87. Forensic review confirms that the oldest version of MC000047 on Sal D'Amico's computer is from August 2021. French Decl. ¶¶ 31-32. Forensic review confirms MC000043-46 was **created** in April 2016 through November 2017, months after Metricolor's meetings with L'Oréal ended. French Decl. ¶ 33.

88. Forensic review confirms that the original of MC000047 was spoliated sometime between September 25, 2021 and December 2, 2021, the date on which the iPad was forensically imaged. French Decl. ¶ 32. Forensic review also uncovered that during the litigation, in December 2020, Sal D'Amico altered MC000043-46 to add the statement that it was "11/23/15 Presented R&D Results to L'Oréal/Matrix." French Decl. ¶ 33.

89. Metricolor claimed that MC000047 was work product created during this litigation on April 22, 2022. Martinelli Decl. ¶ 62 & Ex. 55, ECF 157-8.

### E. Metricolor's "Secrets" Are Not Secret

90. U.S. Pat. No. 7,407,055 to Rodriguez (cited in Metricolor's patent) discloses a hair coloring kit, including a syringe and a non-sealing orifice reducer.

91. U.S. Patent No. 9,301,587 to D'Amico (the '587 Patent") discloses the use of syringes and orifice reducers and semi-rigid poly plastic containers.

- ‘587 at 3 (“In another embodiment an orifice reducer along may be used”);
- ‘587 Patent at 4 (“FIG. 14 shows an orifice reducer to be incorporated into the neck of a hair dye container”);
- ‘587 Patent at 4-5 (“REFERENCE NUMBERS . . . 42. Orifice Reducer”);
- ‘587 Patent at 5:16-17 (“A second container design includes a self-sealing orifice reducer 42 (see FIG. 14) that creates an airtight seal.”

92. The content of the ’587 Patent is not “confidential information” under the NDA because it was published prior to the commencement of the parties’ discussions. ECF 49 at 5, *Metricolor LLC v. L’Oréal S.A.*, 791 F. App’x 183, 186 (Fed. Cir. 2019) (“The parties do not dispute on appeal that the content of the ’587 patent application is not ‘Confidential Information’ under the NDA because it was published prior to commencement of the parties’ discussions.”)

93. The ’587 Patent discloses “Another container design (not shown) may be included for developer and hold approximately 33 oz. Although preferred embodiments of the present invention have been shown and described, various modifications and substitutions may be made thereto without departing from the spirit and scope of the invention.” ECF1-1 at 16, ’587 Patent at 8:22-27.

94. The ’587 Patent discloses that in one embodiment of the Metricolor system, “the opening and the syringe may be equipped with a luer-lock arrangement and the opening include a shut-off valve similar to an IV bag. **In another embodiment, an orifice reducer alone may be used.**” ECF 1-1 at 14, ’587 Patent at 3:20-24.

95. The ’587 Patent discloses that “FIG. 14 shows an **orifice reducer to be incorporated into the neck of a hair dye container**.”




FIG. 14

ECF 1-1 at 14, ’587 Patent at 4:55-56.

96. Claim 14 of the ’587 Patent discloses:

14. A method of coloring hair, comprising the steps of: providing a first container having a quantity of hair dye contained therein; providing a first opening in the first container with an air-tight re-closable seal on the first container; providing a graduated measuring and dispensing vessel capable of holding a predetermined quantity of hair dye; accessing the first opening with the graduated measuring and dispensing vessel and withdrawing a first predetermined quantity of hair dye from the first container; dispensing the first predetermined quantity of hair dye into a mixing bowl; providing a second container having a quantity of hair dye contained therein; providing a second opening in the second container with an air-tight re-closable seal on the second container; accessing the second opening with the graduated measuring an dispensing vessel and withdrawing a second predetermined quantity of hair dye from the second container; dispensing the second predetermined quantity of hair dye into the mixing bowl; and mixing the first predetermined quantity of hair dye and second predetermined quantity of hair dye together. ECF 1-1 at 17.

97. Rodriguez discloses the use of a 2 tsp. ~10 ml catheter syringe (41) with a narrow tip with an orifice reducer with hair dye.



ECF 33-1 at 6, Rodriguez Patent at 5:8-21.

98. Rodriguez discloses the use of a syringe (41) with an orifice reducer (78) inserted into a bottle (28) for hair care:

> Another kit component is a bottle stopping device comprising a recloseable bottle stopper 78 which includes a longitudinally tapered, resilient body 80 of circular cross-section made of a rubber-like material, and an integral recloseable cap 82 of a disk-shape attached to the body 80 by a connecting strap 84. An outer surface 86 of the body 80 is annularly stepped for closely fitting within the necks 34 of variously sized bottles 28 containing the fixing solution 30 after the screw cap 32 is removed. A longitudinal bore 88 extends through the body 80 to allow the fixing solution 30 to flow therethrough. An externally opening portion (not shown) of the bore 88 is of such a size to closely receive the needle 70 of the small syringe 58.






ECF 33-1 at 6, Rodriguez Patent at 5:22-34.

99. Rodriguez claims a "hair roots coloring kid for mixing together standard hair coloring materials . . . comprising a syringe having a hollow body adapted to closely receive a slidable plunger having a resilient sealing piston, said body having a transparent tubular mid-section with a measuring indicia and an elongate tapered needle adapted to be closely received within necks . . . and a bottle stopper which includes a longitudinally tapered, resilient body of circular cross-section and a recloseable cap, said body being adapted to closely fit within the necks of variously sized bottles and having a longitudinal bore which extends through said body, an externally opening portion of said bore being of such size to closely receive the tapered needle of the syringe to receive the hair coloring composition contained therein in the form of a liquid upon inverting the bottle" ECF 33-1 at 9, Rodriguez Patent at 12:29-42, 12:55-64.

100. Rodriguez discloses the use of a ~10 ml catheter syringe to withdraw hair product from a container: "The large syringe 40 includes a hollow body 41 which closely receives a slidable plunger 42. The body 41 is made of plastic having

a transparent tubular mid-section 44 with a measuring indicia 46, a pair of finger engaging tabs 48, and a tapered needle 50 sized to be closely received"



ECF 33-1 at 5, Rodriguez Patent at 4:57-63.

101. The '587 Patent discloses "A catheter syringe is inserted into the orifice reducer 42 to withdraw the required amount of color according to a formula." ECF 1-1 at 16, '587 Patent at 8:17-19.

102. At least as early as March 2006, Comar's public website displayed the use of orifice reducers (also known as press-in bottle adapters) inserted into plastic bottles, with 10 ml catheter syringes (also known as oral dispensers), which orifice reducers, plastic bottles, and 10 ml syringes Comar offered for sale:




Martinelli ¶ 43 & Ex. 36, Hall Decl. ¶ 7 & Ex. B.

103. There also is no evidence that L'Oréal misappropriated any of Metricolor's confidential or trade secret information.

**F. <u>Metricolor Has No Documentary Evidence It Ever Disclosed Its Claimed Trade Secrets To L'Oréal.</u>**

104. No authentic document in any party's production evidences any disclosure by Metricolor to L'Oréal of the use of a 10 ml syringe, standard (i.e.,

non-self-sealing) orifice reducers, or the pricing or testing of any of these components.

105. No authentic document in any party's production evidences any disclosure by Metricolor to L'Oréal that it used Comar as a supplier.

106. No authentic document in any party's production evidences that Metricolor sent samples of its product to L'Oréal for testing.

107. Authentic documents evidence that Metricolor refused to send any samples of its product to L'Oréal. *See,* Martinelli Decl. ¶ 25 & Ex. 18, L0031544.

108. The alterations to MC00093-94 sought to demonstrate Metricolor's alleged disclosure of a standard orifice reducer and the associated cost to L'Oréal. Martinelli Decl. ¶ 60 & Ex. 53, ECF 157-2.

109. Metricolor claims that using Comar as a supplier for syringes and orifice reducers is its trade secret. Martinelli Decl. ¶ 63 & Ex. 56, Metricolor Rog Response No. 1.

110. The alterations to MC000613 sought to demonstrate Metricolor's alleged disclosure of its use of Comar as a supplier to L'Oréal. Martinelli Decl. ¶ 59, & Ex. 52, ECF 157-1.

111. Metricolor's first documented engagement with Comar is April 8, 2016. COMAR0004; COMAR0022-23; COMAR0024; MC000613 "new supplier, COMAR."

112. Metricolor's NDA with Comar is dated April 11, 2016. COMAR0017.

113. The creation of MC000047 sought to demonstrate the existence of Metricolor's alleged first generation prototype, comprising standard orifice reducers. ECF 157-4.

114. Metricolor claims that privately curated market research information is its trade secret. Metricolor claims insights and responses regarding salon color mixing practices, the waste of hair color product at salons, and average salon costs

on hair color products are its trade secrets. Martinelli Decl. ¶ 63 & Ex. 56, Metricolor Rog Response No. 1.

**G. <u>Metricolor Has No Documentary Evidence that Any Secret Was Disclosed to L'Oréal.</u>**

115. No documentary evidence exists supporting that Metricolor disclosed to L'Oréal anything related to a "short tipped" 10 mL syringe.

116. No documentary evidence exists supporting that Metricolor disclosed to L'Oréal anything relating to a standard, off-the-shelf orifice reducer.

117. No documentary evidence supports that Metricolor disclosed to L'Oréal the added value of utilizing Metricolor's network of suppliers and manufacturers in creating and selling a syringe measured dispensing system for beauty products.

118. No documentary evidence supports that Metricolor disclosed to L'Oréal that Comar was a supplier to Metricolor.

119. No documentary evidence supports that Metricolor provided sample syringes to L'Oréal. As a statement of a negative proposition, no citation is available.

120. On June 30, 2021, L'Oréal requested native documents with metadata for multiple documents Metricolor had produced, including MC000613. Metricolor did not produce any document whose contents corresponded to the document it had produced as MC000613. Martinelli Decl. ¶ 64 & Ex. 57, June 30, 2021 Deficiency Letter to E. Martorell.

121. On July 23, 2021, L'Oréal again requested the native documents with metadata for multiple documents Metricolor had produced, including MC000613. Metricolor did not produce any document whose contents corresponded to the document it had produced as MC000613. Martinelli Decl. ¶ 65 & Ex. 58, July 23, 2021 Deficiency Letter to E. Martorell.

122. On September 24, 2021, L'Oréal informed Metricolor that MC000613 appeared fabricated, and that MC000093-94 could have been drafted "even after the litigation began." L'Oréal requested immediate production of metadata and suggested forensic analysis would be necessary if the metadata could not be produced. Metricolor never responded to the letter. Martinelli Decl. ¶ 53 & Ex. 46, ECF 114-3 at 2 ("Your client appears to have fabricated evidence.")

123. On October 15, 2021 at 11:16 AM PT, Metricolor knew that Sal D'Amico "did not send" MC000613 to L'Oréal. On October 15, 2021, Sal D'Amico took a photo of MC000613 with his notes "Cut + pasted +printed only. Did not send." Martinelli Decl. ¶ _60 & Ex. 53, ECF 157-2, Ex. 1.i, BRG 902.

124. On October 15, 2021 at 11:36 AM PT, Metricolor's counsel, Eduardo Martorell knew that Sal D'Amico "did not send" MC000613 to L'Oréal. Martinelli Decl. ¶ 68 & Ex. 61, 7/8/22 Hrg. Tr. at 26:25-27:3.

125. On October 15, 2021 at 2:43 PM PT, Eduardo Martorell, counsel for Metricolor, met and conferred for 49 minutes with counsel for L'Oréal regarding the substance of L'Oréal's application for forensic review on October 15, 2021 at 5:43 PM ET. Mr. Martorell opposed L'Oréal's request and did not say that MC000613 was fake and had not been sent to L'Oréal. Martinelli Decl. ¶ 69.

126. On October 22, 2021, L'Oréal applied, *ex parte*, for forensic review of Metricolor's fabricated evidence. Martinelli Decl. ¶ 51 & Ex. 44, ECF 109.

127. On October 26, 2021, Metricolor opposed L'Oréal's request for a forensic review. Martinelli Decl. ¶ 52 & Ex. 45, ECF 114.

128. On November 15, 2021, L'Oréal applied, *ex parte*, for an order that Metricolor immediately produce for forensic imaging its devices used in creating the suspicioius documents. Martinelli Decl. ¶ 55 & Ex. 48, ECF 129

129. On November 18, 2021, Metricolor opposed L'Oréal's collection of Metricolor's devices. Martinelli Decl. ¶ 56 & Ex. 49, ECF 131

130. On December 10, 2021, L'Oréal applied, ex parte, for an order regarding the forensic protocol to proceed with the imaging of Metricolor's devices used in creating the suspicious documents. Martinelli Decl. ¶ 57 & Ex. 50, ECF 137

131. On December 14, 2021, Metricolor opposed L'Oréal's third *ex parte* request. Martinelli Decl. ¶ 58 & Ex. 51, ECF 138.

## II. Conclusions of Law

1. Metricolor was not a party to any NDA with L'Oréal, a requirement for its breach of contract and breach of the implied covenant of good faith and fair dealing claims, therefore, summary judgment for L'Oréal is warranted on Metricolor's contract claims. *Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 723 (9th Cir. 2017).

2. None of Metricolor's alleged confidential or trade secret information was in fact confidential or secret because it was all publicly available and readily ascertainable, a required element for all of Metricolor's claims, therefore summary judgment for L'Oréal is warranted on all of Metricolor's claims. 18 U.S.C. § 1839; Cal. Civ. Code § 3426.1; *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997); *Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x 701, 705 (Fed. Cir. 2021); *Heinemann v. Computer Assocs. Int'l, Inc.*, 171 F. App'x 704, 708 (9th Cir. 2006); *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2022 WL 2304287, at *2 (N.D. Cal. June 27, 2022); *GENFIT S. A. v. CymaBay Therapeutics Inc.*, 2022 WL 195650, at *3 (N.D. Cal. Jan. 21, 2022); *Whiteslate, LLP v. Dahlin*, No. 20-CV-1782 W (BGS), 2021 WL 2826088, at *5 (S.D. Cal. July 7, 2021); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1112–13 (N.D. Cal. 2012).

3. There is no evidence Metricolor ever disclosed any allegedly confidential or trade secret information to L'Oréal, a required element for all of Metricolor's claims, therefore summary judgment for L'Oréal is warranted on all of

Metricolor's claims. 18 U.S.C. § 1839; Cal. Civ. Code § 3426.1; *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997); *Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x 701, 705 (Fed. Cir. 2021); *Heinemann v. Computer Assocs. Int'l, Inc.*, 171 F. App'x 704, 708 (9th Cir. 2006); *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2022 WL 2304287, at *2 (N.D. Cal. June 27, 2022); *GENFIT S. A. v. CymaBay Therapeutics Inc.*, 2022 WL 195650, at *3 (N.D. Cal. Jan. 21, 2022); *Whiteslate, LLP v. Dahlin*, No. 20-CV-1782 W (BGS), 2021 WL 2826088, at *5 (S.D. Cal. July 7, 2021); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1112–13 (N.D. Cal. 2012).

4. There is no evidence L'Oréal ever used any of Metricolor's allegedly confidential or trade secret information, a required element for all of Metricolor's claims, therefore summary judgment for L'Oréal is warranted on all of Metricolor's claims. 18 U.S.C. § 1839; Cal. Civ. Code § 3426.1; *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997); *Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x 701, 705 (Fed. Cir. 2021); *Heinemann v. Computer Assocs. Int'l, Inc.*, 171 F. App'x 704, 708 (9th Cir. 2006); *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2022 WL 2304287, at *2 (N.D. Cal. June 27, 2022); *GENFIT S. A. v. CymaBay Therapeutics Inc.*, 2022 WL 195650, at *3 (N.D. Cal. Jan. 21, 2022); *Whiteslate, LLP v. Dahlin*, No. 20-CV-1782 W (BGS), 2021 WL 2826088, at *5 (S.D. Cal. July 7, 2021); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1112–13 (N.D. Cal. 2012).

5. Metricolor has not proved L'Oréal misappropriated any trade secret or breached any contract, required elements for all of Metricolor's claims, therefore summary judgment for L'Oréal is warranted on all of Metricolor's claims. 18 U.S.C. § 1839; Cal. Civ. Code § 3426.1; *Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 723 (9th Cir. 2017); *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir.

2020); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997); *Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x 701, 705 (Fed. Cir. 2021); *Heinemann v. Computer Assocs. Int'l, Inc.*, 171 F. App'x 704, 708 (9th Cir. 2006); *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2022 WL 2304287, at *2 (N.D. Cal. June 27, 2022); *GENFIT S. A. v. CymaBay Therapeutics Inc.*, 2022 WL 195650, at *3 (N.D. Cal. Jan. 21, 2022); *Whiteslate, LLP v. Dahlin*, No. 20-CV-1782 W (BGS), 2021 WL 2826088, at *5 (S.D. Cal. July 7, 2021); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1112–13 (N.D. Cal. 2012).

Dated: July 22, 2022

ORRICK, HERRINGTON &
SUTCLIFFE LLP

By: */s/ Angela Colt*
Angela Colt

*Attorneys for Defendants*
L'Oréal USA, Inc.,
L'Oréal USA Products, Inc.,
L'Oréal USA S/D, Inc., and
Redken 5th Avenue NYC, LLC