UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|---|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SANCTIONS (Dkt. 169, filed on July 22, 2022)

## I.     INTRODUCTION

Presently before the Court is defendants' motion for summary judgment on plaintiff's first amended complaint and defendants' motion for terminating sanctions to be issued against plaintiff. The history of this case is long and well-known to the parties, so the Court will omit the procedural posture leading up to 2019 and start with plaintiff's first amended complaint.

On January 6, 2020, upon reassignment and remand from the Federal Circuit, this Court granted Metricolor leave to amend its complaint. Dkt. 56. On March 6, 2020, Metricolor filed its first amended complaint against L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, LLC (collectively, "defendants" or "L'Oréal"). Dkt. 57 ("FAC"). The FAC asserts the following claims: (1) breach of contract; (2) misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"); (3) breach of the implied covenant of good faith and fair dealing; (4) violation of the California Unfair Competition Law ("UCL"); (5) breach of confidence; and (6) misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act ("CUTSA"). See generally id.

On July 7, 2020, the Court granted in part defendants' motion to dismiss the FAC, dismissing plaintiff's fifth claim for breach of confidence without prejudice but otherwise denying the motion in all other respects. Dkt. 81.

On July 21, 2020, defendants answered the FAC. Dkt. 73. Additionally, defendants filed a counterclaim and third-party complaint against plaintiff and Salvatore

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|---|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

D'Amico and Stephen D'Amico (together, the "D'Amicos"). Defendants asserted counterclaims for breach of contract and declaratory relief. Id.

On September 22, 2020, plaintiff Metricolor and the D'Amicos filed a motion to dismiss L'Oréal's first counterclaim and third-party claim for relief. Dkt. 92. On October 6, 2020, the Court dismissed L'Oréal's first counterclaim for relief upon stipulation of the parties. Dkt. 98.

The parties took discovery between 2020 and 2021, with the fact discovery cut-off set for October 15, 2021. Dkt. 106. In response to L'Oréal's document requests, Metricolor produced a single 5,387-page PDF bearing Bates stamps MC000001 through MC005387 on January 29, 2021. The parties took depositions of witnesses, including in relevant part the August 18, 2021 deposition of Marta Wolska-Brys, the August 27, 2021 deposition of Scott Schienvar, the September 22, 2021 deposition of Salvatore D'Amico, and the October 11, 2021 deposition of Stephen D'Amico. See Dkt. 170.

As set forth in further detail below, during the course of these depositions, defendants came to believe that certain of Metricolor's documents were inauthentic. On September 24, 2021, defendants informed plaintiff of their belief that several documents seemed likely fabricated or altered after litigation began. See Dkt. 114-3.

On October 22, 2021, defendants filed an *ex parte* application to suspend all case deadlines pending forensic investigation of the suspected altered documents. Dkt. 109.

On November 1, 2021, the Court denied defendants' *ex parte* application and gave plaintiff 24 hours to decide whether to proceed with either a special master or for the parties to coordinate using defendants' selected forensic expert, Paul French. See Dkt. 128. Plaintiff chose not to seek appointment of a special master. Dkt. 126.

On November 11, 2021, and December 10, 2021, defendants filed additional *ex parte* applications to require the forensic investigation take place immediately after the breakdown in communications between the parties. Dkts. 129, 137. On November 22, 2021, and December 20, 2021, the Court repeatedly ordered the parties to meet and confer regarding the forensic investigation and to establish a joint protocol for review Dkts. 135, 143.

On December 22, 2021, the parties lodged a joint proposed forensic inspection protocol, which the Court adopted. Dkts. 144, 145.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|----------|----------------------|---|------|-------------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

After Paul French completed the forensic inspection, the parties submitted a status report on April 22, 2022, in advance of the Court's status conference and determination of any privilege claims in connection to the review. Dkt. 154. On May 17, 2022, the parties submitted a joint Rule 26(f) report. Dkt. 157.

On July 12, 2022, the Court ordered plaintiff to produce certain documents it had withheld pursuant to privilege claims.[1] Dkt. 166. The Court also set a briefing schedule for defendants to file a motion for summary judgment and for sanctions.

On July 22, 2022, defendants filed the instant motion for summary judgment and sanctions. Dkt. 169 ("Mot."). On September 9, 2022, plaintiff filed an opposition. Dkt. 198 ("Opp."). On September 23, 2022, defendants filed a reply. Dkt. 215 ("Reply").

On October 24, 2022, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Unless otherwise noted, for the purposes of this subsection, the Court references only facts that are uncontroverted.

Plaintiff Metricolor was founded by hairstylist Stephen D'Amico and his father, Salvatore ("Sal") D'Amico. Dkt. 71. The D'Amicos developed "the Metricolor System," which stores, formulates, and dispenses hair coloring agents and additives using airtight containers and a graduated syringe. Id. The parties dispute the specifics of the Metricolor System. Plaintiff describes "two generations" of the Metricolor System: the first-generation system (with asserted trade secrets at issue) including "a plastic bottle, a standard (i.e., non-self-sealing) orifice reducer, and a syringe," and the second-generation system subject to Metricolor's patent that includes "a flexible pouch, a self-sealing orifice reducer that prevents oxidation of the pouch contents, and a syringe." Opp. at 2. Defendants contend that plaintiff relies on an "undefined" delineation of the Metricolor

---

[1] The withheld documents at issue in the Court's July 12 Order, BRG_291, BRG 314, BRG 374/BRG 790, and BRG 903, differ from the four documents produced by plaintiff during discovery, MC000613, MC000093–94, MC000047, and MC000043–46, that now form the basis of defendants' instant motion for sanctions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|---|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

System in "an attempt to confuse disclosures of its patented system as disclosure for its purported trade secret." Reply at 9.

Stephen D'Amico filed a provisional patent application relating to the Metricolor System on January 14, 2013, and on October 7, 2013. He then filed a patent application on January 14, 2014, which issued on April 5, 2016 as U.S. Patent No. 9,301,587 (the '587 Patent"). See Dkt. 170, Ex. 41. The '587 Patent discloses the use of syringes, self-sealing orifice reducers and semi-rigid poly plastic containers. Additionally, D'Amico's patent application included a prior art reference to U.S. Patent No. 7,407,055 (the "Rodriguez Patent") issued on August 5, 2008, which discloses a hair coloring kit that includes bottles, a 10 ml plastic catheter syringe and a standard, non-self-sealing orifice reducer. See id.; Dkt. 170, Ex. 42.

On July 10, 2014, the D'Amicos met and spoke over the phone with Pat Parenty, President of the Professional Products Division at L'Oréal USA, to discuss the Metricolor System. See Dkt. 212 ("Statement of Disputed Facts" or "SDF"), ¶¶ 17–18. In a follow up email on July 10, 2014, Sal D'Amico sent Pat Parenty a video clip of the Metricolor System, which did not disclose trade secrets. See SDF, ¶ 20; accord SUF, ¶¶ 3–4.

On August 25, 2014: Sal and Stephen D'Amico each signed mutual non-disclosure agreements with L'Oréal. See SDF, ¶ 5 (citing Dkt. 1-1, Ex. B).

On October 9, 2014, the D'Amicos met with Pat Parenty, Vice President of Operations for New Product Development Scott Schienvar, and Senior Vice President of Education for the Professional Products Division Christine Schuster in-person at L'Oréal's office in New York. SDF, ¶¶ 21–23. During the meeting, the D'Amicos presented a PowerPoint in which slide 14, entitled "Alternate Packaging Option" depicting "plastic bottles of a type used in the first-generation Metricolor System rather than pouches from the second-generation Metricolor System."[2] Id., ¶ 25 (citing Martorell Decl. Ex. M).

In October 2014, Pat Parenty sent L'Oréal product line samples for the D'Amicos to conduct testing with the Metricolor System. During this process, the D'Amicos

---

[2] Defendants do not dispute the fact of the PowerPoint slide, but rather they argue that the slide does not disclose a trade secret because it discloses an aspect from the '587 Patent. See Reply at 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|----------|----------------------|---|------|-------------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

emailed Pat Parenty, Scott Schienvar, and other L'Oréal employees updates on discussions they had been having with the manufacturer of the self-sealing cap, as well as news that "[w]e have already found and ordered a syringe with a shorter tip which should work very well."[3]  SDF, ¶ 35 (citing Martorell Decl., Ex. B).

On February 19, 2015, the D'Amicos met with Scott Schienvar and Mariko Rex, Senior Vice President for Global Marketing of L'Oréal's brand "Matrix," in-person at L'Oréal's office in New York.[4]  SDF, ¶¶ 42–43.

On September 30, 2015, the D'Amicos spoke by phone to Scott Schienvar, Mariko Rex, and Dan Bethelmy Rada.  SDF, ¶ 46.

On November 23, 2015, the D'Amico's met in person in New York with Scott Schienvar, Dan Bethelmy-Rada, and L'Oréal USA Vice President of Packaging and Development Stephanie Martins. SDF, ¶ 47.

On March 28, 2016, Marta Wolska-Brys at L'Oréal emailed Sal D'Amico to request exclusivity rights to evaluate the Metricolor System and asked for Metricolor to send L'Oréal samples.  SDF, ¶ 55; accord SUF, ¶ 15.

On March 29, 2016, 2016, Sal D'Amico responded "your request to have our packages filled with your formulas will not be possible at the present time."  SUF, ¶ 16.

In June 2016, L'Oréal ended discussions about the Metricolor System.  SDF, ¶ 56.

In September 2016, L'Oréal, through its Professional Products Division, launched the accused Matrix Bond Ultim8 and Redken pH-Bonder products.  SDF, ¶ 57, 65.  These hair color products contained a plastic bottle with a standard orifice reducer and Comar 10mL catheter syringe.  SDF, ¶ 58.

---

[3] Defendants dispute that the syringe described is specifically a Comar 10ml syringe asserted as part of plaintiff's trade secrets.

[4] Defendants claim generically that "other attendees" were present for the February 2015, September 2015, and November 2015 meetings, see SDF, ¶¶ 44, 46, 47, but this does not appear to be material to the lawsuit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|---|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

## III.    LEGAL STANDARD

### A.    Terminating Sanctions

The Ninth Circuit has established a five-part test to determine the appropriateness of a case-dispositive sanction: "(1) The public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007).

The most critical factor to be considered in case-dispositive sanctions is whether "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." Id. at 1097. "Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate." Id.

Additionally, "only 'willfulness, bad faith, and fault' justify terminating sanctions." Id. at 1096 (citing Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003)). "Incompetence, however, is not bad faith." United States v. HVI Cat Canyon, Inc., No. CV 11-5097 FMO (RZX), 2015 WL 12766161, at *2 (C.D. Cal. Nov. 20, 2015). Such incompetence can include incredibly "serious blunder[s]." Id. (internal citation omitted).

### B.    Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see Celotex, 477 U.S. at 324. Summary judgment must be granted for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|----------|----------------------|---|------|-------------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631, 631 n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   MOTION FOR TERMINATING SANCTIONS

### A.   Litigation Conduct Giving Rise to Defendants' Motion for Sanctions

Defendants seek terminating sanctions against plaintiff on the basis of the conduct of the D'Amicos and plaintiff's counsel during litigation relating to plaintiff's produced documents MC000613, MC000093–94, MC000047, and MC000043–46. Forensic review conducted by Paul French, as described above, determined that these four documents produced by plaintiff in response to defendants' discovery requests contained edits including deletions and insertions made after litigation in the case began. The Court addresses the development of each document in turn.

#### 1.   MC000613

MC000613 arose out of the email exchange between Wolska-Brys and Sal D'Amico described above. On March 28, 2016, Wolska-Brys had emailed D'Amico notifying him that L'Oréal was still working on finalizing their evaluation agreement to send over, but "in the meantime . . . we will be asking you to supply 10 filled samples . . . Could you please let me know how long it will take on your end to prepare samples from the date you will receive our formulation?" Dkt. 189-3. In response, on March 29, 2016, Sal D'Amico wrote that "your request to have our packages filled with your formulas will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|---|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

not be possible at the present time" because of Metricolor's discussions with other companies in Metricolor's "patented technology."  Id.

According to Paul French's forensic review, MC000613 was created on March 16, 2020, weeks after the first amended complaint in the litigation was filed, but that the date on the face of the document is March 29, 2016.  Dkt. 189-5 ("Paul French Decl.") at 3–4. MC000613 has Sal D'Amico's March 29, 2016 email (declining to send L'Oréal samples of the Metricolor System) deleted and replaced with the following new text:

> Hi Marta,
>
> Unfortunately, our current prototype consists of only 10 containers, two types of orifice reducers (standard with hole and self-closing) and two catheter syringes we use (small 10 ml from our new supplier, COMAR and a large Toomey catheter syringe), depending on the several weeks for our manufacturer to produce.
>
> In the meantime, I can send to you only one of the 10 prototypes and two types of sample orifice reducers and syringes to your address below. You can fill a plastic container or the pouch with your least viscous product of developer by using the syringes to dispense the product into the container/pouch. Please don't [sic] hesitate to contact me if you have any questions.

Dkt. 171, Ex. 4.

On January 29, 2021, Metricolor produced MC000613 as part of its document production.  Dkt. 170, ¶ 6.  As part of that same production, Metricolor also produced PDF versions of the March–April 2016 email exchange containing the authentic messages.  Dkt. 198-7, Exs. W, X.  On July 15, 2021, Metricolor produced the authentic, native version of the email.  Dkt. 157-1.

On August 18, 2021, Wolska-Brys testified at her deposition that she "did not recall" seeing MC000613 and did not receive samples.  Dkt. 189-3, Ex. 31.

On September 22, 2021, Sal D'Amico testified that he drafted MC000613 in 2016 and may have sent it to Wolska-Brys at that time but "[doesn't] know."  Dkt. 189-3, Ex. 35.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | November 16, 2022 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

On September 24, 2021, defendants informed plaintiff that several documents, including MC000613, appear to be inauthentic and likely fabricated or altered after litigation began.  See Dkt. 114-3.

On October 15, 2021, Sal D'Amico accessed a copy of MC000613 and took a photo of handwritten notes on the document stating "Cut + pasted + printed only. Did not send."  Dkt. 198-2, Ex. H.[5]

At the Court's status conference regarding forensic review on February 25, 2022, Metricolor claimed MC000613 as work product.  Dkt. 149.

The disputed MC000613 was written to record Sal D'Amico's contention that he sent samples of the first-generation Metricolor System to L'Oréal.  L'Oréal and its witnesses dispute that it ever received the samples.  Nevertheless, it appears that since the inception of litigation, Sal D'Amico has maintained that he provided samples to L'Oréal. The content contained in MC000613 would accordingly bolster plaintiff's factual allegations if used in the plaintiff's case-in-chief.

Plaintiff's explanation for MC000613 submitted as part of this briefing is that Sal D'Amico remembered having followed up with Wolska-Brys after the March 28–29, 2016 email exchange.  After stating initially that he could not send samples at that time, he claims that he spoke with Wolska-Brys by phone and agreed to send other samples to L'Oréal.  Opp. at 15 (citing SDF, ¶¶ 103–105).  He thought he had sent another follow up

---

[5] At the hearing, plaintiff's counsel objected to defendants' reliance on document BRG_902 in connection to the instant motions on the ground that it is privileged. Besides the fact that plaintiff itself relied on BRG_902 in its briefing—see Opp. at 18, SDF, ¶ 136, Dkt. 198-2, ¶ 17, Ex. H—and the fact that this issue was only first raised after plaintiff had arguably waived its privilege in so doing, the Court recognizes that it has previously found an identical exhibit, BRG_903, to be privileged.  Dkt. 166 ("Metricolor's decision to withhold BRG_903 is appropriate, and Metricolor need not produce this document.").  However, plaintiff did not assert privilege as to BRG_902 before the October 24, 2022 hearing.  Because plaintiff has extensively relied on BRG_902 in connection to the instant motions, the Court finds it inappropriate to fault defendants for relying upon the same document.  Notwithstanding the foregoing, because BRG_902 is identical to BRG_903, the Court finds that absent waiver, which the Court does not decide at this time, BRG_902 is privileged.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | November 16, 2022 |
|----------|----------------------|------|-------------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

email describing the samples he agreed to send her, and "[u]nable to find that email, he recreated it by typing the body of the email he thought he had sent and attaching the header of the actual March 29, 2016 email."  According to plaintiff:

> He taped the header and text to a piece of paper and photocopied the page to create a composite hard copy.  In order to have a record of what he believed he had communicated to Ms. Wolska-Brys, he put the document into a folder he was using to collect information related to L'Oréal.  He intended the document only for internal use, not for production to L'Oréal or use as evidence.

Id.  Thereafter, plaintiff claims that eight months later, in November 2020, D'Amico delivered to plaintiff's counsel "two thick folders of L'Oréal-related documents."  Id. at 16.  D'Amico states that he had not thought about the original email or his recreation of the email for the eight months between March 2020 and November 2020, and "Metricolor's counsel, not realizing the document was reconstructed, produced it as MC000613."  Id.

As to subsequent usage of MC000613, plaintiff states that it made no use of the document during the litigation, including the August 2021 deposition of Wolska-Brys, where it was defendants' counsel who asked her whether she identified or received the document.  Id. at 17.  Additionally, as to Sal D'Amico's September 2021 deposition testimony about MC000613, "Sal did erroneously testify that he had typed the text of MC000613 in 2016, but he believed that to be true when he gave that testimony" because he was "understandably confused" about the document.  Id. at 18.  According to plaintiffs, it was only by October 15, 2022, that Sal D'Amico had realized that MC00613 "was not an email he had sent but rather a document he had created ('cut + pasted + printed') during the litigation."  Id. citing (Dkt. 198-2, ¶ 17, Ex. H).

2.    MC000093–94

MC000093–94 arose out of a November–December 2014 email chain between the D'Amicos, Pat Parenty, Rand Brenner, and several other individuals.  Dkt. 171-1, Ex. 9. In the email chain, Sal D'Amico emailed Pat Parenty the results of the 2014 product field testing described above.  Specifically, D'Amico attached a document entitled "RESULTS OF PRODUCT FIELD TESTING AND METRICOLOR PACKAGING COSTS."  In relevant part, the product field testing page contains an asterisk note that for the high

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|----------|----------------------|---|------|-------------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

viscosity test, "*Due to the high viscosity of this product, a new self-closing valve with a larger port was incorporated into fitment of the pouch in order to accommodate a catheter tip syringe with a wider tip." Moreover, the packaging costs page lists the cost of "Self-sealing, non-leak orifice reducer." Id.

According to Paul French's forensic review, MC000093–94 was created on November 4, 2020, although the date on the face of the document is October 23, 2014. Paul French Decl., at 5. MC000093–94 is a version of the Results of Product Field Testing document attachment above, but with additions to it. For one, it lists a date of October 23, 2014 (where the original document was undated). Dkt. 171, Ex. 3. Additionally, it adds information purporting to indicate that low viscosity liquid "developer/peroxide" "dispensed easiest and accurately" with an added asterisk footnoted "2. Developer contained in plastic container with push-in standard orifice reducer. Most efficient and less costly. Id. Finally, on the packaging costs, it adds a parenthetical to the "Self-sealing, non-leak orifice reducer" cost above "(standard orifice reducer for Developer less costly … .03 cents a unit)." Id.

On January 29, 2021, Metricolor produced MC000093–94 as part of its document production to defendants. Dkt. 170, ¶ 6. On March 17, 2021, defendants asked plaintiff to produce the email attachments for the underlying email thread. See Dkt. 114-2.

On August 27, 2021, at the deposition of Scott Schienvar, plaintiff's counsel introduced MC000093–94 as Exhibit 99 as an email attachment sent in 2014. Dkt. 213-3, Ex. F. Schienvar testified that he had "never seen this" document. Id. After a recess, plaintiff's counsel indicated that "some of the production has been jumbled" and that Exhibit 99 (i.e., MC000093–94) did not appear to be the actual email attachment. Id.

On September 22, 2021, Sal D'Amico testified that he "[doesn't] think" he typed MC000093–94 after litigation started, and "I'm pretty sure we distributed that to L'Oreal at one of their meetings." He testified that MC000093–94 "was probably an attachment or it was a handout at a meeting that we had after the first meeting [with L'Oréal]." Dkt. 189-3, Ex. 35.

On October 11, 2021, Stephen D'Amico testified that Sal drafted MC000093–94 "a week after" Stephen "wrote it in short form" and that he is not "aware" of any "record of [his] having discussed that push-in standard orifice reducer with L'Oreal" "besides what we have here." Dkt. 189-3, Ex. 37.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|----------|----------------------|---|------|-------------------|
| Title    | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

On October 13, 2021, L'Oréal deposed non-party Rand Brenner, who produced the underlying native, authentic (*i.e.*, unedited) document. Dkt. 120-1. Metricolor's counsel asserted attorney work product in MC000093–94. Id.

The disputed MC000093–94 was written to record Sal D'Amico's contention that he and his son tested L'Oreal's product samples with both generations of the Metricolor System, including the trade secrets relating to the first generation. L'Oréal disputes that (1) the D'Amicos used the first generation for the 2014 field testing and (2) that the D'Amicos orally disclosed results of such first generation field testing in the parties' December 2014 phone call. The added content contained in MC000093–94 would accordingly bolster plaintiff's factual allegations that it disclosed its trade secrets to defendants if used in its case-in-chief.

Plaintiff's explanation for MC000093–94 submitted as part of this briefing is that the changes to the native authentic document resulting in MC000093–94's creation occurred because "Metricolor's counsel had encouraged Sal to put some" of the information about the document and the December 2014 phone call relating to the documents "into typewritten form." Opp. at 19. To do so as part of preparation for the November 2020 Rule 30(b)(6) deposition, Sal D'Amico updated the underlying document, creating MC000093–94. Id. As with MC000613, D'Amico printed the copy and placed it in his L'Oréal folders and gave it to plaintiff's counsel without filtering the documents. Metricolor's counsel in turn, "not realizing that MC000093-94 included updates added by Sal during the litigation, included it in the production." Id.

As to subsequent usage of MC000093–94 in the litigation, plaintiff claims that its counsel introduced the document as an exhibit to the August 27, 2021 deposition of Scott Schienvar in a "mistaken but good faith belief that it was an attachment" to the original 2014 email. Id. at 20–21. At the deposition, plaintiff's counsel acknowledged the error and did not use the document further" but did not necessarily at the time "know or suspect that it had updates added during this case." Id. at 21. Additionally, as to the 2021 depositions of Sal and Stephen D'Amico, plaintiff explains that although the two provided "erroneous" testimony, "it was not knowingly so" because Sal D'Amico had not realized that MC000093–94, and Stephen D'Amico "did not know at the time of his deposition that MC000093-94 included updates added by Sal during the litigation." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | November 16, 2022 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

3.    <u>MC000043–46</u>

MC000043–46 is a document entitled "Professional Hair Color Packaging and Dispensing Research and Development Study."  The forensic review conducted by Paul French found that MC000043–46 was created in April 2016 through January 2017 "months after Metricolor's meetings with L'Oreal ended."  Paul French Decl. at 7. Additionally, the forensic review determined that the line providing the date "11/23/2015\*" was added to the document, on December 10, 2020, along with the heading "\*Presented R & D results to L'Oreal/ Matrix DMI Team in NYC."  <u>Id.</u>

On January 29, 2021, Metricolor produced MC000043–46.  Dkt. 170, ¶ 6.

On October 11, 2021, Stephen D'Amico testified at a deposition that he orally presented the salon owner survey results contained in MC000043–46 to L'Oréal at the November 23, 2015 meeting.  Dkt. 212-1, ¶ 201.

On April 22, 2022, plaintiff asserted work product in MC000043–46.  Dkt. 154.

The disputed MC000043–46 was written to record Sal D'Amico's contention that he and his brother presented the results of their salon survey study to L'Oréal at the parties' November 2015 meeting.  L'Oréal disputes the D'Amicos presented such results at that meeting.  The added content contained in MC000043–46 would accordingly bolster plaintiff's factual allegations if used in its case-in-chief.

Plaintiff's explanation for MC000043–46 submitted as part of this briefing is that plaintiff does not intend to use MC000043–46 as evidence, and that Stephen D'Amico's underlying testimony that the results of the study in the document were presented orally to L'Oréal is true and "confirmed by the audio recording of the meeting held on that date."  Opp. at 23–24.

4.    <u>MC000047</u>

Unlike the other three above documents, MC000047 is not an alteration of an underlying native document created before litigation.  Instead, MC000047, entitled "Comparison of Tube Packaging VS. METRICOLOR 'First Generation Prototype\*'", is what plaintiff calls a "half-page of notes" created by Sal D'Amico during the litigation when Metricolor was working on responses to defendants' interrogatories.  Opp. at 22. The document references "First generation prototype components including a poly-plastic container and standard orifice reducer and syringe."  Dkt. 171, Ex. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | November 16, 2022 |
|----------|----------------------|------|-------------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

On January 29, 2021, Metricolor produced MC000047, which was created in December 2020, as part of its document production to defendants. Dkt. 170, ¶ 6.

On September 22, 2021, Sal D'Amico testified that he doubted that the phrase "first-generation prototype" came up after the litigation started. SUF, ¶ 86 (citing Dkt. 189-3, Ex. 37).

On April 22, 2022, plaintiff asserts work product for MC000047. Dkt. 154.

According to defendants, MC000047 is the "only document in all of Metricolor's production" that specifically enumerates the trade secret element of "First generation prototype components including a poly-plastic container and standard orifice reducer and syringe." Reply at 21.

Plaintiff's explanation for MC000047 submitted part of this briefing is that MC000047 are notes Sal D'Amico created during litigation for internal use and were not intended to be produced to L'Oréal or used by plaintiff as evidence in the case. Opp. at 23. To the extent Sal D'Amico was asked at his September 2021 deposition whether he created the document after the litigation started, his equivocal answer "I doubt it," is, according to plaintiffs an erroneous but "honest answer at the time because Sal was confused" and had not realized that MC000047 had been produced in discovery. Id.

Defendants argue that plaintiff's conduct in relation to all four of these documents gives rise to a basis to issue terminating sanctions, which is discussed in the following section.

**B.      Defendants' Motion for Terminating Sanctions**

As stated above, in addition to a finding of "willfulness, bad faith, and fault" on the part of the party to be sanctioned, courts in the Ninth Circuit must consider the five following factors: "(1) The public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Connecticut Gen. Life Ins. Co., 482 F.3d at 1096.

Defendants argues that "the fake documents Metricolor injected into this litigation were intentionally created to fill gaping holes in its case and to falsely corroborate the otherwise self-serving and unsupported testimony of Metricolor's principals." Mot. at 15. Here, defendants claim that plaintiff and its counsel "engaged deliberately in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | November 16, 2022 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

deceptive practices that undermine the integrity of judicial proceedings" Id. at 17 (Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006)).

Defendants argue that Ninth Circuit's five factors weigh in favor of terminating sanctions. First, defendants claim that the public's interests in expeditious resolution and the court's need to manage its docket favor dismissal because the "litigation ground to a halt" as a result of Metricolor's actions and its "failure to apprise L'Oréal and the Court of [plaintiff's fabricated document versions] during discovery or when L'Oréal sought forensic view in October 2021." Mot. at 18. Moreover, defendants contend that they have been prejudiced by plaintiff's misconduct because the defense "undertook all its discovery in view of a false record" with "fourteen depositions [taking] place without the benefit of knowing that significant documents had been forged," and that "L'Oréal missed the opportunity to conduct discovery under a true record and it still has no way of knowing what is and is not authentic in Metricolor's production." Id. at 18–19. Additionally, defendants argue that the typical public policy favoring resolution on the merits " 'lends little support' to a party, [like Metricolor], whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." Id. at 19 (citing In re PHENYLPROPANOLAMINE (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1228 (9th Cir. 2006)). Finally, defendants argue that less drastic sanctions than dismissal would be futile here in light of the fact that plaintiff's conduct occurred years earlier in litigation at the start of discovery and only revealed in October 2021 "after all witnesses had been deposed." Id. at 20. Defendants emphasize that "not being allowed to fake documents is no punishment at all because it merely places Metricolor in the same position as litigants who play by the rules and do not try to pass off fake documents in discovery." Id.

In opposition, plaintiff has set forth the explanations described above as to why Sal D'Amico updated and altered documents, how they were erroneously produced to defendants, and how they were never intended to be used as evidence in the case. See supra Part IV.A. Plaintiff contrasts its negligent and mistaken conduct at issue with the sanctions cases defendants cited, in which:

> The guilty party affirmatively sought to use false evidence to serve its position on the merits. See Combs v. Rockwell Int'l Corp., 927 F.2d 486 (9th Cir. 1991) (attorney materially, extensively revised witness deposition testimony); SEC v. Blockvest, LLC, No. 18-cv-2287, 2020 WL 2876869 (S.D. Cal. May 29, 2020) (party intentionally submitted forged declarations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | November 16, 2022 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

and proffered false testimony); <u>Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills</u>, 482 F.3d 1091 (9th Cir. 2007) (party blatantly misrepresented document to obtain advantage on merits).  Here, Metricolor did not use the four documents to support its case and has repeatedly said they can be excluded.  The D'Amicos did not affirmatively proffer false testimony about the documents to gain an advantage, but offered uncertain testimony and only when asked about the documents by L'Oréal.

Opp. at 24–25.  Plaintiff contends that, as such, "there is no basis for the required findings of 'subjective bad faith' or 'egregious' or 'vexatious' conduct." Id.

In reply, defendants claim that plaintiff's explanation has shifted over time, with the explanation proffered in its opposition to the instant motion "differ[ing] from the story it gave in sworn depositions, and that differs from Sal D'Amico's and Eduardo Martorell's previously sworn declarations and representations to the Court."  Reply at 13.  Defendants argue that there is "no reasonable explanation" for plaintiff's behavior during litigation.  Id. at 14.

Upon careful review of the record and the parties' briefing, the Court concludes that terminating sanctions are not warranted in this case.  <u>See, e.g.</u>, <u>Connecticut Gen. Life Ins. Co.</u>, 482 F.3d at 1096 (the availability of the less drastic sanctions factor includes whether the court has "considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions").  As stated above, "only 'willfulness, bad faith, and fault' justify terminating sanctions." <u>Id.</u> at 1096 (citing <u>Jorgensen v. Cassiday</u>, 320 F.3d at 912).

Although defendants find the explanations and excuses proffered by plaintiff and its counsel to be unsatisfying and incoherent, the record cannot support a finding that they have acted in bad faith.  To be sure, plaintiff's conduct and that of its counsel reflect a cascade of concerning missteps implicating several important principles within the Federal Rules of Civil Procedure, including Rule 37 and 26's discovery disclosure requirements and good-faith accuracy obligations.  All of the disputed documents, if they were to be admitted and used in plaintiff's case-in-chief, would be direct evidence of trade secret disclosure.  Plaintiff's conduct creating and producing them, even in light of its proffered explanations, is completely improper, and the fact that plaintiff's principal prepared such documents and that plaintiff's counsel produced them is an appropriate subject of cross-examination as to plaintiff's overall credibility.  But to issue terminating

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|---|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

sanctions would be inappropriate, because setting those documents aside, plaintiff has offered other evidence from which a trier of fact could find misappropriation. The law permits the trier of fact to find trade secret misappropriation based on circumstantial evidence as part of the totality of the circumstances. For instance, even where a plaintiff cannot prove through direct evidence it disclosed trade secrets, circumstantial evidence— including a shared "substantial identity" between a defendant's accused product and plaintiff's trade secrets—may still establish trade secret misappropriation. See, e.g., 4 Milgrim on Trade Secrets § 15.01 (2022) ("In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place.") (quoting Greenberg v. Croydon Plastics Co., 378 F. Supp. 806, 814, 182 U.S.P.Q. 673 (E.D. Pa. 1974)); Integral Sys., Inc. v. Peoplesoft, Inc., No. C-90-2598-DLJ, 1991 WL 498874, at *13 (N.D. Cal. July 19, 1991) (noting that "where a plaintiff has shown (1) a likelihood of success at trial of demonstrating possession of trade secrets, and (2) that defendant's product bears a 'substantial identity' with such secrets, 'the burden shifts to the defendants to prove that they independently developed those trade secrets' ") (quoting Imi–Tech Corp. v. Gagliani, 691 F.Supp. 214, 230 (S.D. Cal. 1986)).

Additionally, the Court finds that the Ninth Circuit's five factors for case-dispositive sanctions do not weigh in favor of terminating plaintiff's suit, especially when compared to the severity of the various sanctioned parties' actions in the case law cited by defendants. See, e.g., Englebrick v. Worthington Indus., Inc., 944 F. Supp. 899, 905 (C.D. Cal. 2013), aff'd, 620 F. App'x 564 (9th Cir. 2015) (party admitted to knowingly giving false deposition testimony, going so far as to admit that "[p]retty much anything in reference to taking drugs before the fire that I said no to on Saturday or Sunday [before the fire] was obviously not going to be true").

Of course, plaintiff cannot use the four documents, MC000613, MC000093–94, MC000047, and MC000043–46, in its case-in-chief. However, if defendants so choose, they may introduce these documents to impeach the credibility of plaintiff's witnesses at trial and to support the inference that the original version of the documents—which do not contain the specific references to plaintiff's asserted trade secrets elements—were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | November 16, 2022 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

accordingly less helpful for plaintiff's case than the versions of those documents altered during litigation.[6]

## V.   MOTION FOR SUMMARY JUDGMENT

### A.   Plaintiff's Trade Secrets Claims

Metricolor asserts state and federal claims for trade secret misappropriation against L'Oréal pursuant to CUTSA and DTSA.  See FAC ¶¶ 75–91, 113–21.  Under "the DTSA and the CUTSA, a plaintiff must allege (1) that it is the owner of a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that it was damaged by the defendant's actions."  Alta Devices, Inc. v. LG Elecs., Inc., 343 F. Supp. 3d 868, 880 (N.D. Cal. 2018).  "Information qualifies as a trade secret under federal and state law if 'the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information' and 'the owner thereof has taken reasonable measures to keep such information secret.' " Calendar Research LLC v. StubHub, Inc., No. 2:17-cv-04062-SVW-SS, 2017 WL 10378336, at *2 (C.D. Cal. Aug. 16, 2017) (internal citations omitted).  "Courts have held that the DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets."  Alta Devices, 343 F. Supp. 3d at 880-81.  "A plaintiff need not 'spell out the details of the trade secret[.]' "  Autodesk, Inc. v. ZWCAD Software Co., No. 5:14-cv-01409-EJD, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015).  "Nevertheless, the plaintiff must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."  Vendavo. Inc. v. Price f(x) AG, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).

---

[6] At the November 1, 2021 hearing on defendants' first *ex parte* application, the Court reserved judgment as to how the costs associated with the forensic review should be borne by the parties.  See Dkt. 128.  To the extent defendants have sought monetary sanctions associated with such costs in addition to or in lieu of terminating sanctions, see Mot. at 25, the Court reserves judgment pending resolution of the case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | November 16, 2022 |
|----------|----------------------|------|-------------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

Defendants argue that (1) plaintiff's trade secrets are not protectable, (2) plaintiff has no evidence it ever disclosed its trade secrets to L'Oréal, and (3) plaintiffs have no evidence L'Oréal misappropriated information.

The Court addresses each element in turn below.

        1.      <u>Whether plaintiff's trade secrets are protectable</u>

Plaintiff's trade secrets relate to the elements of the "first-generation" of its Metricolor System, which includes a plastic bottle, a standard (non-self-sealing) orifice reducer, and a syringe, which it claims is best used for relatively non-viscous products like developer. <u>See</u> Opp. at 2–3.

In their motion for summary judgment, defendants argue that plaintiff fails to establish facts proving that it took reasonable measures to keep the information secret, and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Mot. at 10–11 (citing 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d)). Specifically, defendants argue that the elements of plaintiff's first generation Metricolor System, such as the plastic bottle, standard orifice reducer and syringe, were already "well-known, standard methods for dispensing liquids." <u>Id.</u> at 12–13. For instance, defendants reference the Rodriguez Patent which Metricolor had described and distinguished in the background of its own '587 Patent application as disclosing a hair coloring kit that includes bottles, a 10ml plastic catheter syringe, and a standard, non-self-sealing orifice reducer. <u>Id.</u> Additionally, defendants contend that L'Oréal had used a syringe to dispense material as part of its "standard arsenal for beauty product packaging" and that it had also used Comar as a supplier for accessories "before ever encountering Metricolor." <u>Id.</u> at 13.

In opposition, plaintiff argues that its trade secrets are protectable and that at minimum, there is a genuine dispute of material fact as to whether the information was readily ascertainable through proper means. Specifically, plaintiff contends that neither its own '587 Patent nor the prior art of the Rodriguez Patent disclose information relating to the trade secrets of the first-generation Metricolor System. Opp. at 11–12. For example, plaintiff distinguishes the Rodriguez Patent from the first-generation Metricolor System:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|---|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

[The Rodriguez Patent] is specific to the narrow application of coloring the user's roots to match pre-existing color in the rest of the user's hair. The 10 mL syringe of the Rodriguez Patent is for hair color, not developer, and it has a rubber component that the Comar syringe distinctly lacks. In Rodriguez, the hair color has to be squeezed from the tube into the syringe; it is not withdrawn by the syringe as in the Metricolor System. And contrary to L'Oréal's claim, the Rodriguez Patent does not disclose a "standard" orifice reducer but, rather, an unusual, multi-tiered "bottle stopper" with a reclosable cap for use with multiple, differently-sized bottles.

Id. Additionally, plaintiff argues that defendants' contentions about its prior use of syringes in products and Comar as a supplier do not defeat plaintiff's trade secrets claims: "L'Oréal's cited evidence does not support an inference, much less conclusively establish, that L'Oréal knew a 10 mL Comar syringe was desirable as a dispenser for low-viscosity hair color products . . . L'Oréal cites no evidence that it had ever used a Comar syringe, or used *any* syringe with hair color or other cosmetics products, before meeting Metricolor." Id. at 12.

In reply and at oral argument, defendants reiterate their arguments that "the minute differences" plaintiff identifies between its trade secrets and publicly available information such as the '587 and Rodriguez Patents fail to prove that these distinctions were not readily ascertainable nor that they have independent economic value. Specifically, defendants argue that "Metricolor did not and cannot show that using a standard orifice reducer instead of a 'special' (self-sealing) orifice reducer, if you didn't need its oxygen barrier properties, was not readily ascertainable." Reply at 7. This is because, according to defendants, "[it] defies credulity that a person with ordinary skill would not be able to easily ascertain that the use of a standard orifice reducer would be possible in hair applications, particularly given Metricolor's patent's description of Figure 14 as showing the orifice reducer (item no. 42) as an 'orifice reducer,' without qualification that it must be the special self-sealing kind." Id. at 7.

For trade secrets claims, "[w]hether information is secret is 'a relative concept and requires a fact-intensive analysis.' " SkinMedica, Inc. v. Histogen Inc., 869 F. Supp. 2d 1176, 1193 (S.D. Cal. 2012) (quoting Premier Displays & Exhibits v. Cogswell, 2009 WL 8623588 at *3, 2009 U.S. Dist. LEXIS 119462 at *8 (C.D. Cal. Dec. 23, 2009)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | November 16, 2022 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

Here, the parties dispute the degree to which pre-existing and publicly available knowledge, including the aspects of plaintiff's '587 Patent and the prior art Rodriguez Patent, does or does not establish that the information claimed as plaintiff's trade secrets has independent economic value and could not be readily ascertainable by proper means. Accordingly, the parties raise triable issues of fact to be determined by a jury.

> 2.      Whether plaintiff disclosed its trade secrets to L'Oréal

Defendants argue that, putting aside the four inauthentic documents described above, there are "no authentic documents" indicating that Metricolor disclosed to L'Oréal the Comar 10 mL syringes and standard orifice reducer used with plastic bottles, as well as pricing or testing of any of those components.  Mot. at 11.  Defendants claim that authentic, contemporaneous documents reflect that Metricolor simply pitched the patented Metricolor system, and that the D'Amicos testimony that they gave samples or their syringes and orifice reduces to L'Oréal is "equivocal and self-serving."  Id.

In opposition, plaintiff claims that at the October 9, 2014 meeting between the D'Amicos and L'Oréal representatives, the D'Amicos presented a PowerPoint slide depicting elements of the first-generation Metricolor system, and that Stephen D'Amico "demonstrated the first-generation Metricolor System using actual components the D'Amicos had with them, including a plastic bottle containing developer, a standard orifice reducer from Comar, and a Comar 10 mL long-tip syringe."  Opp. at 4 (citing SDF, ¶¶ 24–27).  Additionally, plaintiffs allege that after the October 2014, L'Oréal shipped hair color and developer samples to be tested with the Metricolor system. According to plaintiff, the D'Amicos tested both generations of the Metricolor System, and Stephen D'Amico presented the field test findings to L'Oréal over a "phone call in late 2014, including Metricolor's recommendation to use the first-generation Metricolor System (including a 10 mL syringe) with low-viscosity, non-ammonia-based hair color products like developer and fixing agents to reduce cost and increase precision."[7]  Id. at 4–5 (citing SDF, ¶¶ 36–40).  Plaintiff contends that in several of the subsequent meetings

---

[7] Defendants dispute the credibility of Sal D'Amico's undated, handwritten notes which he purports to be "field testing notes" of the samples the D'Amicos conducted on L'Oréal samples sent after the October 9, 2014 meeting.  See Reply; see also Opp. at 5–6. In light of the fact that these handwritten notes relate to the information added in MC000093-94, defendants' challenge to these notes are better addressed on cross-examination and impeachment of the D'Amicos.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | November 16, 2022 |
|----------|----------------------|------|-------------------|
| Title    | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

between the D'Amicos and L'Oréal—specifically the February 19, 2015, September 30, 2015, and November 23, 2015 meetings—the D'Amicos presented and demonstrated both generations of the Metricolor System, thereby disclosing aspects of the asserted trade secrets. Id. at 6 (citing SDF, ¶¶ 44–53).

In reply, defendants emphasize that the "fake documents Metricolor inserted into its production, in particular MC000093-94, MC000613, and MC000047, were specifically designed to fill" the evidentiary gap that Metricolor did not disclose trade secrets to L'Oréal. Reply at 12. As defendants argue, all of the additions and insertions in the four documents relate to plaintiff's asserted trade secrets, and that because the original underlying documents do not contain those specific references, plaintiff cannot prove that it disclosed the trade secrets to L'Oréal.

The Court has addressed the impact of those four documents in the above section of defendants' motion for terminating sanctions, including the inference that the original contemporaneous versions of those documents are less helpful for plaintiff's case than the subsequently altered versions. But even without those documents, plaintiff has still raised a genuine dispute of material fact as to whether the D'Amicos presented trade secrets relating to the first-generation Metricolor System to L'Oréal. For instance, the transcripts of the two recorded meetings, which defendants do not challenge, contain statements that could reasonably indicate the D'Amicos did in fact disclose first-generation trade secrets.[8] As defendants repeatedly point out, the D'Amicos' deposition testimony is equivocal and undoubtedly marred by the credibility issues presented during this litigation. But in the absence of stronger evidence of bad faith intent to deceive as discussed supra Part IV.B, the ultimate credibility of the D'Amicos is for a jury to

---

[8] For example, at the September 30, 2015 phone call meeting between the D'Amicos and Scott Schienvar, Mariko Rex, and Dan Bethelmy Rada, Stephen D'Amico mentioned "the next slide is 14. That's my original design actually eight of nine years ago." Dkt. 198-6, Ex. C. Sal D'Amico then comments, "it was before we—pouches came out." Id. Stephen D'Amico added, "Yeah, before we even touched on pouches." Id. Sal D'Amico then appeared to explain, "And what this was was a simulation. I was hoping to use it just to show you how you get the syringe and use it but Steve's going to have to describe that to you without being in front of you." Id. On their face, these remarks could reasonably be interpreted to reflect that the D'Amicos disclosed elements of the "first-generation" of the Metricolor System.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | November 16, 2022 |
|----------|----------------------|------|-------------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

determine. <u>Willis v. Buffalo Pumps Inc.</u>, No. 12-cv-744-BTM-DHB, 2014 WL 3818291, at \*4 (S.D. Cal. Aug. 1, 2014) ("[Plaintiff's] deposition testimony is equivocal and unclear in places, and a reasonable jury could well find his testimony to be unreliable on that basis. However, a reasonable jury could also find to the contrary.").

Viewing inferences in the evidentiary record in the light most favorable to plaintiff as the non-moving party, <u>Matsushita</u>, 475 U.S. at 587, defendants are not entitled to summary judgment on this issue.

3.    <u>Whether defendants misappropriated plaintiff's trade secrets</u>

"Under the DTSA and CUTSA, 'misappropriation' means either the '(1) [a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means;' or the '(2) [d]isclosure or use of a trade secret of another without express or implied consent.' " <u>Alta Devices, Inc. v. LG Electronics, Inc.</u>, 343 F. Supp. 3d at 882 (quoting 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b)).

Defendants argue that, just as there is no evidence Metricolor disclosed its trade secrets to defendants, plaintiff has no evidence that L'Oréal misappropriated or used any trade secret information at any time. Mot. at 13.

In opposition, plaintiff challenges defendants' claims that L'Oréal independently developed its accused bonder products. Opp. at 10 ("This burst of inspiration happened to be sandwiched between two L'Oréal-Metricolor meetings."). Plaintiff instead emphasizes that defendants' accused products arise from L'Oréal's Professional Products Division, and that Scott Schienvar, who "attended almost every meeting" with plaintiffs, worked in that same division. <u>Id.</u> Accordingly, plaintiff claims that the "evidence strongly supports an inference that Mr. Schienvar, under pressure to help realize the strategically important bonder products, used his knowledge of and enthusiasm for Metricolor's trade secrets to move the Redken/Matrix brands toward using the Metricolor solution." <u>Id.</u>

In reply, defendants do not meaningfully refute plaintiff's contentions, especially as to the role of Schienvar in both attending L'Oréal's meetings with plaintiff and his job managing development of defendants' accused bonder products. <u>See</u> Reply at 29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | November 16, 2022 |
|----------|----------------------|---|------|-------------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

In light of the genuine dispute of material facts on the above issues as to whether plaintiff's trade secrets are protectable and whether plaintiff disclosed its trade secrets to L'Oréal, plaintiffs have sufficiently raised triable issues as to whether L'Oréal misappropriated plaintiff's trade secrets.

**B.     Plaintiff's Contract and Unfair Competition Claims**

Defendants argue that plaintiff's contract claim fails because there is no evidence that Metricolor is a party to L'Oréal's NDA with the D'Amicos, and that even if there were, there is no breach of the NDA for the same reasons that plaintiff's trade secrets claims fail (*i.e.*, that plaintiff did not disclose any confidential information and that defendants did misuse confidential information or otherwise violate the NDA). Mot. at 14–15. Similarly, defendants argue that plaintiff's unfair competition claim—"entirely derivative of the trade secret and contract claims"— likewise fails. Id. at 15.

In opposition, plaintiff claims that it is an intended third-party beneficiary or assignee of the D'Amico's NDA rights, citing to elements of the record reflecting that "[t]he parties' correspondence repeatedly refers to the "Metricolor System" and L'Oréal assumed that Metricolor would be a party to future agreements." Opp. at 13 (citing SDF, ¶¶ 90–92). Additionally, plaintiff argues that because defendants are not entitled to summary judgment on the trade secrets claim, they are similarly not entitled to summary judgment for the contract and unfair competition claims.

"Generally, it is a question of fact whether a particular third person is an intended beneficiary of a contract." Spinks v. Equity Residential Briarwood Apartments, 171 Cal. App. 4th 1004, 1025, 90 Cal. Rptr. 3d 453, 471 (2009). Here, plaintiff has sufficiently raised triable issues of fact, which defendants do not challenge, as to whether the D'Amicos assigned their rights under the NDA to Metricolor or whether Metricolor was an intended third-party beneficiary of the NDA.

Moreover, in light of the above analysis that defendants are not entitled to summary judgment on plaintiff's trade secrets claims, defendants are accordingly not entitled to summary judgment on plaintiff's contract and unfair competition claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | November 16, 2022 |
|----------|----------------------|------|-------------------|
| Title    | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

## VI.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendants' motion for summary judgment and **DENIES** defendants' motion for sanctions.

IT IS SO ORDERED.

|        | 00 | : | 00 |
|--------|----|----|----|
| Initials of Preparer | | CMJ | |