JOSEPH A. CALVARUSO (*pro hac vice*)
jcalvaruso@orrick.com
RICHARD F. MARTINELLI (*pro hac vice*)
rmartinelli@orrick.com
ANGELA COLT (CA SBN 286275)
acolt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Telephone:  +1 212 506 5000
Facsimile:   +1 212 506 5151

WILLIAM M. OXLEY (CA SBN 136793)
woxley@orrick.com
MEGHAN ROHLING KELLY (CA SBN 292236)
meghan.kelly@orrick.com
GERALD E. PORTER (CA SBN 344396)
gporter@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA  90071-1596
Telephone:  +1 213 629 2020
Facsimile:   +1 213 612 2499

*Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs*
L'ORÉAL USA, INC., L'ORÉAL USA PRODUCTS, INC., L'ORÉAL USA S/D, INC., AND REDKEN 5TH AVENUE NYC, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| METRICOLOR LLC,<br><br>        Plaintiff and Counterdefendant,<br><br>        v.<br><br>L'ORÉAL USA, INC.; L'ORÉAL USA PRODUCTS, INC.; L'ORÉAL USA S/D, INC.; REDKEN 5th AVENUE NYC, LLC; and DOES 1 through 100, inclusive,<br><br>        Defendants, Counterclaimants and Third-Party Plaintiffs,<br><br>        v.<br><br>SALVATORE D'AMICO, and STEPHEN D'AMICO,<br><br>        Third-Party Defendants. | Case No. 2:18-cv-00364-CAS-E<br><br>**(1) DEFENDANTS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING TERMINATING SANCTIONS;**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**<br><br>**(3) DECLARATIONS OF RICHARD MARTINELLI, ANGELA COLT, and KURT KUHN;**<br><br>Lodged Under Separate Cover:<br>**(4) [PROPOSED] ORDER.**<br><br>Hearing Date:  April 17, 2023<br>Time:  10:00 a.m. PT<br>Judge:  Hon. Christina A. Snyder<br>Courtroom: 8D |

L'ORÉAL'S MOTION FOR RECONSIDERATION
2:18-CV-00364 CAS-E

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 17, 2023, at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Christina A. Snyder, Courtroom 8D on the 8th Floor of 350 West 1st Street, Los Angeles, CA, 90012, Defendants, Counterclaimants, and Third-Party Plaintiffs L'Oréal USA, Inc.; L'Oréal USA Products, Inc.; L'Oréal USA S/D, Inc.; and Redken 5th Avenue NYC, LLC ("L'Oréal"), will respectfully move this Court pursuant to Fed. R. Civ. P. 60(b) and Civil L.R. 7-18 for reconsideration and reversal of the Court's November 16, 2022 Order (ECF 228) denying L'Oréal's motion for terminating sanctions (ECF 169, the "Motion")[1]—or, in the alternative, renewal of L'Oréal's previous motion for sanctions based on the emergence of new, material facts.

Reconsideration is warranted in this instance based on new material facts of fabricated "handwritten" notes, Metricolor's efforts to conceal its fabrications, and Salvatore D'Amico's false testimony.

This Motion is based on this Motion, the Memorandum of Points and Authorities in Support hereof, the concurrently filed Declarations of Richard Martinelli, Angela Colt, Kurt Kuhn, and supporting exhibits, all pleadings and papers in this action, all matters of which this Court may take judicial notice, and upon such other matters as may be presented to the Court.

Pursuant to L.R. 7-3, counsel for Defendants met and conferred with Plaintiff's counsel on March 10, 2023 to discuss this Motion and potential resolution, but counsel were unable to resolve their disputes. *See* Declaration of Angela Colt, ¶ 5.

---

[1] L'Oréal does not here seek reconsideration of the portions of the Court's Order denying L'Oréal's motion for summary judgment but does not waive any arguments that may be available on appeal or otherwise.

Dated:          March 20, 2023              Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:          /s/ Angela Colt
                    Angela Colt

*Attorneys for Defendants*
*L'Oréal USA, Inc.,*
*L'Oréal USA Products, Inc.,*
*L'Oréal USA S/D, Inc., and*
*Redken 5th Avenue NYC, LLC*

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS.....................................................................................3

    A.    Metricolor's New Trade Secret Theory Following Remand .................3

    B.    Metricolor's Fabricated Evidence.........................................................4

        1.    The Fake Comar Syringe Email (MC000613) ...........................4

        2.    The Fake Test Results for Developer in Plastic Container with Standard Orifice Reducer (MC000093-94) .................................6

        3.    The Fake Handwritten Notes (MC000087-92)...........................8

III. THE COURT SHOULD RECONSIDER ITS PREVIOUS RULING AND ISSUE TERMINATING AND MONETARY SANCTIONS .......................10

    A.    The Court Should Reconsider The Imposition Of Sanctions .............11

    B.    The New False Deposition Testimony Warrants Dismissal................11

    C.    The Conn. Gen. Factors Also Favor Dismissal as a Sanction ............12

        1.    Metricolor's New Fake Evidence and Testimony Shows Bad Faith .........................................................................................13

        2.    Public Interest and Docket Management Favor Dismissal .......15

        3.    L'Oréal Is Significantly Prejudiced...........................................16

        4.    Public Policy Also Favors Dismissal ........................................17

        5.    Lesser Sanctions Will Not Deter Metricolor From More Fraud17

    D.    The Court Should Impose Monetary Sanctions on Metricolor and Mr. D'Amico.............................................................................................18

IV. CONCLUSION ...................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABF Freight Sys. v. NLRB*,
510 U.S. 317 (1994) ...................................................................................... 16

*Alvarez v. XPO Logistics Cartage, LLC*,
No. CV 18-3736-RGK(EX), 2020 WL 11563057 (C.D. Cal. Aug.
17, 2020) ........................................................................................................ 14

*Arnold v. Cnty. of El Dorado*,
No. 2:10–CV–3119 KJM GGH, 2012 WL 3276979 (E.D. Cal. Aug.
9, 2012) ..................................................................................................... 13, 17

*Brown v. Oil States Skagit Smatco*,
664 F.3d 71 (5th Cir. 2011) ...................................................................... 10, 17

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ........................................................................................ 10

*Combs v. Rockwell Int'l Corp.*,
927 F.2d 486 (9th Cir. 1991) ..................................................................... 10, 12

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
482 F.3d 1091 (9th Cir. 2007) .................................................................. *passim*

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ......................................................................... 10

*Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*,
397 F.3d 1217 (9th Cir. 2005) ....................................................................... 14

*Henderson v. Duncan*,
779 F.2d 1421 (9th Cir.1986) ........................................................................ 17

*Henry v. Gill Indus., Inc.*,
983 F.2d 943 (9th Cir. 1993) ......................................................................... 13

*Knapp v. Convergys Corp.*,
209 F.R.D. 439 (E.D. Mo. 2002) ................................................................... 17

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) ......................................................................... 11

*Lowry v. Heritage Sec.*,
No. 09–CV–882–BTM WVG, 2011 WL 7769329 (S.D. Cal. July 7,
2011) *report and recommendation adopted sub nom. Lowry v.
Metro. Transit Bd. MTBS,* No. 09CV00882, 2012 WL 1439078
(S.D. Cal. Apr. 26, 2012)........................................................................................ 13

*Martin v. DaimlerChrysler Corp.*,
251 F.3d 691 (8th Cir. 2001) ................................................................................. 10

*Newman v. Brandon*,
No. 1:10–CV–00687 AWI JL, 2012 WL 4933478 (E.D. Cal. Oct.
16, 2012) ................................................................................................................. 13

*Nichols v. Klein Tools, Inc.*,
949 F.2d 1047 (8th Cir. 1991) ............................................................................... 10

*SEC v. Blockvest, LLC*,
No.: 18CV2287-GPB(MSB), 2020 WL 2786869 (S.D. Cal. May
29, 2020) ........................................................................................................... 10, 17

*U.S. v. HVI Cat Canyon, Inc.*,
No. CV 11-5097 FMO (RZX), 2015 WL 12766161 (C.D. Cal. Nov.
20, 2015) ................................................................................................................. 11

*Vogel v. Tulaphorn, Inc.*,
No. CV 13-464 PSG, 2013 WL 12166212 (C.D. Cal. Nov. 5, 2013),
*aff'd,* 637 F. App'x 344 (9th Cir. 2016)................................................................. 11

*Warner v. Stefalo*,
No. 21-35255, 2022 WL 10385252 (9th Cir. Oct. 18, 2022)............................... 12

**Other Authorities**

Fed. R. Civ. P. 26................................................................................................................ 11

Fed. R. Civ. P. 30(e) .......................................................................................................... 14

Fed. R. Civ. P. 37............................................................................................................... 14

L.R. 7-18 (b) ................................................................................................................. 10, 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

L'Oréal seeks reconsideration of the Court's sanctions order because – after the order – Metricolor and Mr. D'Amico produced for inspection important notes they claimed were originals, but they were fake.  And Mr. D'Amico again testified falsely – and contrary to the declaration he submitted in opposition to the sanctions motion – to cover-up Metricolor's and his own ongoing, wrongful conduct.

When the Court heard L'Oréal's motion for sanctions, the Court noted that "[m]any other people would issue terminating sanctions" to remedy Metricolor's document fabrications and cover-up.  Ex. A, Oct. 24, 2022 Hrg. Tr. at 25:16-18.[2] While the Court was "trying to be careful," it warned Metricolor that monetary sanctions were "still out there" and its case was "hanging by a thread."  *Id.*

Although the Court did not sanction Metricolor at the time, the Court permitted L'Oréal to depose Sal D'Amico, to confront him with the documents he fabricated, and to give him a chance to explain himself.  *Id*. at 9:7-13.  The Court also required Mr. D'Amico to produce the handwritten notes he claimed were back-up for one of the documents he made-up, namely a report of "field tests" Metricolor supposedly conducted in 2014.  Ex. B, Nov. 21, 2022 Hrg. Tr. at 16:24-25.

Despite the Court's efforts and directness, Mr. D'Amico ignored the Court's warnings and engaged in the same conduct that exposed Metricolor to terminating sanctions in the first place.  For example:

- Mr. D'Amico produced what he said were his "handwritten notes" of the "field tests." And he testified they were his original pencil on paper notes.  That is not true.  Although the notes look like original pencil on paper to a layperson, L'Oréal's handwriting and paper expert studied the notes under a microscope and discovered they were made by a

---

[2] Unless otherwise noted, all "Ex." References are to exhibits to the concurrently filed Declaration of Angela Colt, all emphasis is added, and all quotes are cleaned up.

machine like a printer or copier using ***toner***.  Once again, Metricolor misrepresented the authenticity of crucial documents.

- As L'Oréal explained in the earlier sanctions proceeding, Mr. D'Amico fabricated MC000613 in 2020 by cutting and taping real and fabricated documents together to make it look like Mr. D'Amico shared the "first generation" trade secrets with L'Oréal in 2016.  When he was trying to avoid sanctions, Mr. D'Amico unequivocally admitted in a declaration that he created MC000613 in **2020**.  He swore the production of the fabricated document was a simple mistake by his lawyers, as opposed to his own effort to gin-up evidence.  But in his December 30, 2022 deposition, Mr. D'Amico reversed course by repeating the original fiction that he'd drafted MC000613 in **2016**—perpetuating, not explaining, the fraud.

- The obfuscation did not end there.  Weeks after his deposition, Mr. D'Amico changed his testimony about MC000613—this time through an "errata"—claiming that he drafted MC000613 in **2018** (the year this lawsuit was filed) and he materially altered 16 answers.  These testimony flip flops illustrate Metricolor's bad faith.  There is no legitimate evidence that Metricolor owned any "first generation" trade secrets, much less that it shared them with L'Oréal in 2016.  Mr. D'Amico's efforts to manufacture evidence of "trade secret" disclosure, 10 days after Metricolor amended its complaint in 2020 to assert its trade secret claims, demonstrates this.  Having been caught creating evidence that it now cannot use, Metricolor now wants to argue that Mr. D'Amico invented MC000613 in 2016 or 2018—before the lawsuit—because the creation of the document during the litigation shows that its new purported "trade secret" is a sham.

Metricolor's conduct is part of a continuing pattern of bad faith that started at

least as early as 2020, that did not stop after the Court's repeated stern warnings, and that will not stop through trial.  Allowing Metricolor to continue its case after it sponsored more fake evidence and testimony would only encourage Metricolor to create more falsities during trial.  It is time to cut the thread by issuing terminating and monetary sanctions.

## II.    STATEMENT OF FACTS

### A. *Metricolor's New Trade Secret Theory Following Remand*

As explained in L'Oréal's original motion, Metricolor sued L'Oréal in 2018 claiming L'Oréal infringed its patent for "Hair Color (or Dye) Storage, Dispensing and Measurement (Or Measuring) System," which Metricolor called the "Metricolor System," and misappropriated trade secret information regarding the "application and use of the Metricolor System." ECF 1; ECF 1-1, Ex. A. The Court dismissed Metricolor's patent infringement lawsuit after concluding that L'Oréal did not infringe the patent and the information in the patent cannot be protected as trade secret.  ECF 35.  In 2019, the Federal Circuit affirmed the Court's dismissal of Metricolor's complaint and remanded for the limited question of whether leave to amend should be granted.  ECF 49. The Court granted leave, and Metricolor's March 2020 amended complaint adopted an entirely new theory and a new narrative.

With its patent claims lost, Metricolor now claimed that its patent actually embodied only a "second generation" Metricolor System.  Metricolor then fictionalized a "first generation" Metricolor System that was the combination of:  a plastic bottle, a plug with a hole in it to narrow the opening of the bottle (also known as a standard orifice reducer), and a 10 ml Comar brand syringe that was used to extract non-viscous hair care products from the bottle in a salon setting.  A bottle/orifice reducer/syringe set-up had been widely used to dispense many products, with children's medications such as antibiotics and Tylenol among the most well-known examples to most people.

According  to  the  new  theory,  Metricolor  disclosed  the  fictionalized  "first

generation" system to L'Oréal while the parties were discussing the possibility of licensing Metricolor's patent and L'Oréal supposedly misappropriated the trade secret "first generation" system when it came out with an entirely different product that used a plastic bottle, orifice reducer, and syringe for dispensing. There are no *real* documents supporting Metricolor's claims. All of the documents show that the Metricolor System was what was disclosed in Metricolor's patent, and that L'Oréal considered licensing the patent.[3] No authentic document includes any of the "buzz words" reflecting a "first generation," "trade secret" comprising "plastic bottle," "standard orifice reducer," and a "10ml syringe" from Comar. With no documents supporting Metricolor's claims, Metricolor's principal, Mr. D'Amico made some up. Ex. C, Dec. 30, 2022 Sal D'Amico Tr. at 225:23-226:6.

### B. Metricolor's Fabricated Evidence[4]

#### 1. The Fake Comar Syringe Email (MC000613)

Ten days after filing its amended complaint, Mr. D'Amico fabricated an email purporting to disclose the 10 ml Comar syringe and claiming to send samples of parts of the "first generation" system to L'Oréal. Mr. D'Amico accessed and altered a real email he wrote in 2016, he cut the header from the 2016 email and taped it to the phony, copied it in a copy machine, and Metricolor produced the fake as MC000613:[5]

---

[3] Mr. D'Amico admits that Metricolor has no documentary evidence that Metricolor presented a "standard orifice reducer," to L'Oréal. Ex. C, D'Amico Tr. at 192:19-24.

[4] Metricolor fabricated and produced in discovery other evidence purporting to support Metricolor's new trade secret theory, but which was also proven to be fabricated. L'Oréal will not burden the Court with a description of all these documents here because they are not relevant to the new evidence that L'Oréal has discovered, but for reference, these documents are Bates-stamped MC000043-46, MC000047, MC000093-94, MC000597, and MC000613. ECF 157-4 Ex. 3 (MC000043-46); ECF 157-5 Ex. 4 (MC000047); ECF 157-3 Ex. 2 (MC000093-94); ECF 157-6 Ex. 5 (MC000597); ECF 157-2 Ex. 1 (MC000613).

[5] ECF198-2, Sal D'Amico Decl. ¶ 12 & *id*. Ex. G (MC000613).

**From:** Saldamico [mailto:saldamico@comcast.net]
**Sent:** Tuesday, March 29, 2016 2:11 PM
**To:** WOLSKA-BRYS Marta
**Subject:** Response-Metricolor samples

Dear Marta,

Hi Marta,

Unfortunately, our current prototype consists of only 10 containers, two types of orifice reducers (standard with hole and self-closing) and two catheter syringes we use (small 10 ml from our new supplier, COMAR and a large Toomey catheter syringe ), depending on the several weeks for our manufacturer to produce.

In the meantime, I can send to you only one of the 10 prototypes and two types of sample orifice reducers and syringes to your address below. You can fill the  a plastic container or the pouch with your least viscous product of developer by using the syringes to dispense the product into the container/pouch.  Please dont hesitate to contact me if you have any questions.

Best regards,

Sal D'Amico

PRESIDENT, METRICOLOR

Mr. D'Amico testified at his September 2021 deposition that he drafted this fake email in **2016**.  ECF 189-3, Ex. 35 at 124, Sal D'Amico Sept 22, 2021 Tr. at 155:11-13.  But after L'Oréal's forensic investigation revealed that this email was made in 2020, ECF 169-1, French Decl. ¶ 14, Mr. D'Amico admitted that in March **2020**, he taped a real email header to the body of his recreation:

other L'Oréal employees by phone and agreed to send them other samples, including one unfilled pouch and some orifice reducers and syringes.  I shipped those materials to L'Oréal a short time later.

12.    In approximately March of 2020, when I was investigating the facts relevant to this case after remand, I found my March 28-29, 2016 email exchange with Ms. Wolska-Brys, but I thought I had sent her another email describing the samples that I sent her.  Since I couldn't find it, I recreated what I thought I had sent by typing the body of the email and attaching the email header from the actual March 29, 2016 email that I had found.  I printed the email header and body, taped them to a piece of paper, and photocopied the page.  Attached hereto as Exhibit G is a true and correct copy of the reconstructed email, which I understand was marked MC000613 when Martorell Law produced it.

Yet in Mr. D'Amico's latest deposition in December 2022, when asked to explain his creation of this document, he returned to his original story, *i.e.*, that he had drafted this email in 2016.  Ex. C, D'Amico Tr. at 175:10-176:6.  Then in February 2023, through counsel's submission of Mr. D'Amico's deposition "errata,"

he changed his story again and claimed that he created this email in **2018** (*i.e.*, before filing the original complaint).  Ex. D, D'Amico "Errata" (175:12).  This testimony is false and is nothing more than a **new** attempt to mislead the Court, L'Oréal, and ultimately the jury about the facts of this evidence fabrication.  Metricolor does this because it only conceived of the fictionalized "first generation" trade secret theory in March **2020** in the amended complaint.  And Metricolor began fabricating evidence ten days later, to fit its new "first generation" "trade secret" story (i.e., a plastic bottle, standard orifice reducer, and 10ml syringe from Comar to be used with a developer-like product in salons for hair care).  Backdating the evidence before the amended complaint would tend to suggest it was not created to support Metricolor's new "first generation" trade secret theory.

### 2. The Fake Test Results for Developer in Plastic Container with Standard Orifice Reducer (MC000093-94)

In November 2020, just two days before sitting for deposition, Sal D'Amico fabricated a "test results and packaging costs" document, purporting to disclose to L'Oréal the idea of "developer contained in plastic container with push-in standard orifice reducer" and that "standard orifice reducer for developer less costly … .03 cents a unit."  ECF 198-2, D'Amico Decl. ¶ 19; ECF 189-5, French Decl. ¶ 24.  Mr. D'Amico used a real "test results and packaging costs" document, added the critical words to comport with Metricolor's new trade secret theory, backdated it to October 2014, and Metricolor produced the fake "test results and packaging costs" document, Bates stamped MC000093-94.  *Id.*  Metricolor withheld the real document from production because it reveals the fraud, as shown in a comparison of the fake document against the real one (the blue underlined words were added to the original document and the red strikethrough words are words that were deleted):

**RESULTS OF PRODUCT FIELD TESTING** of L'OREAL PROFESSIONAL HAIR COLOR PRODUCTS AND METRICOLOR PACKAGING COSTS 10/23/14

RESULTS OF L'OREAL'S PROFESSIONAL COLOR LINES PRODUCT TESTING

**PACKAGING COSTS**

| COLOR LINE | PRODUCT VISCOSITY | RESULTS USER-FRIENDLINESS |
|---|---|---|
| Redken Shades EQ | Low viscosity-Liquid | Dispensed easily and accurately. |
| Redken Fusion | Medium viscosity | Dispensed fairly easily and accurately. |
| Matrix | Medium viscosity | Dispensed fairly easily and accurately. |
| Majerel | High viscosity | Dispensed fairly easily and accurately. *1. |
| Developer/Peroxide* | Low viscosity liquid | Dispensed easiest and accurately. *2. |

*1. Due to the high viscosity of this product, a new self-closing valve with a larger port was incorporated into fitment of the a pouch in order to accommodate a catheter tip syringe with a wider tip.

2. Developer contained in plastic container with push-in standard orifice reducer. Most efficient and less costly.

The following are actual packaging costs quotes provided by our suppliers of each packaging component, based on projected orders of 2.5 million component units per year:

| COMPONENTS | COST |
|---|---|
| Flex Packaging Pouch (includes both 8 oz. and 33 oz. pouches, fitment spout and 3-4 color graphics) | .18 |
| Self-sealing, non-leak orifice reducer (standard orifice reducer for Developer less costly... .03 cents a unit) | .08 |
| Filling of product | .13* |
| Outside packaging box   (None required for pouch packaging) | 0 |
| Cost of product not included | 0 |
| Total actual cost for all components | .39 |
| Total packaging costs per ounce of product | .05 |

ECF 157-3 Ex. 2.a.1 (comparing MC000093-94 with real test results and packaging document produced as attachment to RB00025).

Mr. D'Amico testified in a declaration that the fake test results and packaging costs document was the result of his deciding, in consultation with counsel, that "it would be helpful to add information to these documents after the litigation started. The reason for adding to the documents was for me to include information from my hand-written notes that may have been difficult for others to read." ECF 157-13 ¶ 4.

Mr. D'Amico, Metricolor, and their lawyers also often try to explain away the fraudulent conduct as some sort of big mistake based on Mr. D'Amico's "work product" and inexperience with electronic documents and computers. *See, e.g.*, ECF 114-11, D'Amico Decl. ¶ 4 ("Given my struggles with electronic files and lack of knowledge with the discovery process, I have found the process confusing and complicated at times, but understand to be required by law. Part of this confusion is seen with regard to MC00093-94."); ECF 114, Metricolor Opp'n to *Ex Parte* Re Forensic Review at 5 ("Of the three pages L'Oréal argues are 'key', two of those pages, MC00093-94, are work product that was erroneously produced."). And, when Mr. D'Amico had to admit that he created and backdated the electronic versions of the fake testing documents in November 2020, he claimed no-harm-no-foul because

the documents were things he typed up based on notes he handwrote in 2014.  ECF 198-2 ¶ 19.  But L'Oréal recently learned those notes are fake, too.

### 3.  The Fake Handwritten Notes (MC000087-92)

Because Mr. D'Amico swore under oath he created the fake testing results documents by typing up handwritten notes that he supposedly wrote in October 2014, L'Oréal sought to inspect the original notes and it hired an expert to do so.  The handwritten notes Metricolor and Mr. D'Amico produced appear, to the naked eye, to be real notes on paper, with ink and pencil, and they bear a post-it that says they were "shared with Pat Parenty," the President of L'Oréal's Professional Products Division.  The notes also include the buzz words "10ml syringe," the "plastic bottle," the "less-costly push-in standard orifice reducer," for use with "developer"—words that do not appear in any authentic document produced in discovery:[6]

_____

[6] In his September 2022 declaration, Mr. D'Amico attached the "notes," as a "true and correct copy of notes I wrote by hand summarizing the results of field testing that my son Stephen and I performed on the product samples sent to us by L'Oréal in October 2014[.]"  ECF 198-2 ¶ 6 & *id*. Ex. C.

In his December 2022 deposition, Mr. D'Amico admitted that one page of the handwritten notes in ink (MC000087) was not written in 2014. Ex. C, D'Amico Tr. at 224:11-226:6. Mr. D'Amico also admitted that "orifice reducer" and "first generation" were "buzz words" that he added to the handwritten documents in 2020: "every one of these documents from my attorneys, I added that the words 'orifice reducer,' or I added the words 'first generation.' And I added words – one other word that was, like, used in those other ones besides first generation, orifice reducer, you don't see that in any of these, but the ones that I – **I'm admitting that in 2020 for my attorneys, those are the – the buzz words that I put in there**." *Id*. at 225:23-226:6.

However, despite admitting the "buzz words" were added during the litigation, he insisted that the handwritten notes in pencil were the original notes that he handwrote in 2014, allegedly using those very same buzz words: a "plastic bottle," "push-in standard orifice reducer," and "10ml syringe" to test developer—*i.e.*, the components of the "first generation" trade secret Metricolor claimed in the amended complaint. *Id*. at 220:18-222:4.[7]

But L'Oréal's expert analyzed the notes under a microscope and discovered that they are also bogus. They were not Mr. D'Amico's original handwritten notes, but were machine-made using toner. Kuhn Decl. ¶¶ 14-16 & *id*. Ex. 2, Kuhn Report at 2-3. Thus, Mr. D'Amico is still hiding the "originals" of these documents. Even after having been admonished by this Court that its case was "hanging by a thread," Metricolor again tried to pass-off fake documents as real and Mr. D'Amico again offered more demonstrably false testimony about those fake documents.

---

[7] Mr. D'Amico admitted that there no evidence to support his testimony that the MC000088-92 "handwritten" documents were created in 2014. Ex. C, D'Amico Tr. at 227:9-228:4.

### III.   THE COURT SHOULD RECONSIDER ITS PREVIOUS RULING AND ISSUE TERMINATING AND MONETARY SANCTIONS

The Court has authority to reconsider an order based on the emergence of new material facts occurring after the order was entered.  C.D. Cal. L.R. 7-18 (b).  And, of course, district courts have the inherent authority to sanction parties who provide false testimony or engage in deceptive conduct. *Fink v. Gomez,* 239 F.3d 989, 994 (9th Cir. 2001); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46, (1991).

In the Ninth Circuit and other circuits, "[f]alsifying evidence is grounds for the imposition of the sanction of dismissal." *Combs v. Rockwell Int'l Corp.,* 927 F.2d 486, 488 (9th Cir. 1991) (affirming sanction of dismissal where falsified evidence "dealt with issues of central importance in the upcoming summary judgment hearing").[8]  *Id.*  "To permit the fabrication of spurious corroborating evidence without the imposition of a harsh responsive sanction would constitute an open invitation to abuse of the judicial system of the most egregious kind." *SEC v. Blockvest, LLC*, No.: 18CV2287-GPB(MSB), 2020 WL 2786869, at *9 (S.D. Cal. May 29, 2020), *report and recommendation adopted*, 2020 WL 2786869 (S.D. Cal. May 29, 2020).

In determining whether to dismiss a case, courts should consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).  "In deciding whether to impose case-

---

[8] *See also Brown v. Oil States Skagit Smatco,* 664 F.3d 71, 78 (5th Cir. 2011) (affirming dismissal of an employment discrimination case where the plaintiff lied at deposition about the reason he quit his job); *Martin v. DaimlerChrysler Corp., 251* F.3d 691, 695 (8th Cir. 2001) (affirming dismissal of an employment discrimination case based on the plaintiff's false statement at deposition that she had never been a party to another lawsuit against a past employer and based on her failure to identify all of her health care providers); *Nichols v. Klein Tools, Inc.,* 949 F.2d 1047, 1049 (8th Cir. 1991) (affirming dismissal where the plaintiff fabricated deposition testimony in order to prevent the defendant from presenting its case).

dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth." *Id*. at 1097. A court "need not make explicit findings regarding each of these factors," but "willfulness, fault, or bad faith" is required for dismissal to be proper, and incompetence alone "is not bad faith." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (affirming dismissal and monetary awards as sanctions for spoliation); *U.S. v. HVI Cat Canyon, Inc.*, No. CV 11-5097 FMO (RZX), 2015 WL 12766161, at *2 (C.D. Cal. Nov. 20, 2015).

### A. The Court Should Reconsider The Imposition Of Sanctions

Here, Metricolor's latest false testimony, errata sheet, and production of fake handwritten notes are new material facts regarding Metricolor's fabrication of the only documents that purport to support its trade secret theory, namely that it ever disclosed to L'Oréal a "first generation" Metricolor System comprising a plastic bottle, with a standard orifice reducer, to be used with a 10 ml Comar syringe for a developer-type product. L.R. 7-18(b).

The Court recognized that Metricolor's conduct "reflect a cascade of concerning missteps implicating several important principles within the Federal Rules of Civil Procedure, including Rule 37 and 26's discovery disclosure requirements and good-faith accuracy obligations." ECF 228 at 16. "Plaintiff's conduct creating and producing [the fabricated documents], even in light of its proffered explanations, is completely improper." *Id.* That Metricolor continues to inject fake documents into the case after the Court's warnings—requiring L'Oréal to investigate the documents under a microscope with an additional expert—as well as false and evasive testimony and subsequently false errata demonstrates a new fraud on the judicial process warranting reconsideration of L'Oréal's previous sanctions Motion.

### B. The New False Deposition Testimony Warrants Dismissal

Unsurprisingly, "district courts in the Ninth Circuit routinely impose terminating sanctions when a party falsifies evidence of central importance to a case."

*Vogel v. Tulaphorn, Inc.*, No. CV 13-464 PSG (PLAX), 2013 WL 12166212, at *5 (C.D. Cal. Nov. 5, 2013) (collecting cases), *aff'd,* 637 F. App'x 344 (9th Cir. 2016). For example, in *Combs*, the Court dismissed the case as a sanction for a plaintiff whose attorney (with his permission) materially altered his deposition transcript answers to key questions. 927 F.2d at 488. Despite the plaintiff's sworn statements to the contrary, he never reviewed the original or altered transcripts. *Id.*

Mr. D'Amico's latest deposition testimony, ***after*** the Court offered him a chance to explain his fake document production, is egregious. Specifically, in December 2022, Mr. D'Amico again testified that he created the fake Comar email (MC000613) in **2016**, despite his sworn admission to this Court and the forensic confirmation that it was created four years later, in March **2020**. ECF 198-2, D'Amico Decl. ¶ 12; ECF 189-5, Paul French Decl. ¶ 14. Then, Metricolor injected yet another new piece of fake evidence, the "errata" to his December 2022 deposition, changing that date to **2018**. This email is the only purported disclosure to L'Oréal of anything relating to the "secret" "10ml Comar syringe," a disclosure that never happened. The difference between 2020 and 2018 is significant; Metricolor would like the timeline to reflect the date it filed the original complaint in this case (2018), rather than the date that it changed its trade secret theory to reflect a so-called "first generation" trade secret (2020).

### C. The <u>Conn. Gen.</u> Factors Also Favor Dismissal as a Sanction

Because of the false deposition testimony and forged documents, the Court need not even reach *Conn. Gen.* factors with respect to exercising its inherent powers to dismiss the case, but all factors favor dismissal here. *See, e.g., Warner v. Stefalo*, No. 21-35255, 2022 WL 10385252, at *1 (9th Cir. Oct. 18, 2022) (holding district court did not abuse its discretion in dismissing action as sanction "because it determined Warner had filed documents with the court for the improper purpose of deceiving the court as to the nature of the factual record"); *Combs,* 927 F.2d at 488.

### 1. Metricolor's New Fake Evidence and Testimony Shows Bad Faith

As a threshold matter, Metricolor's conduct shows its willfulness, bad faith, and fault. *Conn. Gen.*, 482 F.3d at 1096. Providing false or incomplete information during a deposition or in a response to a discovery request constitutes the sort of willfulness, bad faith, or fault required for dismissal. *Arnold v. Cnty. of El Dorado,* No. 2:10–CV–3119 KJM GGH, 2012 WL 3276979, at *4 (E.D. Cal. Aug. 9, 2012) (plaintiff acted in bad faith by lying at her deposition); *see Henry v. Gill Indus., Inc.,* 983 F.2d 943, 948 (9th Cir. 1993) ("[D]isobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault."). [9]

The purpose of inspecting the handwritten notes was to determine whether Mr. D'Amico's sworn statements—that notes he supposedly wrote in 2014 were the basis for his adding the words "developer contained in plastic container," "push-in standard orifice reducer," and the $0.03 price for the orifice reducer to the fake testing results document (ECF 114-11 Sal D'Amico Decl. ¶ 4; ECF 157-13 Sal D'Amico Decl. ¶ 4, ECF 198-2, Sal D'Amico Decl. ¶ 19)—were true. Instead of providing real, handwritten documents in pencil that could be tested to determine whether they were actually from 2014, Metricolor presented fake notes that looked legitimate to the naked eye, but that Mr. D'Amico really made on a machine like a printer or copier with toner. Kuhn Decl. ¶¶ 14-16 & *id.* Ex. 2, Kuhn Report at 2-3. Metricolor compounded the fraud with false testimony from Mr. D'Amico that the notes were the original documents he made in 2014. Ex. C, D'Amico Tr. at 221:18-21. And Mr. D'Amico also testified falsely during his latest deposition that he created the fake

---

[9] *See also Lowry v. Heritage Sec.,* No. 09–CV–882–BTM WVG, 2011 WL 7769329, at *10, *14 (S.D. Cal. July 7, 2011) (plaintiff acted with willful disobedience in refusing to answer an interrogatory requesting his residence address, even though plaintiff refused to provide such information to protect his privacy) *report and recommendation adopted sub nom. Lowry v. Metro. Transit Bd. MTBS,* No. 09CV00882, 2012 WL 1439078 (S.D. Cal. Apr. 26, 2012); *see also Newman v. Brandon,* No. 1:10–CV–00687 AWI JL, 2012 WL 4933478, at *5 (E.D. Cal. Oct. 16, 2012) (plaintiff acted willfully and in bad faith in submitting falsified declarations in connection with a motion for summary judgment).

Comar email in 2016, even though he previously admitted (and forensics confirm) that he created it four years later, in 2020. ECF 189-5, Decl. of Paul French ¶ 14.

Mr. D'Amico's "errata" improperly alters the story again by contradicting his previous sworn statements and the forensic evidence. In reality, the "errata" isn't an errata at all, it's a wholesale revision of Mr. D'Amico's sworn testimony, which, as the Ninth Circuit has recognized is not permitted. *See Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005) ("We think this type of 'sham' correction is akin to a "sham" affidavit. While the language of FRCP 30(e) permits corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute[.]"); *Alvarez v. XPO Logistics Cartage, LLC*, No. CV 18-3736-RGK(EX), 2020 WL 11563057, at *3 (C.D. Cal. Aug. 17, 2020) (A "deposition is neither an interrogatory nor a take home examination. . . . Allowing a deponent to alter testimony through after-the-fact changes (potentially in consultation with her attorney) would undermine these well-settled deposition rules, effectively permitting the substitution of interrogatory answers for deposition testimony and permitting attorneys to alter the deponent's testimony.").

Here, Mr. D'Amico changed two of his answers from "yes" to "no" and two answers from "no" to "yes." Ex. D, D'Amico "Errata" 175:16 ("Yes" to "No"); 201:9 ("No" to "Yes"); 201:12 ("Yes" to "No"); 209:5 ("I'm not 100 percent, you know, confident" to "Yes, I am confident"). In addition, Mr. D'Amico made *twelve* wholesale re-writes to his testimony. *Compare* Ex. D, Sal D'Amico "Errata" 175:12-16 *with id.* Ex. C, D'Amico Tr. at 175:12-16. *See also* Ex. D, D'Amico "Errata" 173:12; 173:14; 186:2; 199:18; 200:21; 206:23 (material changes). After extensive briefing and hearings on the fabricated evidence, and Mr. D'Amico's claim that he has spent "3000" hours working on this case, Ex. C, D'Amico Tr. at 64:14-18, Metricolor's conduct cannot be the result of mere mistakes or incompetence.

Indeed, as explained extensively here and in the Motion, Metricolor has

actively concealed and perpetuated its fraud.  Perhaps most egregiously, with respect to MC000613, Metricolor knew on October 15, 2021 that it was not an authentic email and that it was never sent to L'Oréal.  Metricolor did nothing to come clean and instead tried to hide what it knew by telling the Court two weeks later that MC000613 was "a single page that Metricolor's principals have already testified they remember nothing about." ECF 198-2, D'Amico Decl. at 34 (Ex. H), ECF 114, Metricolor Opp'n to *Ex Parte* re Forensic Review, at 5.  That was simply and undeniably false.

Metricolor also opposed L'Oréal's forensic investigation of electronic devices and L'Oréal's efforts to inspect the real handwritten documents.  And even after the Court ordered the production of the original handwritten documents, Metricolor produced fakes.  Similarly, Metricolor's counsel instructed Mr. D'Amico not to answer questions about the creation and production of the fraudulent documents based on the attorney client privilege (Ex. C, D'Amico Tr. at 164:11-166:3; *id*. at 239:20-240:1) even though Mr. D'Amico earlier testified – in an attempt to disclaim responsibility for their production – about conversations he had with his lawyers in which he allegedly told them he'd altered the fake documents, and "collectively decided" with his lawyers to "add information" to documents.  ECF 114-11, D'Amico Decl. ¶ 4 ECF 157-13, D'Amico Decl. ¶ 4; Ex. C, D'Amico Tr. at 73:11-13; *id*. at 74:19-21; *id*. at 110:8-10; 125:20-130:1.

### 2. Public Interest and Docket Management Favor Dismissal

The first two *Conn. Gen.* factors, the public's interest in expeditious resolution, and the Court's need to manage its dockets, also weigh in favor of dismissal.  *Conn. Gen.*, 482 F.3d at 1096.  Even after having been caught and admonished by the Court, Metricolor has injected **more** fake documents into the record and testified falsely about it.  This continues to delay resolution of the case because it requires L'Oréal to further investigate what is real, as it has had to do since Metricolor began producing fake documents two years ago.  Metricolor's pattern of disregarding the Court's

orders (*i.e.*, to testify truthfully about the fabricated evidence, and to produce the original handwritten notes for inspection, Ex. B, Nov. 21, 2022 Hrg. Tr. at 15:7-17:3) and testifying that the handwritten notes were real originals, while continuing to change the story and materially alter dates are highly deceptive tactics that interfere with an expeditious rightful decision of the case.

### 3. L'Oréal Is Significantly Prejudiced

The third factor, the prejudice to L'Oréal, weighs strongly in favor of dismissal. *Conn. Gen.*, 482 F.3d at 1096. A party is prejudiced where the misconduct impaired its "ability to go to trial and *threatened* to interfere with the rightful decision of the case." *Anheuser–Busch,* 69 F.3d at 354 (emphasis in original).

Metricolor's continued deception has already prejudiced L'Oréal, wasting a great deal of time and money to investigate a ruse of Metricolor's making. And Mr. D'Amico's perjury prejudices the Court and the public interest too. The Supreme Court defines perjury as a "flagrant affront to the truth-seeking function of adversary proceedings." *ABF Freight Sys. v. NLRB*, 510 U.S. 317, 323 (1994). *See also Anheuser-Busch*, 69 F.3d at 354 ("Where a party has lied and hidden evidence so extensively, a judge may find . . . that a subsequent trial offers no assurance of a reliable result."). Mr. D'Amico's testimony has such a tainted history that the Court has every reason to conclude that Plaintiff will "continue to deceive" and "say anything at any time in order to prevail." *Id.* at 348, 352, 354.

But the prejudice is only worsening because the fake documents and false testimony is the only evidence that support Metricolor's purported disclosure to L'Oréal of its claimed "first generation" trade secret. L'Oréal is now faced with so many versions of events from Mr. D'Amico that it has no idea what new story Mr. Mr. D'Amico will make up in front of the jury.

In addition, L'Oréal has expended more than $600,000 in fees and expert costs to ascertain the authenticity of the fake evidence, yet Metricolor has continued to create more fakeries for L'Oréal to investigate.

### 4. Public Policy Also Favors Dismissal

The fourth factor, public policy, favors dismissal because a lesser sanction than dismissal given this pattern of producing fake documents, testifying falsely, and continuing to change the story about the evidence "would constitute an open invitation to abuse of the judicial system of the most egregious kind." *Blockvest,* 2020 WL 2786869, at *9.

### 5. Lesser Sanctions Will Not Deter Metricolor From More Fraud

The fifth factor, the availability of lesser sanctions, also weighs in favor of dismissal here because Metricolor has been unabashed in its continued pursuit of false evidence and testimony. *Conn. Gen.*, 482 F.3d at 1096. "The district court need not exhaust every sanction short of dismissal before finally dismissing a case[.]" *Henderson v. Duncan,* 779 F.2d 1421, 1424 (9th Cir.1986). *See Oil States Skagit Smatco,* 664 at 79 (affirming that dismissal was the only appropriate sanction where a plaintiff lied at deposition); *Arnold,* 2012 WL 3276979 at *15 (holding that lesser sanctions would not be appropriate where a plaintiff repeatedly lied at deposition and refused to comply with discovery obligations); *Knapp v. Convergys Corp.,* 209 F.R.D. 439, 443 (E.D. Mo. 2002) (finding that lesser sanctions, such as monetary sanctions or re-opening of discovery, would not repair the harm to defendants caused by plaintiff's false responses to interrogatories).

Lesser sanctions will not address the harm caused by Metricolor's deception. At the previous hearing on L'Oréal's motion for sanctions and summary judgment, Metricolor requested "amending the tentative ruling to close off any monetary sanctions." Ex. A, Oct. 24 Hrg. Tr. at 25:12-13. The Court responded, "I am not going to do that. Let me be clear. You are hanging by a thread. Many other people would issue terminating sanctions. I'm trying to be careful, but I am not happy with what has occurred. And monetary sanctions are out there, and you may – and your client should understand that he faces them." *Id*. at 25:15-20.

Metricolor appears to have taken this Court's admonishment as an invitation

to continue to perpetuate falsities, including blaming the production of the fake documents on Metricolor's attorney Matt Brown.  Ex. C, D'Amico Tr. at 71:18-78:1; *id*. at 109:22-110:24; *id*. at 125:20-132:1; *id*. at 143:24-145:23; *id*. at 150:16-153:19; *id*. at 157:5-11; *id*. at 167:22-168:6; *id*. at 235:9-2.  Specifically, Mr. D'Amico testified that on November 23, 2020, he and Mr. Brown "collectively decided to add information" to the testing results document.  *Id*. at 109:22-110:24; *id*. at 126:23-132:1.[10]  Mr. D'Amico further testified that before the documents were produced to L'Oréal, he told his counsel, including Mr. Brown, in an email that he had edited these documents during the litigation.  *Id*. at 143:24-146:7.  But Mr. Brown's sworn declaration, ECF 198-5, contradicts Mr. D'Amico's testimony: "I was not aware that the document production included documents that Sal D'Amico had updated during the litigation."  ECF 198-5 ¶ 10.

### D. The Court Should Impose Monetary Sanctions on Metricolor and Mr. D'Amico

L'Oréal has spent a substantial amount of money investigating, uncovering, and seeking relief for Metricolor's and Mr. D'Amico's fraudulent and perjurious conduct.  As an additional sanction, L'Oréal respectfully requests Metricolor and Mr. D'Amico be ordered to pay L'Oréal $600,000 as reimbursement for these costs that it should never have had to incur.  *See* Declaration of Richard Martinelli, ¶¶ 5-6.

## IV.   CONCLUSION

Metricolor's and Mr. D'Amico's conduct is plain wrong, and it should disqualify them from litigating in the Central District.  L'Oréal respectfully requests that the Court grant L'Oréal's motion for reconsideration, dismiss Metricolor's case with prejudice, and sanction Metricolor and Mr. D'Amico in the amount of $600,000.

---

[10] This November 23, 2020 date is an additional falsity: Mr. D'Amico previously admitted (and forensics confirmed) he altered the test results and packaging costs document three weeks earlier, before his first deposition, on November 4, 2020. ECF 198-2, D'Amico Decl. ¶ 19; ECF 189-5, French Decl. ¶ 24.

Dated:        March 20, 2023

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP


By:                  */s/ Angela Colt*
                        Angela Colt

Joseph A. Calvaruso (*pro hac vice*)
jcalvaruso@orrick.com
Richard F. Martinelli (*pro hac vice*)
rmartinelli@orrick.com
Angela Colt (CA SBN 286275)
acolt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Telephone:   +1 212 506 5000
Facsimile:   +1 212 506 5151

William M. Oxley (CA SBN 136793)
woxley@orrick.com
Meghan Rohling Kelly (CA SBN 292236)
meghan.kelly@orrick.com
Gerald E. Porter (CA SBN 344396)
gporter@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA  90071-1596
Telephone:   +1 213 629 2020
Facsimile:   +1 213 612 2499

*Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., And Redken 5th Avenue NYC, LLC*