JOSEPH A. CALVARUSO (*pro hac vice*)
jcalvaruso@orrick.com
RICHARD F. MARTINELLI (*pro hac vice*)
rmartinelli@orrick.com
ANGELA COLT (CA SBN 286275)
acolt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
Facsimile: +1 212 506 5151

WILLIAM W. OXLEY (CA SBN 136793)
woxley@orrick.com
MEGHAN ROHLING KELLY (CA SBN 292236)
meghan.kelly@orrick.com
GERALD E. PORTER (CA SBN 344396)
gporter@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071-1596
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

*Attorneys for Defendants*
L'ORÉAL USA, INC., L'ORÉAL USA
PRODUCTS, INC., L'ORÉAL USA S/D, INC.,
AND REDKEN 5TH AVENUE NYC, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| METRICOLOR LLC, | Case No. 2:18-cv-00364-CAS-E |
| Plaintiff and Counterdefendant, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING TERMINATING SANCTIONS** |
| v. | |
| L'ORÉAL USA, INC.; L'ORÉAL USA PRODUCTS, INC.; L'ORÉAL USA S/D, INC.; REDKEN 5th AVENUE NYC, LLC; and DOES 1 through 100, inclusive, | |
| Defendants, Counterclaimants and Third-Party Plaintiffs, | |
| v. | |
| SALVATORE D'AMICO, and STEPHEN D'AMICO, | |
| Third-Party Defendants. | |

# TABLE OF CONTENTS

Page No.

I.     INTRODUCTION ........................................................................................ 1

II.    METRICOLOR'S FRAUD IS INTENTIONAL, MATERIAL, AND
       FRUSTRATES L'ORÉAL'S ABILITY TO TRY THIS CASE .................... 3

       A.    The Fake Comar Syringe Email (MC000613) ..................................... 4

       B.    Unrebutted Evidence Demonstrates that the "Handwritten
             Notes" (MC000087-92) Were Not Originals Created in 2014. ........... 8

             1.     The "Handwritten Notes" Were Not Created in 2014. ............... 8

             2.     The Hard Copies of MC000088-92 Are Not Handwritten
                    Originals ................................................................................ 10

       C.    Mr. Cohen's Response To Mr. French's Analysis Of The
             "Comar Sample Request" Email Demonstrates That Metricolor
             Withheld More Evidence. .................................................................. 11

       D.    Metricolor Secretly Imaged Sal D'Amico's Computer and
             Returned it to Him to Delete 50,000 files Before L'Oréal Could
             Image It. ............................................................................................ 14

III.   L'ORÉAL DEMONSTRATED GOOD CAUSE FOR THE MOTION ....... 16

IV.    CONCLUSION ....................................................................................... 16

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anheuser–Busch, Inc. v. Nat. Beverage Distribs.*,
    69 F.3d 337 (9th Cir. 1995) ............................................................... 14

*Combs v. Rockwell Int'l Corp.*,
    927 F.2d 486 (9th Cir. 1991) ............................................................... 6

*Englebrick v. Worthington Indus., Inc.*,
    944 F. Supp. 2d 899 (C.D. Cal. 2013) *aff'd*, 620 F. App'x 564 (9th
    Cir. 2015) ........................................................................................ 9, 10

*Fair Hous. of Marin v. Combs*,
    285 F.3d 899 (9th Cir. 2002) ............................................................. 14

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) ............................................................... 8

*Nichols v. Klein Tools, Inc.*,
    949 F.2d 1047 (8th Cir. 1991) ........................................................... 15

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006) ........................................................... 14

*Valley Engineers Inc. v. Elec. Eng'g Co.*,
    158 F.3d 1051 (9th Cir. 1998) ........................................................... 14

ii

## I.     **<u>INTRODUCTION</u>**

There is no dispute that Metricolor produced fake evidence, presented false testimony, and withheld evidence that contradicts its case. Nor is there any legitimate dispute that Metricolor and Salvatore D'Amico engaged in the same conduct even after the Court issued its sanctions order in an attempt to continue the charade that Metricolor's alleged trade secrets are something other than a sham they created after the Federal Circuit affirmed dismissal of Metricolor's patent infringement-based claim.

In the face of L'Oréal's overwhelming evidence that the Court should issue terminating and monetary sanctions, Metricolor again seeks to defend its actions on the back of a new declaration from Mr. D'Amico in which he again changes his story. If Mr. D'Amico and Metricolor were telling the truth, and if they had really not engaged in intentionally wrongful conduct, they would have told one complete and consistent story from the beginning. Instead, Metricolor has continually evolved its story in an attempt to patch holes as L'Oréal points them out. Metricolor's opposition to the motion for reconsideration is the latest example:

- Mr. D'Amico ***now*** says that the declaration he filed to avoid terminating sanctions, which unequivocally stated he made the Fake Comar Syringe Email (MC000613) in March 2020, was false because it ***did not*** reflect his "honest memory." Instead, it was created as a "consequence" of working with his lawyer.

- Mr. D'Amico's September 2022 declaration to avoid terminating sanctions also swore that MC000087-92 were handwritten notes he created in 2014. Then, in his December 2022 deposition, Mr. D'Amico admitted that MC000087 was made during this litigation when he added words like "orifice reducer" to the document after the litigation started. Now, in his new declaration, Mr. D'Amico offers no apology or excuse for giving the Court false testimony last September about MC000087. Instead, he pretends it didn't

happen.  Mr. D'Amico similarly offers no explanation how MC000089– which also contains the term "orifice reducer" – could really be from 2014.  And, crucially, his new declaration does not state MC000088-92 were created in 2014.  Finally, completely backtracking on his earlier testimony, Mr. D'Amico now acknowledges that MC000088-92 may be copies and, if they are, the "originals are lost."

- Metricolor offers more late expert testimony from Mr. Cohen with respect to the Comar Sample Request email. But this new information raises more serious concerns about Metricolor's conduct. For example, Mr. Cohen's new declaration reveals that there is a second Comar email purportedly sent from Anthony D'Amico's computer on the same day as the "Comar Sample Request Email." But the email Mr. Cohen describes was never produced to L'Oréal.  This is consistent with Metricolor's history of selective production of discovery, which it has repeatedly and intentionally engaged in since discovery began.

- L'Oréal also only recently uncovered that Mr. Cohen made his own forensic image of Sal D'Amico's computer in October 2021, which Metricolor never disclosed to L'Oréal or the Court.  L'Oréal's expert made his image in December 2021 and a comparison of the two images shows there are more than 50,000 files that were deleted from Mr. D'Amico's computer between October and December 2021, during the time L'Oréal was seeking its forensic examination.  There is no justification for Metricolor's failure to disclose the existence of the image Mr. Cohen made to the Court or to L'Oréal.  Nor is there any justification for the deletion of tens-of-thousands of files from the same computer Mr. D'Amico used to create false documents and that was the subject of a motion for forensic examination when the files were deleted.  This represents a significant and intentional withholding of evidence.  And it also reveals more false testimony by Mr. D'Amico who testified in December 2022

that he stopped using his computer in 2020 because it was "dead. Gone." Apparently, however, the delete key still worked.

Metricolor's tactics reflect a complete inversion of the discovery and litigation process. Normally, arguments in a case are built on a bedrock of facts and arguments must bend to any new information. Here, Metricolor shows no compunction to altering evidence or selectively disclosing facts to meet its litigation goals. This is exactly the intentional behavior that warrants terminating and monetary sanctions. The Court should grant L'Oréal's motion.

## II. **<u>METRICOLOR'S FRAUD IS INTENTIONAL, MATERIAL, AND FRUSTRATES L'ORÉAL'S ABILITY TO TRY THIS CASE</u>**

Metricolor's opposition attempts to characterize L'Oréal's motion for reconsideration as a mere rehashing of the "cascade of concerning missteps" the Court described in its ruling on the original motion. But that is wrong. The basis for the motion for reconsideration is Metricolor's conduct, and the evidence L'Oréal uncovered, *after* the Court's order. For example, the deposition of Sal D'Amico taken in December 2022 *after* the Court's order, and now the declaration he submitted last week in opposition to the motion for reconsideration, proves the story Metricolor told the Court to avoid terminating sanctions was completely made-up.

Similarly, Mr. Cohen gave a new opinion *after* the Court's order that led Mr. French to discover that the Comar Sample Request email had been modified in 2020 contrary to its 2014 sent/received date. Likewise, in opposition to the prior motion for terminating sanctions, Metricolor claimed, the handwritten notes (MC000087-92) were originals created in 2014. But microscopic examination *after* the order established they are not originals at all.

Further, long *after* the Court's order, Mr. Cohen disclosed the previously hidden fact that he had made his own image of Mr. D'Amico's computer. A comparison of that image and the image Mr. French made show Mr. D'Amico deleted more than 50,000 files – including thousands of Word, PDF, and PowerPoint

documents – while the parties were briefing, and the Court was considering, whether L'Oréal could make a forensic image of Mr. D'Amico's computer.  Although the forensic analysis has just begun, it is clear that **between October 8, 2021 and December 3, 2021 when L'Oréal was permitted to image his computer, Mr. D'Amico deleted some files that already appear to be directly relevant to this case.**  ECF 287-8 ¶ 9.

Rather than speaking clearly, consistently, and honestly, Metricolor and Mr. D'Amico have changed their story multiple times, they have revealed that their prior declarations were false, and they admit they have withheld information they now want to rely on.  Rather than taking to heart the Court's admonitions that their past conduct was "completely improper" (ECF 228 at 16) and that their case was "hanging by a thread" (ECF 267-1 Ex. A, Oct. 24, 2022 Hrg. Tr. at 25:16), Metricolor and Mr. D'Amico continue to obfuscate, mislead, and withhold with impunity.

### A.    The Fake Comar Syringe Email (MC000613)

To avoid terminating sanctions in September 2022, Sal D'Amico portrayed himself as a confused man in his 70s who made many honest mistakes.  And he described the detailed steps he undertook in March 2020 to create the MC000613 fabricated email:

> 12.    In approximately March of 2020, when I was investigating the facts relevant to this case after remand, I found my March 28-29, 2016 email exchange with Ms. Wolska-Brys, but I thought I had sent her another email describing the samples that I sent her.  Since I couldn't find it, I recreated what I thought I had sent by typing the body of the email and attaching the email header from the actual March 29, 2016 email that I had found.  I printed the email header and body, taped them to a piece of paper, and photocopied the page.  Attached hereto as Exhibit G is a true and correct copy of the reconstructed email, which I understand was marked MC000613 when Martorell Law produced it.

ECF 198-2, Sal D'Amico Sept. 9, 2022 Decl. ¶12. This is a first-person narrative in which Mr. D'Amico explains with no equivocation what he did *in 2020* to create

MC000613.  As explained in L'Oréal's moving papers, when deposed about his declaration in December 2022, Mr. D'Amico reverted to his original story that he created MC000613 in 2016[1] and, in the errata he signed after the deposition he changed his story again, claiming he created the email in 2018.  ECF 267 at 5-6; Colt Decl. Ex. L, Dec. 30, 2022 Sal D'Amico Tr. at 173:7-176:3.

Faced with L'Oréal's motion for reconsideration that is based in part on his new flip-flop, Mr. D'Amico had to come up with an explanation, which he unveiled in a new declaration:

> 3.    My personal recollection is that I created MC000613 around the time this litigation was filed in 2018.  Nevertheless, I understand that L'Oréal's forensic expert found data on my computer indicating that I created the document in March of 2020.  That does not match my memory, but I accept that 2020 must be the correct date.  When I signed my declaration dated September 9, 2022, I was able to take my time and consider the forensic data with my counsel.  Consequently, I stated in my previous declaration that I created MC000613 in March of 2020.

ECF 284-2, Sal D'Amico April 24, 2023 Decl.

The differences between these two declarations – which Metricolor's legal team obviously had a hand in crafting – is startling because it shows Mr. D'Amico will provide false testimony whenever it suits his or Metricolor's needs.  **Mr. D'Amico now actually testifies that his September 2022 declaration was false** – and that his December 2022 deposition testimony is correct – because he never really believed he created MC000613 in March 2020 as he swore he did.  But an oath to tell the truth under penalty of perjury under the laws of the United States is sacred.  And Mr. D'Amico told the Court under penalty of perjury in September 2022 that he had "personal knowledge" that he created MC000613 in March 2020 and he said that if he was called as a witness to testify in Courtroom 8D he "could and would testify to

---

[1] He was unequivocal that he made MC000613 "prior to 2020."  ECF 267-1 Ex.C, Dec. 30, 2022 Sal D'Amico Tr. at 167:24.

the truthfulness of [that fact] under oath." ECF 198-2, Sal D'Amico Sept. 9, 2022 Decl. ¶ 1. But now, trying to square his many stories, Mr. D'Amico says that the testimony he gave in September 2022 was developed as a "consequence" of his review of forensic data with his counsel, not the "personal knowledge of the facts" he swore he had in September 2022. *Compare* ECF 284-2, Sal D'Amico April 24, 2023 Decl. ¶ 1 ("personal knowledge of the facts") and *id.* ¶ 3 ("my personal recollection is that I created MC000613 around the time this litigation was filed in 2018") *with* ECF 198-2, Sal D'Amico Sept. 9, 2022 Decl. ¶ 1 ("personal knowledge of the facts"), *id.* ¶ 12 ("in approximately March of 2020" . . . "I printed the email header and body, taped them to a piece of paper and photocopied the page"). Mr. D'Amico and Metricolor apparently think his perjury is ok because he never really believed the story he told the Court in September 2022. ECF 284-2, Sal D'Amico April 24, 2023 Decl. ¶ 4 (2018 is "***my honest memory*** about when I created MC000613"). If Mr. D'Amico did not recall personally performing, in 2020, the steps described in his September 2022 declaration, he should not have signed it.

The now admitted falsity of Mr. D'Amico's September 2022 Declaration should end this case. *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (affirming terminating sanctions where party reversed sworn statements about issues of central importance in case). Comparing Mr. D'Amico's September 2022 and April 2023 declarations leaves no doubt that his and Metricolor's conduct is serious and intentionally designed to do whatever it takes – regardless of the truth – to get them out of trouble each time Mr. D'Amico forges documents or gives false testimony (or both). These are two carefully crafted declarations prepared by or in consultation with counsel. If the content and misdirection in these declarations is not the result of intentional conduct, nothing could be.

The falsity of the September 2022 declaration is also highly material. Frankly, Mr. D'Amico's story that he created MC000613 solely for his lawyers by undertaking a scissors and tape, arts and crafts project is unbelievable. Similarly

farfetched was Mr. D'Amico's assertion in September 2022 that the Court should excuse the false testimony that MC000613 was a real email that he drafted in 2016, *see* Colt Decl. Ex. K, Sept 22, 2021 Sal D'Amico Tr. at 155:11, because he was confused and he had forgotten he created the document during the litigation when he gave that testimony.[2]  Also preposterous is Mr. D'Amico's current attempt to explain away the false story he told about MC000613 when he was deposed in December 2022 after the Court's sanctions ruling.

Mr. D'Amico's December 2022 deposition was noticed and taken for the very purpose of asking him about the documents he fabricated and the statements he made about the fabrications.  ECF 227 at 1.  Yet somehow Mr. D'Amico has the nerve to ask the Court to give Metricolor and him another pass because this time he supposedly was forced to answer questions about MC000613 "based on [his] memory," without access to his September 2022 declaration or the forensic evidence.  ECF 284-2, Sal D'Amico April 24, 2023 Decl. ¶ 4.  Seriously?  Mr. D'Amico's September 2022 declaration was designed to save Metricolor's case from terminating sanctions, it must have gotten his full attention, and his testimony should have been the truth. That Mr. D'Amico supposedly could not remember what he said about his fabrication of MC000613 a mere three months later in a critical deposition that he prepared for with his lawyers, demonstrates the story Metricolor is peddling is intentionally false.  Colt Decl. Ex. L, Dec. 30, 2022 Sal D'Amico Tr. at 238:6-8 ("I tried to" look at what [I] "testified to previously").

Mr. D'Amico says he did not "make a correction" to fix his testimony about the date he created MC000613 after the deposition when he "prepared the errata sheet" because he did not "realize that [he] had made an error."  ECF 284-2, Sal D'Amico April 24, 2023 Decl. ¶ 4.  But this too is false.  Mr. D'Amico actually did

---

[2] Indeed, in December 2022 Mr. D'Amico said that cutting and taping together this MC000613 document was a singular event in his life and that he had "never, never before" done anything like this.  ECF 267-1 Ex.C, Dec. 30, 2022 Sal D'Amico Tr. at 184:4-187:25.

purport to "make a correction" on his errata sheet from one false date (2016) to another (2018). ECF 267-1 Ex. D, Sal D'Amico Errata at 2-3.

The falsity of the September 2022 declaration shows that Metricolor cannot support its assertion that the creation of MC000613 was somehow the result of an innocent misunderstanding. The Court does not need an admission of bad faith actions from Mr. D'Amico and Metricolor to end this case. *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose.") If it did, litigants would be encouraged to disregard their duty to be truthful, safe in the knowledge that they could avoid sanctions simply by never admitting guilt. This would be completely corrosive to the core fact finding role of the judicial system. Instead, Metricolor's proven falsity and equivocation are enough to end this case.

**B.      Unrebutted Evidence Demonstrates that the "Handwritten Notes" (MC000087-92) Were Not Originals Created in 2014.**

As explained in L'Oréal's opening papers, Mr. D'Amico swore under oath that he wrote handwritten notes, MC000087-92, in 2014, and Metricolor used Mr. D'Amico's testimony and the notes last year to avoid terminating sanctions and summary judgment. As also explained in L'Oréal's opening papers, the notes are fabrications.

**1.      The "Handwritten Notes" Were Not Created in 2014.**

As explained in L'Oréal's opening brief, Mr. D'Amico now unequivocally admits that MC000087 was not made in 2014. ECF 267 at 9; ECF 267-1, Ex. C, Dec. 30, 2022 Sal D'Amico Tr. at 224:11-226:6. Specifically, Mr. D'Amico testified he could tell MC000087 was created during litigation because "when these were done, every one of these documents from my attorneys, I added the words 'orifice reducer'… I  I'm admitting that in 2020 for my attorneys, those are the – the buzzwords that I put in there." ECF 267-1, Ex. C, Dec. 30, 2022 Sal D'Amico Tr. at

225:23-226:6.  Metricolor does not attempt to recant that admission and Metricolor makes no mention of MC000087 at all, except to withdraw the page as erroneously attached as part of an exhibit to Mr. D'Amico's April 24, 2023 declaration.  ECF 285 (April 25, 2023 Notice of Errata withdrawing MC000087).

Importantly, Metricolor also offers no response whatsoever to Mr. D'Amico's unequivocal deposition testimony that the "buzzwords" "orifice reducer" reflect content he created for his lawyers in 2020, which means Mr. D'Amico created or altered MC000089 in 2020 because that page also contains the litigation buzzwords "orifice reducers."  ECF 267 at 8-9; ECF 267-1, Ex. C, Dec. 30, 2022 Sal D'Amico Tr. at 225:23-226:6.  Indeed, Mr. D'Amico's March 2023 declaration does not assert anywhere that the handwritten notes in their entirety, MC000088-92, were created in 2014.

As noted, the 2014 creation date of these handwritten notes was a material fact Metricolor used to support its opposition to L'Oréal's request for terminating sanctions and summary judgment. ECF 198 at 5-6 (Metricolor opposition relying on "their handwritten field testing notes"); ECF 198-2, Sal D'Amico Sept. 9, 2022 Decl. ¶ 6 (claiming Exhibit C is "notes I wrote by hand summarizing the results of the field testing that my son Stephen and I performed on the product samples sent to us by L'Oréal in October 2014, as well as our related recommendations and analysis.  On page 2 is a post-it note with my handwriting that I added at a later date.").  But Mr. D'Amico admitted three months later in his December 2022 deposition that his declaration was false because he added the words "orifice reducer" "in 2020 for my attorneys, those are the -- the buzzwords that I put in there." Thus, at least with respect to the pages MC000087 and MC000089, the declaration was intentionally false and Metricolor offers no excuse or explanation to the contrary. This alone warrants terminating sanctions. *See Englebrick v. Worthington Indus., Inc.*, 944 F. Supp. 2d 899, 909 (C.D. Cal. 2013) ("Providing false or incomplete information during a deposition or in a response to a discovery request constitutes the sort of willfulness,

bad faith, or fault required for dismissal.") *aff'd*, 620 F. App'x 564 (9th Cir. 2015).

### 2.   The Hard Copies of MC000088-92 Are Not Handwritten Originals.

As discussed above, Mr. D'Amico's own deposition testimony contradicts his prior sworn declaration that his handwritten notes were made in 2014. While that is the most relevant fact concerning these notes, Metricolor also has no legitimate rebuttal for the fact that, contrary to Mr. D'Amico's testimony, MC000088-92 are not original handwritten notes. They are copies printed on a machine with toner.[3] ECF 267-3 ¶ 14 & id. Ex. 2, Jan 27, 2023 Kuhn Expert Report at 2-3.

Mr. D'Amico unequivocally testified in his deposition that the originals of MC000088-92 were created in 2014 by hand and he placed them in a binder where they remained until the litigation began. Colt Decl. Ex. L, Dec. 30, 2022 Sal D'Amico Tr. at 215:9-217:21. Now, confronted with Mr. Kuhn's expert analysis, Mr. D'Amico abandons that position and argues in the alternative:  if MC000088-92 are proven not to be originals, "then the originals are lost." ECF 284-2, Sal D'Amico April 24, 2023 Decl. ¶ 6. Notably, Mr. D'Amico does not assert in the April 2023 declaration that MC000088-92 were created in 2014 as he had previously.

Moreover, Mr. D'Amico was asked in his deposition to "Break down…step by step as specific as [he] can get" how he created MC000088-92. Colt Decl. Ex. L, Dec. 30, 2022 Sal D'Amico Tr. at 215:5-216:1. At no point in response to that question did Mr. D'Amico state he used a photocopier to make copies. Colt Decl. Ex. L, Dec. 30, 2022 Sal D'Amico Tr. at 215:5-217:21. Despite this, and because of Mr. Kuhn's analysis showing that MC000088-92 are unquestionably photocopies, Mr. D'Amico offers new testimony not disclosed in his deposition – he now says that he created photocopy templates as part of creating MC000088-92. ECF 284-2, Sal D'Amico April 24, 2023 Decl. ¶ 7. This is yet another example of Metricolor's

---

[3] Mr. D'Amico's willingness to admit that MC000087, which was undisputedly pen on paper, was not authentic, was likely due to a concern that the ink could be reliably dated. In contrast, Mr. D'Amico most likely believed that MC000088-92 could not be reliably dated because toner and pencil are more difficult to date.

practice of evolving its story when it prior story is proven untrue.

In any event, Mr. D'Amico's late description of his template making process is a red herring because Mr. Kuhn's unopposed opinion was not limited to the template lines Mr. D'Amico now describes. Rather, Mr. Kuhn testified that the handwriting in MC000088-92 was also produced by a machine using toner and cannot be authenticated to 2014. Colt Decl. Ex. M, Kuhn Tr. at 108:23-109:21; *id*. at 68:11-18. As noted, Mr. D'Amico accepts that these documents may not be original. And Metricolor submitted no rebuttal report challenging Mr. Kuhn's analysis.

While Mr. Martorell declared that he "personally reviewed the pages that Salvatore D'Amico has identified as the original notes corresponding to MC000088-92." ECF 284-1 ¶ 2. Mr. Martorell is not an expert and his self-serving assertion that it "appears to [him] that the non-template portions are in hand-written pencil" is meaningless and improper. ECF 284-1 ¶ 2. Mr. Martorell will not appear as a witness in this case and if Metricolor wanted to challenge Mr. Kuhn's testimony it should have done so through a real expert. Instead, Metricolor left the testimony unrebutted.

C.    <u>**Mr. Cohen's Response To Mr. French's Analysis Of The "Comar Sample Request" Email Demonstrates That Metricolor Withheld More Evidence.**</u>

As explained in L'Oréal's supplemental brief, Metricolor's expert offered an undisclosed opinion during his deposition that the Comar Sample Request[4] email was actually sent on October 11, 2014. Because that late opinion was not identified in his expert report, L'Oréal did not have an opportunity to fully examine him on the issue. However, upon inspection of the metadata associated with email that Mr. Cohen said he relied on, Mr. French discovered the email was modified during the

_____

[4] The Comar Sample Request email, at most, shows that Mr. D'Amico emailed himself a link to the Comar website in 2014. It does not demonstrate whether or when Mr. D'Amico ever ordered or received any Comar samples. Moreover, it does not identify any particular Comar sample. And, it in no way demonstrates that any Comar sample was disclosed to L'Oréal.

litigation on July 23, 2020.

The fact that the Comar Sample Request email was modified during the litigation is not disputed by Mr. Cohen. ECF 284-4, Cohen April 24, 2023 Decl. ¶ 2. Instead, Mr. Cohen offers a new explanation for how that modification might not be substantively relevant. Mr. Cohen's new declaration has problems.

First, Mr. Cohen's opinion is late. It is Metricolor's burden to authenticate the evidence it wants to rely upon. It offered no expert opening expert report on this issue.

Second, Mr. Cohen's theory that the change from "unread" to "read" *could* be a reason why the Comar Sample Request email shows up as edited on July 23, 2020, is inconclusive and inconsistent with Metricolor's story that the Comar syringe was Metricolor's chosen, favorite syringe and that Metricolor disclosed the syringe to L'Oréal in 2014 and 2015. But given how important Comar and the email supposedly were to Metricolor's alleged generation one trade secrets, it makes zero sense that Mr. D'Amico did not read the email *until 2020.* Especially when all of the other produced emails from Anthony D'Amico dated October 11, 2014[5] were last modified, or "written" on October 14, 2014, not July 23, 2020. ECF 284-4, Cohen Ex. C at lines 862, 866, 872. And especially when Mr. D'Amico testified that he started collecting documents, including printouts of many emails, for this case and first gave them to his counsel in 2017. ECF 267-1 Ex. C, Dec. 30, 2022 Sal D'Amico Tr. at 10:17-20.

Third, a change from unread to read, even assuming Cohen is correct, does *not* exclude Mr. D'Amico making other changes, as he did with other documents.

---

[5] The Comar Sample Request Email was purportedly sent from Anthony D'Amico's email address to Sal D'Amico's email address on October 11, 2014. The other three of them—(a) 256016.emlx, produced as MC005416; (b) 256022.emlx, produced as MC0005417; and (c) 256026.emlx, produced as MC005418—were last modified, or "written" on October 14, 2014. ECF 284-4, Cohen Ex. C at lines 862, 866, 872.

But perhaps the most serious issue with Mr. Cohen's declaration is that it demonstrates that Metricolor withheld additional relevant documents from production. Specifically, Mr. Cohen searched his forensic image and identifies six emails that were "last written" on July 23, 2020 and have the word Comar within them.[6] ECF 284-4, Cohen April 24, 2023 Decl. ¶ 11. Critically, that list shows an email allegedly sent from Anthony D'Amico's computer, related to Comar, and received at the same time as the Comar Sample Request email:

| Name | Hit Text | File Created | Last Written |
|---|---|---|---|
| 309459.emlx | 33815681 | 9/20/2016 8:22:55 AM | 7/23/2020 9:32:40 AM |
| 307491.emlx | 33815681 | 8/31/2016 1:53:24 PM | 7/23/2020 9:32:35 AM |
| 307060.emlx | 33815681 | 8/24/2016 2:32:54 PM | 7/23/2020 9:32:30 AM |
| 294841.emlx | 33815681 | 4/6/2016 12:21:19 PM | 7/23/2020 9:26:23 AM |
| 256013.emlx | 33815681 | 10/14/2014 5:32:27 PM | 7/23/2020 9:26:19 AM |
| 256012.emlx | 33815681 | 10/14/2014 5:32:27 PM | 7/23/2020 9:25:48 AM |

| File Name | Subject | From |
|---|---|---|
| 256012.emlx | Comar Sample Request | ANTHONY damico <tdamicoct@gmail.com> |
| 256013.emlx | Oral Dispensers, Oral Syringe, Liquid Dispenser, Liquid Dispensing | ANTHONY damico <tdamicoct@gmail.com> |
| 294841.emlx | Comer call | Saldamico <saldamico@comcast.net> |
| 307060.emlx | Visit us at SupplySide West Expo | Comar, LLC. <marketing@comar.com> |
| 307491.emlx | Comar Announces Relocation of Corporate Office | Comar, LLC. <marketing@comar.com> |
| 309459.emlx | Visit us at SupplySide West Expo | Comar, LLC. <marketing@comar.com> |

L'Oréal has never received this other email purportedly mentioning Comar and has no idea what its content is. But this email seems relevant. It was allegedly sent at the same time as an email that Metricolor intends to rely on and expressly mentions Comar. Now Metricolor is relying on it to support the authenticity of a questionable Comar email. Why was this never produced?[7] Withholding documents and then

---

[6] The Court should disregard Cohen's statements because (a) Metricolor never disclosed the existence of the Cohen image, which was made in October 2021; (b) as soon as L'Oréal discovered the Cohen image, it demanded a copy; (c) Metricolor delayed for three weeks producing it to L'Oréal; and (d) Metricolor has informed L'Oréal it cannot search the Cohen image because Metricolor does not believe L'Oréal should have access to anything other than materials relating to the documents L'Oréal originally identified in Paragraph 4 of the forensic protocol as suspicious.

[7] Recall that Metricolor never produced the RB00025 document, which was the real version of MC000093-94. ECF 109 at 6. This is despite it appearing in numerous easily identifiable locations in Mr. D'Amico's computer. This is because producing

relying on them after the close of fact discovery is a discovery abuse that separately supports terminating sanctions. Concealing or failing to produce documents alone is also "sufficient prejudice, whether or not there is belated compliance" to warrant dismissal.  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1236 (9th Cir. 2006); *Anheuser–Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 354 (9th Cir. 1995). *See also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (affirming terminating sanctions where party failed to produce documents and explaining that "Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts.").

### D.      <u>Metricolor Secretly Imaged Sal D'Amico's Computer and Returned it to Him to Delete 50,000 files Before L'Oréal Could Image It.</u>

As the Court knows, Mr. Cohen's deposition also uncovered the alarming fact that Metricolor had created a forensic image of Mr. D'Amico's computer, but neglected to inform the Court or L'Oréal.  We now know that on October 8, 2021, Kevin Cohen made an image of Mr. D'Amico's computer.  ECF 287-3.  On October 22, 2021, L'Oréal applied *ex parte* to suspend the case deadlines pending a forensic review of Metricolor's devices.  ECF 109.  In opposing L'Oréal's request, Metricolor submitted a declaration from Mr. Cohen relating to L'Oréal's plan for making an image of Mr. D'Amico's computer, ECF 131-1, but hid that Mr. Cohen had already made an image of the computer.

After Mr. Cohen took his image, the computer was apparently returned to Mr. D'Amico *before* the Court ordered forensic review and before the device was turned over to L'Oréal's expert for imaging.  Metricolor's attempts to oppose, minimize and

---

RB000025 would have run contrary to the narrative Metricolor was seeking to falsely create that MC000093-94 reflected the information Metricolor disclosed to L'Oréal. So Metricolor substituted MC000093-94 for RB00025 and its attachment. "Producing thousands of pages, but not the most important four pages, could be innocent in some circumstances, but there was no reason to think that omission of the [real documents] was an innocent omission in this case." *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998).

delay the forensic review resulted in more than 50 days elapsing before L'Oréal was able to create its image of the computer.  Preliminary analysis shows that over 50,000 files were deleted from the computer before L'Oréal's expert took its image.  ECF 287-8 ¶ 9.[8]  *Id.*  Worse, at least **some of the files that Mr. D'Amico deleted in that period from October 8, 2021 to December 2, 2021 appear directly relevant to this case**, but L'Oréal has not yet seen them.  ECF 287-8 ¶ 9.

The changes to Mr. D'Amico's computer over those 50 days reveals another fabrication. Mr. D'Amico testified that he did not use his computer after his computer consultant from PC Parlor cloned it in October 2020 because: "The computer was dead. Gone." Colt Decl. Ex. L, Dec. 30, 2022 Sal D'Amico Tr. at 57:21-58:10; ECF 198-4, Musorafite Decl. ¶¶ 13-18 (PC Parlor cloned Sal D'Amico's computer and returned it to him in October 2020).[9]  The fact that the computer was alive and operable enough to delete massive amounts of information demonstrates that Mr. D'Amico once again did not tell the truth. Claiming his computer was "dead" was an intentional falsehood to minimize his conduct and dissuade L'Oréal from digging into the issue further. This unquestionably intentional conduct was designed to abuse the orderly operation of the discovery process and warrants terminating sanctions. *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1048 (8th Cir. 1991) (affirming terminating sanctions where party concealed material fact during deposition, and only admitted fact after it came to the attention of his attorney, which court held was a deliberate effort to conceal evidence from opposing party).

---

[8] L'Oréal cannot review the content of this new evidence until Metricolor has reviewed it for privilege.  ECF 287-8 ¶ 11.  But Mr. French's preliminary analysis advises that these previously undisclosed documents include items relevant to the case. ECF 287-8 ¶ 9.

[9] *See also* Colt Decl. Ex. L, Dec. 30, 2022 Sal D'Amico Dep Tr. at 39:7-8 ("he cloned the drive from my computer that was no longer working"); 41:17-21 (after the hard drive was cloned, Mr. D'Amico gave the clone to his counsel); 42:5-6 ("Once my computer, you know, it just wasn't working anymore, I started using a little iPad."); 42:20-44:7 ("Q. After your computer consultant cloned the hard drive on your computer, did you stop using it to do work? A. Yes.").

## III.   L'ORÉAL DEMONSTRATED GOOD CAUSE FOR THE MOTION

Metricolor devotes much of its brief to its primary argument that the Court should deny the motion because L'Oréal sought reconsideration more than 14 days after the Court originally denied terminating sanctions.  But the Local Rule allows for review of a prior order after 14 days for good cause shown.  That is something L'Oréal has clearly and overwhelmingly shown in its moving and reply papers.

Metricolor also criticizes L'Oréal for not moving more quickly when it learned of the new misconduct and Metricolor cries "delay!" because L'Oréal could have discovered the other misconduct sooner if it had only, for example, checked the metadata earlier.  Boiled down to its essence, Metricolor's position is really that L'Oréal should have caught Metricolor and Mr. D'Amico sooner and it should have reported their fraudulent conduct faster.  That argument cannot work to prevent judicial review when the conduct is as egregious as perjury and the falsification of documents.  And the record is clear that L'Oréal acted expeditiously in conducting its investigation and in filing its motion.

Finally, of course, requesting terminating sanctions is not something a party does lightly and the same goes for the requested reconsideration here. Rather it is the culmination of repeated conduct that pushes a party to the point of taking a serious motion like this to the Court.  L'Oréal may never know the full scope of Metricolor's and Mr. D'Amico's improper conduct, and hopefully it will not have to keep digging. Instead, the Court should issue terminating and monetary sanctions.

## IV.   CONCLUSION

Metricolor and Mr. D'Amico submitted false declarations to the Court, Mr. D'Amico created (and Metricolor produced) fake documents, Mr. D'Amico gave false testimony, Mr. D'Amico deleted 50,000 files from his computer before L'Oréal was allowed to make a forensic image, and the list goes on and on.  The Court should issue the relief Metricolor's and Mr. D'Amico's conduct deserves:  terminating and monetary sanctions.

Dated:  May 1, 2023

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  */s/ Angela Colt*
ANGELA COLT

*Attorneys for Defendants*
L'Oréal USA, Inc.,
L'Oréal USA Products, Inc.,
L'Oréal USA S/D, Inc., and
Redken 5th Avenue NYC, LLC


## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, LLC, certifies that this brief contains 5,274 words, which complies with the word limit of L.R. 11-6.1.


Dated:  May 1, 2023

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  */s/ Angela Colt*
ANGELA COLT