**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
JoAnn Victor, State Bar No. 121891
JVictor@Martorell-Law.com
Jordan M. Zim, State Bar No. 332757
JZim@Martorell-Law.com
Playa District
6100 Center Drive, Suite 1130
Los Angeles, California 90045
Tel: (323) 840-1200
Fax: (323) 840-1300

**RIMÔN, P.C.**
Matthew H. Poppe, State Bar No. 177854
matthew.poppe@rimonlaw.com
800 Oak Grove Ave., Suite 250
Menlo Park, California 94025
Tel: (650) 461-4433
Fax: (650) 461-4433

Attorneys for Plaintiff/Counterclaim
Defendant Metricolor LLC and Third-
Party Defendants Salvatore D'Amico
and Stephen D'Amico

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| METRICOLOR LLC,<br><br>     Plaintiff and<br>     Counterdefendant,<br><br>     v.<br><br>L'ORÉAL USA, INC.; L'ORÉAL USA PRODUCTS, INC.; L'ORÉAL USA S/D, INC.; REDKEN 5TH AVENUE NYC, LLC; and DOES 1 through 100, inclusive,<br><br>     Defendants,<br>     Counterclaimants, and<br>     Third-Party Plaintiffs,<br><br>     v.<br><br>SALVATORE D'AMICO and STEPHEN D'AMICO,<br><br>     Third-Party Defendants. | Case No. 2:18-cv-00364-CAS-Ex<br><br>**METRICOLOR'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Complaint Filed:  January 16, 2018<br>Final Pretrial Conf:  May 22, 2023<br>                at 11:00 a.m.<br>Trial Date:        June 20, 2023 |

Pursuant to Civil Local Rule 16-4, Plaintiff Metricolor LLC ("Plaintiff" or "Metricolor") hereby submits its Memorandum of Contentions of Fact and Law. Metricolor reserves the right to amend and/or supplement this memorandum based on pretrial developments, including, but not limited to, Defendants' disclosure of their intended witnesses, exhibits, and contentions.

## I.     L.R. 16-4.1 – CLAIMS AND DEFENSES

### (a)     Summary of Metricolor's Claims

Metricolor provides the following summary of the claims it has pleaded and plans to pursue:

Claim 1:  Defendants L'Oréal USA, Inc.; L'Oréal USA Products, Inc.; L'Oréal USA S/D, Inc.; Redken 5th Avenue NYC, LLC (collectively, "Defendants" or "L'Oréal") breached the Non-Disclosure Agreements ("NDAs") between L'Oréal and each of Salvatore D'Amico and Stephen D'Amico.

Claim 2:  Defendants breached the covenant of good faith and fair dealing implied by each of the above-referenced NDAs.

Claim 3:  Defendants misappropriated Metricolor's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1831 *et seq*.

Claim 4:  Defendants misappropriated Metricolor's trade secrets in violation of Cal. Civ. Code §§ 3426 *et seq*.

### (b)     Elements of Metricolor's Claims

The following elements are required to establish Metricolor's claims:

Elements Required to Establish Metricolor's Claim for
Breach of Contract

1.     Existence of the NDAs.

2.     Metricolor's rights under the NDAs as assignee and/or third-party beneficiary.

3.     Substantial compliance with the NDAs by the D'Amicos.

4.     Defendants' breach(es) of the NDAs.

5.    Harm to Metricolor.

6.    Causation, namely that Defendants' breaches were a substantial factor in causing the harm to Metricolor.

<u>Elements Required to Establish Metricolor's Claim for Breach
of the Implied Covenant of Good Faith and Fair Dealing</u>

1.    Existence of the NDAs.

2.    Metricolor's rights under the NDAs as assignee and/or third-party beneficiary.

3.    Substantial compliance with the NDAs by the D'Amicos.

4.    Defendants' breach(es) of the covenant of good faith and fair dealing implied by each of the NDAs.

5.    Harm to Metricolor.

6.    Causation, namely that Defendants' breaches were a substantial factor in causing the harm to Metricolor.

<u>Elements Required to Establish Metricolor's Claim for Trade
Secret Misappropriation Under the DTSA</u>

1.    Metricolor's ownership or rightful possession of information that, at the time of misappropriation, constituted a trade secret, which is information that:

(a)    was not generally known to or readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information;

(b)    was the subject of reasonable measures by Metricolor to keep it secret; and

(c)    derived independent economic value, actual or potential, from not being generally known or reasonably ascertainable.

2.    Defendants' misappropriation of Metricolor's trade secret(s), meaning use and/or disclosure of the trade secret(s) without Metricolor's express or implied

consent and with knowledge or reason to know that Defendants' knowledge of the trade secret(s) was acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use.

3. Unjust enrichment of Defendants from the misappropriation.  In the alternative, Metricolor may be awarded a reasonable royalty.

4. Causation, namely that Defendants' misappropriation was a substantial factor in causing Defendants' unjust enrichment.

5. Willful and malicious misappropriation by Defendants, solely with respect to the remedies of exemplary damages and reasonable attorney's fees.

### Elements Required to Establish Metricolor's Claim for Trade Secret Misappropriation Under California Law

1. Metricolor's ownership or rightful possession of information that, at the time of misappropriation, constituted a trade secret, which is information that:

(a) was not generally known to the public or to other persons who could obtain economic value from the disclosure or use of the information;

(b) was the subject of efforts by Metricolor that were reasonable under the circumstances to maintain the secrecy of the information; and

(c) derived independent economic value, actual or potential, from not being generally known.

2. Defendants' misappropriation of Metricolor's trade secret(s), meaning use and/or disclosure of the trade secret(s) without Metricolor's express or implied consent and with knowledge or reason to know that Defendants' knowledge of the trade secret(s) was acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use.

3. Unjust enrichment of Defendants from the misappropriation.  In the alternative, Metricolor may be awarded a reasonable royalty.

4. Causation, namely that Defendants' misappropriation was a substantial factor in causing Defendants' unjust enrichment.

1       5.      Willful and malicious misappropriation by Defendants, solely with

2  respect to the remedies of exemplary damages and reasonable attorney's fees.

3       **(c)     Key Evidence Supporting Metricolor's Claims**

4      The key evidence in support of each of Metricolor's claims may briefly be

5  described as follows.  Metricolor reserves the right to rely on additional evidence.

6      <u>Claim 1 for breach of contract</u>:

7      Element (1) - Existence of the NDAs:  Sal and Stephen D'Amico will testify

8  that they each signed an NDA with L'Oréal.  The NDAs are Exhibits 3 and 4.  The

9  signature of Pat Parenty on behalf of L'Oréal will be authenticated with the live or

10  deposition testimony of Mr. Parenty.

11      Element (2) - Metricolor's rights under the NDAs as assignee and/or third-

12  party beneficiary:

13      The parties' correspondence and discussions both before and after the signing

14  of the NDAs repeatedly referred to the "Metricolor System," and L'Oréal assumed

15  that Metricolor would be a party to future agreements.  This will be shown by the

16  testimony of Sal and Stephen D'Amico, the live and/or deposition testimony of

17  multiple L'Oréal participants in the discussions with Metricolor (*e.g.*, Pat Parenty,

18  Marta Wolska-Brys), and written correspondence such as Exhibits 10, 171, 172, 173,

19  and 301.

20      The NDAs are freely assignable by their terms.  *See* Exhibits 3, 4.  Sal and

21  Stephen D'Amico will testify that they assigned all of their intellectual property and

22  other rights related to the Metricolor System, including their rights under the NDAs,

23  to Metricolor.  Assignment documents include Exhibits 261-266.

24      Element (3) - Substantial compliance with the NDAs by the D'Amicos:  Sal

25  and Stephen D'Amico will testify that they substantially complied with the NDAs by

26  not making unauthorized disclosures of confidential information, if any, disclosed by

27  L'Oréal under the NDAs.  Further, the order dismissing with prejudice Defendants'

28

counterclaim for alleged breach of the NDAs has preclusive effect.  *See* ECF 95, 99 (Exhibits 267, 268).

Element (4) - Defendants' breach(es) of the NDAs:  Metricolor's key evidence is the same as for Element (2) of its claim for trade secret misappropriation under the DTSA, described below.

Element (5) - Harm to Metricolor:  Metricolor was harmed by Defendants' breaches of the NDA, resulting in Metricolor trade secrets becoming public and preventing Metricolor from offering first-to-market advantage to other potential partners, licensees, and purchasers.  Sal and Stephen D'Amico and/or Rand Brenner will testify about Metricolor's efforts to license or sell the Metricolor System and the impact of Defendants' launch of the accused products.  Those efforts are reflected in NDAs that Metricolor signed with third parties (Exhibit 269).  Metricolor was also harmed in that it was deprived of fair compensation for Defendants' disclosure and use of Metricolor's trade secrets beyond what was permitted by the NDAs.  Evidence of the monetary value of Metricolor's harm is described below in connection with Elements 3(a) and 3(b) of Metricolor's claim for trade secret misappropriation under the DTSA.

Element (6) - Causation:  In the discussion of Element (2) of Metricolor's claim for trade secret misappropriation under the DTSA, *infra*, Metricolor describes the evidence that Defendants' launch of the accused products resulted in Metricolor trade secrets becoming public knowledge.  In the discussion of Elements 3(a) and (4) of that claim, *infra*, Metricolor describes the evidence that Defendants' sale of the accused products, which included Metricolor trade secrets, caused Defendants to be unjustly enriched.  In addition, Sal and Stephen D'Amico and/or Rand Brenner will testify about the impact of Defendants' launch of the accused products on their efforts to license or sell the Metricolor System to third parties.

<u>Claim 2 for breach of the implied covenant of good faith and fair dealing:</u>

Metricolor's key evidence for each element is the same as described above in connection with the similar elements of Metricolor's claim under the federal Defend Trade Secrets Act.  In addition:

Element (4) - Defendants' breach(es) of the covenant of good faith and fair dealing implied by each of the NDAs:  At a time when Defendants' were actively developing Metricolor's trade secret components for use with the accused products without Metricolor's knowledge, Defendants sought to prevent Metricolor from offering the Metricolor System to potential competitors by offering a token payment in exchange for temporary exclusive rights.  When Metricolor responded with a fairer counterproposal, Defendants stayed silent for several months and then abruptly terminated discussions with Metricolor shortly before launching the accused products.  Key evidence supporting these allegations will include the testimony of Sal and Stephen D'Amico, the live and/or deposition testimony of Marta Wolska-Brys, L'Oréal's proposed Exclusive Evaluation Agreement, and emails between Metricolor and L'Oréal (Exhibits 12, 16-17, 25, 295-298).

<u>Claim 3 for trade secret misappropriation under the DTSA:</u>

Element (1) - Metricolor's ownership or rightful possession of trade secrets: Sal and Stephen D'Amico will testify about their development of the trade secrets, including the initial insight of using the combination of a catheter syringe, non-self-sealing orifice reducer, and standard plastic bottle for certain hair coloring products for sale to and use by industry professionals; research into optimal components; acquisition and testing of sample syringes, orifice reducers, and containers with a variety of hair products, including at L'Oréal's behest; market research; research into the benefits that the Metricolor System would provide to the target market; and pricing research.  Other key evidence includes live and/or deposition testimony of Pat Parenty and Scott Schienvar, physical sample syringes, orifice reducers, and bottles (Exhibits 272, 273); email correspondence with L'Oréal (Exhibits 93, 95);

1   Sal D'Amico's field-testing notes (Exhibit 290), and emails related to Metricolor's

2   ordering of a short-tipped Comar 10mL syringe in October 2014 after the first

3   Metricolor-L'Oréal meeting (Exhibits 93, 95, 274-278).

4        Sal and Stephen D'Amico will testify that they assigned all of their intellectual

5   property and other rights related to the Metricolor System, including trade secrets, to

6   Metricolor and that Metricolor was otherwise authorized by them to use, disclose,

7   license, sell, and otherwise commercialize the trade secrets.  Assignment documents

8   include Exhibits 261-266.

9        Element 1(a) - The trade secrets were not generally known to or readily

10  ascertainable through proper means by another person who could obtain economic

11  value from the disclosure or use of the information:  Key evidence supporting this

12  claim element will include the testimony of Sal and Stephen D'Amico regarding the

13  development of the Metricolor trade secrets (*see* Element (1), *supra*) and the lack of

14  similar packaging solutions used in the hair care industry in Stephen D'Amico's

15  lengthy expert experience; live and/or deposition testimony of L'Oréal witnesses

16  regarding their lack of knowledge of products reflecting Metricolor's trade secrets

17  (*e.g.*, Pat Parenty, Scott Schienvar, Guillaume Duez, Christine Schuster, Stephanie

18  Martins, Cassidy DeSchryver); direct and/or rebuttal testimony of Metricolor's

19  packaging expert, Robert Collins; and evidence related to the Metricolor '587 patent

20  and the Comar website (Exhibits 4, 292-294).

21       Element 1(b) - The trade secrets were the subject of reasonable measures by

22  Metricolor to keep them secret:  Metricolor maintained electronic data on password-

23  protected devices, in password-protected email accounts, and in locked cabinets, and

24  entered into confidentiality agreements with third parties before disclosing its trade

25  secrets to them.  Key evidence regarding these facts will include testimony of Sal and

26  Stephen D'Amico and written non-disclosure agreements (Exhibits 3, 4, 269).

27       Element 1(c) - The trade secrets derived independent economic value, actual

28  or potential, from not being generally known or reasonably ascertainable:  Key

evidence related to this claim element will include testimony from Sal and Stephen D'Amico about the benefits that the Metricolor trade secrets stood to offer a licensee, purchaser, or partner due to not being generally known and improving over existing hair coloring packaging methods known in the industry; testimony of Metricolor's packaging expert, Robert Collins; and evidence regarding the interest shown by L'Oréal over a period of approximately 18 months, including testimony by Sal and Stephen D'Amico, live and/or deposition testimony of L'Oréal participants in the discussions with Metricolor (*e.g.*, Pat Parenty, Scott Schienvar, Marta Wolska-Brys), email correspondence between the parties, and recordings of in-person and telephone communications between Metricolor and L'Oréal (*e.g.*, Exhibits 12, 16-17, 25, 50, 153, 295-298).

Element (2) - Defendants' misappropriation of Metricolor's trade secret(s): Key evidence demonstrating that Metricolor disclosed its trade secrets to L'Oréal will include testimony by Sal and Stephen D'Amico, the PowerPoint presentation during which Stephen D'Amico demonstrated the first-generation Metricolor system to L'Oréal and discussed some of the relevant benefits it would offer (Exhibit 523), physical samples obtained by Metricolor and displayed to L'Oréal during in-person meetings (Exhibits 272, 273), Sal D'Amico's handwritten field-testing notes (Exhibit 290), emails related to Metricolor's ordering of a short-tipped Comar 10mL syringe in October 2014 after the first Metricolor-L'Oréal meeting (Exhibits 93, 95, 274-278), and recordings of in-person and telephone communications between Metricolor and L'Oréal (Exhibits 50, 153).

Key evidence establishing Defendants' duty to limit their use and disclosure of Metricolor's trade secrets is described in connection with Element (1) of Metricolor's claim for breach of contract, *supra*. In addition, Metricolor will offer the testimony of its packaging expert, Robert Collins, regarding the industry practices of treating NDAs like the Metricolor-L'Oréal NDAs as applying to oral communications, not just written ones, and of treating all related communications as being confidential

1  absent a contrary statement by the disclosing party or evidence that the information

2  was not entitled to confidential treatment.

3       Key evidence that Metricolor never gave L'Oréal express or implied consent

4  to use or disclose Metricolor's trade secrets in connection with the development or

5  sale of the accused products will include testimony by Sal and Stephen D'Amico.

6       Circumstantial evidence shows that L'Oréal misappropriated Metricolor trade

7  secrets by disclosing them internally to persons who were working to develop the

8  accused products rather than working on a collaboration with Metricolor; by using

9  them to develop the concept, design, and supplier for the core packaging elements

10  associated with the accused products; and by disclosing them to the public via the

11  launch of the accused products.  Key evidence of these facts will include testimony

12  by Sal and Stephen D'Amico, as well as live and/or deposition testimony of Scott

13  Schienvar, regarding Mr. Schienvar's extensive participation in the meetings and

14  telephone calls between Metricolor and L'Oréal; live and/or deposition testimony of

15  Scott Schienvar, Jessica Wang, and Cassidy DeSchryver regarding their working

16  relationship, their involvement in the development of the accused products, and the

17  timing and process of development of the accused products; internal L'Oréal

18  communications involving Scott Schienvar that reflect a strong interest in Metricolor

19  technology (Exhibits 13, 19, 126, 213, 214, 493-499); the *lack* of L'Oréal documents

20  consistent with L'Oréal's claim of independent development; and testimony of

21  Metricolor's packaging expert, Robert Collins.[1]  The date and extent of the launch of

22  the accused products and the packaging elements they included will be shown by the

23  testimony of Sal and Stephen D'Amico, the live and/or deposition testimony of

24  L'Oréal employees who participated in the development and launch of the accused

25

26  _____

27  [1] Several of these exhibits are subject to a pending motion regarding whether the
subject emails are protected by the attorney-client privilege.  Metricolor's counsel

28  has sequestered them pending a ruling on the motion.

products (*e.g.*, Scott Schienvar, Guillaume Duez, Cassidy DeSchryver), and samples of the accused products (*e.g.*, Exhibits 270, 271).

Key evidence of L'Oréal's knowledge or reason to know that Metricolor's trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use will include evidence of the NDAs described in connection with Element (1) of Metricolor's breach of contract claim, *supra*; email correspondence between Metricolor and L'Oréal, including Scott Schienvar, in 2014, 2015, and 2016 referring to the NDAs (Exhibits 9, 10, 41, 299, 300); and Mr. Schienvar's involvement in the development of the accused products, described in the preceding paragraph.

Element 3(a) - Defendants' unjust enrichment:  Key evidence showing that L'Oréal was unjustly enriched by its misappropriation of Metricolor's trade secrets will include testimony by Metricolor's damages expert, Renee Wong; schedules prepared by Ms. Wong regarding her damages calculations (Exhibit 284); live and/or deposition testimony of Defendants' 30(b)(6) witness, Guillaume Duez, regarding Defendants' sales of the accused products; related L'Oréal financial documents (*e.g.*, Exhibits 195, 227, 285-286); and evidence related to the importance of Metricolor's trade secrets in marketing and selling the accused product, such as by ensuring their proper functioning and appealing to customers, including internal L'Oréal documents (*e.g.*, Exhibits 88, 131, 192, 194) and live and/or deposition testimony of Mr. Duez.

Element 3(b) - The amount of a reasonable royalty:  Key evidence regarding the proper amount of a reasonable royalty for Defendants' misappropriation of Metricolor's trade secrets will include testimony by Metricolor's damages expert, Mark Sarchet; additional L'Oréal financial documents (*e.g.*, Exhibit 204); and the evidence discussed in the preceding paragraph regarding Element 3(a).

Element 4 - Causation:  The evidence discussed above in connection with Element 3(a) (unjust enrichment) equally establishes causation between Defendants' misappropriation of Metricolor's trade secrets and their unjust enrichment.

Element 5 - Defendants' willfulness and malice:  Key evidence regarding this element is discussed above in connection with Element (4) of Metricolor's claim for breach of the implied covenant of good faith and fair dealing; and Element (2) of Metricolor's claim for trade secret misappropriation under the DTSA, including evidence that Defendants (including Scott Schienvar) knew about their NDA obligations to Metricolor and knew that they were nevertheless using Metricolor's trade secrets in developing the packaging for the accused products, while at the same time seeking to induce Metricolor to engage with L'Oréal's competitors by dragging out discussions regarding a disingenuous exclusive evaluation offer.

Claim 4 for trade secret misappropriation under California law:

Metricolor's key evidence for each element is the same as described above in connection with the similar elements of Metricolor's claim under the federal Defend Trade Secrets Act.

**(d)     Summary of Defendants' Counterclaims and Affirmative Defenses**

Defendants have pled a counterclaim for declaratory judgment.  They also originally pled a counterclaim for breach of contract, but it was dismissed.  ECF 99.

Metricolor does not know which of Defendants' pleaded affirmative defenses they plan to pursue.  However, the affirmative defenses they have pled are:

Third Affirmative Defense:  "All of the information Metricolor alleged to be confidential under the parties' NDA was generally known and/or publicly available before Metricolor ever contacted L'Oréal."

Thirteenth Affirmative Defense:  "To the extent that Metricolor has been harmed in any way, such harm was caused by Metricolor's own acts and/or omissions."

Fourteenth Affirmative Defense:  "Metricolor failed, in whole or in part, and continues to fail, in whole or in part, to take reasonable steps to mitigate its damages, if any."

Fifteenth Affirmative Defense:  "Metricolor's claims are preempted in whole or in part by the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 et seq, because they are based on the same nucleus of facts as Metricolor's trade secrets claims."

Eighteenth Affirmative Defense:  This affirmative defense has been amended to remove any reference to laches or acquiescence.  ECF 266.  The remaining part of the affirmative defense states that "Metricolor's claims are barred, in whole or in part, by the doctrines of unclean hands and/or estoppel."

All of the other "affirmative defenses" that Defendants originally pled have been withdrawn or dismissed.  ECF 266.

**(e)     Elements of Defendants' Counterclaim and Affirmative Defenses**

The following elements are required to establish Defendants' counterclaim and affirmative defenses:

Counterclaim for Declaratory Judgment:

Defendants' counterclaim is for a declaratory judgment "that L'Oréal (a) did not breach the NDA; (b) did not misappropriate any trade secret belonging to Metricolor or the D'Amicos under federal law; (c) did not breach the covenant of good faith and fair dealing; (d) did not violate the California Unfair Competition Law; and (e) did not misappropriate any trade secret belonging to Metricolor or the D'Amicos under California law."  The elements for each of the listed claims, to the extent Metricolor is still pursuing them, are stated above in Section I(b).

Defendants also request a declaration "that the use of syringe, pouches and orifice reducer for the dispensing of a haircare product is in the public domain and not subject to any restriction by Metricolor or the D'Amicos.  As such, L'Oréal is free to use syringes, pouches and orifice reducers in its future products without breach of the parties' NDA, violation of any of Metricolor's trade secrets, or without any liability for unfair competition."  To the extent this is deemed a legally valid counterclaim for declaratory judgment, its elements would appear to be the same as

those stated above in Section I(b) with respect to the definition of a "trade secret" under the federal Defend Trade Secrets Act and California law.

The elements required to establish each of Defendants' pleaded "affirmative defenses" are as follows:

Third Affirmative Defense:  "All of the information Metricolor alleged to be confidential under the parties' NDA was generally known and/or publicly available before Metricolor ever contacted L'Oréal."

(a)     With respect to Metricolor's contract-based claims, L'Oréal's burden is to show that information disclosed by Metricolor to L'Oréal that relates to or is derived from Metricolor's or the D'Amicos' scientific, technical, business, strategic, marketing or creative affairs, or that L'Oréal otherwise was advised or had reason to know was Metricolor's confidential or proprietary information:

(i)     was or became generally known or available to the public through no act or failure to act by Defendants or their employees or agents;

(ii)     was or became known to Defendants from a third party in rightful possession thereof and owing no obligation of confidentiality to Metricolor;

(iii)     was developed independently by or for Defendants, without use of or reference to any Confidential Information of Metricolor and without violation of any obligation contained in the parties' NDAs, by individuals who had no access to such Confidential Information; or

(iv)     was in the possession of Defendants or any of their Affiliates prior to the time of disclosure by Metricolor.

(b)     With respect to Metricolor's claim for trade secret misappropriation under the federal Defend Trade Secrets Act, L'Oréal's burden is to show that, at the time of disclosure to Defendants, Metricolor's trade secrets were generally known to or readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

(c)    With respect to Metricolor's claim for trade secret misappropriation under California law, L'Oréal's burden is to show that, at the time of disclosure to Defendants, Metricolor's trade secrets were not generally known to, or readily ascertainable by, the public or other persons who could obtain economic value from the disclosure or use of the information.

Thirteenth Affirmative Defense:  "To the extent that Metricolor has been harmed in any way, such harm was caused by Metricolor's own acts and/or omissions."  To the extent this is a legally valid defense, which Metricolor disputes, L'Oréal's burden is to show that its complained-of conduct was not a substantial factor in causing the claimed harm to Metricolor but, rather, such harm was caused by Metricolor's own acts and/or omissions.

Fourteenth Affirmative Defense:  "Metricolor failed, in whole or in part, and continues to fail, in whole or in part, to take reasonable steps to mitigate its damages, if any."  L'Oréal's burden is to prove that Metricolor failed to use reasonable efforts to mitigate damages and the amount by which damages would have been mitigated.

Fifteenth Affirmative Defense:  "Metricolor's claims are preempted in whole or in part by the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 et seq, because they are based on the same nucleus of facts as Metricolor's trade secrets claims."  This is not a valid defense with respect to Metricolor's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, or trade secret misappropriation under federal or California law.  *See* Cal. Civ. Code § 3426.7(a), (b).  Metricolor is not pursuing its unfair competition claim.  Therefore, this defense has no further potential applicability in this case.

Eighteenth Affirmative Defense:  This affirmative defense has been amended to remove any reference to laches or acquiescence.  ECF 266.  The remaining part of the defense states that "Metricolor's claims are barred, in whole or in part, by the doctrines of unclean hands and/or estoppel."  To the extent these are legally valid defenses, which Metricolor disputes, L'Oréal's burden is to show the following:

Unclean hands:  The only basis identified by L'Oréal for its unclean hands defense is Metricolor's alleged fabrication of evidence during this litigation.  "The doctrine of unclean hands relates to misconduct occurring before the lawsuit was filed, not the bad faith filing or maintenance of an action."  *Applied Materials, Inc. v. Advanced Micro-Fabrication Equipment (Shanghai) Co.*, No. C 07-05248 JW, 2009 WL 10709718, at *4 (N.D. Cal. Nov. 24, 2009) (quoting *FLIR Sys., Inc. v. Parrisk*, 174 Cal. App. 4th 1270, 1284 (2009)).  Thus, L'Oréal's affirmative defense is legally baseless.  For unclean hands defenses that have a legally valid basis, the elements are (1) the claimant engaged in unconscionable, bad faith, or inequitable conduct that (2) directly relates to the transaction on which the claim is based and (3) would make it inequitable to grant the requested relief to the claimant.

Estoppel:  The only basis identified by L'Oréal for its estoppel defense is that Metricolor allegedly told L'Oréal that the Metricolor System was described in the Metricolor patent.  To establish this defense, L'Oréal would have to prove that (1) Metricolor falsely represented material facts to Defendants, (2) Metricolor knew the true facts, (3) Defendants were ignorant of the truth; (4) Metricolor intended that Defendants act on its representation, (5) Defendants took the action intended by Metricolor, to Defendants' detriment, in reasonable reliance on the representation, and (6) as a result, it would be inequitable for Metricolor to prevail on its claims.

### (f)   Metricolor's Key Evidence Related to Defendants' Counterclaim and Affirmative Defenses

The key evidence on which Metricolor will rely in opposition to Defendants' counterclaim and affirmative defenses may briefly be described as follows:

Defendants' counterclaim simply seeks a declaratory judgment that Metricolor cannot prevail on its claims and its trade secrets were public knowledge.  Metricolor will therefore rely on the same key evidence discussed above in connection with its claims to oppose Defendants' counterclaim.

1    Defendants' Third Affirmative Defense: Defendants contend that Metricolor's
2    trade secrets were "generally known and/or publicly available before Metricolor ever
3    contacted L'Oréal." The key evidence on which Metricolor will rely to contest this
4    defense is the same evidence that Metricolor discussed above in connection with
5    Elements 1(a) and 1(c) of Metricolor's claim for trade secret misappropriation under
6    the DTSA. Metricolor also anticipates relying on any additional evidence of alleged
7    public disclosure proffered by L'Oréal, together with related rebuttal testimony of
8    Metricolor's packaging expert, Robert Collins.

9    Defendants' Thirteenth Affirmative Defense: Defendants contend that any
10    harm to Metricolor "was caused by Metricolor's own acts and/or omissions." To the
11    extent this is a legally valid defense, which Metricolor disputes, Metricolor will rely
12    on the same evidence discussed above in connection with Elements (5) and (6) of
13    Metricolor's breach of contract claim and Elements 3(a), 3(b), and 4 of Metricolor's
14    claim for misappropriation of trade secrets under the federal DTSA. Metricolor also
15    reserves the right to rely on other evidence to the extent L'Oréal presents evidence or
16    argument not previously disclosed.

17    Defendants' Fourteenth Affirmative Defense: Defendants allege that
18    "Metricolor failed, in whole or in part, and continues to fail, in whole or in part, to
19    take reasonable steps to mitigate its damages, if any." Metricolor will rely on the
20    evidence discussed above in connection with Elements (5) and (6) of Metricolor's
21    breach of contract claim and Elements 3(a), 3(b), and 4 of Metricolor's claim for
22    misappropriation of trade secrets under the federal DTSA. Metricolor also reserves
23    the right to rely on other evidence if L'Oréal presents evidence or argument not
24    previously disclosed.

25    Defendants' Fifteenth Affirmative Defense: Defendants' preemption defense
26    is no longer at issue, and Metricolor does not anticipate presenting related evidence
27    unless L'Oréal presents a new and unanticipated basis for its defense.

28

Defendants' Eighteenth Affirmative Defense (unclean hands):  To the extent this is a legally valid defense, which Metricolor disputes, Metricolor will offer evidence that it does not have unclean hands because the allegedly "fabricated" documents either are legitimate, authentic, contemporaneous documents (in the case of the email that Sal D'Amico sent himself from his brother's computer in October 2014 and his handwritten field-testing notes) or were created solely for internal use and not for production to Defendants or use as evidence.  Further, to the extent Sal D'Amico gave erroneous deposition testimony about the documents in question, his errors were inadvertent and in good faith.  Metricolor incorporates by reference in full the arguments and evidence it presented in this regard in its Memorandum of Points and Authorities in Opposition to Defendants' Motion for Sanctions, ECF 212 at 13-25, and Memorandum of Points and Authorities in Opposition to Defendants' Motion for Reconsideration of the Court's Order Denying Terminating Sanctions, ECF 284.

Defendants' Eighteenth Affirmative Defense (estoppel):  To the extent this is a legally valid defense, which Metricolor disputes, Metricolor will rely on the same evidence described above in connection with Element (4) of Metricolor's claim for breach of the implied covenant of good faith and fair dealing and Elements (2) and (5) of Metricolor's claim for trade secret misappropriation under the federal DTSA.

**(g)     Third-Party Claims and Defenses**

Defendants assert the same declaratory judgment claim against third-party defendants Salvatore D'Amico and Stephen D'Amico as against Metricolor.  The elements are as stated in Section I(e) above.  The key evidence relied on by the D'Amicos in opposition to the third-party claim are as stated in Section I(f) above.

**(h)     Anticipated Evidentiary Issues**

Metricolor anticipates the following evidentiary issues, among others:

Admissibility of evidence/argument re: alleged L'Oréal Fiberceutics product.  L'Oréal cannot establish a foundation for this product's existence, design, etc.

1       Admissibility of evidence/argument re: Metricolor's prior claim for patent
2   infringement and the dismissal thereof.  Such evidence is unduly prejudicial, will
3   confuse the jury, and will waste time.

4       Admissibility of evidence/argument re: Metricolor "stealing" or otherwise
5   using L'Oréal's alleged Metrocolor trademark.  This allegation is irrelevant and
6   would be unduly prejudicial and time-wasting.

7       Admissibility of Matt Brown testimony about document production or any
8   other issue.  The Court quashed the deposition subpoena served on Mr. Brown by
9   Defendants and should do the same with their trial subpoena.  Presenting the jury
10  with evidence about the discovery process will be confusing and unduly prejudicial,
11  and allowing L'Oréal to question one of Metricolor's former attorneys of record in
12  this action will present serious privilege and work product problems.

13      Admissibility of forensic evidence regarding documents that will not be
14  presented as evidence at trial.  At most, evidence at trial regarding Defendants'
15  allegations of "fabricated" documents by Sal D'Amico should be limited to cross-
16  examination, not extrinsic evidence concerning documents that Metricolor will not
17  offer into evidence and admits were prepared during this litigation.

18      Admissibility of evidence regarding Sal D'Amico's computer not containing
19  electronic copies of documents that Mr. D'Amico provided to counsel in paper form
20  and counsel scanned, such that there is no reason for an electronic copy to have been
21  found on Mr. D'Amico's devices.  Defendants' related allegations of wrongdoing are
22  baseless but are likely to confuse the jury, and they relate entirely to discovery issues
23  rather than issues properly before the jury to decide.

24      Admissibility of evidence/argument regarding confidentiality designations on
25  documents made pursuant to the Protective Order.

26      Admissibility of testimony by Defendants' technical expert that improperly
27  argues case facts or makes unsupported factual assertions (such as that Comar is a
28  "market leader" or that Comar was the supplier of certain syringes).

1    Admissibility of the email that Sal D'Amico sent himself from his brother's
2    computer in October 2014 with a link to Comar's website.  Defendants are likely to
3    object to the email's admissibility, but it is authentic and should be admitted for the
4    reasons stated in Metricolor's Opposition to Defendants' Motion for Reconsideration
5    of Sanctions.

6    Admissibility of Sal D'Amico's handwritten field-testing notes.  Defendants
7    are likely to object to the notes' admissibility, but they are authentic and should be
8    admitted for the reasons stated in Metricolor's Opposition to Defendants' Motion for
9    Reconsideration of Sanctions.

10          **(i)    Anticipated Issues of Law**

11   Metricolor anticipates a need to resolve the following issues of law that are
12   germane to the case:

13   Defendants' technical expert has opined that Metricolor's trade secrets are
14   "readily ascertainable" from public sources.  Under California law, however, the
15   definition of a "trade secret" does not include a requirement that the information is
16   not "readily ascertainable."  *See* Cal. Civ. Code § 3426.1(d); *compare* 18 U.S.C.
17   § 1839(3).  An argument that a trade secret claim fails because the information is
18   readily ascertainable is available only as an affirmative defense and only if the
19   defendant demonstrates that it actually relied on the information from which the
20   trade secret allegedly is readily ascertainable.  *See IMAX Corp. v. Cinema Techs.,
21   Inc.*, 152 F.3d 161, 1168 n.10 (9th Cir. 1998); *ABBA Rubber Co. v. Seaquist*, 235
22   Cal. App. 3d 1, 21-22 & n.9 (1991).

23   Defendants' damages expert has opined that Metricolor's damages expert
24   failed to conduct a proper apportionment analysis.  However, Metricolor's burden is
25   simply to establish Defendants' sales of products that incorporate Metricolor's trade
26   secrets; "the defendant has the burden of establishing any portion of the sales not
27   attributable to the trade secret and any expenses to be deducted in determining net
28   profits."  Rest. 3d of Unfair Comp. § 45 cmt. f (1995).  It is therefore Defendants'

1  burden, not Metricolor's, to show how their profits should be apportioned between

2  the trade secrets and other elements of value.  *BladeRoom Group Ltd. v. Facebook,*

3  *Inc.*, No. 5:15-cv-01370-EJD, slip op. (Mar. 30, 2018) & *BladeRoom Grp. Ltd. v.*

4  *Emerson Elec. Co.*, 331 F. Supp. 3d 977, 989 (N.D. Cal. 2018) ("Relevant California

5  authority does not require an apportionment of damages."), *rev'd on other grounds,*

6  *BladeRoom Group Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231 (9th Cir. 2021)); *SPS*

7  *Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536-MWF (ASx), 2021 WL

8  4913509, at *3 (C.D. Cal. Sep. 8, 2021) (not requiring apportionment because "the

9  burden falls on [defendant] to establish any portion of the sales not attributable to the

10  trade secret"); *see also Huawei Techs. Co. v. Huang*, No. 4:17-CV-00893, 2019 WL

11  2395276, at *4 (E.D. Tex. Jun. 6, 2019) ("Whether the full amount of profits is

12  attributable to the alleged misappropriation of trade secrets is for the jury to decide

13  when awarding damages. . . . [Plaintiff's expert's] failure to apportion is not fatal to

14  his opinion since such a determination is for the jury.") (cit om.).  Defendants' expert

15  offered an apportionment analysis, which Metricolor's expert has explained is faulty.

16  **II.   L.R. 16-4.3 – BIFURCATION OF ISSUES**

17       If Defendants are allowed to proceed on their affirmative defenses of unclean

18  hands and estoppel in their Eighteenth Affirmative Defense, those defenses should be

19  bifurcated and tried to the Court.

20       During the parties' meet-and-confer discussions that led to the withdrawal or

21  dismissal of most of Defendants' affirmative defenses, ECF 266, Defendants'

22  counsel stated in an email that Defendants' unclean hands defense is based on

23  "Metricolor's fabrication of evidence."  By this defense, Defendants thus seek the

24  equivalent of terminating sanctions that the Court already denied.  ECF 228.

25  Metricolor opposes the defense on the facts, and it is legally unfounded as well

26  because "[t]he doctrine of unclean hands relates to misconduct occurring before the

27  lawsuit was filed, not the bad faith filing or maintenance of an action."  *Applied*

28  *Materials, Inc. v. Advanced Micro-Fabricat'n Equipment (Shanghai) Co.*, No. C 07-

20

1  05248 JW, 2009 WL 10709718, at *4 (N.D. Cal. Nov. 24, 2009) (quoting *FLIR Sys.,*
2  *Inc. v. Parrisk*, 174 Cal. App. 4th 1270, 1284 (2009)).

3       Should the Court nevertheless permit L'Oréal to proceed with its unclean
4  hands defense, that defense should be bifurcated and tried to the Court.  The Court
5  has discretion whether to submit equitable defenses like unclean hands to a jury.  *See*
6  *Cal-Agrex, Inc. v. Tassell*, 258 F.R.D. 340, 348 (N.D. Cal. 2009) (noting court's
7  earlier decision not to submit unclean hands defense to jury) (citing *Unilogic, Inc. v.*
8  *Burroughs Corp.*, 10 Cal. App. 4th 612, 622 (1992)); *Granite State Ins. Co. v. Smart*
9  *Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled
10 to have a jury resolve a disputed affirmative defense if the defense is equitable in
11 nature.").  Defendants' unclean hands defense, based on allegations of fabricated
12 evidence and perjury, should be bifurcated and tried to the Court because "evidence
13 of plaintiff's purported dishonesty with defendant [and] the courts . . . poses the
14 danger of unfairly prejudicing plaintiff and confusing and misleading a jury." *Matrix*
15 *Int'l Textile, Inc. v. Monopoly Textile, Inc.*, No. 16-CV-0084 FMO (AJWx), 2017
16 WL 2929379, at *3 (C.D. Cal. May 12, 2017) (addressing unclean hands defense
17 alleging that plaintiff's agents "conspired . . . to fabricate evidence" and "perjured
18 themselves at deposition in an effort to conceal their misconduct").

19      Defendants' estoppel defense likewise is an equitable defense that does not
20 have any overlapping issues with Metricolor's claims.  For example, Metricolor's
21 claims do not involve alleged false statements by Metricolor, alleged reliance on
22 those statements by L'Oréal, or alleged harm to L'Oréal resulting from such reliance.
23 Because there is no overlap of issues and estoppel is an equitable defense, it should
24 be resolved by the Court in a separate proceeding.  *See Granite State*, 76 F.3d at
25 1027 (finding no right to jury trial on estoppel defense).

## III.   L.R. 16-4.4 – JURY TRIAL

27      This action includes issues that are triable to a jury as a matter of right.
28 Metricolor made a timely demand for jury trial in compliance with L.R. 38-1 by

1    including a Demand for Jury Trial at the end of its original Complaint and First

2    Amended Complaint, in each case signed by Metricolor's counsel of record, and by

3    including "DEMAND FOR JURY TRIAL" in the caption of each such pleading.  *See*

4    ECF 1 at caption page & page 31; ECF 57 at caption page & page 38.

5           The following issues are not triable to a jury as a matter of right:  Defendants'

6    affirmative defenses of unclean hands and estoppel.  These are equitable defenses as

7    to which there is no right to trial by jury, and they should be resolved by the Court in

8    a separate proceeding.  *See* Section II, *supra*.

9    **IV.    L.R. 16-4.5 – ATTORNEYS' FEES**

10          Metricolor seeks an award of attorneys' fees based on Defendants' willful and

11   malicious trade secret misappropriation.  *See* 18 U.S.C. § 1836(b)(3)(D); Cal. Civ.

12   Code § 3426.4.  The factual basis for Metricolor's attorneys' fees claim is the same

13   as for its claim for exemplary damages.  *See* Section I(c), *supra*.

14   **V.     L.R. 16-4.6 – ABANDONMENT OF ISSUES**

15          Defendants consented to the dismissal of their First Counterclaim for Relief

16   for alleged breach of contract by Metricolor and Third-Party Defendants Salvatore

17   D'Amico and Stephen D'Amico.  ECF 99.

18          Defendants withdrew or consented to the dismissal of their "affirmative

19   defenses" 1, 2, 4-12, 16-17, 19-20, and 21-26, as well as the defenses of laches and

20   acquiescence in their Eighteenth Affirmative Defense.  ECF 266.

21          Metricolor elects not to pursue its Fourth Cause of Action for violation of the

22   California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*  The

23   Court dismissed Metricolor's Fifth Cause of Action for breach of confidence under

24   California common law.  ECF 71.

25

26

27

28

METRICOLOR'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   Date: May 1, 2023                    MARTORELL LAW APC

2

3                                        BY:  /s/ *Eduardo Martorell*

4                                             Eduardo Martorell
                                              JoAnn Victor
5                                             Jordan Zim
                                              Attorneys for Plaintiff/Counterclaim
6                                             Defendant METRICOLOR LLC and
7                                             Third-Party Defendants SALVATORE
                                              D'AMICO and STEPHEN D'AMICO
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

METRICOLOR'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW