RICHARD F. MARTINELLI (*pro hac vice*)
rmartinelli@orrick.com
ANGELA COLT (CA SBN 286275)
acolt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:  +1 212 506 5000
Facsimile:  +1 212 506 5151

WILLIAM M. OXLEY (CA SBN 136793)
woxley@orrick.com
MEGHAN ROHLING KELLY (CA SBN 292236)
meghan.kelly@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071-1596
Telephone:  +1 213 629 2020
Facsimile:  +1 213 612 2499

*Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs*
L'ORÉAL USA, INC., L'ORÉAL USA PRODUCTS, INC., L'ORÉAL USA S/D, INC., AND REDKEN 5TH AVENUE NYC, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| METRICOLOR LLC,<br><br>    Plaintiff and Counterdefendant,<br><br>    v.<br><br>L'ORÉAL USA, INC.; L'ORÉAL USA PRODUCTS, INC.; L'ORÉAL USA S/D, INC.; REDKEN 5th AVENUE NYC, LLC; and DOES 1 through 100, inclusive,<br><br>    Defendants, Counterclaimants and Third-Party Plaintiffs,<br><br>    v.<br><br>SALVATORE D'AMICO, and STEPHEN D'AMICO,<br><br>    Third-Party Defendants. | Case No. 2:18-cv-00364-CAS-E<br><br>**(1) DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS;**<br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**<br>**(3) DECLARATIONS OF ANGELA COLT AND PAUL FRENCH;** and<br><br><u>Lodged Under Separate Cover:</u><br>**(4) [Proposed] Order**.<br><br>Hearing Date: March 11, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Christina A. Snyder<br>Courtroom: 8D<br><br>**REDACTED** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 11, 2024, at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Christina A. Snyder, Courtroom 8D on the 8th Floor of 350 West 1st Street, Los Angeles, CA, 90012, Defendants, Counterclaimants, and Third-Party Plaintiffs L'Oréal USA, Inc.; L'Oréal USA Products, Inc.; L'Oréal USA S/D, Inc.; and Redken 5th Avenue NYC, LLC ("L'Oréal"), will respectfully move this Court under its inherent authority for terminating and monetary sanctions.

This Motion is based on this Motion, the Memorandum of Points and Authorities in Support hereof, the concurrently filed Declarations of Angela Colt, Paul French, and supporting exhibits, all pleadings and papers in this action, all matters of which this Court may take judicial notice, and upon such other matters as may be presented to the Court.

Pursuant to L.R. 7-3, counsel for Defendants met and conferred with Plaintiff's counsel on December 5, 2023 to discuss this Motion and potential resolution, but counsel were unable to resolve their disputes. *See* Declaration of Angela Colt, ¶38.

Dated:      January 8, 2024          Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Angela Colt*
Angela Colt

*Attorneys for Defendants*
*L'Oréal USA, Inc.,*
*L'Oréal USA Products, Inc.,*
*L'Oréal USA S/D, Inc., and*
*Redken 5th Avenue NYC, LLC*

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ...................................................................................1

II. BACKGROUND ....................................................................................2

    A. Metricolor's new trade secret theory. ..........................................2

    B. Metricolor withholds originals and produces altered documents during discovery...........................................................................................3

    D. The D'Amico deposition and handwritten notes. ..................................5

    E. The second forensic review. ...................................................5

III. METRICOLOR'S CONTINUING MISCONDUCT ...................................6

    A. Metricolor knowingly withheld the most harmful documents. .............7

        1. The withheld emails where Sal D'Amico admits he will lie and recounts a lie...............................................................................7

        2. The withheld meeting scripts that nowhere mention the purported trade secret. ...........................................................8

        3. The withheld product development notes that refute Metricolor's timeline.......................................................................................10

        4. The withheld emails concealing material witnesses and revealing misrepresentations to the Court. ................................10

    B. Metricolor admits it relied in its sanctions opposition on additional fabricated evidence. ...........................................................................11

    C. Metricolor deleted evidence. ...............................................12

IV. PLAINTIFF'S CONDUCT WARRANTS DISMISSAL ...........................13

    A. Metricolor engaged in bad faith, willful misconduct. ........................14

    B. The Connecticut General factors support terminating sanctions.........19

        1. Public interest and docket management favor dismissal...........19

        2. L'Oréal is significantly prejudiced............................................19

        3. Public policy also favors dismissal ..........................................20

        4. Lesser sanctions will not be sufficient ....................................20

    C. The Court's prior concerns about the merits. .......................................21

V. THE COURT SHOULD ALSO IMPOSE MONETARY SANCTIONS......23

VI.     CONCLUSION .......................................................................................... 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v AirWest, Inc.*,
  542 F.2d 522 (9th Cir. 1976)........................................................................14, 22

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
  69 F.3d 337 (9th Cir. 1995)...................................................13, 14, 19, 21

*B.K.B. v. Maui Police Dep't*,
  276 F.3d 1091 (9th Cir. 2002).............................................................14

*Brown v. Oil States Skagit Smatco*,
  664 F.3d 71 (5th Cir. 2011)..................................................................21

*Combs v. Rockwell Int'l Corp.*,
  927 F.2d 486 (9th Cir. 1991).................................................................13

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007)............................................13, 14, 19, 20

*Englebrick v. Worthington Indus.*,
  944 F. Supp. 2d 899 (C.D. Cal. 2013) ........................................14, 17

*Garcia v. Berkshire Life Ins. Co. of Am.*,
  569 F.3d 1174 (10th Cir. 2009).............................................................19

*Haeger v. Goodyear Tire & Rubber Co.*,
  813 F.3d 1233 (9th Cir. 2016)................................................................1

*Henderson v. Duncan*,
  779 F.2d 1421 (9th Cir.1986)...............................................................20

*Henry v. Gill Indus., Inc.*,
  983 F.2d 943 (9th Cir. 1993)...........................................................14, 17

*Hyde & Drath v. Baker*,
  24 F.3d 1162 (9th Cir. 1994).................................................................14

*Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*,
  No. 11-5639 EMC (JSC), 2014 WL 595912 (N.D. Cal. Feb. 14,
  2014) .............................................................................................14, 16

*Knapp v. Convergys Corp.*,
    209 F.R.D. 439 (E.D. Mo. 2002) .......................................................... 21

*La Terminals, Inc. v. United Nat'l Ins. Co.*,
    340 F.R.D. 390 (C.D. Cal. 2022) .......................................................... 18

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006)................................................................. 14

*Malone v. U.S. Postal Service*,
    833 F.2d 128 (9th Cir. 1987)........................................................... 14, 19

*Moser v. Bret Harte Union High Sch. Dist.*,
    366 F. Supp. 2d 944 (E.D. Cal. 2005)................................................... 14

*N. Am. Watch Corp. v. Princess Ermine Jewels*,
    786 F.2d 1447 (9th Cir. 1986).......................................................... 18, 20

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006)...................................................13, 17, 19

*R Arnold v. Cnty. of El Dorado*,
    No. 2:10-CV-3119, 2012 WL 3276979 (E.D. Cal. Aug. 9, 2012).................... 21

*Sec. & Exch. Comm'n v. Blockvest, LLC*,
    No. 18CV2287-GPB(MSB), 2020 WL 2786869 (S.D. Cal. May 29,
    2020) .................................................................................................. 20

*Silva-Pereira v. Lynch*,
    827 F.3d 1176 (9th Cir. 2016)............................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Since the Court considered L'Oréal's original motion for terminating sanctions and concluded that "[m]any other people would issue terminating sanctions" and that Metricolor's case was "hanging by a thread," L'Oréal discovered additional intentional misconduct that now requires terminating this case. L'Oréal's original sanctions motion concerned Metricolor fabricating the only documentary evidence that corroborates Metricolor's claim to have created and shared with L'Oréal a "first-generation" system. Now L'Oréal has discovered that Metricolor also knowingly withheld the most significant documents that disprove its claim and made multiple material misrepresentations in its sanctions opposition. The forensic review also determined that Metricolor deleted important documents that it failed to produce. And Sal D'Amico has continued to provide inconsistent and false explanations for his conduct under oath. Yet there is an even more troubling revelation.

In one of the concealed documents Sal D'Amico admits he will ███████████ ███████████████████████████. Ex. 1 (BRG-1412).[1] ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. But D'Amico acknowledges it's all ███████████████ He nonetheless proposes sending it to L'Oréal because ██████████████████████████████

"Litigation is not a game. It is the time-honored method of seeking the truth, finding the truth, and doing justice." *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1237 n.1 (9th Cir. 2016). Parties may advance competing narratives in good faith. But the court must trust that the jury can determine the truth. That is

---

[1] Unless otherwise noted, all "Ex." references are exhibits to the Declaration of Angela Colt.

1  impossible here. Metricolor fabricated its only corroborating evidence, withheld the
2  strongest evidence that disproves its claims, concealed that Sal D'Amico will peddle
3  lies to support Metricolor, contradicted itself, made material misrepresentations to
4  the Court, and deleted documents whose contents will never be known. And there is
5  now overwhelming evidence Metricolor did so willfully and in bad faith. The Court
6  should terminate this case and issue monetary sanctions.

7  **II.  BACKGROUND**

8  ### A. Metricolor's new trade secret theory.

9  Metricolor originally alleged that L'Oréal misappropriated a Metricolor
10 system that utilizes an "air-tight re-closing seal"—also known as a "self-sealing
11 orifice reducer." Dkt.1. But that theory failed because L'Oréal's products include no
12 self-sealing orifice reducer. Dkt.35 at 7. Metricolor then amended its complaint to
13 allege L'Oréal misappropriated a previously unidentified trade secret in a "first-
14 generation" system containing a "non-self-sealing orifice reducer," or "standard
15 orifice reducer." Dkt.57 at ¶33; Dkt.212 at 1-7.[2]

16 Metricolor contends it first disclosed the alleged secret during an October 9,
17 2014 meeting. It says it presented a PowerPoint "depicting elements of the first-
18 generation Metricolor System" and "demonstrated the … System" while the slide
19 displayed. Dkt.212 at 4. The purported first-generation "elements" are simply a
20 picture of a bottle that appears in Metricolor's patent and is not secret:

---

[2] There are other purported elements to Metricolor's first-generation secret. Here for
simplicity we focus on the orifice reducer because it is a necessary component of the
alleged system.

| **Presentation** | **Patent** |
|---|---|
|  |  |

After meeting, L'Oréal sent Metricolor products to test. Metricolor contends it then conducted testing and recommended to L'Oréal in December 2014 to use the first-generation Metricolor system with a standard orifice reducer for low-viscosity products. Dkt.212 at 5-6.

The parties then met three more times in 2015—the latter two of which were recorded. Metricolor does not contend it disclosed its alleged trade secret at the *recorded* meetings on September 30 and November 23. Instead, Metricolor conveniently contends it demonstrated both generation systems at an *unrecorded* February 19 meeting. *See* Dkt.212 at 6-7.

**B. Metricolor withholds originals and produces altered documents during discovery.**

During discovery Metricolor produced multiple fabricated documents. *See* Dkt.228 7-14 (Sanctions Order); Dkt.157, 171-2, 215, 267, 278, and 292 (L'Oréal's filings). The fabricated documents purport to corroborate Metricolor's first-generation system story. They include:

1. **MC000613:** An email Sal D'Amico sent to L'Oréal on March 29, 2016 that describes Metricolor as having a prototype with a "standard" "orifice reducer" and Metricolor's "new supplier, COMAR." Ex. 2. In truth, D'Amico used scissors, tape and a copier to create the email on March 16, 2020, just ten days after Metricolor filed its amended complaint. Dkt.198-2, ¶12; Dkt.267 at 4-6.

2. **MC000093-94:** A document dated October 23, 2014 conveying to L'Oréal

product testing results and noting that a "push-in standard orifice reducer" for developer is "[m]ost efficient and less costly." Ex. 3. In truth, D'Amico created the document *six years later* on November 4, 2020 by taking the real summary he sent to L'Oréal on November 30, 2014 that included no mention of standard orifice reducers and adding the fake information. Dkt.198-2, ¶19; Dkt.267 at 6-8. Metricolor then withheld the original in discovery and produced the forgery.

3. **MC000043-46:** A report of user-experience testing with salon owners purportedly "presented to L'Oréal" dated 11/23/2015. Ex. 4. In truth, D'Amico drafted the document between April 11, 2016 and January 2017 and backdated it to 11/23/2015 on December 9 and 10, 2020. Dkt.189-5, ¶33 (French). Metricolor then withheld the original in discovery and produced the forgery.

4. **MC000047:** A comparison of the cost of tube packaging against Metricolor's "First Generation Prototype" with "standard orifice reducer" that creates the impression Metricolor calculated the cost of the "first-generation" system during negotiations with L'Oréal. Ex. 5. In truth, it was created on December 14, 2020. Dkt.198-2, ¶25.

### C. The first forensic review and sanctions motion.

L'Oréal first questioned D'Amico about the documents on September 22, 2021. Rather than admitting he fabricated the documents, D'Amico offered false explanations. *See* Dkt.215 at 14-20 (summarizing explanations). L'Oréal then requested Metricolor preserve D'Amico's laptop and moved for forensic review. Again, rather than coming clean, Metricolor opposed the motion by downplaying the number of fabrications and representing that D'Amico did "not recall anything about" MC000613—the email he created with scissors and tape. Dkt.113 at 1. Yet Metricolor later admitted it knew when it made that representation that D'Amico recalled he never sent the email. *See* Dkt.215 at 16-17.

At the Court's direction, L'Oréal made a forensic image of D'Amico's laptop—the "Setec Image." (Unbeknown to the Court and L'Oréal, Metricolor had

already created its own image—the "Cohen Image"—two months earlier. Dkt.330 at 2.) After the review definitively determined Metricolor fabricated documents, L'Oréal moved for terminating sanctions and summary judgment. Metricolor opposed, contending the fake documents resulted from a misunderstanding. Metricolor also relied on handwritten product testing notes—which it represented were created in 2014 contemporaneous to the testing—to provide a purportedly legitimate foundation for the fabricated MC000093-94. Dkt.212 at 5-6, 14, 19-20.

The Court denied L'Oréal's motion. The Court noted that "[m]any other people would issue terminating sanctions." Ex. 6, Oct. 24, 2022 Hrg. Tr. at 25:16-18. But the Court elected to take a cautious approach and permitted L'Oréal to redepose D'Amico. *Id*. at 9:7-13. The Court also required D'Amico to produce the original handwritten testing notes for inspection. Ex. 7, Nov. 21, 2022 Hrg. Tr. at 16:24-25.

### D. The D'Amico deposition and handwritten notes.

As discussed more at 11-12, 15-17, D'Amico revealed additional misrepresentations and created new inconsistencies at his deposition after the sanctions decision. D'Amico testified, contrary to Metricolor's prior representations, that some of the handwritten testing notes were not contemporaneous. Ex. 8, Dec. 30, 2022 Depo. at 224:11-226:6. D'Amico also provided three different accounts for when he created MC000613—2016, 2018, and 2020. *See* Dkt.292 at 4-8 (discussing accounts). D'Amico also explained that he adopted a practice of attaching "Post-It" notes to documents to convey "important" context to counsel. Ex. 8 at 69:14-70:6. As for why he did not follow that process with the fabricated documents, D'Amico contended he and counsel "collectively decided that it would be helpful for [him] to add information to these documents after the litigation started," *id*. at 109:22-110:24, 126:23-132:1—something counsel denied, Dkt.198-5 ¶10.

### E. The second forensic review.

In March 2023, L'Oréal learned about the secret Cohen Image and sought forensic review. Metricolor opposed, telling the Court that "it's gonna be the exact

same image." Ex. 9, Mar. 27, 2023 Hrg. Tr. at 10:7-8. Metricolor did not explain why it created and declined to disclose the Cohen Image. The Court then ordered a review of the image because "everyone has to know what was there when" Metricolor made it. *Id.* at 9:19-10:5.

L'Oréal's expert Paul French determined that the two images were not the same and at least 50,000 files on the Cohen Image had been deleted from D'Amico's computer before creation of the Setec Image. *See* Dkt.330 at 3. French then used search terms to narrow the universe of files for closer inspection to 5,653 and provided those files to Metricolor for privilege review. *Id.* By July 7, Metricolor had reviewed 1,412 documents—BRG-997-2409—and compared them against what Metricolor produced in discovery. Dkt.314-1 ¶¶4-6 (Poppe Decl.). As discussed below at 7-11, this tranche included multiple obviously relevant, unprivileged, and highly material unproduced documents. Yet Metricolor never disclosed that it found responsive unproduced documents. It instead moved to cancel the review so L'Oréal would never see the files. Dkt.330 at 4.

The Court again denied Metricolor's efforts. It stated that it "clearly set forth the scope" of review to include "documents that may have been deleted or otherwise not produced to defendants." *Id.* at 9. It ordered the first 2,500 files not marked privileged immediately released to L'Oréal. *Id.* at 16. Finally on September 20, Metricolor allowed French to release those files. After discovering highly material withheld evidence, L'Oréal repeatedly sought the remaining files, which Metricolor only released on November 3, after L'Oréal sought *ex parte* relief.

## III.    METRICOLOR'S CONTINUING MISCONDUCT

Significant additional misconduct has emerged since L'Oréal filed its original sanctions motion. Metricolor withheld over 280 relevant documents, including the strongest evidence undermining its case. Metricolor made multiple misrepresentations *in its sanctions opposition*. Metricolor deleted evidence it had an obligation to preserve. And Sal D'Amico has provided irreconcilable inconsistent

explanations for his conduct that make it impossible to know what really happened.

### A. Metricolor knowingly withheld the most harmful documents.

During the forensic review, L'Oréal discovered over 280 responsive documents that Metricolor failed to produce. *See* Colt Decl. ¶14; Ex. 10 (summarizing withheld documents). As detailed below, the documents demonstrate a consistent pattern where for almost every critical moment in the timeline Metricolor withheld the documents that could disprove its case while producing fabricated documents that appear to corroborate it. Each withheld document was responsive to L'Oréal's discovery requests and discoverable using obvious search terms. *Id.* Metricolor also unequivocally knew of withheld documents in July that trigged an unambiguous duty to supplement production. Yet rather than comply with that clear duty Metricolor urged this Court to cancel the forensic review. On December 6, pursuant to this Court's direction, Ex. 11, Aug. 21, 2023 Hrg. Tr. at 43-46, L'Oréal provided Metricolor with the complete list of unproduced documents, Colt Decl. ¶39. Metricolor did not explain why it failed to produce them.

#### 1. The withheld emails where Sal D'Amico admits he will lie and recounts a lie.

Metricolor concealed documents in which Sal D'Amico admits he lies. We've already discussed BRG-1001/BRG-1412, in which D'Amico proposes emailing L'Oréal with ███████████████████████████████████ ███████████████████████████ Ex. 1 (BRG-1412); *supra* 1.[3] But that's not all. Metricolor also concealed a January 2017 email (BRG-3762) in which D'Amico reminds Stephen he ████████████████████████████████████████ ███████████████████████ Ex. 12. ███████████████ MC000043-46—the fabricated document that purported to report user-experience field testing. D'Amico

---

[3] Sal D'Amico last accessed BRG-1412 on November 17, 2020, the day after L'Oréal served discovery requests. Dkt.340-2 ¶5; Dkt.340-1 Ex.3. And a duplicate at BRG-1001 would have been *the fifth* document from the Cohen Image Metricolor reviewed before moving to end the forensic review.

1    edited that document and emailed himself a copy *the day before* ███████████

2    ████████████████████████████████ *See* Exs. 13, 14. Yet notwithstanding

3    ██████████████████████████████████, Metricolor misrepresented to

4    the Court throughout the original sanctions motion that the *substance* of MC000043-

5    46 was genuine and D'Amico "merely" backdated the document. Dkt.212 at 23-24.

6    　　　Metricolor also concealed BRG-1473, in which ████████████████████

7    ████████████████████████████████████████████████████

8    ██████████████████████. Ex. 15. But Metricolor ████████████████

9    ████████. *See* Ex. 16 at 2 (noting ████████████████████████).

### 2. The withheld meeting scripts that nowhere mention the purported trade secret.

11    　　　Metricolor also withheld scripts of talking points that it wrote ahead of the

12    October and December 2014 meetings during which it allegedly conveyed its trade

13    secrets to L'Oréal. These documents are also critically important. Because these

14    meetings were not recorded, Metricolor's scripts detailing what it planned to say

15    provide the only documentary evidence to help corroborate or disprove what

16    Metricolor in fact conveyed at the meetings. Unsurprisingly, they contradict

17    Metricolor's account.

18    　　　***October 9, 2014 Meeting.*** Metricolor withheld scripts and related documents

19    for the October 9 meeting where it purportedly first performed a demonstration of

20    the "first-generation" secret. BRG-1280 contains a September 16 draft of the

21    PowerPoint presentation Metricolor gave at the meeting. Unlike the version of the

22    PowerPoint which Metricolor did produce, this document includes Metricolor's slide

23    notes with talking points. Ex. 17; Ex. 18 (produced version). Tellingly, the script

24    ████████████████████████████████████████████████████

25    ████████████████████████████████████████████████████

26    ██████████████████ Ex. 17 at 20 (emphasis added). Sal D'Amico accessed this document

27    during discovery on September 7, 2021, *the same day* Metricolor produced a version

28

of the presentation without the script. French Decl. ¶3; Colt Decl. ¶22, and it was in the tranche of Cohen Image documents Metricolor reviewed before moving to end the forensic review.

BRG-3510 is an email chain between Sal D'Amico and a consultant where ███████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████████. Ex. 19 at 2. Yet, the October 9 presentation describes ████████████████ ███████████████████. Ex. 18 at 21. This omission speaks volumes. The purported first-generation system cost substantially less so Metricolor would have included it—had it conceived of it—to show L'Oréal greater cost-savings. *Compare id.* (Second generation cost: $.22) *with* MC000047 (First generation cost: $.06). D'Amico later fabricated MC000047 to make it appear that Metricolor at some point presented the missing cost-savings information about the first-generation system.

***December 2014 Product Testing Meeting.*** Metricolor also withheld its script (BRG-2345) for the critical December 2014 meeting during which it supposedly recommended using the purported first-generation system. Ex. 20. The withheld script ████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ███████████████████████

*Id.*

The notes then go on to discuss ████████████████████ ███████████████████████████████. D'Amico later fabricated MC000093-94, which makes it appear Metricolor recommended the first-generation system during this December meeting. D'Amico last accessed a version of BRG-2345 on October 5, 2021 during discovery after his deposition, French ¶4, and

Metricolor knew it was not produced before moving to end the forensic review. Dkt.314-1 ¶¶4-6.

### 3. The withheld product development notes that refute Metricolor's timeline.

Metricolor also withheld product development documents that disprove its account that it developed and disclosed a first-generation Metricolor System with a standard non-sealing orifice reducer in 2014.

Most significant is BRG-4093. It provides unmistakable evidence that Metricolor ███████████████████████████████████████████████████ ████████████████████████████. Ex. 21. On November 3, 2014, nearly one month *after* the October 9 meeting in which Metricolor supposedly disclosed a system with a standard orifice reducer, Sal D'Amico emailed Stephen D'Amico ████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████.

Metricolor also concealed BRG-1831, which is its earliest business plan from April 30, 2012—two years before it first met with L'Oréal. Ex. 22. The business plan describes the invention as a ████████████████████████████████████ ████████████████████████ *Id.* (emphasis added). ████████████████ ████████████████████████████████████████████████████████

Metricolor also concealed BRG-1806, which is a similar plan from November 20, 2014 that also ██████████████████████████. Ex. 23.

### 4. The withheld emails concealing material witnesses and revealing misrepresentations to the Court.

Finally, Metricolor withheld documents that concealed percipient witnesses who could have testified to whether Metricolor ever possessed the first-generation system, among other topics. Most egregiously, Metricolor withheld a PowerPoint

presentation (BRG-1545) that listed ████████████████████████████
████████████████████████ Ex. 24. It was only because Metricolor didn't produce this document that it could misrepresent to the Court while resisting discovery that Anthony D'Amico "has never worked on Metricolor, has nothing to do with it." Ex. 25, Nov. 22, 2021 Hrg. Tr. at 17:23-18:17. Sal D'Amico last accessed BRG-1545 on September 23, 2021, the day after his deposition, in which he testified about Anthony D'Amico. Dkt.340-2 ¶9; Dkt.109 at 19.

Metricolor also concealed documents that revealed Steven Trzaska, Chuck McGonigle, Shannon Schildkraut, Tammy Browning-Smith, and Olaplex possess relevant information about whether Metricolor ever created or shared its purported first-generation system with L'Oréal. *See* Dkt.357 at 6-7 (discussing documents). If this case goes forward, L'Oréal requests the Court permit discovery from these witnesses.

**B. Metricolor admits it relied in its sanctions opposition on additional fabricated evidence.**

Beyond withholding evidence, Metricolor now concedes that the handwritten product-testing notes it relied on in its summary judgment and sanctions opposition were also altered during litigation. *See* Dkt.212 at 5-6; *supra* 5. Metricolor argued these notes confirm that it tested L'Oréal's products with its first-generation system in 2014. Dkt.212 at 5-6, 19.

But when questioned about the notes under oath, D'Amico admitted that at least the first page was written years later to "show [his] attorneys the process [they] went through." Ex. 8, at 224:11-226:6. That page states "use poly-plastic container for packaging of developer—*use standard push-in orifice reducer.*" Ex. 26 (emphasis added). D'Amico knew he added that information later because the page contained "buzz-words" like "orifice reducer" that he added to documents during litigation. Ex. 8, at 224:11-226:6. And while D'Amico equivocated about whether the remainder of the testing notes were contemporaneous, they contain the same "standard push-in

orifice reducer" phrase that indicated to D'Amico the first page was not contemporaneous. Ex. 26 (notes). Indeed, the phrase "standard orifice reducer" is unique to fabricated documents and appears in no genuine document. The only genuine document that addresses non-sealing orifice reducers is withheld BRG-4093, in which Stephen *dismissed* the idea of using one around the time of the product testing. *Supra* 10.

Further, Metricolor failed to comply with this Court's order to produce the original handwritten notes for inspection. Ex. 7, at 16:24-25. Instead, Metricolor produced "notes" it purported to be original, but L'Oréal's forensic expert discovered they were machine-made and thus could not be forensically dated. *See* Dkt.267 at 9; Dkt.267-3 ¶¶14-16 (Kuhn Decl.).

### C. *Metricolor deleted evidence.*

Finally, the forensic review determined that Sal D'Amico deleted discoverable information from his computer, and that it is now impossible to know whether all of the deleted files have been recovered. All agree that 45% of the 5,653 documents that French identified as potentially relevant documents during the forensic review were found in unallocated clusters on the Cohen Image, which means they were deleted. Dkt.330 at 8.[4] And the documents were most likely deleted during litigation. French Decl. ¶¶8-15. For some, Metricolor has pointed out that not every copy of the document was deleted. Dkt.353 at 6-11. But that does not exonerate Metricolor. Deleting one copy may still evidence a deliberate attempt to conceal evidence. French Decl. ¶26. In any event, for other documents, *every* copy was found in only unallocated clusters, meaning every instance of the file was most likely deleted intentionally. French Decl. ¶¶16-28. This includes BRG-3762 in which Sal D'Amico ███████████████████████████████████████████████████████, as well as

---

[4] An "unallocated cluster" describes where a file goes when its deleted. Active files on a computer live in a specified storage location. When a file is deleted, it is removed from its storage location and data from the file continues to exist in a liminal space—accessible only with forensic tools—until it is overwritten to make room for new data. French Decl. ¶12.

important communications with Steve Trzaska such as BRG-997, which Metricolor is trying to claw back, BRG-3879 in which Trzaska ████████████████, Ex. 27, and other documents relating to Metricolor's efforts to hide Trzaska's involvement from L'Oréal, Exs. 28-31 (BRG-1224, 1264, 1379, 1403). It also includes BRG-1241, Ex. 32, an interim draft of the cut-tape fake MC000613 email purporting to disclose "trade secrets" to L'Oréal. Most significantly, there is no way to determine whether the information French recovered from unallocated clusters includes everything deleted from D'Amico's laptop. French Decl. ¶15. Given the extent of the deletions and the speed with which deleted files are overwritten, it is most likely discoverable material has been lost forever. *Id.*

Further, French discovered that, contrary to Metricolor's representations that D'Amico's computer was "dead" and not working in 2021, Ex. 8, at 57:18-58:10, the computer had been altered *after* creation of the Cohen Image. Specifically, the Cohen Image contained over 50,000 files missing from the Setec Image and had less corruption, which means a person deliberately altered the computer. French Decl. ¶¶27-28.

## IV.   PLAINTIFF'S CONDUCT WARRANTS DISMISSAL

Metricolor's continuing misconduct combined with its original fabrication of evidence requires dismissing the case. Metricolor has "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings," *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) and "so damage[d] the integrity of the discovery process that there can never be assurance of proceeding on the true facts," *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) (dismissing case). *See also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1252-53 (9th Cir. 2006) (failure to comply with discovery obligations*); Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (falsifying evidence).

In determining whether to dismiss a case, courts consider: "(1) the public's

interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Connecticut Gen.*, 482 F.3d at 1096. A court "need not make explicit findings regarding each of these factors," but "willfulness, fault, or bad faith" is required. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). And "[w]hile the strength or weakness of the plaintiff's case may be a factor … the court should not closely scrutinize the merits of an action." *Anderson v AirWest, Inc.*, 542 F.2d 522, 526 (9th Cir. 1976). The Ninth Circuit "will overturn a dismissal sanction only if [it has] a definite and firm conviction that it was clearly outside the acceptable range of sanctions." *Malone v. U.S. Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987).

### A. *Metricolor engaged in bad faith, willful misconduct.*

"[D]isobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993). Bad faith may also be inferred from a variety of conduct including, "present[ing] 'facts … to the Court that are plainly wrong or misleading," *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 979 (E.D. Cal. 2005), "[p]roviding false or incomplete information during … discovery," *Englebrick v. Worthington Indus.*, 944 F. Supp. 2d 899, 909 (C.D. Cal. 2013), "failure to promptly reveal the destruction [of evidence], as well as apparent efforts to cover it up," *Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*, No. 11-5639 EMC (JSC), 2014 WL 595912, at *6 (N.D. Cal. Feb. 14, 2014), and "reckless and knowing conduct … tantamount to bad faith," *B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1108 (9th Cir. 2002). Importantly, the Court is empowered to make credibility determinations that "are entitled to special deference," *Anheuser-Busch*, 69 F.3d at 348, and evidence of bad faith need not be "conclusive" so long as it is sufficient, *Hyde & Drath v. Baker*, 24 F.3d 1162, 1168 (9th Cir. 1994).

The troubling facts here easily support a finding of willfulness, bad faith, or

1   fault. Metricolor fabricated multiple documents, hampered the investigation into

2   those documents, offered a contradictory and farfetched explanation that has been

3   rejected by its own lawyers, knowingly withheld numerous highly material

4   documents that undermine its case, fought those documents' release in the face of an

5   unambiguous duty to disclose, and made multiple misrepresentations to the Court,

6   all of which relates directly to the most important questions in this case.

7       ***Fabrication***. Sal D'Amico fabricated documents that appear to show that

8   Metricolor possessed and disclosed to L'Oréal a first-generation Metricolor System

9   with a standard orifice reducer. Metricolor has attempted to dismiss this troubling

10  conduct as a big misunderstanding and contended that D'Amico created the

11  documents only to share information with counsel and never intended to use them in

12  litigation. Dkt.157-13, ¶4. There is now considerable evidence that excuse is untrue

13  and Metricolor fabricated the documents in bad faith.

14      Most significantly there is now undisputable evidence of D'Amico's "prior

15  dishonesty" which "can support an adverse credibility determination." *Silva-Pereira*

16  *v. Lynch*, 827 F.3d 1176, 1187 (9th Cir. 2016). ████████████████████████

17  ████████████████████████████████████████████████████████████

18  ██████. *Supra* 7-8. This concealed evidence provides ample basis to conclude that

19  D'Amico's farfetched explanation that he created documents that appear to be

20  genuine communications with L'Oréal merely to convey information to his lawyers

21  is not credible. Indeed, the fabrications ████████████████████████████

22  ██████. Each document, like the ████████████████████, is filled with highly

23  specific details designed to make the document appear genuine many of which are

24  things that would be impossible to recall years later.

25      Contradictions and unanswered questions also plague D'Amico's account

26  evidencing dishonesty. D'Amico has never explained why conveying information to

27  his attorneys required him to fabricate documents or how it would be helpful to his

28  attorneys to show them fake emails he never sent. And there is no way to view the

documents as someone sharing information with lawyer. MC000613 and MC000093-94 for example add information to documents to make it look like information was communicated to L'Oréal when it was not. Indeed, it is not even how D'Amico usually conveyed information to his lawyer. D'Amico testified that he commonly pointed out significant differences between documents using post-it notes, *supra* 5, and he has no explanation for why he did not use that method here. Further, D'Amico contends he created the fake documents to communicate handwritten information more legibly to his attorneys. But D'Amico now admits he also fabricated *handwritten* testing notes as well. Dkt.157-13, ¶4; Ex. 8, at 224:11-226:6.

D'Amico's attorneys have also refuted substantial portions of his explanation. D'Amico testified that on November 23, 2020, he and counsel "collectively decided … to add information" to the fabricated documents. Ex. 8, at 109:22-110:24; *id*. at 126:23-132:1.[5] D'Amico further testified that before the documents were produced to L'Oréal, he reviewed them in a conference room with counsel and told counsel in an email that he had edited these documents during the litigation. *Id*. at 70:13-73:13, 143:24-146:7. But counsel's sworn declaration, Dkt.198-5, contradicts D'Amico's testimony: "I was not aware that the document production included documents that Sal D'Amico had updated during the litigation." Dkt.198-5 ¶10. And D'Amico has produced no corroborating email.

Moreover, Metricolor hampered the investigation by making numerous material misrepresentations to the Court, which further evidences willful conduct and bad faith. *See Jackson Family*, 2014 WL 595912, at *6. Most significantly, *in its sanctions opposition*, Metricolor misrepresented D'Amico's handwritten testing notes as a contemporaneous document that substantiated the substance of MC000093-94. *Supra* 11-12. Metricolor also concealed from the Court in that filing that D'Amico entirely made up the purported user-experience testing reported in

---

[5] This November 23, 2020 date is an additional falsity: D'Amico previously admitted (and forensics confirmed) he altered the test results document on November 4, 2020. Dkt.198-2, ¶19; Dkt.189-5, French Decl. ¶24.

MC000043-46. Further, despite being ordered by the Court to provide the original handwritten notes for forensic inspection, Metricolor instead produced photocopies that could not be dated. *Supra* 5.

Metricolor also misrepresented D'Amico's knowledge of the fabrications. On October 26 opposing forensic review, Metricolor told the Court D'Amico "does not remember if [MC000613] was sent or not," Dkt.114 at 7, despite D'Amico telling his counsel eleven days earlier he did not send the email, Dkt.157-2, Ex.1.i. Metricolor then waited *seven months* to correct the record. *See* Dkt.157-13 ¶8. And D'Amico has now provided three different dates for when he fabricated the email—2016, 2018, and 2020. Metricolor also misrepresented Anthony D'Amico's connection to this case during the investigation of a potentially fabricated document from D'Amico's computer—telling the Court he "has never worked on Metricolor, has nothing to do with it" when that wasn't true. Ex. 25, at 18; *supra* 10-11.

***Withheld and deleted documents.*** Metricolor's withholding of the documents most harmful to its case and deletion of files from D'Amico's computer further demonstrate it deliberately manufactured the fake documents for litigation advantage and also provides an independent basis to find bad faith. *See In re Phenylpropanolamine*, 460 F.3d at 1236 (noncompliance with discovery deadlines). Metricolor withheld documents showing Sal D'Amico lies, contemporaneous scripts for meetings critical to the case, and a document in which Metricolor conceived of *and rejected* use of a standard orifice reducer *after* Metricolor contends it disclosed one to L'Oréal. *Supra* 7-11. Metricolor's initial failure to produce these responsive documents and subsequent concededly knowing failure to supplement its production once it had actual knowledge of the documents is "disobedient conduct" that "demonstrate[s] … bad faith," as is the deletion of files related to actual or contemplated litigation. *Henry*, 983 F.2d at 948 (9th Cir. 1993); *see also Englebrick*, 944 F. Supp. 2d at 909.

Metricolor's repeated failure to disclose critical evidence is indefensible.

D'Amico provided Metricolor's counsel with all his documents in October 2020, which counsel purportedly searched. *See* Dkt.198-7 ¶¶34-37. D'Amico himself actively participated in the production. He spent over 3000 hours on this case, including identifying relevant documents and reviewing Metricolor's production. Ex. 8, Dec. 30, 2022 Dep. at 47:17-48:16, 64:14-18, 66:7-67:3. All of the key documents would have been caught with standard search terms.

But even if Metricolor somehow happened to initially overlook all the documents that hurt its case while producing fake documents that helped its case, Metricolor had actual knowledge that it did not produce most of the withheld documents by July 2023 and all of the documents by August. At that point, Metricolor had an unambiguous duty to supplement its production. *See La Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 396 (C.D. Cal. 2022). Yet despite this Court's known concerns about its production and admonition that its case was "hanging by a thread," Metricolor did not do so. Instead, it tried to keep the documents hidden from L'Oréal and the Court by moving to cancel the forensic review that ultimately revealed the documents. Dkt.314. In that filing, Metricolor purported to walk the Court through the findings of its review of the first 250 documents flagged by French on the Cohen Image, including telling the Court that 80% of the documents had already been produced. *Id.* at 6-11. But Metricolor deceptively omitted that among the 250 were highly relevant discoverable documents that were never produced, including the ████████████ email. It accordingly wasn't until over three months later that L'Oréal received the first tranche of files—and only because the Court rejected Metricolor's gambit. Disregarding clear discovery obligations and then filing a deceptive motion to keep discoverable evidence hidden is clear disobedient or reckless and knowing conduct evidencing bad faith. *Supra* 13; *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986).

With Metricolor fabricating, withholding, and deleting responsive documents whose contents are now indiscoverable, the discovery process has been, and any trial

1  will be, irreparably tainted. It is now impossible to know whether L'Oréal has all of
2  the relevant evidence and whether a jury will hear the true facts. These are the precise
3  circumstances that have led other courts to conclude terminating sanctions are
4  required to protect the "integrity of judicial proceedings," *Anheuser-Busch*, 69 F.3d
5  at 348; *see also Conn. Gen.*, 482 F.3d at 1097.

6  **B. The Connecticut General factors support terminating sanctions.**

7  **1.  Public interest and docket management favor dismissal.**

8       The public's interest in expeditious resolution and docket management favor
9  dismissal. *Conn. Gen.*, 482 F.3d at 1096. Metricolor's conduct has "greatly impeded
10  resolution of the case" and required altering the court's trial schedule multiple times.
11  *See Malone v. United States Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). Even
12  after having been caught producing fake documents, Metricolor continued to conceal
13  information, including the Cohen Image, over 280 relevant documents, and the
14  identities of percipient witnesses. As a result, the Court engaged in extensive
15  summary judgment practice without L'Oréal's strongest evidence, which could have
16  been dispositive. Metricolor also dragged its feet slowing the investigation into the
17  fake documents and moved to block the disclosure of the highly material evidence.
18  If the case goes forward, it will necessitate yet another round of depositions relating
19  to the newly discovered evidence, additional discovery, and likely more motions
20  practice that will all consume substantial additional resources.

21  **2.  L'Oréal is significantly prejudiced**

22       The prejudice to L'Oréal favors dismissal. *Conn. Gen.*, 482 F.3d at 1096. "The
23  submission of falsified evidence substantially prejudices an opposing party by
24  casting doubt on the veracity of all of the culpable party's submissions throughout
25  litigation." *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir.
26  2009). Concealing or failing to produce documents alone is independently "sufficient
27  prejudice, whether or not there is belated compliance" to warrant dismissal. *In re*
28  *Phenylpropanolamine*, 460 F.3d at 1236.

Here, Metricolor's production of fake documents and withholding of harmful documents has already substantially prejudiced L'Oréal, forcing it to waste considerable time and money flyspecking Metricolor's entire discovery. That prejudice persists even though L'Oréal has discovered (at least some of) the truth. *See N. Am. Watch*, 786 F.2d at 1451. And L'Oréal will suffer further prejudice if the case proceeds. The memories of witnesses whose identities Metricolor concealed by withholding relevant documents may have faded. And as discussed below (at 21), there can be no assurance of a reliable result.

### 3.  *Public policy also favors dismissal*

Public policy also favors dismissal because a lesser sanction than dismissal given this pattern of producing fake documents, withholding critical evidence, and continuing to change the story about the evidence "would constitute an open invitation to abuse of the judicial system of the most egregious kind." *Sec. & Exch. Comm'n v. Blockvest, LLC*, No. 18CV2287-GPB(MSB), 2020 WL 2786869, at *9 (S.D. Cal. May 29, 2020).

### 4.  *Lesser sanctions will not be sufficient*

The final factor, the availability of lesser sanctions, also favors dismissal. *Conn. Gen.*, 482 F.3d at 1096. While "[t]he district court need not exhaust every sanction short of dismissal before finally dismissing a case," *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir.1986), this Court initially elected to take a cautious approach. It warned Metricolor that its case was "hanging by a thread" after Metricolor produced the fake documents and gave Metricolor another chance. But Metricolor did not conform its conduct. Instead, as demonstrated above Metricolor:

1. made material misrepresentations in its sanctions opposition,
2. made misrepresentations that frustrated the investigation of the fabricated evidence,
3. concealed the Cohen Image,
4. *knowingly* withheld some of the most important documents to L'Oréal's

defense, and

5. concealed from the Court that it had discovered responsive unproduced documents on the Cohen Image when it urged the Court to cancel the forensic review and keep those documents in the dark forever.

This consistent, sustained pattern of serious misconduct frustrates a fair resolution of this case and makes clear any sanction less than dismissal will be futile.

More fundamentally, the case cannot continue because there is now no assurance that the case will be tried on the true facts. Metricolor "has lied and hidden evidence so extensively, [the Court] may find . . . that a subsequent trial offers no assurance of a reliable result." *Anheuser–Busch,* 69 F.3d at 354. Even with the previously concealed evidence now in its possession, other material evidence was likely among the files D'Amico deleted that can no longer be recovered. *See* French Decl. ¶15. And Sal D'Amico has admitted he will lie to benefit Metricolor, creating an unacceptable risk that he will "say anything at any time in order to prevail in this litigation." *Anheuser-Busch*, 69 F.3d at 348; *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 79 (5th Cir. 2011) (dismissal only appropriate sanction where plaintiff lied at deposition); *R Arnold v. Cnty. of El Dorado*, No. 2:10-CV-3119, 2012 WL 3276979 at *15 (E.D. Cal. Aug. 9, 2012) (lesser sanctions not be appropriate where plaintiff repeatedly lied at deposition and refused to comply with discovery obligations); *Knapp v. Convergys Corp.,* 209 F.R.D. 439, 443 (E.D. Mo. 2002) (lesser sanctions would not repair the harm to defendants caused by plaintiff's false responses to interrogatories).

### C. The Court's prior concerns about the merits.

This Court previously declined to award terminating sanctions, in part, because it believed Metricolor's case might have merit without the fabricated evidence. Dkt.228 at 16-17. Although the strength of an action is not a significant consideration under Ninth Circuit law, it is now clear Metricolor's case is exceedingly weak. *Anderson*, 542 F.2d at 526.

1   In suggesting Metricolor's case might have some merit, the Court previously
2   pointed to the transcript of the September 30, 2015 meeting as evidence that "could
3   reasonably be interpreted to reflect that the D'Amico's disclosed elements of the
4   'first-generation' of the Metricolor System." Dkt.228 at 22 n.8. L'Oréal respectfully
5   requests that the Court take another look at the purportedly corroborating transcripts.
6   Metricolor has not maintained that it disclosed its alleged trade secrets during that
7   call. *See* Dkt.212 at 6-7. The reference to D'Amico's "original design" is simply a
8   picture of a bottle that appears in Metricolor's patent, which we reproduced at 3, and
9   the "simulation" is a video recording that shows withdrawing color from that same
10  bottle with a syringe that Metricolor concedes discloses no trade secrets. *See* Dkt.212
11  at 4; Ex.33 (simulation; concurrently lodged)

12  The Court also observed that "a shared 'substantial identity' between a
13  defendant's accused product and plaintiff's trade secrets—may still establish trade
14  secret misappropriation." Dkt.228 at 17. But that is because Metricolor made up its
15  "trade secret" after the fact to match L'Oréal's products. There is no evidence apart
16  from the D'Amico's unreliable testimony that Metricolor ever had the first-
17  generation trade secret that purportedly shared a substantial identity with L'Oréal's
18  products. On the contrary all of the other evidence shows Metricolor never shared a
19  first-generation secret. The evidence uncovered through review of the Cohen Image
20  now shows Stephen D'Amico *rejected* the nonsealing orifice reducer component of
21  the purported first-generation secret as a bad idea. None of Metricolor's meeting
22  scripts mention a nonsealing orifice reducer. And Trzaska, a former member of
23  Metricolor, has now testified to the Court that Metricolor's trade secret included only
24  a "*sealing*" orifice reducer when asked what the components of the system were.
25  Metricolor is thus exceptionally unlikely to be able to prove the essential element of
26  its claim that it possessed or disclosed a first-generation trade secret at all.[6]

---

[6] Because this withheld evidence was not before the Court during summary judgment, the Court may *sua sponte* reconsider whether summary judgment for L'Oréal is now warranted.

1

**V.    THE COURT SHOULD ALSO IMPOSE MONETARY SANCTIONS**

2    L'Oréal has spent substantial sums investigating, uncovering, and seeking

3    relief for Metricolor's fraudulent conduct. As an additional sanction, L'Oréal

4    respectfully requests Metricolor and Mr. D'Amico be ordered to pay L'Oréal the

5    costs of its investigation and associated briefing.

6    **VI.    CONCLUSION**

7    L'Oréal respectfully requests that the Court grant Defendants' motion for

8    terminating sanctions, dismiss Metricolor's case with prejudice, and sanction

9    Metricolor and Mr. D'Amico in the amount of the costs and attorneys fees L'Oréal

10    incurred as a result of the misconduct. If the Court allows the case to continue,

11    L'Oréal requests that the Court reopen discovery and permit discovery from Steven

12    Trzaska, Chuck McGonigle, Shannon Schildkraut, Tammy Browning-Smith, and

13    Olaplex.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:        January 8, 2024

ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Angela Colt*
                    Angela Colt

Richard F. Martinelli (*pro hac vice*)
rmartinelli@orrick.com
Angela Colt (CA SBN 286275)
acolt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:  +1 212 506 5000
Facsimile:   +1 212 506 5151

William M. Oxley (CA SBN 136793)
woxley@orrick.com
Meghan Rohling Kelly (CA SBN 292236)
meghan.kelly@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071-1596
Telephone:  +1 213 629 2020
Facsimile:   +1 213 612 2499

*Attorneys for Defendants,
Counterclaimants, and Third-Party
Plaintiffs L'Oréal USA, Inc., L'Oréal USA
Products, Inc., L'Oréal USA S/D, Inc., And
Redken 5th Avenue NYC, LLC*

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,991 words, which complies with the word limit of L.R. 11-6.1.

Dated:        January 8, 2024                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Angela Colt*
                    Angela Colt

*Attorneys for Defendants
L'Oréal USA, Inc.,
L'Oréal USA Products, Inc.,
L'Oréal USA S/D, Inc., and
Redken 5th Avenue NYC, LLC*