RICHARD F. MARTINELLI (*pro hac vice*)
rmartinelli@orrick.com
ANGELA COLT (CA SBN 286275)
acolt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:   +1 212 506 5000
Facsimile:    +1 212 506 5151

WILLIAM W. OXLEY (CA SBN 136793)
woxley@orrick.com
MEGHAN ROHLING KELLY (CA SBN 292236)
meghan.kelly@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071-1596
Telephone:   +1 213 629 2020
Facsimile:    +1 213 612 2499

*Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs*
L'ORÉAL USA, INC., L'ORÉAL USA PRODUCTS, INC., L'ORÉAL USA S/D, INC., AND REDKEN 5TH AVENUE NYC, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| METRICOLOR LLC,<br><br>    Plaintiff and Counterdefendant,<br><br>    v.<br><br>L'ORÉAL USA, INC.; L'ORÉAL USA PRODUCTS, INC.; L'ORÉAL USA S/D, INC.; REDKEN 5th AVENUE NYC, LLC; and DOES 1 through 100, inclusive,<br><br>    Defendants, Counterclaimants and Third-Party Plaintiffs,<br><br>    v.<br><br>SALVATORE D'AMICO, and STEPHEN D'AMICO,<br><br>    Third-Party Defendants. | Case No. 2:18-cv-00364-CAS-E<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Hearing Date: March 11, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Christina A. Snyder<br>Courtroom: 8D<br><br>REDACTED |

# **TABLE OF CONTENTS**

**Page No.**

I.      INTRODUCTION ...................................................................................1

II.     METRICOLOR'S CONDUCT WARRANTS DISMISSAL ..........................2

        A.      Metricolor engaged in bad faith, willful misconduct...........................2

                1.      Metricolor deleted evidence in bad faith. ...................................3

                2.      Metricolor withheld evidence in bad faith..................................4

                3.      Metricolor fabricated evidence in bad faith................................9

        B.      The Connecticut General factors support terminating sanctions.........14

        C.      The merits..................................................................................15

III.    IF THE CASE GOES FORWARD, THE COURT SHOULD PERMIT ADDITIONAL DISCOVERY ...................................................................17

IV.     CONCLUSION ...................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amarel v. Connell*,
    102 F.3d 1494 (9th Cir. 1996) ..................................................................................... 9

*Anderson v AirWest, Inc.*,
    542 F.2d 522 (9th Cir. 1976) .................................................................................... 15

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
    69 F.3d 337 (9th Cir. 1995) ................................................................................. 3, 14

*B.K.B. v. Maui Police Dep't*,
    276 F.3d 1091 (9th Cir. 2002) ..................................................................................... 7

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
    482 F.3d 1091 (9th Cir. 2007) ................................................................................... 14

*Englebrick v. Worthington Indus.*,
    944 F. Supp. 2d 899 (C.D. Cal. 2013) ....................................................................... 7

*Henry v. Gill Indus., Inc.*,
    983 F.2d 943 (9th Cir. 1993) ..................................................................................... 2

*Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*,
    No. 11-5639 EMC (JSC), 2014 WL 595912 (N.D. Cal. Feb. 14,
    2014) ..................................................................................................................... 7, 11

*Jones v. Tozzi*,
    No. 1:05CV0148 OWW DLB, 2007 WL 433116 (E.D. Cal. Feb. 7,
    2007) ........................................................................................................................ 15

*Reinsdorf v. Skechers U.S.A., Inc.*,
    296 F.R.D. 604 (C.D. Cal. 2013) .............................................................................. 6

*Silva-Pereira v. Lynch*,
    827 F.3d 1176 (9th Cir. 2016) .................................................................................. 10

*U.S. Legal Support, Inc. v. Hofioni*,
    No. 2:13-CV-01770-MCE-AC, 2015 WL 5916692 (E.D. Cal. Oct.
    8, 2015) ...................................................................................................................... 5

**Other Authorities**

Fed. R. Civ. P. 54(b) ...................................................................................................... 9

L.R. 11-6.2 ....................................................................................................................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In its opening memorandum, L'Oréal detailed significant misconduct that emerged since L'Oréal filed its original sanctions motion. The misconduct reflects a repeated pattern where Metricolor fabricated the strongest documents that support its case and deliberately withheld the strongest evidence undermining it. L'Oréal also discovered Metricolor misrepresented additional fabricated documents in its original sanctions opposition. And Metricolor deleted evidence it had an obligation to preserve.

Metricolor utterly fails to meet the gravity of L'Oréal's motion in its response. Despite filing an overlength brief without leave of Court, Metricolor leaves the critical facts establishing bad faith misconduct unrebutted.[1] It declines to provide any explanation, despite the Court ordering one, for how it could have withheld in good faith the most harmful documents to its case when each was discoverable using obvious search terms. Metricolor does not deny that it had *actual knowledge* that it failed to produce many of those documents, concealed that knowledge from L'Oréal and the Court, and then moved to quash the forensic review, which, if successful, would have kept the documents in the dark forever. And Metricolor does not meaningfully address the evidence that it misrepresented additional fabricated documents as genuine or that D'Amico deleted responsive documents during discovery and that it is now more likely than not that discoverable material is lost forever. Instead Metricolor responds with inflated rhetoric that is utterly divorced from the pertinent facts and simply underscores its continued bad faith. *E.g.,* Opp. 1 ("conspiracy theory"), Opp. 14 ("false misrepresentations"), Opp. 22 ("charade")

Nothing less than terminating sanctions can address Metricolor's misconduct. When a party fabricates its strongest evidence, knowingly withholds the evidence

---

[1] Metricolor's memorandum does not include the certificate of compliance required by L.R. 11-6.2. It appears to exceed the 7000-word limit by at least 1500 words.

that hurts its case the most, deletes evidence, makes misrepresentations to the Court, and provides no justification for misconduct, the integrity of the judicial system requires ending the case. There can no longer be any assurance of an accurate result, and permitting this case to go forward would send no warning to others who considering disregarding the rules to gain advantage. The Court should terminate this case and issue monetary sanctions.

## II.   METRICOLOR'S CONDUCT WARRANTS DISMISSAL

Metricolor's response leaves it beyond dispute that Metricolor committed discovery misconduct by fabricating its strongest evidence, withholding the documents that undermine its case, and deleting documents.  The question now is what must be done. Given the extent of the misconduct, that it is repeated and continuing, and that it is inseparable from the merits of the action, the only appropriate remedy is ending the case. Metricolor acted willfully, in bad faith, or with fault.  Each of the *Connecticut General* factors, which Metricolor has declined to address, favor dismissal.  And Metricolor's case is both weak on the merits and inextricably intertwined with its misconduct, which makes proceeding to an untainted trial impossible.

### A.   *Metricolor engaged in bad faith, willful misconduct.*

Metricolor does not dispute the legal standard for willfulness, bad faith, or fault set out in L'Oréal's motion. "[D]isobedient conduct not shown to be outside the control of the litigant is all that is required." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993). Bad faith may also be inferred from a variety of circumstances, including presenting misleading facts, providing false or incomplete information during discovery, failing to promptly reveal misconduct when it's discovered, and reckless and knowing conduct tantamount to bad faith. Mot. 14 (collecting cases). And although Metricolor repeatedly urges the Court to send questions of credibility to the jury, Opp. 2, 12, 15-16, Metricolor does not dispute that the Court is empowered to make credibility determinations when ruling on a sanctions motion

and that those determinations "are entitled to special deference" on appeal. *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995). Indeed, it is imperative for the Court to do so. A terminating sanctions motion speaks to the Court's role as guardian of the integrity of the Court's proceedings. Allowing a case to proceed to trial before a jury where a party "has lied and hidden evidence so extensively . . . that a subsequent trial offers no assurance of a reliable result" diminishes the integrity of the Court and fails to deter similar misconduct in the future. *Anheuser–Busch,* 69 F.3d at 354.

There is now overwhelming evidence of bad faith misconduct that requires terminating sanctions. As L'Oréal demonstrated, Metricolor engaged in a trifecta of misconduct—it fabricated evidence, it withheld evidence in discovery, and it deleted evidence, some of which is now unrecoverable. Confronted with this misconduct Metricolor has either not attempted to justify it, made misrepresentations about it, or offered spurious arguments inconsistent with good faith mistakes.

### 1.    *Metricolor deleted evidence in bad faith.*

We start with Metricolor deleting evidence because Metricolor has left nearly all of this misconduct unrebutted. Metricolor has not disputed that: (1) D'Amico deleted responsive documents from his computer, (2) D'Amico's computer was altered between creation of the Cohen and SETEC Images when there was a clear forensic preservation hold, and (3) based on the magnitude of the deletions it is more likely than not that some responsive deleted files could not be recovered during the forensic review and their contents are thus lost forever. Mot. 12-13.

Metricolor's response does nothing to refute that it deleted and tampered with evidence in bad faith. It does not dispute that responsive documents had every instance of them deleted. And it provides no explanation how *every version* such responsive documents could be innocently deleted. Nor does it explain how D'Amico's computer could have been legitimately altered between creation of the Cohen and SETEC Images when the computer was subject to a forensic hold and

Metricolor has said it was "dead." Tellingly, Metricolor has provided no declaration or testimony from D'Amico attesting that he did not delete responsive documents or alter his computer after it was subject to a forensic hold.

Instead, Metricolor discusses D'Amico being a novice to litigation and technologically unsavvy—but that is no excuse even if it were true. Opp. 8. Parties are responsible for preserving relevant evidence whether they are savvy or not. And it does not take any expertise to leave a computer subject to a forensic hold alone and not delete documents. At other times, Metricolor discusses problems D'Amico had with his computer. Opp. 8-9. But it offers no evidence that those problems caused any, much less all the deletions. And again, D'Amico has never sworn that he did not delete responsive documents from his computer. Instead, D'Amico swore his computer was "dead" when it was not to throw L'Oréal off the track. Metricolor deleted the evidence in bad faith.

### 2.      *Metricolor withheld evidence in bad faith.*

Metricolor's response also confirms it withheld documents in bad faith. Here too Metricolor leaves the key facts establishing misconduct unrebutted. Metricolor withheld over 280 responsive documents.[2] Mot. 6-7. The documents were identifiable during discovery with obvious search terms, like "L'Oréal" or "orifice reducer." *Id*. And some documents were found in obvious places such as the "Documents" folder, "loreal email documents" folder, and "Desktop" of Sal D'Amico's computer.  French Decl. ¶ 9. *See also* Dkt.148 at 11-12; Dkt.158 at 8,9; Dkt.275-8 at 8, 9; Dkt.340-1, Feb. 25, 2022 Hrg. Tr. at 10; Dkt.357-4, July 8, 2022

---

[2] Metricolor repeatedly quibbles about the number of documents at issue. It notes that some of the 289 improperly withheld documents have duplicate content. Opp. 20-22. Metricolor also faults L'Oréal for focusing the Court on "only 18 [withheld] documents in detail." Opp. 20-22. It is unclear why Metricolor thinks any of that is exonerating. Even accepting Metricolor's erroneous premise that documents with duplicate (or in fact, merely similar) information should not be counted separately, Metricolor still  failed to produce over 100 responsive documents—many of which were so significant that L'Oréal discussed them in detail. And the fact that Metricolor possessed multiple documents with similar information and withheld *every one* suggests Metricolor withheld the documents intentionally.

Hrg. Tr. at 14 (discussing withheld documents found in "loreal email documents" folder). Metricolor had actual knowledge that it failed to produce many of these documents since June 2023 at the latest. Mot. 6-7. Despite such knowledge, Metricolor did not produce the documents. *Id*. Metricolor instead concealed that knowledge from L'Oréal and the Court and moved to end the forensic review that ultimately revealed the documents. *Id*. It is hard to imagine a good faith justification for *twice* withholding the documents most harmful to one's case—once during discovery when the documents were responsive to obvious search terms and then after they appeared during the forensic review. And Metricolor has not offered any.

***Metricolor failed to produce documents during discovery in bad faith.*** Metricolor asserts that it "had no obligation to produce these … documents." Opp. 25. But Metricolor does not dispute the key facts establishing that it did indeed have an obligation to produce the documents. Metricolor does not dispute that a party has an obligation to produce all documents relevant to a discovery request in its possession. *See U.S. Legal Support, Inc. v. Hofioni*, No. 2:13-CV-01770-MCE-AC, 2015 WL 5916692, at \*4 (E.D. Cal. Oct. 8, 2015). Metricolor acknowledges that L'Oréal detailed each discovery request the withheld documents were responsive to. Opp. 22. And Metricolor offers no argument that the withheld documents were unresponsive to those requests, not in its possession, or otherwise privileged.[3] Thus, Metricolor had an unambiguous duty to produce the documents.

Metricolor next contends, without support, that "all of the [withheld] documents … have good faith explanations relating to them," and that L'Oréal "failed to unearth any substantive evidence to challenge the credibility of Metricolor's document production." Opp. 2. Tellingly, Metricolor never provides the promised explanation. And it is not for lack of an opportunity to do so. In August

---

[3] Metricolor makes a passing assertion that "many of the … documents were … claimed to be privileged and therefore were appropriately withheld." Opp. 1. But Metricolor does not elaborate, let alone articulate any good faith basis to assert privilege over the documents discussed in L'Oréal's motion.

2023, the Court ordered Metricolor to provide L'Oréal with an explanation for why it did not produce the documents. Dkt.375.13, Ex. 11, Aug. 21, 2023 Hrg. Tr. at 43-46.[4] L'Oréal provided Metricolor with lists of improperly withheld documents in October and December. Dkt.375-2, Colt Decl. ¶39. Yet Metricolor offered no explanation either through the meet-and-confer process or in its opposition as to how a good faith discovery process could have missed *every* email evidencing D'Amico's dishonesty towards L'Oréal, *every* meeting script providing a contemporaneous account of what Metricolor planned to say during meetings in which it purportedly disclosed trade secrets, and *the only* email rejecting use of standard orifice reducers during the period in which Metricolor purportedly disclosed its first-generation system with a standard orifice reducer. That lack of explanation is significant not only because the Court ordered Metricolor to provide an explanation, Dkt.375.13, Ex. 11, Aug. 21, 2023 Hrg. Tr. at 43-46, but because the absence of any reasonable justification further speaks to Metricolor's bad faith.

Metricolor next suggests that omitting documents from discovery does not evidence bad faith because "document product is not subject to a standard of perfection." Opp. 1 n.1 (discussing *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 614-15 (C.D. Cal. 2013)). But all Metricolor's authority says is that omitting a small number of documents is not *per se* discovery abuse. Rather, "the court will inquire whether the producing party's search and response were objectively reasonable under the circumstances." *Reinsdorf*, 296 F.R.D. at 615. But here, the circumstances are grave considering the repeated discovery misconduct, and Metricolor has provided no explanation for how it missed the documents that undermine its case.

Finally, Metricolor takes issue with L'Oréal's evidence that D'Amico accessed many of the unproduced documents *during discovery* and failed to produce them.

---

[4] All Ex. cites are to the supporting exhibits to L'Oréal's sanctions motion at Dkt.374 and Dkt.375 unless otherwise noted.

Although there is substantial evidence of bad faith misconduct already, the last accessed dates provide further evidence that Metricolor knowingly failed to produce the withheld documents during discovery. Metricolor contends that the last accessed dates are misleading because it is possible that a process, rather than a human, is responsible for the last access dates. Although for some files, a last accessed date could *in some circumstances* be unreliable or the result of a process, the evidence demonstrates that a human, not a repair process, was responsible for the last access dates relating to those dates that L'Oréal described in the Motion: BRG-1412 (Ex. 1), BRG_ 1280 (Ex. 17), 1545 (Ex. 24), BRG_2517 (version of Ex. 20). French Decl. ¶¶ 5-8.

*Metricolor failed to supplement its production in bad faith.* Even if there were any doubts about Metricolor's initial production, its subsequent conduct leaves no doubt it acted in bad faith. Metricolor had actual knowledge that it failed to produce numerous responsive documents by June 2023, at the latest. Mot. 6, 18. At that time, Metricolor did not come forward with the withheld documents, provide an accounting of why the documents were withheld, or detail the steps it was taking to determine whether other documents were improperly withheld. Those steps would have been consistent with an innocent, good faith mistake. Instead, it is undisputed that Metricolor attempted to conceal the evidence by keeping it secret and moving the Court to quash the forensic review that Metricolor knew would otherwise reveal the withheld documents. Mot. 18. This deliberate concealment of highly material discoverable evidence is the sort of "cover ... up," "[p]roviding false or incomplete information during … discovery," and "reckless and knowing conduct … tantamount to bad faith," that establishes incontrovertible evidence of bad faith. *See Englebrick v. Worthington Indus.*, 944 F. Supp. 2d 899, 909 (C.D. Cal. 2013); *Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*, No. 11-5639 EMC (JSC), 2014 WL 595912, at *6 (N.D. Cal. Feb. 14, 2014); *B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1108 (9th Cir. 2002).

Metricolor argues it did not conceal the evidence in bad faith because it appropriately declined to supplement production to "preserv[e] its rights." Opp. 17. The argument appears to be that because Metricolor believed the forensic review should have been limited to finding evidence of deleted documents and not withheld documents, that Metricolor could permissibly conceal withheld documents. *Id.* This is a staggering argument, and it fails multiple times over. First, the argument is irrelevant in light of the duty to supplement, which applies whenever a party acquires improperly withheld documents. Second, the Court already held that the forensic protocol "clearly" included improperly withheld documents. Dkt.330 at 9. Third, some of the improperly withheld documents were deleted and thus should have been disclosed even under Metricolor's theory. Mot. 12-13 (listing documents). And fourth, if Metricolor had doubts about its duty to disclose or wished to preserve an argument that it should not be required to disclose the documents, candor to the Court compelled it to bring the withheld documents to the Court's attention and permit the Court to resolve the issue on the record. A party does not legitimately "preserve[] its rights" by concealing highly relevant evidence from the Court.

Metricolor also suggests that L'Oréal's argument about Metricolor failing to supplement based on information from the forensic review is "a charade" because the withheld documents were on the SETEC image that "L'Oréal has had since 2021." Opp. 23. Although Metricolor does not elaborate, Metricolor appears to be suggesting that L'Oréal had the documents in its possession via the SETEC image since 2021 and should have simply found the documents for itself then. That is wrong. Under the forensic protocol Metricolor insisted upon, L'Oréal could not independently access documents on the SETEC image without Metricolor's permission. Dkt.145 (Forensic Protocol). The SETEC image has always been in possession, custody, and control, of L'Oréal's expert; L'Oréal does not have access to it. Indeed, because Metricolor refused L'Oréal access to the files, L'Oréal spent months and made multiple court filings seeking permission from the Court to access

the withheld documents. *See* Dkt.344.

Metricolor also argues it had no obligation to disclose the Cohen Image once it created it. Opp. 18-19. Despite this Court already rejecting that argument, Metricolor continues to press it. Dkt.375-11, Ex. 9, Mar. 27, 2023 Hrg. Tr. at 9-10. It contends that L'Oréal's motion for forensic review sought access to only "computers" and "devices," so Metricolor did not know to also provide an image. Opp. 19. But Metricolor is playing word games that ignore its duty of candor. Neither L'Oréal nor the Court at the time had any idea Metricolor had created an image. A recent image of a device for which L'Oréal sought forensic review plainly fell within the spirit if not the letter of the request.

### *3.      Metricolor fabricated evidence in bad faith.*

As for the fabricated evidence, Metricolor's lead argument is that the Court may no longer consider this misconduct because L'Oréal's initial sanctions motion addressed fabricated documents and "raising these issues in the instant Motion is an inappropriate attempt at reconsideration." Opp. 7, 10. Metricolor is mistaken. The Court may reconsider its sanctions order at any time before final judgment. *See Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ("interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment" (quotation omitted)); Fed. R. Civ. P. 54(b). In any event, L'Oréal is not rehashing arguments. As L'Oréal explained, the original fabrications are now part of, and colored by, a broader course of misconduct, which provides a new basis to conclude Metricolor fabricated the evidence in bad faith. Metricolor's deliberate withholding of the most harmful evidence to its case makes the fabrication of the strongest evidence appear deliberate. There is also now substantial evidence of D'Amico's dishonesty in his dealings with L'Oréal and this litigation. And Metricolor's counsel have contradicted D'Amico's excuse for the fabricated documents since Metricolor successfully opposed sanctions.

***D'Amico's dishonesty in dealings with L'Oréal.*** Metricolor attempts to

downplay the clear evidence D'Amico's dishonesty concealed in the withheld documents and argues that it provides no evidence of intent to mislead. Opp. 11. According to Metricolor, emails in which D'Amico proposes lying and admits to "made up" interviews are innocent "loose language," "musings of a father-son," and a matter of "semantics." Opp. 11. And the concealed "█████████████" email actually *enhances* D'Amico's credibility because he did not send it—thus evidencing honesty. Opp. 11. These are not serious arguments. A credible person does not create "made up" interviews, propose sending a counterparty an email that is "████████████████" and lie about competing offers. And even though D'Amico did not email the "lie" he did go on to deliver the results of the "█████████████" orally. *Infra* 13-14 (describing evidence that D'Amico ███████████████████).

Dishonesty undermining Metricolor's credibility has also pervaded the case. Metricolor has represented to the Court that Anthony D'Amico had "nothing to do with this case" when withheld documents show that wasn't true. Mot. 10-11. It represented that D'Amico's computer was "dead" and that the Cohen and SETEC Images would be identical, when there is now undisputed evidence neither was true. Mot. 5-6, 13. It told L'Oréal and the Court that D'Amico did not remember whether he sent fabricated MC000613 to L'Oréal when Metricolor had actual knowledge he did not. Mot. 17. It concealed from the Court the existence of the Cohen Image and its knowledge that it failed to produce responsive documents during discovery. Mot. 6-11. And it misrepresented the handwritten notes and salon study as genuine at summary judgment. Mot. 11-12. There is thus now overwhelming evidence of "prior dishonesty" concerning Metricolor's interactions with L'Oréal and this litigation that provides ample basis to conclude Metricolor's explanation for the fabricated documents is not credible and that Metricolor fabricated the evidence in bad faith. *See Silva-Pereira v. Lynch*, 827 F.3d 1176, 1187 (9th Cir. 2016).

***Counsel contradicted Metricolor's explanation.*** Metricolor also doubles down on its original argument that the fabricated evidence was just a good faith

misunderstanding between counsel and should not have been produced. Opp. 7-9. But Metricolor offers no response to L'Oréal's showing that counsel subsequently *contradicted* D'Amico's explanation in a sworn declaration. Mot. 15-16. It does not attempt to reconcile D'Amico's testimony that he and counsel "collectively decided … to add information" to the fabricated documents and that he told counsel in an email that he had edited the documents with counsel's sworn declaration that he "was not aware that the document production included documents that Sal D'Amico had updated during the litigation." Mot. 16; Dkt.198-5 ¶10. There is no way to reconcile those conflicting statements. A total contradiction does not evidence a good faith misunderstanding.

And Metricolor has still never explained why conveying information to its attorneys required D'Amico to fabricate documents to appear indistinguishable from originals when his ordinary practice was to convey information with Post-It notes. Mot. 5, 16. With no answer to that argument, Metricolor instead mischaracterizes L'Oréal's argument as one that Sal "never explained" how the *underlying information* could help counsel. Opp. 14. But the issue is not whether the information could be relevant to counsel. It is that creating documents that appear to be genuine originals is more suggestive of an attempt to fabricate evidence than to share information with counsel. And Metricolor leaves that issue unaddressed.

L'Oréal also explained how Metricolor hampered the investigation into the fabrications by making numerous material misrepresentations to the Court, which further evidences willful conduct and bad faith. *See Jackson Family*, 2014 WL 595912, at *6. These included misrepresenting D'Amico's knowledge of the fabrications, D'Amico providing conflicting dates for when he fabricated documents, and misrepresenting D'Amico's handwritten testing notes as a contemporaneous document that substantiated the substance of one of the fabricated documents. Mot. 16-17. Metricolor does not dispute that hampering an investigation can establish bad faith, and it has failed to reasonably justify any of these misstatements.

***Metricolor used and concealed additional fabrications.*** Metricolor next argues that the fabrications were a good faith mistake because "there is absolutely no evidence [they were] ever intended to be used for any purpose." Opp. 7-8. But that's not true. As for the original fabricated documents, the fact that L'Oréal caught the fabrications early in litigation doesn't help Metricolor. Metricolor may well have attempted to use the fabricated evidence at summary judgment or at trial had L'Oréal not caught it. Indeed, there is every reason to believe that's the case.

We now know that Metricolor did affirmatively rely on additional fabricated evidence when opposing sanctions and summary judgment—Metricolor's handwritten product testing notes (MC000087-92) and a user-experience survey (MC000043-46). Recall, the product testing notes are handwritten notes D'Amico allegedly created in 2014 when testing L'Oréal products with the Metricolor system. Mot. 5. Metricolor does not dispute the key facts that establish it misrepresented these notes to the Court as a genuine contemporaneous document. It does not dispute that it relied on this document as contemporaneous to the product testing when opposing summary judgment and sanctions. *See* Dkt.212 at 5-6, 19; Mot. 5, 11-12; Opp. 15-16. It does not dispute that D'Amico has since conceded that at least the first page of the document (MC000087), which describes the testing protocol including use of a "standard push-in orifice reducer" for developer, was created during litigation. Opp. 15-16. And Metricolor also does not dispute that D'Amico admitted in the same deposition that he knew MC000087 was not contemporaneous because it contained "buzz-words" like "orifice reducer" that he added during litigation. Mot. 11-12; Opp. 15-16. Based on that concession, L'Oréal also explained that MC000089 was also likely created during litigation because it contains the same reference to a "less costly push-in standard orifice reducer." Mot. 12.

Metricolor nonetheless responds that the notes are not fabricated and that *L'Oréal's* argument is a "misrepresentation to this Court." Opp. 15. Metricolor's apparent logic is that the document is not fabricated because three of the five pages,

"MC000088 and MC000090-92[,] do not contain that [standard orifice reducer] phrase whatsoever." Opp. 15. But of course Metricolor ignores the two pages of the document that do contain the phrase, including MC000087 that D'Amico admitted was not contemporaneous. Metricolor offers no other argument for why knowingly representing to the court that a document concededly created during litigation was contemporaneous is not bad faith misconduct. And there is no merit to Metricolor's argument that even if it fabricated the document there is nothing the Court can do about it. Opp. 15. It is plainly this Court's role on a sanctions motion to determine whether evidence was fabricated and what an appropriate sanction should be. *Supra* 2-3.[5]

As for the fabricated user-survey, recall this document discussed a survey of salon owners' impressions of the Metricolor system and is one of the original fabricated documents. Metricolor previously contended that the only changes made to the document during litigation were the addition of a date and subtitle and that substance of the document was genuine. Mot. 4. But L'Oréal explained in its motion that evidence from the improperly withheld documents now establishes that the substance of this document is fake too. Mot. 7-8. Specifically, L'Oréal explained that D'Amico edited and emailed to himself MC000043-46 *the day before* he emailed Stephen to remind him about a study he produced with " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Dkt.374-5, Ex. 12. The proximity between Sal looking at MC000043 and then reminding Stephen about a "▮▮▮▮▮▮▮▮ strongly suggests the substance of MC000043 contains the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Rather than engage with this evidence on the merits, Metricolor again responds with rhetoric. Ignoring L'Oréal's actual argument, it asserts that "L'Oréal cites zero

---

[5] The rest of Metricolor's response concerns a second related problem. Metricolor failed to comply with this Court's order to produce the original handwritten notes for inspection. Dkt.375-9, Ex. 7, at 16:24-25. Instead, Metricolor produced "notes" it purported to be original, but L'Oréal's forensic expert discovered they were machine-made and thus could not be forensically dated. *See* Dkt.267 at 9; Dkt.267-3 ¶¶14-16 (Kuhn Decl.). Metricolor presented no expert to contest L'Oréal's expert testimony on this point.

evidence to establish this fact," Opp. 12 n.10; that L'Oréal "intentionally mischaracterizes Metricolor's discussion of MC000043-46," Opp. 26, and that L'Oréal's argument is "based on nothing more than L'Oréal's aggressive litigation tactics and hyperbole," Opp. 26. It contends that the substance of MC000043 is genuine because "Metricolor presented the results contained in MC000043-46 to L'Oréal." Opp. 26. But the fact that Metricolor presented the results does nothing to disprove the fact that, as Sal told Stephen, the presented results were ████████ ████████████████████████████████ Presenting a ████████ as genuine to L'Oréal is yet more evidence of bad faith, and it undercuts Metricolor's claim that Sal did not ultimately go through with the lie to L'Oréal.

### B.    The *Connecticut General* factors support terminating sanctions.

In its motion, L'Oréal also explained how each of the *Connecticut General* factors support terminating sanctions in view of a consistent, sustained pattern of serious misconduct that frustrates a fair resolution of this case. Mot. 19-21. L'Oréal will not rehash those arguments in detail here as Metricolor declined to addresses any of them, thereby tacitly conceding that terminating sanctions are appropriate if the Court finds bad faith misconduct. But Metricolor's response further illustrates that any sanction less than terminating sanctions will not be sufficient. Faced with a motion for terminating sanctions, Metricolor has continued to offer misleading and spurious explanations and refused to wrestle with the gravity of its misconduct. And with Metricolor fabricating, withholding, and deleting responsive documents whose contents are now indiscoverable, the discovery process has been, and any trial will be, irreparably tainted. It is now impossible to know whether L'Oréal has all of the relevant evidence and whether a jury will hear the true facts. And nothing short of terminating sanctions can protect the "integrity of judicial proceedings" here. *Anheuser-Busch*, 69 F.3d at 348; *see also Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007).

### C.    The merits.

Metricolor elected to devote the first six pages of its opposition to the merits and not the serious allegations of misconduct. But Metricolor does not dispute that the strength of an action is not a significant consideration when determining whether to issue terminating sanctions under Ninth Circuit law. *Anderson v AirWest, Inc.*, 542 F.2d 522, 526 (9th Cir. 1976). In any event, Metricolor's case remains exceedingly weak.

Metricolor does in its brief what it will surely do if this case goes to trial. It spends page after page focused on the facts that the parties had negotiations and that Metricolor disclosed a "novel approach of using a catheter syringe with an orifice reducer and container to package and dispense hair color products" that is broadly similar to L'Oréal's approach. Opp. 3. But Metricolor does not dispute that "novel approach" framed at that level of generality is not a trade secret, and L'Oréal cannot be liable for implementing the same broad approach.  Mot. 22; Opp. 3 (noting approach is "common to" non-trade secret second-generation system). To have a trade secret claim, Metricolor must identify a specific implementation of that system that it possessed, that was not previously known, and that satisfies the other elements of a trade secret claim. And that is where Metricolor's claim fails.

Metricolor repeats the refrain that deposition testimony—that is, testimony from the D'Amico's—supports that it disclosed a first-generation secret involving a non-self-sealing orifice reducer to L'Oréal and that this deposition testimony is enough to defeat summary judgment. Opp. 2. That is both wrong and irrelevant. It is irrelevant for present purposes because, even if Metricolor has done enough to survive summary judgment, that does not establish it has a strong claim for trial. It is also wrong because at summary judgment "self-serving evidence may … be disregarded as incredible if it is contradicted by disinterested witness testimony, undisputed evidence, or is completely without foundation." *Jones v. Tozzi*, No. 1:05CV0148 OWW DLB, 2007 WL 433116, at *14 (E.D. Cal. Feb. 7, 2007).

In its motion L'Oréal explained how the D'Amico's testimony that they disclosed the first-generation system with a standard orifice reducer is utterly refuted by the withheld evidence, as is their testimony that they later recommended the system to L'Oréal. Mot. 22. Specifically, L'Oréal explained that Metricolor withheld a smoking gun email that disproves Metricolor's claim that it demonstrated a first-generation Metricolor system at the October 9 meeting. The email, written after that meeting, proposes and rejects a new design using a standard (i.e., non-sealing) orifice reducer. Mot. 10; Dkt.374-13, Ex. 21. Metricolor asserts that this document "does not cast any doubt on Metricolor's claims." Opp. 18. But the email makes crystal clear that Metricolor had not previously considered a standard non-self-sealing orifice reducer and thus could not have disclosed it. In the email D'Amico explains to Stephen that when using a non-sealing reducer ████████████████ ████████████████████ Dkt.374-13, Ex. 21. There is simply no reasonable explanation for why Sal would explain to Stephen how to use a non-sealing orifice reducer on November 4 if, as Metricolor contends, Stephen had demonstrated such a system to L'Oréal on October 9. Further, Metricolor ignores that it could not have had a *first*-generation system incorporating the use of a non-sealing orifice reducer because it was not proposed until months *after* Metricolor created the patented *second*-generation system.

L'Oréal also explained that Metricolor withheld the talking point scripts that Metricolor prepared in advance of the October 9 and December 2014 meetings during which Metricolor has contended that it demonstrated and expressly recommended using the first-generation Metricolor system. Mot. 8-10. L'Oréal explained how these scripts are the only contemporaneous notes of what Metricolor intended to present (and in fact presented) during those meetings and neither one contains any mention of the first-generation system. Metricolor attempts to brush off the scripts as "cumulative of other documents and arguments" that don't show Metricolor disclosing alleged secrets. Opp. 24. But the scripts are far more probative and pivotal:

A talking point script prepared in advance of a critical meeting that does not mention important information that was allegedly disclosed provides distinct evidence that the information in fact was not shared.

Indeed, even Metricolor appears to tacitly grasp the significance of the withheld scripts and product development history. Despite previously asserting unequivocally that it demonstrated and recommended the *first*-generation system to L'Oréal, Dkt.212 at 4-6 (summary judgment briefing); Mot. 2-3, Metricolor now reverses course. It contends "the first-generation Metricolor system"—the sole basis for its current claims purportedly worth $30 million—"was ***merely an aside*** that they mentioned to L'Oréal in passing." Opp. 24 (emphasis added).[6] Metricolor is thus exceptionally unlikely to be able to prove the essential element of a trade secret disclosed to L'Oréal at trial.

## III. IF THE CASE GOES FORWARD, THE COURT SHOULD PERMIT ADDITIONAL DISCOVERY

L'Oréal explained in its motion that some of the documents Metricolor withheld concealed the identities of percipient witnesses and requested an opportunity to seek discovery from those concealed witnesses if the case continues. Mot. 10-11. In response, Metricolor does not dispute that it concealed these witnesses for years. Opp. 24-25. Metricolor argues that L'Oréal should not be permitted discovery into these witnesses now because it should have raised the specific witnesses earlier when it moved to continue the trial date. Opp. 24. This argument has no merit.

L'Oréal's request is *conditional* on the case going forward. To save party and judicial resources, L'Oréal has reasonably refrained from pursuing costly discovery

---

[6] Metricolor also focuses heavily on L'Oréal's evidence of independent development. Opp. 5-6. Independent development is a defense. It becomes relevant only after Metricolor proves it possessed and disclosed a trade secret to L'Oréal. Moreover, even if L'Oréal got the general idea to use a syringe to dispense hair products from negotiations with Metricolor, and L'Oréal contends it did not, that would still provide no basis for a trade secret claim because using a syringe with a pouch to dispense hair product was not a trade secret.

into witnesses Metricolor concealed *for years* before resolution of this dispositive motion. There is nothing improper about that. Further, L'Oréal's prior motion made clear that L'Oréal was still formulating the list of witnesses it would seek discovery from. In that motion L'Oréal sought the release of the remaining Cohen Image files and noted that L'Oréal still needed to "review th[o]se new documents and may need to take further discovery based on what is uncovered from those files." Dkt.339 at 15. L'Oréal has not seen other files, some of which have been submitted to the Court for *in camera* review.  Dkt.360, 387. After the Court decides whether Metricolor must produce those files and L'Oréal has finished that review, it will seek reasonable discovery tailored to withheld witnesses discovered in those files.

## IV.    CONCLUSION

L'Oréal respectfully requests that the Court grant Defendants' motion for terminating sanctions, dismiss Metricolor's case with prejudice, and sanction Metricolor and Mr. D'Amico in the amount of the costs and attorneys fees L'Oréal incurred as a result of the misconduct. If the Court allows the case to continue, L'Oréal requests that the Court reopen discovery and permit discovery from Steven Trzaska, Chuck McGonigle, Shannon Schildkraut, Tammy Browning-Smith, and Olaplex.

Dated:     February 26, 2024         ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Angela Colt*
     Angela Colt

Richard F. Martinelli (*pro hac vice*)
rmartinelli@orrick.com
Angela Colt (CA SBN 286275)
acolt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51     West     52nd     Street
New York, NY 10019-6142
Telephone:  +1 212 506 5000
Facsimile:  +1 212 506 5151

William M. Oxley (CA SBN 136793)
woxley@orrick.com
Meghan Rohling Kelly (CA SBN 292236)
meghan.kelly@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071-1596
Telephone:  +1 213 629 2020
Facsimile:  +1 213 612 2499

*Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., And Redken 5th Avenue NYC, LLC*

The undersigned, counsel of record for Defendants, certifies that this brief contains 5,950 words, which complies with the word limit of L.R. 11-6.1.

Dated:     February 26, 2024         ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Angela Colt*
     Angela Colt

*Attorneys for Defendants*
*L'Oréal USA, Inc.,*
*L'Oréal USA Products, Inc.,*
*L'Oréal USA S/D, Inc., and*
*Redken 5th Avenue NYC, LLC*