UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**   **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Not Present

Attorneys Present for Defendants:
Not Present

**Proceedings:**          (IN CHAMBERS) - MOTION FOR SANCTIONS (Dkt. 379, filed on January 11, 2024)

## I.   INTRODUCTION

Presently before the Court is defendants' motion for sanctions. Dkt 379. The history of this case is well-known to the parties and set forth in the Court's November 16, 2022 Order and August 29, 2023 Order. See Dkt. 228, 330.

On January 16, 2018, plaintiff Metricolor LLC ("Metricolor") filed a complaint against L'Oréal S.A. as well as L'Oréal USA, Inc., L'Oréal USA Products, Inc., L'Oréal USA S/D, Inc., and Redken 5th Avenue NYC, LLC (collectively, "defendants" or "L'Oréal") alleging, among other claims, patent infringement and trade secret misappropriation. See Dkt. 1.

Defendants moved to dismiss the complaint for failure to state a claim and for lack of personal jurisdiction. Dkts. 20, 26. On August 15, 2018, Judge Manuel Real granted both motions. Dkt. 35. In doing so, he found that the accused products did not contain the claimed "air-tight reclosing seal" that appeared in plaintiff's patent. Id. at 7. He also found that "[p]laintiff does not allege a trade secret, and the information [disclosed] in [Metricolor's] [p]atent cannot be protected as a trade secret." Id. at 9. On appeal, the United States Court of Appeals for the Federal Circuit affirmed the dismissal of L'Oréal S.A. for lack of personal jurisdiction but remanded the case to address Metricolor's request for leave to amend the complaint. Dkt. 49.

On January 6, 2020, upon reassignment and remand from the Federal Circuit, this Court granted Metricolor leave to amend its complaint. Dkt. 56.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**    **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

On March 6, 2020, Metricolor filed its first amended complaint against L'Oréal. Dkt. 57 ("FAC"). The FAC asserts the following claims: (1) breach of contract; (2) misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"); (3) breach of the implied covenant of good faith and fair dealing; (4) violation of the California Unfair Competition Law ("UCL"); (5) breach of confidence; and (6) misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act ("CUTSA"). See generally id.

On July 7, 2020, the Court granted in part defendants' motion to dismiss the FAC, dismissing plaintiff's fifth claim for breach of confidence without prejudice but otherwise denying the motion in all other respects. Dkt. 81.

On July 21, 2020, defendants answered the FAC. Dkt. 73. Additionally, defendants filed a counterclaim and third-party complaint against plaintiff and Salvatore D'Amico and Stephen D'Amico (together, the "D'Amicos"). Defendants asserted counterclaims for breach of contract and declaratory relief. Id.

On September 22, 2020, plaintiff Metricolor and the D'Amicos filed a motion to dismiss L'Oréal's first counterclaim and third-party claim for relief. Dkt. 92. On October 6, 2020, the Court dismissed L'Oréal's first counterclaim for relief upon stipulation of the parties. Dkt. 98.

The parties took discovery between 2020 and 2021, with the fact discovery cut-off set for October 15, 2021. Dkt. 106. In response to L'Oréal's document requests, Metricolor produced a single 5,387-page PDF bearing Bates stamps MC000001 through MC005387 on January 29, 2021. The parties took depositions of witnesses, including in relevant part the August 18, 2021, deposition of Marta Wolska-Brys, the August 27, 2021, deposition of Scott Schienvar, the September 22, 2021, deposition of Salvatore D'Amico, and the October 11, 2021 deposition of Stephen D'Amico. See Dkt. 170.

During the course of conducting depositions, defendants came to believe that certain of Metricolor's documents were inauthentic. The subsequent forensic reviews, and accompanying motions for sanctions, are discussed in further detail below.

On January 11, 2024, defendants filed the instant motion for sanctions. Dkt. 379 ("Mot."). On February 21, 2024, plaintiff filed its opposition. Dkt. 398 ("Opp."). On February 28, 2024, defendants filed a reply in support of their motion. Dkt. 407 ("Reply").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**   **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

On March 25, 2024, the Court held a hearing.  Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

At a high level, this case is based on an alleged disclosure of a trade secret which, based on documents discovered through subsequent forensic review, it appears was never actually disclosed.  Throughout the course of litigation, plaintiff additionally altered documents to conceal the fact that no disclosure was made.

Specifically, Metricolor now claims that L'Oréal misappropriated Metricolor's trade secret on the "Metricolor System" i.e., a system for storing, formulating, and dispensing hair coloring agents and additives.  Plaintiff describes "two generations" of the Metricolor System: a first-generation system (allegedly a trade secret) comprised of "a plastic bottle, a *standard (i.e., non-self-sealing)* orifice reducer, and a syringe." and a second-generation system (subject to Metricolor's patent) that includes "a flexible pouch, a *self-sealing* orifice reducer that prevents oxidation of the pouch contents, and a syringe."  Dkt. 203-1 at 2 (emphasis added).  Only the first-generation system remains at issue in this case.

### A.   Factual History

Plaintiff Metricolor was founded by hairstylist Stephen D'Amico and his father, Salvatore ("Sal") D'Amico.  Dkt. 71.

On January 14, 2013, and October 7, 2013, Stephen D'Amico filed a provisional patent application relating to the Metricolor System.  On January 14, 2014, he filed a patent application, which issued on April 5, 2016 as U.S. Patent No. 9,301,587 (the '587 Patent").  See Dkt. 170, Ex. 41.  The '587 Patent discloses the use of syringes, self-sealing orifice reducers and semi-rigid poly plastic containers.  Additionally, D'Amico's patent application included a prior art reference to U.S. Patent No. 7,407,055 (the "Rodriguez Patent") issued on August 5, 2008, which discloses a hair coloring kit that includes bottles, a 10 ml plastic catheter syringe and a standard, non-self-sealing orifice reducer.  See id.; Dkt. 170, Ex. 42.

On July 10, 2014, the D'Amicos met and spoke over the phone with Pat Parenty, President of the Professional Products Division at L'Oréal USA, to discuss the Metricolor System.  See Dkt. 212-1 ¶¶ 17–18.  In a follow up email on July 10, 2014, Sal D'Amico

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**   **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

sent Parenty a video clip of the Metricolor System, which did not disclose any trade secrets.  See id. ¶ 20.

On August 25, 2014, Sal and Stephen D'Amico each signed mutual non-disclosure agreements with L'Oréal.  See dkt. 1-1, Ex. B.

On October 9, 2014, the D'Amicos met with Parenty, Vice President of Operations for New Product Development Scott Schienvar, and Senior Vice President of Education for the Professional Products Division Christine Schuster in-person at L'Oréal's office in New York.  Dkt. 212-1 ¶¶ 21–23.  During the meeting, the D'Amicos presented a PowerPoint in which slide 14, entitled "Alternate Packaging Option," depicted "plastic bottles of a type used in the first-generation Metricolor System rather than pouches from the second-generation Metricolor System."[1]  Id. ¶ 25 (citing Martorell Decl. Ex. M).

In October 2014, Pat Parenty sent L'Oréal product line samples for the D'Amicos to conduct testing with the Metricolor System.  During this process, the D'Amicos emailed Pat Parenty, Scott Schienvar, and other L'Oréal employees updates on discussions they had been having with the manufacturer of the self-sealing cap, as well as news that "[w]e have already found and ordered a syringe with a shorter tip which should work very well."[2]  Dkt. 212-1 ¶ 35.

Between February and November 2016, the D'Amico's continued to have meetings with senior executives at L'Oréal.

On March 28, 2016, Marta Wolska-Brys at L'Oréal emailed Sal D'Amico to request exclusivity rights to evaluate the Metricolor System and asked for Metricolor to send L'Oréal samples.  Id. ¶ 55.

On March 29, 2016, 2016, Sal D'Amico responded "your request to have our packages filled with your formulas will not be possible at the present time."  Id. ¶ 102.

---

[1] Defendants do not dispute the substance of the PowerPoint slide, but rather argue that the slide does not disclose a trade secret because it discloses an aspect from the '587 Patent.  See dkt. 215 at 10.

[2] Defendants dispute that the syringe described is specifically a Comar 10ml syringe asserted as part of plaintiff's trade secrets.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**   **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

In June 2016, L'Oréal ended discussions about the Metricolor System. Id. ¶ 56.

In September 2016, L'Oréal, through its Professional Products Division, launched the accused Matrix Bond Ultim8 and Redken pH-Bonder products. Id. ¶ 57, 65. These hair color products contained a plastic bottle with a standard orifice reducer and Comar 10mL catheter syringe. Dkt. 212-1 ¶ 58.

## B.    Procedural History

### 1.    Creation of Cohen Image & Setec Image

In 2021, during the course of depositions taken by the parties, defendants came to believe that certain Metricolor documents were inauthentic. On September 24, 2021, defendants informed plaintiff of their belief that several documents seemed likely fabricated or altered after litigation began. See Dkt. 114-3. In particular, defendants flagged document MC000613 and noted that "[y]our client [Sal D'Amico] appears to have fabricated evidence." Id. at 2. Metricolor requested "immediate production of the metadata of all documents produced by Metricolor" or, in the alternative, a "forensic[] analy[sis] [of] [Sal] D'Amico's computer and iPad to determine what, if any, metadata has been retained from the contemporaneous period for documents which purport to be from 2014-2016." Id. at 3.

On or about October 8, 2021, plaintiff's expert, Kevin Cohen, created a forensic image of Sal D'Amico's computer (referred to by the parties as the "Cohen Image") but did not disclose its existence to defendants or the Court. See Dkt. 292 at 14.

On October 22, 2021, defendants filed an *ex parte* application to suspend all case deadlines pending forensic investigation of the suspected altered documents. Dkt. 109. On November 1, 2021, the Court denied defendants' *ex parte* application and gave plaintiff 24 hours to decide whether to proceed with either a special master or for the parties to coordinate using defendants' selected forensic expert, Paul French. See Dkt. 128. Plaintiff chose not to seek appointment of a special master. Dkt. 126.

On November 11, 2021, and December 10, 2021, defendants filed additional *ex parte* applications to require the forensic investigation take place immediately after the breakdown in communications between the parties. Dkts. 129, 137. On November 22, 2021, and December 20, 2021, the Court repeatedly ordered the parties to meet and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'    JS-6

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

confer regarding the forensic investigation and to establish a joint protocol for review. Dkts. 135, 143.

On November 22, 2021, and December 20, 2021, the Court directed L'Oréal to take a forensic image by Setec Investigations of Sal D'Amico's computer for the purpose of conducting a forensic review (referred to by the parties as the "Setec Image"). Dkts. 135, 143. The Setec Image was created on December 2, 2021. Neither the Court nor defendants were aware of the existence of the Cohen Image at the time the Setec Image was created.

On December 22, 2021, the Court adopted a joint proposed forensic inspection protocol to address defendants' concerns regarding the authenticity of certain documents. Dkt. 145 ("Forensic Protocol").

2.      Forensic Review of Setec Image

In 2022, forensic expert Paul French completed the review of the Setec Image and determined that 4 of the 14 documents selected for review contained edits, including deletions and insertions made after litigation in the case began. Dkt. 169-1. On this basis, defendants filed a motion for terminating sanctions alongside a motion for summary judgment. Dkt. 169. The Court denied both motions on November 16, 2022. Dkt. 228.

3.      Discovery of Cohen Image

In March 2023, defendants learned about the Cohen Image for the first time during an expert deposition of Cohen and subsequently requested a copy of it. Dkt. 275 at 1.

On March 20, 2023, defendants filed a motion for reconsideration of the Court's order denying terminating sanctions, which remains pending. Dkt. 267.

On March 27, 2023, the Court directed Metricolor to provide French with a copy of the Cohen Image. Dkt. 271. On April 10, 2023, French received a copy of the Cohen Image and made an "initial assessment" that "more than fifty thousand files (over ten thousand emails, hundreds of word documents, hundreds of PDFs, and dozens of PowerPoint presentations)" present on the Cohen Image are not present on the Setec Image. Dkt. 287-8 ¶ 9. He additionally found that "thousands of documents on the Cohen Image were rendered potentially unrecoverable through continued use of [] Salvatore D'Amico's MacBook computer after the Cohen Image was made." Id. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'    JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

parties subsequently filed supplemental motions regarding defendants' motion for reconsideration of sanctions. Dkts. 278, 284, 292.

On May 15, 2023, the Court held a hearing regarding defendants' motion for reconsideration. The Court directed the parties to conduct a review of the Cohen Image in accordance with the same protocol established for the prior forensic review. Dkt. 302. Additionally, the Court indicated that it would reserve judgment as to defendants' motion for reconsideration of sanctions pending completion of the forensic review of the Cohen Image. Id.

       4.    Forensic Review of Cohen Image

On June 12, 2023, French used search terms to narrow the scope of documents from the Cohen Image to be reviewed and delivered a production log of 5,653 files to Metricolor (the "French Production Log"). According to the forensic protocol, Metricolor was supposed to respond by June 20, 2023, with any privilege or privacy objections. Metricolor conferred with L'Oréal to seek additional time to respond. The parties established a schedule by which Metricolor would complete its part of the forensic protocol and review the production log and files in four tranches over the course of eight weeks.

On July 7, 2023, Metricolor completed the first tranche of review, withholding 1,412 out of 1,413 documents on various grounds. On July 19, 2023, plaintiff filed an *ex parte* application to suspend the forensic review of the Cohen Image pending a hearing on whether the scope and protocol of the review should be modified. Dkt. 314. Plaintiff contended that "[m]ost of the files reviewed thus far are copies of documents that were *produced by Metricolor during discovery*, [] are clearly privileged . . . or are completely irrelevant." Id. at 1 (emphasis in original). Thereafter, on July 21, 2023, Metricolor completed the second tranche of review and withheld 1,395 out of 1,413 documents on various grounds.

On July 24, 2023, defendants filed a motion to enforce the Court's orders and compel the production of "all documents uncovered during the forensic review of the Cohen Image." Dkt. 316 at i. Plaintiff opposed the motion. Dkt. 318.

On August 2 and 11, 2023, Metricolor completed its third and forth tranches of reviews. After completing its review, Metricolor asserted attorney-client privilege and/or work-product protection as to approximately 996 documents. Dkt. 330 at 15. It

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**   **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

separately objected to and withheld production of approximately on 4,542 documents on various other grounds.

On August 29, 2023, the Court found that Metricolor was only permitted to withhold or redact documents on the bases of privilege, private medical data, and proprietary information unrelated to the allegations in the case; accordingly, it overruled the remainder of Metricolor's objections. Dkt. 330. at 16. The Court ordered Metricolor to produce 2,500 of the 4,542 documents that were improperly withheld. It separately ordered the parties to agree upon and submit 400 of the 1,000 allegedly privileged documents for *in camera* review. Id.

On October 23, 2023, defendants filed an *ex parte* application to release the remaining 2,007 non-privileged files from the Cohen Image. Dkt. 339-1. In support, they contended that the initial batch of 2,500 file included "more than 175 significant, relevant documents that Metricolor never produced [and] improperly withheld." Dkt. 340 at 2. Defendants alleged that, "[e]ven after Metricolor's counsel personally reviewed each of the files from the Cohen Image, Metricolor again failed to produce these relevant files despite its obligation to supplement any prior, inadequate responses." Id. Defendants summarize five example documents in their brief. Id. at 3-11.

On October 30, 2023, the parties filed a joint motion regarding Metricolor's privilege claims. Dkt. 348. Plaintiff claimed that certain communications between Metricolor and Steven Trzaska were privileged because Trzaska was allegedly Metricolor's in-house counsel and/or a member of the company. Id. at 27-36.

On November 3, 2023, Metricolor authorized the release of the remaining 2,007 non-privileged files from the Cohen Image to L'Oréal's counsel. Dkt. 354 at 2.

On November 20, the Court denied defendants' request for release of the remaining files from the Cohen Image as moot and ordered Metricolor to lodge a number of documents for *in camera* review to determine whether such documents were privileged. Dkt. 360.

On December 6, 2023, the Court held an evidentiary hearing to determine the nature of the relationship between Metricolor and Trzaska. Dkt. 366.

On January 8, 2024, defendants filed the instant motion for sanctions under seal. Dkt. 379.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'    JS-6

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | March 29, 2024 |
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

## III.    LEGAL STANDARD

The Ninth Circuit has established a five-part test to determine the appropriateness of a case-dispositive sanction: "(1) The public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007).

The most critical factor to be considered in case-dispositive sanctions is whether "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." Id. at 1097. "Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate." Id.

Additionally, "only 'willfulness, bad faith, and fault' justify terminating sanctions." Id. at 1096 (citing Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003)). "Incompetence, however, is not bad faith." United States v. HVI Cat Canyon, Inc., No. CV 11-5097 FMO (RZX), 2015 WL 12766161, at *2 (C.D. Cal. Nov. 20, 2015). Such incompetence can include incredibly "serious blunder[s]." Id. (internal citation omitted).

## IV.    DISCUSSION

Defendants seek terminating sanctions against plaintiff based on the conduct of the D'Amicos and plaintiff's counsel relating to (1) fabrication of evidence produced in discovery; (2) destruction of evidence from Sal D'Amico's laptop; and (3) withholding of evidence discovered during the forensic review of the Cohen Image.

### A.    Fabrication of Evidence

Defendants argue that plaintiff produced multiple fabricated documents to corroborate its "first-generation system" story. Mot. at 3. In particular, they focus on documents MC000613, MC000093–94, MC000043–46, MC000047, and MC000088–92.

#### 1.    MC000613

Defendants allege that Sal D'Amico fabricated MC000613 by "us[ing] scissors, tape, and copier to create the email . . . ten days after Metricolor filed its amended complaint." Mot. at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'    JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

MC000613 appears to record Sal D'Amico's contention that he sent samples of the first-generation Metricolor System to L'Oréal. L'Oréal and its witnesses dispute that it ever received the samples. Nevertheless, it appears that since the inception of litigation, Sal D'Amico has maintained that he provided samples to L'Oréal. MC000613's contents would accordingly bolster plaintiff's factual allegations if used in the plaintiff's case-in-chief.

Specifically, MC000613 arose out of an email exchange between Wolska-Brys and Sal D'Amico. On March 28, 2016, Wolska-Brys emailed D'Amico notifying him that "we will be asking you to supply 10 filled samples . . . Could you please let me know how long it will take on your end to prepare samples from the date you will receive our formulation?" Dkt. 189-3 Exh. 10 at 22-23. In response, on March 29, 2016, Sal D'Amico wrote that "your request to have our packages filled with your formulas will not be possible at the present time" because of Metricolor's discussions with other companies regarding Metricolor's "patented technology." Id. at 22.

MC000613 is a modified version of this email exchange. While MC000613 is dated March 29, 2016, it was actually created on March 16, 2020, weeks after the first amended complaint in the litigation was filed. Dkt. 189-5 ("Paul French Decl.") at 3–4. In MC000613, Sal deleted his March 29, 2016 email (declining to send L'Oréal samples of the Metricolor System) and replaced it with the following new text:

Hi Marta,

Unfortunately, our current prototype consists of only 10 containers, two types of orifice reducers (standard with hole and self-closing) and two catheter syringes we use (small 10 ml from our new supplier, COMAR and a large Toomey catheter syringe), depending on the several weeks for our manufacturer to produce.

In the meantime, I can send to you only one of the 10 prototypes and two types of sample orifice reducers and syringes to your address below. You can fill a plastic container or the pouch with your least viscous product of developer by using the syringes to dispense the product into the container/pouch. Please don't [sic] hesitate to contact me if you have any questions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'   JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | March 29, 2024 |
|---|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

Dkt. 171, Ex. 4.

On January 29, 2021, Metricolor produced MC000613 as part of its document production. Dkt. 170 ¶ 6. As part of that same production, Metricolor also produced PDF versions of the March–April 2016 email exchange containing the authentic messages. Dkt. 198-7, Exs. W, X. On July 15, 2021, Metricolor produced the authentic, native version of the email. Dkt. 157-1.

On August 18, 2021, Wolska-Brys testified at her deposition that she "did not recall" seeing MC000613 and did not receive samples. Dkt. 189-3, Ex. 31.

On September 22, 2021, Sal D'Amico testified that he drafted MC000613 in 2016 and may have sent it to Wolska-Brys at that time but "[doesn't] know." Dkt. 189-3, Ex. 35.

On September 24, 2021, defendants informed plaintiff that several documents, including MC000613, appear to be inauthentic and likely fabricated or altered after litigation began. See Dkt. 114-3.

On October 15, 2021, Sal D'Amico accessed a copy of MC000613 and took a photo of handwritten notes on the document stating "Cut + pasted + printed only. Did not send." Dkt. 198-2, Ex. H.

On October 26, 2021, Metricolor represented to the Court that Sal did "not recall anything about" MC000613 even though eleven days earlier on October 15, 2021, Sal had admitted he had never sent the email. Mot. at 17 (citing dkt. 114 at 7).

On February 25, 2022, at the Court's status conference regarding forensic review, Metricolor claimed MC000613 as work product. Dkt. 149.

Plaintiff characterizes the disclosure of MC000613 as the result of a series of misunderstandings. Plaintiff alleges that Sal D'Amico remembered following up with Wolska-Brys after the March 28–29, 2016 email exchange. After initially stating that he could not send samples at that time, D'Amico claims that he spoke with Wolska-Brys by phone and agreed to send other samples to L'Oréal. Dkt. 198 at 15. He thought he had sent another follow up email describing the samples he agreed to send her, and "[u]nable to find that email, he recreated it by typing the body of the email he thought he had sent and attaching the header of the actual March 29, 2016 email." According to plaintiff:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'   JS-6

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

He taped the header and text to a piece of paper and photocopied the page to create a composite hard copy. In order to have a record of what he believed he had communicated to Ms. Wolska-Brys, he put the document into a folder he was using to collect information related to L'Oréal. He intended the document only for internal use, not for production to L'Oréal or use as evidence.[3]

Id. Eight months later, in November 2020, D'Amico delivered to plaintiff's counsel "two thick folders of L'Oréal-related documents." Id. at 16. D'Amico states that he had not thought about the original email or his recreation of the email for the eight months between March 2020 and November 2020, and "Metricolor's counsel, not realizing the document was reconstructed, produced it as MC000613." Id.

As to subsequent usage of MC000613, plaintiff states that it made no use of the document during the litigation, including the August 2021 deposition of Wolska-Brys, where it was defendants' counsel who asked her whether she identified or received the document. Id. at 17. Additionally, as to Sal D'Amico's September 2021 deposition testimony about MC000613, "Sal did erroneously testify that he had typed the text of MC000613 in 2016, but he believed that to be true when he gave that testimony" because he was "understandably confused" about the document. Id. at 18. According to plaintiff, it was only by October 15, 2022, that Sal D'Amico had realized that MC00613 "was not

---

[3] At a December 30, 2022, deposition, D'Amico testified that he had adopted a practice of attaching "Post-It" notes to documents to convey "important" context to counsel. Mot. at 5 (citing Dkt. 375 Ex. 8 at 69:14-70:6). When asked why he did not follow this practice with regard to MC000613, D'Amico contended that he and counsel had "collectively decided that it would be helpful for me to add information to these documents after the litigation started." Id. (citing Dkt. 375 Ex. 8 at 109:22-110:24). He also testified that, prior to the document production, Sal had reviewed all of the documents with plaintiff's counsel including his "strategic notes." Id. (citing Dkt. 375 Ex. 8 at 70:13-73:13). However, in a previous declaration, plaintiff's counsel declared that they "w[ere] not aware that the document production included documents that Sal D'Amico had updated during the litigation." Dkt. 198-5 ¶ 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

an email he had sent but rather a document he had created ('cut + pasted + printed') during the litigation." Id. (citing Dkt. 198-2 ¶ 17, Ex. H).

  2. MC000093–94

  Defendants allege that Sal D'Amico created MC000093–94 by taking a "real summary he sent to L'Oréal on November 30, 2014[,] that included no mention of standard orifice reducers[,] and adding [] fake information" six years later. Mot. at 5.

  MC000093–94 appears to record Sal D'Amico's contention that he and his son tested L'Oreal's product samples with both generations of the Metricolor System, including the trade secrets relating to the first generation. L'Oréal disputes that (1) the D'Amicos used the first generation for the 2014 field testing and (2) that the D'Amicos orally disclosed results of such first-generation field testing in the parties' December 2014 phone call. The added content contained in MC000093–94 would accordingly bolster plaintiff's factual allegations that it disclosed its trade secrets to defendants if used in its case-in-chief.

  Specifically, MC000093–94 arose out of a November–December 2014 email chain between the D'Amicos, Pat Parenty, Rand Brenner, and several other individuals. Dkt. 171-1, Ex. 9. In the email chain, Sal D'Amico emailed Pat Parenty the results of the 2014 product field testing described above. In his email, D'Amico attached a document entitled "RESULTS OF PRODUCT FIELD TESTING AND METRICOLOR PACKAGING COSTS." In relevant part, the product field testing page contains an asterisk note that for the high viscosity test, "*Due to the high viscosity of this product, a new self-closing valve with a larger port was incorporated into fitment of the pouch in order to accommodate a catheter tip syringe with a wider tip." Moreover, the packaging costs page lists the cost of "Self-sealing, non-leak orifice reducer." Id.

  MC000093–94 is a modified version of the Results of Product Field Testing document attachment. The document was created on November 4, 2020. Paul French Decl., at 5. It lists a date of October 23, 2014, whereas the original document was undated.[4] Dkt. 171, Ex. 3. Additionally, it adds information purporting to indicate that low viscosity liquid "developer/peroxide" "dispensed easiest and accurately" with an

---

[4] By way of explanation, Sal testified that he "put a date in it because the date was missing and it was important for my attorneys to know what this was from." Opp. at 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**   **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | March 29, 2024 |
|---|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

added asterisk footnoted "2. Developer contained in plastic container with push-in standard orifice reducer. Most efficient and less costly." Id. Finally, on the packaging costs, it adds a parenthetical to the "Self-sealing, non-leak orifice reducer" cost above "(standard orifice reducer for Developer less costly … .03 cents a unit)." Id.

On January 29, 2021, Metricolor produced MC000093–94 as part of its document production to defendants. Dkt. 170 ¶ 6. On March 17, 2021, defendants asked plaintiff to produce the email attachments for the underlying email thread. See Dkt. 114-2.

On August 27, 2021, at the deposition of Scott Schienvar, plaintiff's counsel introduced MC000093–94 as Exhibit 99 as an email attachment sent in 2014. Dkt. 213-3, Ex. F. Schienvar testified that he had "never seen this" document. Id. After a recess, plaintiff's counsel indicated that "some of the production has been jumbled" and that Exhibit 99 (i.e., MC000093–94) did not appear to be the actual email attachment. Id.

On September 22, 2021, Sal D'Amico testified that he "[doesn't] think" he typed MC000093–94 after litigation started, and "I'm pretty sure we distributed that to L'Oréal at one of their meetings." He testified that MC000093–94 "was probably an attachment or it was a handout at a meeting that we had after the first meeting [with L'Oréal]." Dkt. 189-3, Ex. 35.

On October 11, 2021, Stephen D'Amico testified that Sal drafted MC000093–94 "a week after" Stephen "wrote it in short form" and that he is not "aware" of any "record of [his] having discussed that push-in standard orifice reducer with L'Oréal" "besides what we have here." Dkt. 189-3, Ex. 37.

On October 13, 2021, L'Oréal deposed non-party Rand Brenner, who produced the underlying native, authentic (i.e., unedited) document. Dkt. 120-1. Metricolor's counsel asserted attorney work product over MC000093–94. Id.

By way of explanation, plaintiff contends that the changes to the native authentic document resulting in MC000093–94's creation occurred because "Metricolor's counsel had encouraged Sal to put some" of the information about the document and the December 2014 phone call relating to the documents "into typewritten form." Dkt. 198 at 19. To do so as part of preparation for the November 2020 Rule 30(b)(6) deposition, Sal D'Amico updated the underlying document, creating MC000093–94. Id. As with MC000613, D'Amico printed the copy and placed it in his L'Oréal folders and gave it to plaintiff's counsel without filtering the documents. Metricolor's counsel in turn, "not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

realizing that MC000093–94 included updates added by Sal during the litigation, included it in the production." Id.

As to subsequent usage of MC000093–94 in the litigation, plaintiff claims that its counsel introduced the document as an exhibit to the August 27, 2021 deposition of Scott Schienvar in a "mistaken but good faith belief that it was an attachment" to the original 2014 email. Id. at 20–21. At the deposition, plaintiff's counsel acknowledged the error and did not use the document further, but did not necessarily at the time "know or suspect that it had updates added during this case." Id. at 21. Additionally, as to the 2021 depositions of Sal and Stephen D'Amico, plaintiff explains that although the two provided "erroneous" testimony, "it was not knowingly so" because Sal D'Amico had not realized that MC000093–94, and Stephen D'Amico "did not know at the time of his deposition[,] that MC000093-94 included updates added by Sal during the litigation." Id.

Plaintiff proposes barring the use of this document at trial. Opp. at 9.

      3.    MC000043–46

Defendants allege that, on December 9 and 10, 2020, Sal D'Amico modified and backdated MC000043-46 from April 11, 2016 and January 2017 to "11/23/2015." Mot. at 4.

MC000043–46 appears to record Sal D'Amico's contention that he and his brother presented the results of their salon survey study to L'Oréal at the parties' November 2015 meeting. L'Oréal disputes the D'Amicos presented such results at that meeting. Accordingly, the fabricated additions in MC000043–46 would bolster plaintiff's factual allegations if used in its case-in-chief.

Specifically, MC000043–46 is a document entitled "Professional Hair Color Packaging and Dispensing Research and Development Study." The forensic review conducted by Paul French found that MC000043–46 was created in April 2016 through January 2017, "months after Metricolor's meetings with L'Oreal ended." Paul French Decl. at 7. Additionally, the forensic review determined that the line providing the date "11/23/2015*" was added to the document, on December 10, 2020, along with the heading "*Presented R & D results to L'Oreal/ Matrix DMI Team in NYC." Id.

On January 29, 2021, Metricolor produced MC000043–46. Dkt. 170 ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**    **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

On October 11, 2021, Stephen D'Amico testified at a deposition that he orally presented the salon owner survey results contained in MC000043–46 to L'Oréal at the November 23, 2015, meeting. Dkt. 212-1 ¶ 201.

On April 22, 2022, plaintiff asserted work product in MC000043–46. Dkt. 154.

By way of explanation, plaintiff contends that it does not intend to use MC000043–46 as evidence, and that Stephen D'Amico's underlying testimony that the results of the study in the document were presented orally to L'Oréal is true and "confirmed by the audio recording of the meeting held on that date." Dkt. 198 at 23–24. It claims that the "document's creation was for internal reference, as was its subsequent update during litigation." Opp. at 9.

While plaintiff asserts that "the only text added to this document was the date and its title," Opp. at 9, defendants argue that the veracity of the document is further called into question by BRG-3762 (discussed in more detail below). In BRG-3762, Sal purportedly admits that he "wrote the results of a made up interview with salon owners" in reference to MC000043-46, and notes that "it w[ould] add a lot of credibility if real people give answers to my questions." Dkt. 379-3. BRG-1412 was only discovered after a forensic review of the Cohen Image and was not produced by Metricolor even after Metricolor concluded its review; the document was subsequently discovered by L'Oréal.

    4.   <u>MC000047</u>

Defendants allege that Sal D'Amico completely fabricated MC000047 on December 14, 2020, to "make it appear that Metricolor at some point presented the missing cost-savings information about the first-generation system." Mot. at 9.

Unlike the other three above documents, MC000047 is not an alteration of an underlying native document created before litigation. Instead, MC000047, entitled "Comparison of Tube Packaging VS. METRICOLOR 'First Generation Prototype*'", is what plaintiff calls a "half-page of notes" created by Sal D'Amico during the litigation when Metricolor was working on responses to defendants' interrogatories. Dkt. 198 at 22. The document references "First generation prototype components including a poly-plastic container and standard orifice reducer and syringe." Dkt. 171, Ex. 1. It is allegedly the "only document in all of Metricolor's production" that enumerates the trade

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**    **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

secret element of "First generation prototype components including a poly-plastic container and standard orifice reducer and syringe." Dkt. 215 at 21.

On January 29, 2021, Metricolor produced MC000047, which was created in December 2020, as part of its document production to defendants. Dkt. 170 ¶ 6.

On September 22, 2021, Sal D'Amico testified that he doubted that the phrase "first-generation prototype" came up after the litigation started. Dkt. 189-3, Ex. 37.

On April 22, 2022, plaintiff asserted work product protection over MC000047. Dkt. 154.

By way of explanation, plaintiff characterizes MC000047 as notes that Sal D'Amico created during litigation for internal use and were not intended to be produced to L'Oréal or used by plaintiff as evidence in the case. Dkt. 198 at 23. To the extent Sal D'Amico was asked at his September 2021 deposition whether he created the document after the litigation started, his equivocal answer "I doubt it," is, according to plaintiff an erroneous but "honest answer at the time because Sal was confused" and had not realized that MC000047 had been produced in discovery. Id.

Plaintiff proposes barring the use of this document at trial. Opp. at 9.

5.    MC000088–92

Defendants allege that Metricolor misrepresented MC000088–92 as notes created contemporaneously in 2014, when in reality at least the first page was written by Sal D'Amico years later. Mot. at 11.

MC000088–92 is a series of handwritten product-testing notes that purportedly confirm that Metricolor tested L'Oréal's products with its first-generation system in 2014. Dkt. 375 Ex. 26. One portion of MC000088 states "use poly-plastic container for packaging of developer—use standard push-in orifice reducer." Id. Plaintiff relied on these notes in its opposition to defendants' initial motion for sanctions and motion for summary judgment. See dkt. 212 at 5-6.

However, when Sal D'Amico was questioned about the notes under oath, he admitted that at least the first page was written years later to "show [his] attorneys the process [they] went through." Mot. at 11 (quoting dkt. 375 ex. 8 at 224:11-226:6). D'Amico said he knew he added that information later because the page contained "buzz-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'    JS-6

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

words" like "orifice reducer" that he added to documents during litigation. Id.
Defendants note that the remainder of the testing notes "contain the same 'standard push-
in orifice reducer' phrase that indicated to D'Amico the first page was not
contemporaneous." Mot. at 11-12.

In opposition, plaintiff "invites the Court to review the handwritten notes *in
camera*" and asserts that "where the authenticity of a handwritten document is at issue,
the copies are admissible despite any argument of fabrication, as the argument for
fabrication is a question for the jury to decide." Opp. at 15.

### B.     Destruction of Evidence

In 2021, Metricolor represented that Sal D'Amico's computer was "dead." Mot. at
13 (citing Dkt. 375-10). However, French's review of the Cohen Image revealed that, in
reality, someone had "deliberately altered the computer" during that time period. Dkt.
365-1 ¶ 27.

Specifically, French's review found that "at least 50,000 files on the Cohen Image
had been deleted from D'Amico's computer before [the] creation of the Setec Image."
Mot. at 6 (citing Dkt. 330 at 3). Using search terms, French identified a subset of 5,653
files that were potentially relevant to this action. Id. "[Forty-five percent] of the 5,653
documents . . . were found in unallocated clusters on the Cohen Image, which means they
were deleted." Mot. at 12 (citing Dkt. 330 ¶ 12). French reported that these documents
"were most likely deleted during this litigation." Dkt. 330 at 2 (capitalization omitted).
He also noted that there were significant documents "whose only copies were found in
deleted space." Id. at 4 (capitalization omitted).

French also noted that "it is not possible to determine how many files were
permanently deleted (i.e., overwritten with new data) before the Cohen Image was
taken." Dkt. 375-1 ¶ 15. He notes that, "since 45% of the relevant files [he] found on the
Cohen Image were in unallocated clusters, it is [his] opinion, to a reasonable degree of
certainty, that more likely than not other files were deleted but overwritten before the
Cohen Image was taken, and that those permanently deleted files would include
information relevant to the case." Id.

In opposition, plaintiff notes that L'Oréal initially "claimed that 50,000 files were
deleted . . . only to determine that just about ten percent of those 50,000 files actually
needed review." Opp. at 17. Plaintiff does not appear to address French's opinion that a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'   JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

significant number of documents were deleted during this litigation, or that other documents may have been permanently lost.

In reply, defendants argue that Metricolor "does not dispute that [some] responsive documents had every instance of them deleted," and has "provided no declaration or testimony from D'Amico attesting that he did not delete responsive documents or alter his computer after it was subject to a forensic hold." Reply at 2-3.

### C.     Withholding of Evidence

Defendants assert that, even after reviewing all 5,653 potentially relevant documents, Metricolor "never disclosed that it found responsive unproduced documents." Mot. at 6. Instead, Metricolor moved to cancel the review.[5] Dkt. 330. Defendants claim that their own review revealed at least 280 relevant documents, and they provide descriptions of several. Mot. at 6. The Court discusses each of the relevant documents at the core of defendants' motion in turn.

### 1.     BRG-1412

BRG-1412 is an email from Sal to Stephen D'Amico where Sal proposes sending L'Oréal fabricated user-experience testing results. Dkt. 379-1. Accordingly, BRG-1412 is relevant as it speaks to Sal's credibility and the veracity of certain documents in this action.

Specifically, Sal proposes emailing L'Oréal:

2. We have field tested the METRICOLOR System with 12 hairstylists (10 females and 2 males) to obtain their feedback as to the efficiency and user-friendliness of the system. All were extremely positive in their remarks and expressed that they would certainly welcome the new packaging and dispensing technology to greatly improve both their measurement accuracy of color product as well as their efficiency. Additionally, each of the salon owners were enthusiastic in both the results of the System and especially in

---

[5] At the hearing, plaintiff's counsel argued that they never "willfully" withheld documents; rather, in some instances they "didn't find" relevant documents. However, plaintiff did not disclose any of the 5,653 documents *even after completing its review of the Cohen Image*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'   JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

the prospects of providing them with significant savings in their current costs for wasted product and developer.  They all concurred currently, approximately 25% of their hair color and developer is wasted due to stylist's neglect to use remaining product in previously opened tubes, allowing oxidation by leaving caps off…etc.

Id.  However, in the same document, Sal acknowledged that this was all a "total bullshit and a lie" but "there is no way to prove that we did not do [the testing]." Id.

In opposition, plaintiff argues that this document "does not show Sal D'Amico's dishonesty" because it "merely includes loose language amongst the musings of a father-son regarding whether to send a draft email to L'Oréal."  Opp. at 11.  It emphasizes that Metricolor never sent the draft email to L'Oréal.  Id. Thus, BRG-1412 allegedly "cuts *against* any theory that Sal possessed any intent to lie because he never sent the information reflected in this document."  Id. Plaintiff does not address why it was not obligated to disclose BRG-1412 after completing its review of the Cohen Image.

2.   BRG-3762

BRG-3762 is an email from Sal D'Amico to Stephen D'Amico where Sal admits that he "wrote the results of a made up interview with salon owners," allegedly in reference to MC000093-94.  Dkt. 379-3; see Mot. at 7.  Accordingly, BRG-3762 is relevant as it pertains to the substantive veracity of other documents produced in discovery, particularly MC000094-94.

Specifically, BRG-3762 reads:

Steve-If you remember, I wrote the results of a made up interview with salon owners.  I was thinking that the convention wo[u]ld be a good place to do a 3 min interview with random salon owners I meet.  [I]t can be video and used in a your [sic] show but for Metricolor needs, I can publish the study results for good publicity and we can also show clips while presenting to companies as it will add a lot of credibility if real people give answers to my questions.  They are worded so it would be easy for us to get go[o]d info and positive results f[rom] the questions.  Don't mean to rain on your parade for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'   JS-6

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

your plans for hairfolio interviews, but it would be a good compliment to it. What do you think?

Dkt. 379-3. The email also includes a list of proposed questions titled "Salon Owner Survey Interview Questions." Id. Defendants argue that "results" refers to MC000043-46, as D'Amico "edited that document and emailed himself a copy *the day before* he sent his email reminding Stephen of the fake study." Mot. at 7-8 (citing Dkts. 379-4, 379-5). Defendants contend that Metricolor "misrepresented to the Court throughout the original sanctions motion that the *substance* of MC000043-46 was genuine and D'Amico 'merely' backdated the document." Id. at 8 (citing Dkt. 212).

In opposition, plaintiff argues that the "D'Amicos did, in fact, conduct interviews with salon owners and hairstylists in 2015 regarding hair coloring practices with a view towards demonstrating the usefulness and usability of the Metricolor System." Opp. at 12. Thus, it disputes that BRG-3762 constitutes evidence of D'Amico's prior dishonesty or that it made any misrepresentations to the Court in its sanctions opposition brief. Id. Plaintiff does not address why it was not obligated to disclose BRG-3762 after completing its review of the Cohen Image.

3.   BRG-1473

BRG-1473 contains an email from Sal D'Amico to Steven Trzaska and Stephen D'Amico where Sal mentions that he "repeated [to L'Oréal] the mantra that we will review their[] [proposal] along with [two] competitor companies who also submitted [proposals]." Dkt. 379-6. Defendants contend that, in reality, Metricolor never had any competing proposals. Mot. at 8. Accordingly, BRG-1473 is relevant as it pertains to Sal's credibility and the facts surrounding the negotiations between Metricolor and L'Oréal.

Specifically, BRG-1473 is an email chain that Sal forwarded to Stephen. The underlying email is from Sal to Trzaska and Stephen D'Amico, and reads in relevant part:

I got a call from Marta today wanting to introduce me to someone in her office who is the Director of [L'Oréal's] packaging and innovation. They obviously tried to get an idea from me as to how their proposal stands and I repeated several times the mantra that we will review theirs along with 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**   **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | March 29, 2024 |
|---|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

competitor companies who also submitted.  I allude to the fact that the other
2 went well beyond just an evaluation proposal but assured them that we are
looking to select the company that is in our best interest in doing business
with both monetarily as well as one with potential of having the best
collaborate [sic] working relationship between us and them.  I also HAD to
give her the litany of how it has taken 16 months to get to this point with
[L'Oréal], we have spent our own dime making three trips to NYC as well as
the gaps of communication.  She did not sound very pleased that she was
kept in the dark about our product until just recently and apologized for
[L'Oréal's] dropping the ball.

Dkt. 379-6.

In opposition, plaintiff argues that "[t]his email shows Sal may have
exaggerated when he told [L'Oréal] about the state of Metricolor's license
discussions with third parties, but it does not support a claim that Sal has lied under
oath or intentionally created false evidence in this case."  Opp. at 23.  Plaintiff does
not address why it was not obligated to disclose BRG-1473 after completing its
review of the Cohen Image.

       4.   <u>BRG-1280</u>

BRG-1280 is a September 16, 2014 draft of a PowerPoint presentation that
Metricolor ultimately presented to L'Oréal later in October 2014 where plaintiff allegedly
performed a demonstration of their "first-generation" trade secret to L'Oréal.  Dkt. 379-8;
<u>see</u> Mot. at 8.  Unlike a previously disclosed version, this draft presentation includes the
slide notes with Metricolor's talking points.  The slide notes only mention a live
presentation of the second-generation system containing "a hair colorant/developer
container or IV type collapsible bag with an airtight seal and oxygen barrier."  Dkt. 379-8
at 21.  Accordingly, BRG-1280 is relevant as it pertains to the question of whether
plaintiff disclosed its alleged first-generation trade secret to L'Oréal in its initial
presentations to L'Oréal.

Specifically, the notes on the relevant slide in BRG-1280 reads:

For the first time ever, Stephen will now introduce his invention to you . . . .
Description of invention[:] The Invention is comprised of a clear, metrically
calibrated reusable piston syringe; a hair colorant/developer container or IV

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'   JS-6

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

type collapsible bag with an airtight seal and oxygen barrier and rubber ring stopper; and a horizontal storage rack for the containers.

Id. Notably, the use of an "airtight seal" is an element of the second-generation system, whereas the first-generation system would use a "standard (i.e. non-self-sealing) orifice reducer." See Dkt. 203-1 at 2. Defendants note that Sal "accessed this document during discovery on September 7, 2021, the same day Metricolor produced a version of the presentation without the script." Mot. at 8.

In opposition, plaintiff merely notes that BRG-1280 is "a PowerPoint presentation last saved by Sal D'Amico on September 16, 2014" but does not provide a specific explanation for why this document is not relevant or was not produced. Opp. at 23.

        5.    BRG-3510

BRG-3510 is an email chain between Sal D'Amico and a consultant where Sal solicits feedback on Metricolor's presentation and states that "[p]robably the most important slide in our presentation is to show L'Oréal the value of our packaging innovation in terms of cost-savings to them." Dkt. 379-9. The presentation in question appears to be plaintiff's October 9, 2014, presentation to L'Oréal. Dkt. 375-20. Defendants contend that BRG-3510 bolsters their claim that the first-generation system was not disclosed during the October 2014 presentation because the presentation only lists the costs of the second-generation system. Mot. at 9. The second-generation cost is allegedly $0.22 and the first-generation cost is allegedly $0.06. Id. Defendants argue that "D'Amico later fabricated MC000047," discussed above, "to make it appear that Metricolor at some point presented the missing cost-savings information about the first-generation system." Id. Accordingly, BRG-3510 is relevant as it pertains to the question of whether plaintiff disclosed its alleged first-generation trade secret to L'Oréal in its initial presentations to L'Oréal.

In opposition, plaintiff argues that BRG-3510 is "not highly relevant" because it is cumulative of other documents that L'Oréal argues "do[] not mention the first-generation Metricolor system that was the subject of Metricolor's trade secrets." Opp. at 24. Separately, plaintiff contends that it is reasonable that BRG-3510 does not mention the first-generation system because the "D'Amicos have been up front about the fact that they focused on the second-generation system in their discussions with [L'Oréal]" and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**   **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | March 29, 2024 |
|---|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

that "the first-generation Metricolor system was merely an aside that they mentioned to [L'Oréal] in passing." Id.

6.   BRG-2345

BRG-2345 is a script for Metricolor's December 2014 meeting with L'Oréal where Metricolor "supposedly recommended using the purported first-generation system. Dkt. 379-10; Mot. at 9. However, BRG-2345 contains no discussion of the first-generation system. Accordingly, BRG-2345 is relevant as it pertains to the question of whether plaintiff disclosed its alleged first-generation trade secret to L'Oréal in its initial presentations to L'Oréal.

Specifically, the portion of the script titled "review results of testing product" reads:

> All tested very well, but more viscous products (majerel) more difficult to dispense/withdraw through syringe. Now have thicker circumference opening syringe and working with supplier to develop a non-leak valve with larger opening.

Dkt. 379-10. Defendants allege that D'Amico later fabricated MC000093-94, discussed above, to "make it appear Metricolor recommended the first-generation system during th[e] December meeting." Mot. at 9. Sal allegedly accessed BRG-2345 on October 5, 2021. Id.

In opposition, plaintiff argues that BRG-2345 is "cumulative of other documents and arguments." Opp. at 24. It also contends that L'Oréal has failed to establish that the last accessed date is reliable.[6] Id. Plaintiff does not address why it was not obligated to disclose BRG-2345 after completing its review of the Cohen Image.

---

[6] At the hearing, plaintiff again argued that the last accessed dates are unreliable. However, the reliability of the last accessed dates is not particularly relevant with regard to these documents. Rather, the issue is whether plaintiff failed to disclose responsive documents upon completing its review of the Cohen Image.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'   JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

7.  <u>BRG-4093</u>

BRG-4093 is a November 3, 2014, email chain between Sal and Stephen D'Amico where Sal proposes using a top that "does not have a self sealing part to it" (i.e. a nonsealing orifice reducer); Stephen responded "[n]o that's not good." Dkt. 379-11. Defendants note that this email is from "nearly one month *after* the October 9 meeting in which Metricolor supposedly disclosed a system with a standard orifice reducer." Mot. at 10. Thus, defendants contend that BRG-4093 is "unmistakable evidence that Metricolor had no standard, non-sealing orifice reducer trade secret before it purportedly conveyed one to L'Oréal." <u>Id.</u> at 10.

Specifically, Sal emailed Stephen:

I am also researching this type of flip top cap. It does not have a self sealing part to it, but will allow the large tipped syringe to enter it. This would be good for the thick color and it will not leak out. For the thinner fluid, you would need to tilt the pouch up so it won't leak out when you take the syringe out. Even though there is no self seal, I don't think oxidation will be a problem, no more than taking a cap off the squeeze tube. It will also be a lot less expensive. What do you think?

Dkt. 379-11. Stephen responded, "No that's not good." <u>Id.</u> Thus, BRG-4093 allegedly shows that "Metricolor first considered using a nonsealing orifice reducer only on November 3 —after it claims it disclosed it to L'Oreal—and then *rejected* doing so as a bad idea." Mot. at 10 (emphasis in original).

In opposition, plaintiff argues that "Metricolor has always been consistent in arguing that, while it focused on pitching its second-generation system, it did relate details of its first-generation system to L'Oréal." Opp. at 18. It contends that the issue of whether Metricolor did in fact share its first-generation system should be decided by a jury. <u>Id.</u> Moreover, plaintiff claims that BRG-4093 "does not cast any doubt on Metricolor's claims" because it "demonstrates nothing over than Sal suggesting it was not so important to use a non-self-sealing cap with hair color . . . and Stephen disagreeing." <u>Id.</u> Plaintiff does not address why it was not obligated to disclose BRG-4093 after completing its review of the Cohen Image.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**   **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

8.    <u>BRG-1831/BRG-1806</u>

BRG-1831 is an April 30, 2012, Metricolor business plan describing its invention as an "IV-type flexible bag with airtight seal and rubber ring stopper for hair color and developer." Dkt. 379-12.  Defendants contend that the business plan "contains no mention of an alternative design without an airtight seal such as a 'non-sealing orifice reducer.'" Mot. at 10.  BRG-1806 is a similar business plan from November 20, 2014 that "also mentions no first-generation secret." Mot. at 10.  Accordingly, BRG-1831/BRG-1806 are relevant as they pertain to the question of whether plaintiff did in fact develop a first-generation trade secret system.

In opposition, plaintiff argues that BRG-1831 and BRG-1806 are just "another [set of] cumulative document[s] on the point that most Metricolor documents do not mention the first-generation Metricolor system." Opp. at 24.  It again contends that this is not surprising "given that Metricolor's business focus was on the second-generation Metricolor system." <u>Id.</u>  However, plaintiff does not address why it was not obligated to disclose BRG-1831 or BRG-1806 after completing its review of the Cohen Image.

9.    <u>BRG-1545</u>

BRG-1545 is a PowerPoint presentation listing Anthony D'Amico, Sal's brother and Stephen's uncle, as part of the Metricolor "Product Development Group." Dkt. 379-14.  The notes underneath the relevant slide provide that "Stephen's uncle [is] assisting [Stephen] in the business development and marketing functions, in order to bring the invention to the marketplace." <u>Id.</u>  Sal allegedly accessed BRG-1545 on September 23, 2021, the day after his deposition where he testified about Anthony D'Amico. Mot. at 11.  Accordingly, BRG-1545 is relevant as it pertains to the question of whether Anthony D'Amico has a relationship with Metricolor such that he should fall within the scope of discovery requests.

Defendants argue that plaintiff misrepresented to the Court, while resisting discovery, that Anthony D'Amico "has never worked on Metricolor, has nothing to do with it." <u>Id.</u>

In opposition, plaintiff refers to its earlier argument that "Metricolor's counsel was unaware of BRG-1545 when he made [the aforementioned] statements." Dkt 354 at 9.  Plaintiff also contends that the statements were nevertheless true because, although "[Anthony] D'Amico may have briefly provided advice on marketing issues in 2012, []

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'     JS-6

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

he did not have anything to with Metricolor when the statements were made or at other relevant times." Id.  Plaintiff "does not dispute that BRG-1545 was discoverable," but claims that the document "was not intentionally withheld and L'Oréal does not identify any material information in the document that was not also in documents that Metricolor did produce." Id.

## V.     ANALYSIS

As stated above, in addition to a finding of "willfulness, bad faith, and fault" on the part of the party to be sanctioned, courts in the Ninth Circuit must consider the five following factors: "(1) The public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Connecticut Gen. Life Ins. Co., 482 F.3d at 1096. "While the strength or weakness of the plaintiff's case may be a factor . . . the court should not closely scrutinize the merits of an action." Anderson v AirWest, Inc., 542 F.2d 522, 526 (9th Cir. 1976).

### A.     Willfulness, Bad Faith, and Fault

Defendants argue that "[t]he troubling facts here easily support a finding of willfulness, bad faith, or fault." Mot. at 13-14.  They note that Sal D'Amico "fabricated documents that appear to show that Metricolor possessed and disclosed to L'Oréal a first-generation Metricolor System with a standard orifice reducer." Id. at 15.  They cite at least five sets of documents that Sal fabricated, each of which was discussed at length above.  Moreover, newly discovered evidence after the conclusion of the forensic review of the Cohen Image allegedly shows "D'Amico's 'prior dishonesty' which 'can support an adverse credibility determination.'" Id. (citing Silva-Pereira v. Lynch, 827 F.3d 1176, 1187 (9th Cir. 2016)).[7]  These documents, also discussed at length above, show that Sal has fabricated the results of studies that he knew were "total bullshit and a lie" and presented them as true in the past.  See supra BRG-1412, BRG-3762.  Defendants assert

---

[7] In opposition, plaintiff contends that Silva-Pereira is inapposite "because it does not hold that general evidence of 'prior dishonesty' can support an adverse credibility determination.  Rather it holds that evidence of dishonesty with respect to the *specific issues in question* can support an adverse credibility determination as to *those issues*." Opp. at 12 (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

that these past instances of dishonesty illustrate that "D'Amico craft[ed] highly detailed lies that advance Metricolor's narrative to gain advantage over L'Oréal." Mot. at 15.

Defendants claim that plaintiff's explanations are unavailing. Specifically, "there is no way to view the documents as someone sharing information with [their] lawyer," given that each one is "filled with highly specific details designed to make [each] document appear genuine[,] many of which are things that would be impossible to recall years later." Mot. at 15-16. Moreover, Sal conceded that he "commonly pointed out significant differences between documents using post-it notes . . . and has no explanation for why he did not use that method here." Mot. at 16. Metricolor's attorneys have also allegedly contradicted Sal's explanation that he reviewed the fabricated documents with counsel and told them that he had edited these documents during litigation. Id. Finally, defendants argue that plaintiff's counsel has made repeated misrepresentations to the Court in their filings, including by misrepresenting MC000088-92 as contemporaneous documents and by misrepresenting that Sal "does not remember if [MC000613] was sent or not." Mot. at 16-17.

Defendants also argue that Metricolor's withholding and deletion of evidence "provides an independent basis to find bad faith." Mot. at 17. Metricolor has allegedly "withheld documents showing Sal D'Amico lies, contemporaneous scripts for meetings critical to the case, and a document in which Metricolor conceived of and rejected use of a standard orifice reducer after Metricolor contends it disclosed one to L'Oréal." Id. Defendants contend that Metricolor's failure to produce these responsive documents, and its failure to supplement its production once it had actual knowledge of the documents, is "disobedient conduct" that "demonstrate[s] . . . bad faith." Id. (citing Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993)). They assert that "[w]ith Metricolor fabricating, withholding, and deleting responsive documents whose contents are now indiscoverable, the discovery process has been, and any trial will be, irreparably tainted." Mot. at 18-19.

In opposition, plaintiff argues that "[t]he Court already ruled on and rejected L'Oreal's request for sanctions based on the four allegedly 'fabricated' documents." Opp. at 7. It explains that the production of such documents "was an inadvertent, good faith mistake resulting from miscommunication between counsel and client." Id. Sal has previously testified that "he created the documents because he thought it would be a useful way to provide additional relevant information to his attorneys." Id. at 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'   JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

Additionally, plaintiff notes that "Metricolor and its counsel have never used or sought to benefit from those documents in this litigation, except that counsel asked a few deposition questions about one document based on a good-faith erroneous belief, only to quickly stop when L'Oréal's counsel raised the question of its authenticity." Opp. at 7. Plaintiff's document-specific arguments were detailed above. At bottom, plaintiff claims that "[a]ny errors in document handling and testimony were the result of confusion or technical issues, rather than any intent to deceive the Court or L'Oréal." Id. at 9.

Regarding the alleged failure to produce responsive documents, plaintiff argues that it "had no obligation to produce . . . any of the Cohen Image[] documents." Id. at 25. It also "reminds the Court of its herculean efforts to review the materials in the excessively expedited timeframe [L'Oréal] demanded." Id. Plaintiff flags that many of the documents are actually duplicates. Id. at 21. It additionally notes that the Court "should not affix any intent, malicious or otherwise, on Metricolor's conduct" given that L'Oréal has focused on only a small percentage of the 5,653 documents that were reviewed. Id.

In reply, defendants argue that "Metricolor leaves the critical facts establishing bad faith misconduct unrebutted." Reply at 1. They note that "[t]he Court may reconsider its sanctions order at any time before final judgment." Id. at 9 (citing Amarel v. Connell, 102 F.3d 1494, 1515 (9th Cir. 1996)). They also argue that "Metricolor's response [] confirms it withheld documents in bad faith." Reply at 4. Defendants emphasize that "Metricolor offers no argument that the withheld documents were unresponsive to [L'Oréal's discovery] requests, not in its possession, or otherwise privileged." Id. at 5. Accordingly, Metricolor had "an unambiguous duty to produce the documents." Id. Defendants argue that, instead, Metricolor "attempted to conceal the evidence by keeping it secret and moving the Court to quash the forensic review that Metricolor knew would otherwise reveal the withheld documents." Id. at 7. They conclude that "[w]hen a party fabricates its strongest evidence, knowingly withholds the evidence that hurts its case the most, deletes evidence, makes misrepresentations to the Court, and provides no justification for misconduct, the integrity of the judicial system requires ending the case." Id. at 1.

The Court finds that plaintiff's misconduct was the result of "willfulness, bad faith, and fault." Con. Gen. Life Ins. Co., 482 F.3d at 1096. As detailed throughout this Order, prolonged discovery disputes and multiple forensic reviews have revealed that plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**     **JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | | Date | March 29, 2024 |
|---|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | | |

(particularly Sal D'Amico) has repeatedly fabricated, destroyed, and withheld evidence in this action.

The Court has previously discussed, at length, the fabrication of documents MC000613, MC000093-94, MC000043-46, and MC000047 in its November 16, 2022, Order regarding defendant's first motion for sanctions. Dkt. 228. There, the Court recognized that "[p]laintiff's conduct creating and producing [these documents], even in light of its proffered explanations, is completely improper," but ultimately denied the motion without prejudice to have a more developed record. Id. at 16.

Since then, additional evidence has been discovered. In its opposition to defendant's first motion for sanctions, plaintiff relied on Sal's "handwritten field testing notes" (MC000088-92) to show that Metricolor had tested L'Oréal's samples with their first-generation system. See Dkt. 212 at 5-6. It also explained that Sal "created or updated the four [fabricated] documents" by "referring to his handwritten notes." Id. at 14. However, Sal has now admitted that the handwritten notes in MC000088 were not contemporaneous but rather were written years later as well. Dkt. 375, Ex. 8 at 224:11-226:6.

Plaintiff also initially represented that, although Sal modified MC000043-46 (the document entitled "Professional Hair Color Packaging and Dispensing Research and Development Study") with a notation stating "11/23/15 Presented R&D Results to L'Oreal/Matrix," "those facts are [nonetheless] true[.]" Dkt. 212 at 23-24. However, the forensic review of the Cohen Image now suggests that the contents of MC000043-46 were actually "the results of a made up interview" that Sal fabricated. See Dkt. 379-3 (BRG-3762).

More generally, the forensic review revealed other instances where Sal has willfully fabricated documents. As mentioned above, BRG-3762 indicates that Sal fabricated the results in MC000043-46. Additionally, in BRG-01412, Sal drafted a highly-detailed and descriptive summary of interviews "with 12 hairstylists (10 females and 2 males)" despite acknowledging that the summary is "total bullshit and a lie." Dkt. 379-1. By way of explanation, Sal wrote "there is no way they [c]an prove that we did not do it." Id.

The Court also finds that the fabricated portions of MC000613, MC00093-94, MC000043-46, MC000047, and MC000088-92 are far too detailed to be reasonably

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'    JS-6

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

viewed as a mere attempt by Sal to share information with Metricolor's lawyers. For example, in MC000613, Sal "us[ed] scissors, tape, and copier to create [an] email" that appears to be directly responsive to the underlying authentic email. Dkt. 171, Ex. 4. In another example, Sal completely fabricated MC000047 and included highly-specific cost estimates and projected orders. Dkt. 171, Ex. 1. Altogether, the evidence suggests that the fabrication of these documents was the result of willfulness, bad faith, and fault.

The forensic review of the Cohen Image also indicates that plaintiff attempted to destroy relevant evidence (and was likely successful). As a threshold matter, plaintiff concealed the existence of the Cohen Image for nearly a year-and-a-half after its creation. Were it not for the eventual discovery of the Cohen Image, defendants may never have discovered plaintiff's attempted deletion of evidence.

The forensic review revealed that at least 50,000 files on the Cohen Image had been permanently deleted from Sal D'Amico's computer prior to the creation of the Setec Image. French identified 5,653 of these files as potentially relevant; 45% of this subset were found in unallocated clusters (meaning the files had been deleted from the computer but were still recoverable). French reported that these documents "were most likely deleted during this litigation." Dkt. 330 at 2. French also found, "to a reasonable degree of certainty[,] that Sal D'Amico was the person using the computer during this timeframe." Dkt. 375-1 ¶ 28. The discovery of a significant number of documents in unallocated clusters is a further indication of willfulness, bad faith, and fault.

Finally, plaintiff has repeatedly withheld responsive evidence from defendants. After reviewing all 5,653 files flagged in the forensic review of the Cohen Image, plaintiff did not flag or produce any documents as responsive to defendants' discovery requests. Instead, plaintiff moved to cancel the review. Dkt. 330. Yet, defendants' review of the files revealed at least 280 relevant and responsive documents, including documents that (1) undercut plaintiff's claim that it had developed a first-generation system; (2) undercut plaintiff's claim that it disclosed its alleged trade secret to defendants in its initial presentations; (3) reveal past instances where Sal admitted to fabricating evidence; and (4) call into question the veracity of previously disclosed evidence. In its opposition, plaintiff argues that such documents have limited relevance and may be cumulative, but does not explain why it was not obligated to disclose such documents upon their discovery.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'   JS-6

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

Altogether, the Court finds that the evidence shows plaintiff acted willfully, in bad faith, and with fault by repeatedly fabricating, destroying, and withholding important evidence in this action.

### B.    Public Interest and Docket Management

Defendants argue that the public's interest in expeditious resolution of cases and docket management favor dismissal. Mot. at 19. They allege that Metricolor's conduct has "required altering the court's trial schedule multiple times," and has led the Court to "engage[] in extensive summary judgment practice without L'Oréal's strongest evidence." Id. If this case were to move forward, defendants allege that they will need "another round of depositions relating to the newly discovered evidence, additional discovery, and likely more motions practice that will all consume substantial additional resources." Id.

Plaintiff's opposition does not specifically address this factor.

Plaintiff's misconduct has resulted in extensive and prolonged discovery disputes and forensic reviews which will likely continue if this case were to move forward. In particular, plaintiff's decision to conceal the existence of the Cohen Image for nearly a year-and-a-half has contributed significantly to the delay. Accordingly, the Court finds that these two factors favor the imposition of terminating sanctions.

### C.    Risk of Prejudice to L'Oréal

Defendants argue that "[t]he submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation." Mot. at 19 (quoting Garcia v. Berkshire Life Ins. Co. of Am., 569 F.3d 1174, 1180 (10th Cir. 2009)). Here, defendants allege they were "forc[ed] to waste considerable time and money flyspecking Metricolor's entire discovery" and will "suffer further prejudice if the case proceeds." Id.

Plaintiff's opposition does not specifically address this factor.

The Court finds that L'Oréal would suffer significant prejudice if this case were to proceed. While L'Oreal has been able to identify some fabricated evidence and uncover other deleted evidence thus far, French has noted that "it is not possible to determine how many files were permanently deleted (i.e., overwritten with new data) before the Cohen

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'     JS-6

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|----------|----------------------|------|----------------|
| Title    | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

Image was taken." Dkt. 375-1 ¶ 15. Thus, L'Oréal has potentially been deprived of access to important evidence that would otherwise be useful for its defense.

### D.   Public Policy and Availability of Less Drastic Sanctions

Defendants argue that public policy favors dismissal because "a lesser sanction than dismissal given this pattern of producing fake documents, withholding critical evidence, and continuing to change the story about the evidence 'would constitute an open invitation to abuse of the judicial system of the most egregious kind.'" Mot. at 20 (quoting Sec. & Exch. Comm'n v. Blockvest, LLC, No. 18CV2287-GPB(MSB), 2020 WL 2786869, at *9 (S.D. Cal. May 29, 2020)).

Defendants also argue that the insufficiency of lesser sanctions favors dismissal as well. They contend that this case "cannot continue because there is now no assurance that the case will be tried on the true facts." Mot. at 21. They allege that "Metricolor 'has lied and hidden evidence so extensively, [the Court] may find . . . that a subsequent trial offers no assurance of a reliable result.'" Id. (quoting Anheuser-Busch, Inc. v. Nat. Beverage Distribs., 69 F.3d 337, 354 (9th Cir. 1995)). Defendants emphasize that, "[e]ven with the previously concealed evidence now in its possession, other material evidence was likely among the files D'Amico deleted that can no longer be recovered." Id.

Plaintiff's opposition does not specifically address the public policy factor. In terms of lesser sanctions, it has proposed barring the use of two of the fabricated documents at trial. Opp. at 8-9. At the hearing, plaintiff proposed that the Court reserve judgment on the sanctions motion until after trial.

The Court finds that both of these factors favor the imposition of terminating sanctions. While public policy ordinarily favors disposition of cases on the merits, the Ninth Circuit has held that "[t]he most critical factor to be considered in case-dispositive sanctions is whether a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." Connecticut Gen. Life Ins. Co., 482 F.3d at 1097 (internal quotation omitted). Here, plaintiff's misconduct has cast doubt on the veracity and integrity of all evidence in this case. The fabrication of significant documents calls into question whether other documents are also real or fake. More significantly, the forensic expert has noted that it is "more likely than not [that] other files were deleted but overwritten before the Cohen Image was taken, and that those

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'    JS-6**

| Case No. | 2:18-cv-00364-CAS-Ex | Date | March 29, 2024 |
|---|---|---|---|
| Title | METRICOLOR, LLC v. L'OREAL USA, INC., ET AL. | | |

permanently deleted files would include information relevant to the case." Dkt. 375-1 ¶ 15.

Given the severity and willfulness of plaintiff's conduct, dismissal with prejudice is the only appropriate sanction. "A lesser sanction—such as a monetary sanction, the exclusion of evidence, or an appropriate instruction to the jury at trial—would be insufficient to remedy the impact of [plaintiff's] misconduct or to deter future misconduct." Rossbach v. Montefiore Med. Ctr., 81 F.4th 124, 141 (2d Cir. 2023).

While plaintiff proposed at the hearing that the Court reserve judgment on the sanctions motion and proceed to trial, the result of a trial "is highly likely to be the same as if the Court were to dismiss this action now." Rossbach v. Montefiore Med. Ctr., No. 19CV5758 (DLC), 2021 WL 3421569, at *7 (S.D.N.Y. Aug. 5, 2021). Here, there is limited documentary evidence to support plaintiff's claims that it (1) owned an alleged first-generation trade secret; and (2) shared such a trade secret with L'Oréal. Indeed, the documents that were discovered on the Cohen Image cast significant doubt on plaintiff's claims, as contemporaneous meeting notes and business plans make no mention of the alleged trade secret. The limited evidence suggesting the existence and conveyance of a trade secret was largely fabricated by Sal. "[P]ermitting the case to proceed to trial would be a futile waste of judicial resources, given that no reasonable juror who learned of [Sal's] campaign of willful fabrication and deception would credit [his] testimony or evidence." Rossbach, 81 F.4th at 142 (internal quotation omitted).

At bottom, "[w]here a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate." Connecticut Gen. Life Ins. Co., 482 F.3d at 1097. This was such a case.

## VI.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendant's motion for terminating sanctions with prejudice.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |